ORIGINAL

Michael W. Sobol (State Bar No. 194857)
Allison S. Elgart (State Bar No. 241901)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Daniel M. Hattis (State Bar No. 232141)
Angelo Salvatore Parise (State Bar No. 165690)
LAW OFFICES OF ANGELO SALVATORE PARISE
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Telephone: (858) 674-6660
Facsimile: (858) 674-6661

*Attorneys for Plaintiffs*

FILED
2007 MAR 23 P 3: 31 E-FILING
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

C07   01700   RMW
RS

| | |
|---|---|
| CHAD BRAZIL and STEVEN SEICK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DELL INC. and Does 1-10,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

     Plaintiffs, by and through their attorneys, bring this civil action for damages, injunctive relief, disgorgement of profits, restitution, and costs of suit, on behalf of themselves and all others similarly situated. Upon personal knowledge as to their own acts and status and upon information and belief as to all other matters, Plaintiffs allege the following:

## NATURE OF THE ACTION

    1.    This is a class action against Dell, Inc. ("Dell") for falsely advertising price discounts for its computers and other products and services. In its direct marketing to consumers and businesses, primarily via its Internet Web site, but in print and other advertising as well, Dell advertises false former prices, false price discounts, false rebate discounts, and false "free" offers

1   for its computer products.  In one prominent practice, Dell misrepresents the nature and amount

2   of product discounts by purporting to offer specific dollar discounts from expressly referenced

3   former prices; these discounts are false, however, because the referenced former prices are

4   fabricated and inflated and do not represent Dell's true regular price for the product.  Dell also

5   falsely advertises the inclusion of "free" upgrades and "free" add-on products and services when

6   they are in fact not free, and falsely advertises product "rebate" discounts that are in fact not

7   discounts.  Dell directly recovers the cost of the "free" add-ons and the cost of the "rebates" by

8   marking up the true regular sales price of the original product in an amount corresponding in

9   whole or in part to the value of the "free" offer or "rebate."  Additionally, Dell advertises the

10   inclusion of "free" upgrades and add-ons as "limited time offers," when in fact Dell typically

11   includes the upgrades and add-ons at no additional cost with the original product.  As a result of

12   Dell's false price advertising schemes, consumers end up paying more than they bargained for

13   because they do not receive the actual value of the price discounts Dell promises them.

14         2.     Dell's false price advertising scheme is rampant and consistent across

15   nearly all of Dell's desktop, notebook, server, and storage lines.  For example, on March 12,

16   2007, on the "Home & Home Office" section of its Web site, Dell offered for sale more than

17   seventy-four (74) models of desktop and notebook computers across 15 product lines; on the

18   Small Business section of its Web site Dell offered for sale more than one hundred and sixty

19   (160) desktop, notebook, and server models across 41 product lines.  For most of these models,

20   Dell displayed a false discount from false regular prices.  Dell's conduct is so pervasive and

21   consistent as to make it apparent that the heart of Dell's marketing plan is to intentionally deceive

22   the public.

23         3.     Dell's advertising violates California law prohibiting advertising goods for

24   sale as discounted from former prices which are false, and prohibiting misleading statements

25   about the existence and amount of price reductions.  Dell's conduct also breaches its agreements

26   with purchasers for the sale of its computer products.  Plaintiffs, individually and on behalf of all

27   others similarly situated, seek damages, restitution, punitive damages, and injunctive relief to stop

28   Dell's rampant false advertising.

**THE PARTIES**

4.    Plaintiff Chad Brazil is an individual residing in Santa Cruz, California.

5.    Plaintiff Steven Seick is an individual who owns and operates a business in San Diego, California.

6.    Defendant Dell Inc. ("Dell") is a Delaware corporation with its principal executive offices at One Dell Way, Round Rock, Texas.

7.    Dell designs, develops, manufactures, markets, sells and supports a range of computer systems and services that are customized to customer requirements. These include notebook and desktop computers, servers, networking products, printing and imaging systems, software and peripherals, and global services. The Company markets and sells its products and services directly to its customers, which include individual consumers, small to medium-sized businesses, larger corporations, and government, healthcare, and education accounts. Dell employs over 65,000 individuals.

8.    Plaintiffs do not know the true names and capacities of Does 1-10, inclusive, whether individual, corporate, association, or otherwise, and, therefore, sues said defendants, and each of them, by such fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities when they have been ascertained. Plaintiffs are informed and believe, and on the basis of that belief allege, that each of these Doe defendants was in some manner legally responsible for the events, happenings, injuries, and damages alleged in this Complaint. As used herein, the term "Defendant" and/or "Dell" refers to Dell and the Doe defendants.

**JURISDICTION AND VENUE**

9.    The Court has jurisdiction of the claims alleged herein pursuant to 28 U.S.C. § 1332 because the amount in controversy for the class exceeds $5,000,000, exclusive of interest and costs, and the members of the proposed Classes are not citizens of Texas, Dell's state of citizenship.

10.    This Court has personal jurisdiction over Dell because a substantial portion of the wrongdoing alleged in this Complaint took place in this state, Dell is authorized to do

1    business here, Dell has sufficient minimum contacts with this state, and/or Dell otherwise

2    intentionally avails itself of the markets in this state through the promotion, marketing and sale of

3    its products in this state, to render the exercise of jurisdiction by this Court permissible under

4    traditional notions of fair play and substantial justice.

5        11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a

6    substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this

7    District.

8                        **INTRADISTRICT ASSIGNMENT**

9        12.    Pursuant to the Northern District of California's Local Rules Nos. 3-2 and

10    3-5, Plaintiffs request assignment to the San Jose Division of the Northern District of California.

11    Plaintiff Chad Brazil resides in Santa Cruz County and thus a substantial part of the events or

12    omissions which give rise to the claims occurred in Santa Cruz County.

13                        **FACTUAL BACKGROUND**

14        13.    Dell is one of the biggest e-commerce companies in the world.  Dell

15    directly markets its products to consumers and businesses in California and throughout the nation

16    via its Web site, Internet advertising, e-mail campaigns, newspaper and magazine advertising,

17    television advertising, direct mail, and company-owned retail stores.  In 2005, Dell spent over

18    $975 million on direct advertising to consumers and businesses to draw them to its Web site, and

19    it spends millions more maintaining its e-commerce Web site at www.dell.com.  According to

20    Dell, each day there are more than 4 million visitors to www.dell.com.

21        14.    Dell consummates its sales to consumers and small to medium businesses

22    on its Web site or by telephone.  In addition, Dell operates 185 "Dell Direct Stores" in shopping

23    malls and airports throughout the country.  At these stores, Dell displays its products and

24    facilitates Internet sales.  There are 29 such stores in California, including 8 in this judicial

25    district.

26        15.    Dell's marketing strategies have been successful.  Dell maintains roughly

27    30 percent of the personal computer market share in the United States and in 2006, Dell had over

28

1   $57.1 billion in sales.  In significant part, however, Dell's growth and profitability have been the

2   product of deceptive, misleading, and unlawful marketing and advertising practices.

3           16.    Dell's Web site, along with its direct advertising, is replete with false and

4   fraudulent claims regarding the existence of price discounts.  Dell has leveraged its Internet

5   marketing expertise and technology to perpetrate an illegal scheme of massive proportions.

6                    **False Discounts From False Former Prices**

7           17.    Dell's deceptive and misleading false price advertising scheme has three

8   primary components.  First, Dell advertises false specific dollar amount discounts from an

9   expressly referenced false former sales price.  Dell perpetrates its false former price advertising

10   scheme on its Web site and in its online email and print advertising.

11           18.    The Federal Trade Commission (FTC) describes false former pricing

12   schemes, similar to Dell's in all material respects, as deceptive:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious--for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction--the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith--and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.  And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $ ------"), unless substantial sales at that price were actually made.

16 C.F.R § 233.1.

19.     Under California law, "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement." Cal. Bus. & Prof. Code § 17501. With respect to sales to consumers, California law prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(13).

20.     On its Web site, Dell advertises a discount price in bold red lettering accompanied by a crossed-out false former price. In fact, Dell's advertised former sales price is an inflated price well above the actual sales price at which Dell regularly sells the product. The purportedly discounted price is in fact not discounted at all, but rather is approximately equal to Dell's regular sales price for the product. During the purchase of Dell products on-line, purchasers are directed to a virtual shopping cart, prior to consummating the purchase, where Dell misrepresents that purchasers have obtained a "savings," expressed in a specific dollar amount which represents the difference between the false regular price and the sales price. Dell also makes misrepresentations of "savings" in specific dollar amounts in its descriptions of "Discount Details" and on Web pages listing "Featured" models of the selected product.

21.     Dell fabricates the false former reference prices. The false former reference prices have no connection to the actual past pricing of Dell's products. For example, on September 13, 2006, Dell introduced its Dimension C521 Series of desktop computers, including one model (no. DDWCA2) at a sales price of $529 without reference to a former sales price. Over the following four months the price for this model fluctuated, reaching a high of $588. On January 26, 2007, Dell was continuing to offer the Dimension C521 at a price of $588, still without reference to a former sales price. On January 27, 2007, Dell began applying its false former pricing scheme, offering the Dimension C521 with a fabricated false former price. As is shown on the screen shots taken from Dell's Web site from those two days, attached hereto as Exhibit "A," although Dell continued to offer the computer at the same $588 price, Dell now began to advertise a false $100 discount from a newly invented false former price of $688. In fact, Dell had never offered this Dimension C521 model at the $688 price. Rather, Dell's false

1   discounted sales price of $588 was in fact the highest price at which Dell had ever offered the

2   computer model for sale. During this time, in both its description of the "Discount Details" and

3   in the virtual shopping cart prior to any purchase, Dell misrepresented that purchasers would

4   "Save $100 on this Dell C521 system! Limited Time Offer!" Attached hereto as Exhibit "B," and

5   incorporated herein, is a graph representing the true sales price and false reference price histories

6   of this Dimension C521 model.

7          22.    Dell perpetrates the false price discounting scheme in its print advertising.

8   For example, on September 15, 2006, Dell advertised false discounts in the *San Diego Union*

9   *Tribune* for its Dimension E510 and Inspiron B130 computers. Dell falsely represented that the

10  Dimension E510 was "[r]egularly priced $839," and offered it for sale at $689, "after $150 off."

11  In fact, however, during the three months preceding the date of this advertisement, Dell's average

12  advertised price on its Web site for the identically configured Dimension E510 was $656.94, *i.e.*,

13  $32.06 less than the falsely advertised "discounted" price. Rather than offering a $150 discount

14  from the regular sales price of the Dimension E510, Dell was actually offering it for sale at an

15  amount $32.06 *more than* the regular sales price. Similarly, Dell falsely represented that the

16  Inspiron B130 was "[r]egularly priced $549," and offered it for sale at $499, "after $50 off." In

17  fact, however, during the three months preceding the date of this advertisement, Dell's average

18  advertised price on its Web site for the identically configured Inspiron B130 was $512.67, *i.e.*,

19  only $13.67 more than the falsely advertised "discounted" price. Rather than offering a $50

20  discount from the regular sales price of the Inspiron B130, the discount was actually far less, *i.e.*,

21  $13.67. Attached hereto as Exhibit "C" is a true and accurate copy of the September 15, 2006

22  Dell advertisement in the *San Diego Union Tribune* with the relevant portions enlarged and

23  highlighted.

24         23.    The false former price discounts are omnipresent on Dell's Web site and in

25  its print advertising. Dell displays a false discount price alongside a false, often crossed-out,

26  regular price for nearly every desktop and notebook computer, server, and storage device that it

27  sells. Dell consistently misrepresents that its sales prices represent "savings" in specific dollar

28  amounts from inflated and false regular prices. Dell misrepresents that such false discounts and

1    savings are available only for a "limited time," when in fact, it is Dell's standard operating

2    procedure to offer such false discounts and savings.

3             24.    Dell's advertising of false former prices violates California law and FTC

4    standards.  The discounts promised by Dell are false because they are applied against a fabricated

5    and inflated "regular" price, rather than against Dell's true regular price for the product.  Dell's

6    promise to provide price discounts from Dell's regular sales price is an objectively material term

7    of the sales transaction.  Dell fails to keep its promise to provide price discounts from true regular

8    sales prices, and as a result, consumers do not receive the benefit of the advertised bargain.

9                           **False "Free" Offers**

10            25.    Second, Dell falsely represents to potential buyers on its Web site and in

11   other promotional material that Dell will provide valuable upgrades and additional products and

12   services for "free" if the buyer pays Dell's "regular" sales price for the original product.  In fact,

13   Dell marks up the true regular sales price of the original product in an amount corresponding in

14   whole or in part to the value of the "free" upgrades and add-ons.  Dell's promise that the upgrades

15   and add-ons are being included for "free" in the sale of the base product is an objectively material

16   term of the sales transaction.

17            26.    The FTC states the following with regard to "free" offers:

18       The public understands that . . . an offer of "Free" merchandise or service is based
         upon a regular price for the merchandise or service which must be purchased by
19       consumers in order to avail themselves of that which is represented to be "Free".  In
         other words, when the purchaser is told that an article is "Free" to him if another
20       article is purchased, the word "Free" indicates that he is paying nothing for that
         article and no more than the regular price for the other.  Thus, a purchaser has a
21       right to believe that the merchant will not directly and immediately recover, in
         whole or in part, the cost of the free merchandise or service by marking up the
22       price of the article which must be purchased, by the substitution of inferior
         merchandise or service, or otherwise.
23

24

25   16 C.F.R § 251.1(b)(1).

26            27.    An example of Dell's "free offer" false advertising scheme is shown in its

27   advertising for its Dimension E310 desktop computer.  On March 22, 2006, Dell offered a

28   Dimension E310 model (no. DE310SAP) at a sales price of $499.  The next day, on March 23,

2006, Dell offered the same computer with a configuration that included a 17-inch flat panel monitor and 512 MB of memory. Dell falsely represented that the monitor and memory upgrades were "FREE," but in fact, Dell actually marked-up the offering sales price by $100, *i.e.*, for a total sales price of $599. Dell discontinued this false "FREE" upgrade offer seven days later on March 30, 2006, at which time Dell dropped the sales price back down to $499. Attached hereto as Exhibit "D" are excerpts of screen shots from Dell's Web sites from March 22 and 23, 2006, advertising the Dimension E310 with and without the false "free" offer.

28.    Dell also falsely advertises "free" upgrades and "free" add-on products and services to the original product as "limited time offers," when, in fact, Dell typically and in the ordinary course includes the upgrades and add-ons with the product at no additional cost.

29.    The FTC has promulgated the following standard regarding the frequency of "free" offers:

> So that a "Free" offer will be special and meaningful, a single size of a product or a single kind of service should not be advertised with a "Free" offer in a trade area for more than 6 months in any 12-month period. At least 30 days should elapse before another such offer is promoted in the same trade area. No more than three such offers should be made in the same area in any 12-month period. In such period, the offeror's sale in that area of the product in the size promoted with a "Free" offer should not exceed 50 percent of the total volume of his sales of the product, in the same size, in the area.

16 C.F.R § 251.1(h)

30.    Dell's advertising of its false "limited time" free offers violates California law and FTC standards because its "free offers" are in fact not free offers at all—buyers realize no price savings nor any additional value because Dell typically includes the upgrades and add-ons at no additional cost. Dell's representation to buyers that they will receive price savings on a Dell product in the form of "limited time" free offers is an objectively material term of the sales transaction.

31.    Dell violates California law and FTC standards by making false "limited time" free offers and by failing to keep its promise to provide upgrades and add-ons for "free" where Dell in fact directly recovers the cost of the "free" upgrades and add-ons by marking up the

1    true regular sales price of the original product. The "free" offers are illusory, and, as a result,

2    purchasers do not receive the benefit of their bargained-for exchange.

3                               **False Rebate Discounts**

4            32.     Third, Dell represents to potential buyers on its Web site and in other

5    promotional material that Dell will provide product mail-in "rebate" discounts if the buyer pays

6    the advertised "regular" sales price for the product. Dell's promise to provide a "rebate" discount

7    is an objectively material term of the sales transaction. In fact, Dell's rebate discount offers are

8    illusory because Dell directly recovers the cost of the "rebates" by marking up the true regular

9    sales price of the product in an amount corresponding in whole or in part to the amount of the

10   rebate. By falsely representing the rebate offer as a discount from Dell's regular sales price, Dell,

11   among other things, breaches the agreement it made with the buyer.

12           33.     An example of Dell's false rebate discounting is shown in its advertising

13   for one of its Dimension E310 computer models (no. DE310SAP). On June 7, 2006, Dell offered

14   this Dimension E310 model at a sales price of $497. The next day, on June 8, 2006, Dell offered

15   the same computer at a price $102 more than the day before, *i.e.*, at $599, together with a false

16   $100 mail-in rebate discount. Dell's rebate discount offer on the Dimension E310 was false and

17   misleading because the rebate discount was offered in conjunction with an inflated sales price that

18   directly corresponded to the amount of the false rebate. Attached hereto as Exhibit "D" are

19   excerpts of screen shots from Dell's Web sites from June 7 and 8, 2006, advertising the

20   Dimension E310 with and without the false rebate discount.

21            **Other and Related False and Misleading Advertising Practices**

22           34.     Dell perpetrates additional deceptive, misleading, and unlawful marketing

23   and advertising practices by: (1) intentionally directing customers to special Web pages, "offer

24   codes" and "coupon codes" that promise special discounts on computer products, but which in

25   fact charge the same or greater than Dell's true regular price for the products; and (2) promising

26   customers that prominently advertised discounts and "free" offers have already been applied to

27   their orders, when in fact Dell has not applied the discounts to their orders.

28

35.     Dell conceals its deceptive practices by constantly changing its Web site and offers, making it difficult or impossible for prospective customers to verify or dispute Dell's claimed discounts.

36.     Dell's duplicitous conduct is evidenced by, for example, its advertising for its Optiplex 320 desktop computer models. Dell introduced these models on November 8, 2006. Even though Dell had never before offered any Optiplex 320 models for sale, on the day of their introduction Dell falsely advertised them as having former regular prices. For example, Dell misrepresented that one model (no. BPCWOCR) regularly sold for $489, and offered it at a falsely discounted sales price of $359, misrepresenting it to confer a $130 "savings." On four occasions during the first three months Dell sold this Optiplex 320 model, it offered a false "free" flat panel monitor upgrade. In fact, during each period that Dell offered the false free monitor upgrade, Dell increased the sales price by $50 or more, as set forth in the graph attached hereto as Exhibit "E."

37.     Dell's duplicitous conduct is further evidenced by its advertising of one of its Dimension E310 desktop computer models (no. DE310SAP) from March 15, 2006 to June 15, 2006. Throughout this period, Dell offered this model for sale at $499 while at the same time falsely offering a "limited time" "savings" of $100 from a false regular price of $599 (except for two seven-day periods where a false "free" offer was made, and one seven-day period where a false rebate offer was made). For a seven-day period beginning on March 23, 2006, Dell increased the sales price for this Dimension E310 model by about $100 at the same time it offered false "free" monitor and memory upgrades. On March 30, Dell stopped offering the false "free" upgrades and reverted the pricing to the usual sales price of $499 with a false representation of a $100 "savings" from the false regular price of $599. Thereafter, in another seven-day period beginning May 11, 2006, Dell increased the sales price by $52 while offering a false "free" monitor upgrade. When Dell stopped offering this false "free" upgrade on May 18, 2006, Dell again reverted to the usual sales price of $499 with a false representation of a $100 "savings" from the false regular price of $599. Then for a seven-day period beginning June 29, 2006, Dell increased the sales price from $499 to $599, while this time offering a false $100 mail-in rebate

1    discount. Dell stopped offering the rebate on July 6, 2006, at which time it once more reverted to

2    its false regular pricing with the false "savings" representation. In short, over a three-month

3    period, Dell advertised this Dimension E310 model with either false discounts from false regular

4    prices, false free offers, or false rebates, as set forth in the graph attached hereto as Exhibit "F."

5              38.     Millions of customers have been victims of Dell's deceptive, misleading,

6    and unlawful marketing and advertising schemes.

7              39.     Dell knows or reasonably should know that its advertising is deceptive,

8    misleading, and unlawful.

9              40.     Dell fraudulently concealed from and intentionally failed to disclose to

10   Plaintiffs, members of the Consumer and Business Classes, and any others in the chain of

11   distribution, the truth about its advertised price discounts and its advertised "free" products and

12   "rebates."

13             41.     Dell was and is under a duty to Plaintiffs and the members of the

14   Consumer and Business Classes to disclose the truth about its misrepresentations and false price

15   advertising because:

16                     a.      Dell is in a superior position to know the facts about its deceptive,

17   misleading, and unlawful marketing and advertising scheme;

18                     b.      Dell made partial, misleading, and deceptive disclosures about its

19   false price discounts, false "free" offers, and false "rebates";

20                     c.      Dell knowingly concealed the nature of its false advertising scheme

21   from Plaintiffs and the members of the Consumer and Business Classes.

22             42.     The facts which Dell concealed or failed to disclose are material facts that a

23   reasonable person would have considered material, *i.e.*, facts which would contribute to a

24   reasonable person's decision to purchase Dell's computer products or services.

25             43.     Dell intentionally concealed and failed to disclose the truth about its

26   representations and false price advertising scheme for the purpose of inducing Plaintiffs and the

27   members of the Consumer and Business Classes to purchase computer products from Dell.

28

44.     Dell's deceptive, misleading, and unlawful marketing and advertising scheme has made comparison shopping more difficult for consumers and businesses. Dell's false advertising focuses reasonable purchasers' attention on representations of price discounts and other savings or bargains from purported regular prices. As a result, purchasers reasonably perceive that they are receiving valuable price reductions on purchases of Dell's computer products. Dell also creates a sense of urgency regarding the purchases by featuring the phrase "limited time offer" in nearly all of its false advertising, giving the false impression that customers will miss out on the purported markdowns and free offers if they do not buy the products immediately. This perception induces reasonable purchasers to buy the products from Dell and to refrain from shopping for computer products from sellers other than Dell.

45.     Dell's false representations of discounts from "regular" prices and false representations of rebate discounts and "free" offers are objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

46.     Plaintiffs and the members of the Consumer and Business Classes reasonably and justifiably acted or relied to their detriment on Dell's failure to disclose, and concealment of, the truth about its false price advertising scheme in purchasing Dell's computer products and services.

47.     Dell's conduct has been and is wanton or reckless or shows a reckless indifference to the interests of Plaintiffs and the members of the Consumer and Business Classes.

48.     Any applicable statutes of limitation have been tolled by Dell's knowing and active concealment of the operative facts alleged herein. The nature of Dell's misleading and deceptive pricing scheme is such that Plaintiffs and class members could not reasonably have discovered the true nature of the scheme. Uncovering Dell's illegal scheme requires sophisticated and expensive specialized software which is not reasonably available to ordinary consumers.

49.     Dell knowingly, affirmatively, and actively concealed the true nature of its deceptive and misleading pricing scheme, including false former prices, illusory rebate discounts, and false offers of "free" add-on products or services. Dell's concealment is ongoing. Plaintiffs and members of the Consumer and Business Classes reasonably relied upon Dell's knowing,

1   affirmative, and/or active concealment.  Based on the foregoing, Dell is estopped from relying on

2   any statutes of limitation in defense of this action.

3          50.    Dell employs its superior bargaining power to unilaterally impose upon

4   customers at the time of the sale of its computer products its so-called "Terms and Conditions,"

5   which include an arbitration clause with a waiver of purchasers' class action remedies.  The

6   Terms and Conditions constitute contracts of adhesion.  Dell purports to impose the adhesive

7   Terms and Conditions upon commercial transactions (*i.e.*, sales of Dell's computer products),

8   which predictably involve small sums of money (in comparison with the costs of litigation), as

9   part of its overall scheme to deliberately cheat large numbers of purchasers out of these

10  individually small sums of money.  In practice, the Terms and Conditions would operate to

11  exempt Dell from its responsibility for its own fraud and willful injury to its customers.  Dell's

12  Terms and Conditions, with its arbitration and class action waiver clause, are unconscionable and

13  contrary to public policy and therefore are unenforceable against its customers.

14         51.    The claims and issues asserted herein are governed by California state law.

15  The State of California has the greatest interest in policing corporate conduct occurring within the

16  State which affects the rights and interests of its citizens.

17         52.    Dell's conduct breaches its agreements with Plaintiffs and the members of

18  the Consumer and Business Classes for the purchase of Dell computer products, constitutes

19  negligent misrepresentation and intentional fraud, and violates California Business and

20  Professions Code §§ 17500, et seq., California Business and Professions Code §§ 17200, et seq.,

21  and California Consumers Legal Remedies Act, California Civil Code §§ 1750, et seq.  As a

22  direct and proximate cause of Dell's misconduct, Plaintiffs and members of the Consumer and

23  Business Classes have suffered damages.

## PLAINTIFF STEVEN SEICK

25         53.    On June 15, 2006, plaintiff Steven Seick purchased directly from Dell via

26  its Internet Web site a Dell Dimension B110 desktop computer, model no. DB110A (herein, the

27  "Dimension Computer"), and associated peripheral Dell computer products.  Mr. Seick purchased

28  his computer by accessing Dell's Web site, and specifically by accessing Web pages which

1    described Dell's Dimension Computer and which advertised false discounts and false regular

2    prices for the Dimension computer.

3         54.    On its Web site the day of Mr. Seick's purchase, Dell offered to sell the

4    Dimension Computer for $299, at a promised "savings" of $50 from the false regular sales price

5    of $349.  After Mr. Seick arrived on the pages of Dell's Web site which contained these

6    representations, he began the process of purchasing the Dimension Computer.  First, Mr. Seick

7    selected the Dimension Computer at the base sales price of $299, and he was then directed to

8    further purchasing options where he selected certain upgrades and add-ons.  After that, Mr. Seick

9    was directed to Dell's "shopping cart," which listed the items, upgrades, and add-ons that he had

10   selected for purchase and the pricing for his selections.  In the shopping cart, Dell misrepresented

11   to Mr. Seick that he would, "Save $50 instantly off this Dell Dimension B110!"  Attached hereto

12   as Exhibit "G" are screen shots of Dell's "system configurator" and "shopping cart" Web pages

13   for the Dimension Computer, taken on the date of Mr. Seick's purchase.

14        55.    Mr. Seick then purchased the Dimension Computer via Dell's online

15   purchasing process, paying the base sales price of $299 plus an additional amount for his selected

16   upgrades and add-ons.  On the same day of, but after Mr. Seick's purchase, Dell sent Mr. Seick an

17   email confirming his purchase order, which is attached hereto as Exhibit "H."  Dell's order

18   confirmation again stated that Mr. Seick would, "Save $50 instantly off this Dell Dimension

19   B110!  Expires on 2006-06-22."

20        56.    On June 15, 2006, Mr. Seick purchased from Dell the Dimension

21   Computer at the base price of $299 after Dell had misrepresented to him that he would receive a

22   $50 savings from its regular pricing for that computer.

23        57.    During the three months prior to Mr. Seick's purchase, Dell's average

24   offered base sales price for the Dimension Computer model was in fact $297.51.  Attached hereto

25   as Exhibit "I," and incorporated herein, is a chart setting forth the daily prices for the Dimension

26   Computer during the three months prior to Mr. Seick's purchase, which demonstrates that Dell

27   uniformly and falsely represented the regular price for the Dimension Computer to be $349, even

28   though the average true regular price for that period was $297.  (At three junctures during this

1   period, instead of offering the Dimension Computer for sale at the usual $299, Dell increased the

2   sales price by $50, *i.e.* to $349, but offered an offsetting false rebate discount of $50.)

3         58.    Rather than having received a $50 savings from the regular sales price of

4   the Dimension Computer, as Dell had misrepresented, Mr. Seick paid $1.49 ***more than*** the true

5   regular sales price for the Dimension Computer, *i.e.*, $1.49 more than the average actual sales

6   price offered by Dell for the three months preceding Mr. Seick's purchase.

7         59.    Although Dell represented to Mr. Seick that the offer for the supposed $50

8   savings would "expire" on June 22, 2006, Dell in fact continually made that offer up to and

9   including October 12, 2006, at which point Dell discontinued the Dimension B110 series and

10   replaced it with a new model line.

11         60.    Dell's representation to Mr. Seick that his purchase price reflected a $50

12   savings from Dell's regular sales price was false and misleading because, in fact, the price Dell

13   charged Mr. Seick was more than the true regular sales price for the Dimension Computer.

14         **PLAINTIFF CHAD BRAZIL**

15         61.    On December 15, 2006, plaintiff Chad Brazil purchased directly from Dell,

16   via its Internet Web site, a Dell Inspiron E1505 Dual Core notebook computer, model

17   no. DNDWEA3 (herein, the "Inspiron Notebook"), and associated peripheral Dell computer

18   products. Mr. Brazil purchased the Inspiron Notebook by accessing Dell's Web site, and

19   specifically by accessing Web pages which described the Inspiron Notebook and which

20   advertised false discounts and false regular prices for the Inspiron Notebook.

21         62.    On its Web site the day of Mr. Brazil's purchase, Dell offered to sell the

22   Inspiron Notebook for $1,199, at a promised savings of $314 from the false regular sales price of

23   $1,514. After Mr. Brazil arrived on the pages of Dell's Web site that contained these

24   representations, he began the process of purchasing the Inspiron Notebook. First, Mr. Brazil

25   selected the Inspiron Notebook at the base sales price of $1,199, and he was then directed to

26   further purchasing options where he selected certain upgrades and add-ons. After that, Mr. Brazil

27   was directed to Dell's "shopping cart," which listed the items, upgrades, and add-ons that he had

28   selected for purchase and the pricing for his selections. In the shopping cart, Dell misrepresented

1   to Mr. Brazil that he would, "Save $314 off this Dell Inspiron!  Limited Time Offer!"  Attached

2   hereto as Exhibit "J" is a screen shot of Dell's "system configurator" Web page for the Inspiron

3   Notebook, taken on the date of Mr. Brazil's purchase, along with an excerpt of the printout made

4   by Mr. Brazil of his Dell "shopping cart."

5          63.    Mr. Brazil then purchased the Inspiron Notebook via Dell's online

6   purchasing process, paying the base sales price of $1,199 plus an additional amount for his

7   selected upgrades and add-ons.  On the same day of, but after Mr. Brazil's purchase, Dell sent

8   Mr. Brazil an email confirming his purchase order, attached hereto as Exhibit "K."  Dell's order

9   confirmation again stated that Mr. Brazil would "Save $314 off this Dell Inspiron!"

10         64.    During the three months prior to Mr. Brazil's purchase, Dell's average

11  offered base sales price for the Inspiron Notebook model was $1,041.34.  Attached hereto as

12  Exhibit "L," and incorporated herein, is a chart setting forth the daily prices for the Inspiron

13  Notebook during the three months prior to Mr. Brazil's purchase.  The chart demonstrates that

14  during these three months Dell consistently and falsely represented that the actual selling price

15  was discounted from a regular sales price, and that as Dell changed the actual selling price from

16  time to time, it also moved the false regular sales price in lockstep with it.

17         65.    Although Dell represented that the amount Mr. Brazil paid was a $314

18  "savings" from the regular sales price for the Inspiron Notebook, during the three months prior to

19  Mr. Brazil's purchase, Dell always offered it for sale at an amount less than Mr. Brazil paid.

20         66.    Rather than having received a $314 savings from the regular sales price of

21  the Inspiron Notebook, as Dell had misrepresented, Mr. Brazil paid $157.66 **more than** the true

22  regular sales price for the Inspiron Notebook, *i.e.*, $157.66 more than the average actual sales

23  price offered by Dell for the three months preceding Mr. Brazil's purchase.

24         67.    Dell's representation to Mr. Brazil that the purchase price it offered

25  reflected a $314 savings from Dell's regular sales price was false and misleading because, in fact,

26  the price Dell advertised and Mr. Brazil paid was, as of the date of his purchase, the highest actual

27  sales price for that computer that Dell ever advertised and offered.

28

## CLASS ACTION ALLEGATIONS

68.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and others similarly situated.  The "Consumer Class" is defined as follows:

> All persons who are citizens of the State of California who purchased from Dell computer systems, computer peripherals, electronics, software, and/or services for personal, family or household use that: (1) Dell falsely advertised as discounted from Dell's regular sales price; (2) Dell falsely advertised as including "free" upgrades and/or "free" add-on products and/or services; and/or (3) Dell falsely advertised as being subject to a rebate discount from Dell's regular sales price.

69.     The "Business Class" is defined as follows:

> All persons or entities who are citizens of the State of California who purchased from Dell computer systems, computer peripherals, electronics, software, and/or services which were not for personal, family or household use (*i.e.*, for business use) that: (1) Dell falsely advertised as discounted from Dell's regular sales price; (2) Dell falsely advertised as including "free" upgrades and/or "free" add-on products and/or services; and/or (3) Dell falsely advertised as being subject to a rebate discount from Dell's regular sales price.

70.     Excluded from the Consumer and Business Classes are:  (1) Dell and its subsidiaries, affiliates, officers, and directors; (2) any entity in which Dell or any other excluded entity has a controlling interest; (3) Dell's legal representatives, predecessors, successors, assigns, and employees; and (4) the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

71.     <u>Numerosity Under Rule 23(a)(1)</u>.  The members of the Consumer and Business Classes are so numerous that individual joinder of all its members is impracticable. Plaintiffs are informed and believe that there are hundreds of thousands, if not millions, of customers throughout California that have been damaged by Dell's false and misleading advertising practices and its breaches of promises to provide price discounts, free products, and rebates.

1    72.   Commonality Under Rule 23(a)(2).  This action involves common

2    questions of law and fact, including, but not limited to, the following:

3           a.   Whether Dell (1) falsely advertises price discounts from regular

4    sales prices; (2) falsely advertises the inclusion of "free" upgrades and "free" add-on products and

5    services; (3) falsely advertises rebate discounts from Dell's regular sales prices; (4) directs

6    customers to special Web pages, "offer codes," and "coupon codes" promising special discounts

7    on computer products which are in fact not discounts; and (5) misleads and induces customers to

8    believe that prominently advertised discounts and "free offers" have already been applied to their

9    orders, when in fact Dell has not applied the discounts to the customers' orders;

10          b.   Whether Dell breached its promises to provide price discounts, free

11   products and services, and rebates;

12          c.   Whether Dell's use of advertising and other representations

13   constitutes false advertising;

14          d.   Whether Dell engaged in unfair, unlawful, and/or fraudulent

15   business practices;

16          e.   Whether Dell failed to disclose material facts about product pricing

17   and discount offers;

18          f.   Whether Dell has made false or misleading statements of fact

19   concerning reasons for, existence of, or amounts of price reductions;

20          g.   Whether Dell's conduct, as alleged herein, is intentional and

21   knowing;

22          h.   Whether the arbitration and class action waiver provision contained

23   in Dell's Terms and Conditions are contrary to public policy, unconscionable, and unenforceable

24   under California Civil Code sections 1668 and 1670.5 and other applicable law; and

25          i.   Whether members of the Consumer and Business Classes are

26   entitled to compensatory damages, punitive damages, restitution, disgorgement of profits, and

27   injunctive relief.

28

1        73.    <u>Typicality Under Rule 23(a)(3)</u>.  The named Plaintiffs' claims are typical

2  of (and not antagonistic to) the claims of the class members.  Plaintiffs and the Consumer and

3  Business Classes they seek to represent have all been deceived and damaged by Dell's illegal

4  practices.

5        74.    <u>Adequacy of Representation under Rule 23(a)(4)</u>.  Plaintiffs will fairly and

6  adequately protect the interests of the members of the Consumer and Business Classes, and the

7  representative Plaintiffs' interests are coincident with and not antagonistic to those of the other

8  class members they seek to represent.  Plaintiffs have retained competent counsel to represent

9  them and the Consumer and Business Classes.

10       75.    <u>The Consumer and Business Classes Can Be Properly Maintained Under</u>

11  <u>Rules 23(b)(2) and (c).</u>  Dell has acted or refused to act, with respect to some or all issues

12  presented in this Complaint, on grounds generally applicable to the Consumer and Business

13  Classes, thereby making appropriate final injunctive relief with respect to the Consumer and

14  Business Classes as a whole.

15       76.    <u>The Consumer and Business Classes Can Be Properly Maintained Under</u>

16  <u>Rules 23(b)(3) and (c).</u>  Questions of law common to the members of the Consumer and Business

17  Classes predominate over any questions affecting only individual members with respect to some

18  or all issues presented in this Complaint.  A class action is superior to other available methods for

19  the fair and efficient adjudication of this controversy.  Individual litigation of the claims of all

20  class members is impracticable because the cost of litigation would be prohibitively expensive for

21  each class member and would impose an immense burden upon the courts.  Individualized

22  litigation would also present the potential for varying, inconsistent, or contradictory judgments

23  and would magnify the delay and expense to all parties and to the court system resulting from

24  multiple trials of the same complex factual issues.  By contrast, the conduct of this action as a

25  class action, with respect to some or all of the issues presented in this Complaint, presents fewer

26  management difficulties, conserves the resources of the parties and of the court system, and is the

27  only means to protect the rights of all class members.

28

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

77.     Plaintiffs, on behalf of themselves and the Consumer and Business Classes, reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

78.     Dell offers its products for sale through its Web site and through other advertising and marketing means.

79.     The material terms of Dell's sales agreements with Plaintiffs and the members of the Consumer and Business classes included Dell's promises to (1) sell computer products at prices discounted or reduced from the regular sales prices of the products; (2) include valuable "free" upgrades and "free" add-on products and services with the original product; and/or (3) provide a specified dollar amount "rebate" discount from Dell's regular sales price.

80.     Based upon Dell's promises, Plaintiffs and members of the Consumer and Business Classes entered into respective agreements with Dell for the purchase of computer products.

81.     Plaintiffs and members of the Consumer and Business Classes gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed.

82.     Dell breached its agreements with Plaintiffs and members of the Consumer and Business Classes.

83.     Dell breached its agreements to sell computer products discounted from its regular sales prices because the discount amounts promised by Dell were false and were in fact applied against fabricated and inflated reference prices rather than against Dell's true regular prices.  Plaintiffs and members of the Consumer and Business Classes did not receive the discount amounts promised, and Dell thereby deprived them of the benefit of their bargained-for exchange.  As a result, Plaintiffs and members of the Consumer and Business Classes did not

1   receive a Dell product at a discounted or reduced price, as offered by Dell and accepted by the

2   Plaintiffs and members of the Consumer and Business Classes.

3       84.   Dell breached its agreements to include valuable "free" upgrades and

4   "free" add-on products and services with its computer products because the upgrades and add-ons

5   were in fact not free. Dell directly recovered the cost of the "free" upgrades and add-ons by

6   marking up the true regular sales price of the original product by an amount corresponding in

7   whole or in part to the value of the "free" upgrade or add-on such that Dell's promise of a "free

8   offer" was false.

9       85.   Dell breached its agreements to include "limited time" "free" upgrades and

10   add-on products and services with its products because Dell typically included the upgrades and

11   add-on products at no additional cost. Dell's "limited time" "free offers" were thus false.

12       86.   Dell breached its agreements to provide product mail-in "rebate" discounts

13   from Dell's regular sales price because the rebate discounts were not true discounts at all. Dell

14   directly recovered the cost of the "rebate" by marking up the true regular sales price of the

15   product in an amount corresponding in whole or in part to the amount of the "rebate."

16       87.   Dell breached its agreements to sell computer products with prominently

17   advertised "free offers" and discounts because Dell did not apply the discounts to their orders.

18       88.   By reason of Dell's breach of these agreements, Plaintiffs and the members

19   Consumer and Business Classes did not get the actual discounts that Dell promised them, and

20   they thereby paid more than they bargained for, were deprived of the benefit of their bargained-

21   for exchange, and suffered damages in an amount to be determined at trial.

22   **SECOND CAUSE OF ACTION**<br>**(Negligent Misrepresentation)**

23

24       89.   Plaintiffs, on behalf of themselves and the Consumer and Business Classes,

25   reallege and incorporate, as if fully alleged herein, each of the allegations contained in the

26   preceding paragraphs of this Complaint, and further allege as follows.

27       90.   Dell has made material misrepresentations of fact concerning the existence

28   or nature of price discounts by engaging in the following acts and practices:

1               a.      Falsely representing that customers were receiving a price discount

2  from a referenced "regular" sales price of its computer products, where Dell in fact inflated the

3  purported "regular" sales price such that the promised discount was false;

4               b.      Falsely representing that Dell was including valuable "free"

5  upgrades and "free" add-on products and services with its computer products, where Dell in fact

6  directly recovered the cost of the "free" upgrades and add-ons by marking up the true regular

7  sales price of the original product in an amount corresponding in whole or in part to the value of

8  the purportedly "free" upgrades or add-ons, such that the promised savings were false;

9               c.      Falsely representing that Dell was including "limited time" "free"

10  upgrades and "free" add-on products and services with its computer products, where Dell in fact

11  typically included the upgrades and add-ons at no additional cost such that the promised savings

12  were false;

13               d.      Falsely representing that customers would receive rebate discounts

14  from Dell's regular sales price of its computer products, where Dell in fact directly recovered the

15  cost of the "rebate" by marking up the true regular sales price of the product in an amount

16  corresponding in whole or in part to the amount of the promised "rebate";

17               e.      Falsely representing to customers, whom Dell directed to special

18  Web pages, "offer codes," and "coupon codes," that they were receiving special discounts on

19  computer products, where Dell in fact charged the same or more than Dell's true regular sales

20  price for the products; and

21               f.      Falsely representing to customers that Dell had applied prominently

22  advertised discounts and "free" offers to their orders, where in fact Dell had not applied the

23  discounts to their orders.

24         91.     Dell had no reasonable grounds for believing that its misrepresentations

25  were true.

26         92.     Dell's false advertising focuses the reasonable purchaser's attention on

27  representations of price discounts and other savings or bargains from falsely represented regular

28  prices, and creates a sense of urgency regarding the purchases by advertising that the purported

1   discounts are available "for a limited time," thereby giving the false impression that customers

2   will miss out on the purported discounts and free offers if they do not buy the products

3   immediately.  Dell thereby induces reasonable purchasers to buy the products from Dell and to

4   refrain from shopping for computer products and services from sellers other than Dell.

5           93.     Dell intended that Plaintiffs and members of the Consumer and Business

6   Classes rely on the false representations and purchase Dell computer products and services.

7           94.     Dell's false representations of discounts from "regular" prices and false

8   representations of rebate discounts and "free" offers are objectively material to the reasonable

9   consumer, and therefore reliance upon such representations may be presumed as a matter of law.

10          95.     Plaintiffs and members of the Consumer and Business Classes reasonably

11  relied to their detriment on Dell's false representations.

12          96.     Dell's false representations were a factor in causing plaintiffs and members

13  of the Consumer and Business Classes to purchase products from Dell.

14          97.     As a proximate result of Dell's negligent misrepresentations, Plaintiffs and

15  members of the Consumer and Business Classes have been damaged.

16                          **THIRD CAUSE OF ACTION**
                          **(Intentional Misrepresentation)**
17

18          98.     Plaintiffs, on behalf of themselves and the Consumer and Business Classes,

19  reallege and incorporate, as if fully alleged herein, each of the allegations contained in the

20  preceding paragraphs of this Complaint, and further allege as follows.

21          99.     Dell has intentionally made material misrepresentations of fact concerning

22  the existence or nature of price discounts and "free" offers by engaging in the following acts and

23  practices:

24                  a.      Falsely representing that customers were receiving a price discount

25  from a referenced "regular" sales price of its computer products, where Dell in fact inflated the

26  purported "regular" sales price such that the promised discount was false;

27                  b.      Falsely representing that Dell was including valuable "free"

28  upgrades and "free" add-on products and services with its computer products, where Dell in fact

1  directly recovered the cost of the "free" upgrades and add-ons by marking up the true regular

2  sales price of the original product in an amount corresponding in whole or in part to the value of

3  the purportedly "free" upgrades or add-ons, such that the promised savings were false;

4                    c.       Falsely representing that Dell was including "limited time" "free"

5  upgrades and "free" add-on products and services with its computer products, where Dell in fact

6  typically included the upgrades and add-ons at no additional cost such that the promised savings

7  were false;

8                    d.       Falsely representing that customers would receive rebate discounts

9  from Dell's regular sales price of its computer products, where Dell in fact directly recovered the

10  cost of the "rebate" by marking up the true regular sales price of the product in an amount

11  corresponding in whole or in part to the amount of the promised "rebate";

12                    e.       Falsely representing to customers whom Dell directed to special

13  Web pages, "offer codes," and "coupon codes" that they were receiving special discounts on

14  computer products, where Dell in fact charged the same or greater than Dell's true regular sales

15  price for the products; and

16                    f.       Falsely representing to customers that Dell had applied prominently

17  advertised discounts and "free" offers to their orders, where in fact Dell had not applied the

18  discounts to their orders.

19           100.     Dell knew or should have known that the intentional misrepresentations

20  alleged herein were false at the time Dell made them.

21           101.     Dell intended that Plaintiffs and members of the Consumer and Business

22  Classes rely on the false representations and purchase Dell computer products and services.

23           102.     Dell's false representations of discounts from "regular" prices and false

24  representations of rebate discounts and "free" offers are objectively material to the reasonable

25  consumer, and therefore reliance upon such representations may be presumed as a matter of law.

26           103.     Plaintiffs and members of the Consumer and Business Classes reasonably

27  relied to their detriment on Dell's intentional misrepresentations.

28

1    104.   Dell's intentional misrepresentations were a substantial factor in causing

2  plaintiffs and members of the Consumer and Business Classes to purchase products from Dell and

3  to suffer damages.

4    105.   Dell has acted with "malice" as that term is defined in Civ. Code

5  § 3294(c)(1) by engaging in conduct that was and is intended by Dell to cause injury to the

6  Plaintiffs and the members of the Consumer and Business Classes.

7    106.   Dell has committed "fraud" as that term is defined in Civ. Code

8  § 3294(c)(3) through its intentional misrepresentations, deceit, and/or concealment of material

9  facts known to Dell with the intent to cause injury to the purchasers of its computer products.

10    107.   Plaintiffs, on behalf of themselves and all others similarly situated are

11  entitled to actual and punitive damages and attorneys' fees under Civ. Code § 3294(a).

12    108.   As a proximate result of Dell's intentional misrepresentations, Plaintiffs

13  and members of the Consumer and Business Classes suffered an ascertainable loss and are

14  entitled to relief and compensatory and punitive damages, in an amount to be determined at trial.

15  **FOURTH CAUSE OF ACTION**
**(Unjust Enrichment)**

16

17    109.   Plaintiffs, on behalf of themselves and the Consumer and Business Classes,

18  reallege and incorporate, as if fully alleged herein, each of the allegations contained in the

19  preceding paragraphs of this Complaint, and further allege as follows.

20    110.   By its improper and wrongful conduct described herein, including its

21  deceptive, misleading, and unlawful advertising, Dell was unjustly enriched at the expense of

22  Plaintiffs and the members of the Consumer and Business Classes.

23    111.   It would be inequitable for Dell to retain the profits, benefits, and other

24  compensation it obtained from its deceptive, misleading, and unlawful advertising.

25    112.   Plaintiffs, on behalf of themselves and the members of the Consumer and

26  Business Classes, are entitled to the imposition of a constructive trust upon all profits, benefits,

27  and other compensation obtained by Dell from its deceptive, misleading and unlawful advertising.

28

## FIFTH CAUSE OF ACTION
### (California Business and Professions Code §§ 17500, *et seq.*)

113.   Plaintiffs, on behalf of themselves and the Consumer and Business Classes, reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

114.   Dell has committed acts of untrue and misleading advertising, as defined by Business and Professions Code §§ 17500, *et seq.*, by engaging in the following acts and practices:

a.   Falsely representing that customers were receiving a price discount from a referenced "regular" sales price of its computer products, where Dell in fact inflated the purported "regular" sales price such that the promised discount was false;

b.   Falsely representing that Dell was including valuable "free" upgrades and "free" add-on products and services with its computer products, where Dell in fact directly recovered the cost of the "free" upgrades and add-ons by marking up the true regular sales price of the original product in an amount corresponding in whole or in part to the value of the purportedly "free" upgrades or add-ons, such that the promised savings were false;

c.   Falsely representing that Dell was including "limited time" "free" upgrades and add-on products and services with its computer products, where Dell in fact typically included the upgrades and add-ons at no additional cost such that the promised savings were false;

d.   Falsely representing that customers would receive rebate discounts from Dell's regular sales price of its computer products, where Dell in fact directly recovered the cost of the "rebate" by marking up the true regular sales price of the product in an amount corresponding in whole or in part to the amount of promised the "rebate";

e.   Falsely representing to customers whom Dell directed to special Web pages, "offer codes," and "coupon codes" that they were receiving special discounts on computer products, where Dell in fact charged the same or greater than Dell's true regular sales price for the products; and

1    f.  Falsely representing to customers that Dell had applied prominently

2 advertised discounts and "free" offers to their orders, where in fact Dell had not applied the

3 discounts to their orders.

4    115. Defendant has violated Business and Professions Code § 17501 by

5 advertising false discounts from purported former prices that were in fact not the prevailing

6 market prices within three months next immediately preceding the publication of the

7 advertisements containing the false former prices.

8    116. Dell's misrepresentations deceive or have a tendency to deceive the general

9 public regarding the existence and nature of price "discounts," "rebates," and "free" offers.

10    117. Unless restrained by this Court, Dell will continue to engage in untrue and

11 misleading advertising, as alleged above, in violation of § 17500 and § 17501 of the Business and

12 Professions Code.

13    118. As a result of the foregoing, Plaintiffs, and each member of the Consumer

14 and Business Classes, have been injured and have lost money or property and are entitled to

15 restitution and injunctive relief.

16          **SIXTH CAUSE OF ACTION**
       **(California Business and Professions Code §§ 17200, *et seq.*)**

17

18    119. Plaintiffs, on behalf of themselves and the Consumer and Business Classes,

19 reallege and incorporate, as if fully alleged herein, each of the allegations contained in the

20 preceding paragraphs of this Complaint, and further allege as follows.

21    120. Dell's deceptive advertising, as alleged herein, constitutes unlawful, unfair,

22 or fraudulent business practices in violation of California Business and Professions Code

23 §§ 17200 *et seq.*

24    121. As a result of the foregoing, Plaintiffs and each member of the Consumer

25 and Business Classes have been injured and have lost money or property and are therefore

26 entitled to restitution and injunctive relief.

27

28

**SEVENTH CAUSE OF ACTION**
**(California Consumers Legal Remedies Act; California Civil Code §§ 1750, *et seq.*)**
**(On Behalf of Consumer Class Only)**

122.    Plaintiff Chad Brazil, individually and on the behalf of the Consumer Class, realleges and incorporates, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges as follows.

123.    Plaintiff Chad Brazil and the members of the Consumer Class are consumers who purchased computer products and services from Dell primarily for personal, family, or household purposes within the meaning of the California Civil Code §§ 1750, *et seq.* ("Consumers Legal Remedies Act" or "CLRA"), specifically, Civil Code § 1761(d).

124.    Defendant has engaged in unfair methods of competition and unfair and/or deceptive acts or practices against Plaintiff Chad Brazil and the Consumer Class, in violation of the Consumer Legal Remedies Act, including:

a.    Falsely representing that customers were receiving a price discount from a referenced "regular" sales price of its computer products, where Dell in fact inflated the purported "regular" sales price such that the promised discount was false, in violation of California Civil Code § 1770 subsections (a)(9), (a)(13), and (a)(16);

b.    Falsely representing that Dell was including valuable "free" upgrades and "free" add-on products and services with its computer products, where Dell in fact directly recovered the cost of the "free" upgrades and add-ons by marking up the true regular sales price of the original product in an amount corresponding in whole or in part to the value of the purportedly "free" upgrades or add-ons such that the promised savings were false, in violation of California Civil Code § 1770 subsections (a)(9), (a)(13), and (a)(16);

c.    Falsely representing that Dell was including "limited time" "free" upgrades and add-on products and services with its computer products, where Dell in fact typically included the upgrades and add-ons at no additional cost, such that the promised savings were false, in violation of California Civil Code § 1770 subsections (a)(9), (a)(13), and (a)(16);

d.    Falsely representing that customers would receive rebate discounts from Dell's regular sales price of its computer products, where Dell in fact directly recovered the

1    cost of the "rebate" by marking up the true regular sales price of the product in an amount

2    corresponding in whole or in part to the amount of the promised "rebate" in violation of

3    California Civil Code § 1770 subsections (a)(9), (a)(13), and (a)(16);

4             e.     Falsely representing to customers whom Dell directed to special

5    Web pages, "offer codes," and "coupon codes" that they were receiving special discounts on

6    computer products, where Dell in fact charged the same or greater than Dell's true regular sales

7    price for the products, in violation of California Civil Code § 1770 subsections (a)(9), (a)(13), and

8    (a)(16);

9             f.     Falsely representing to customers that Dell had applied

10   prominently advertised discounts and "free" offers to their orders, where in fact Dell had not

11   applied the discounts to their orders, in violation of California Civil Code § 1770 subsections

12   (a)(9), (a)(13), and (a)(16); and

13            g.     Inserting an unconscionable provision in a contract, including,

14   without limitation, the arbitration and class action waiver provision, in violation of California

15   Civil Code § 1770 subsection (a)(19).

16        125.   Dell intentionally engaged in the acts and practices alleged herein with the

17   intent to induce purchasers to buy Dell computer products.

18        126.   Dell's acts and practices did in fact result in the sale of Dell computer

19   products to Plaintiffs and the members of the Consumer Class, thereby causing them harm.

20        127.   Unless Dell is enjoined from continuing to engage in violations of the

21   Consumer Legal Remedies Act, Plaintiffs and the members Consumer Class will continue to be

22   injured.  Accordingly, Plaintiffs, on behalf of themselves and the Consumer Class, demand

23   judgment against Defendant under the Consumer Legal Remedies Act for injunctive relief.

24                   **PRAYER FOR RELIEF**

25        Plaintiffs, on behalf of themselves and the Consumer and Business Classes,

26   request that the Court order the following relief and enter judgment against Dell, Inc. as follows:

27        A.     An order certifying the proposed members of the Consumer and Business

28   Classes and appointing Plaintiffs and their counsel of record to represent the classes;

1      B.      An order that Dell, Inc. be permanently enjoined from its improper

2  activities and practices described herein;

3

4      C.      A judgment awarding Plaintiffs and members of the Consumer and

5  Business Classes actual and compensatory damages in an amount according to proof for Dell

6  Inc.'s breaches of its promises to provide price discounts, rebate discounts, and free offers, and

7  for all other of Dell Inc.'s conduct alleged under all causes of action herein entitling Plaintiffs and

8  members of the Consumer and Business Classes to actual and compensatory damages;

9

10     D.      A judgment awarding Plaintiffs and members of the Consumer and

11  Business Classes restitution including, without limitation, disgorgement of all profits and unjust

12  enrichment obtained by Dell Inc. as a result of its unlawful, unfair, and fraudulent business

13  practices and conduct alleged herein;

14

15     E.      A judgment awarding Plaintiffs and members of the Consumer and

16  Business Classes punitive damages for Dell's intentional false advertising scheme, as alleged

17  herein;

18     F.      Pre-judgment and post-judgment interest;

19

20     G.      Attorneys' fees, expenses, and the costs of this action; and

21

22

23

24

25

26

27

28

584866.2                                    - 31 -                          CLASS ACTION COMPLAINT

1

2       H.     All other and further relief as the Court deems necessary, just and proper.

3

4 **JURY DEMAND**

5      Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury for all issues so

6 triable under the law.

7

8 Dated: March 23 2007          CHAD BRAZIL and STEVEN SEICK,

9

10            By: _____
              Michael W. Sobol

11          Michael W. Sobol (State Bar No. 194857)
12          Allison S. Elgart (State Bar No. 241901)
         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
13          275 Battery Street, 30th Floor
         San Francisco, CA  94111-3339

14          Daniel M. Hattis (State Bar No. 232141)
15          Angelo Salvatore Parise (State Bar No. 165690)
         LAW OFFICES OF ANGELO SALVATORE PARISE
16          16870 West Bernardo Drive, Suite 400
         San Diego, CA  92127
17          Telephone:  (858) 674-6660
         Facsimile:  (858) 674-6661

18

19

20

21

22

23

24

25

26

27

28