1

2

3

4                                                    **E-FILED on** ___8/3/07_____

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                             SAN JOSE DIVISION

11

12   CHAD BRAZIL and STEVEN SEICK          No. C-07-01700 RMW
     individually and on behalf of all others
13   similarly situated,

14                Plaintiffs,              ORDER DENYING DEFENDANT'S
                                           MOTION TO STAY PROCEEDINGS AND
15          v.                             COMPEL ARBITRATION

16   DELL INC. and Does 1-10,              **[Re Docket No. 22]**

17                Defendants.

18   ─────────────────────────────

19        Plaintiff Chad Brazil and Steven Seick have sued defendant Dell Inc. ("Dell").  Dell asks this

20   court to stay this proposed class action and compel arbitration pursuant to the purchase contact

21   between Dell and each of the plaintiffs.  For the reasons stated below, the court denies Dell's motion.

22                             **I.  BACKGROUND**

23        Plaintiffs Chad Brazil and Steven Seick, on behalf of themselves and all other

24   similarly situated California customers, filed this case as a class action pursuant to Fed. R. Civ.

25   P. 23 for actual, compensatory and punitive damages; injunctive relief; disgorgement of profits;

26   restitution; and costs of suit, against Dell for falsely advertising price discounts for its computers and

27   other products and services.

28

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

Brazil purchased a laptop computer from Dell in December 2006 for personal use; Steven Seick purchased a desktop computer from Dell in June 2006 for use in his business.  Both purchased the Dell products online through Dell's website.  They claim that discounts offered to them were falsely advertised.  Specifically, they allege that the discounts offered were discounts from prices that were higher than those normally offered for the "discounted" item.  As putative class representatives, plaintiffs allege violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; false advertising, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; breach of contract; negligent and intentional misrepresentation; and unjust enrichment.

Dell moves to compel arbitration based on a dispute resolution clause contained in its "Terms and Conditions of Sale" that it presents to customers at the time of purchase, and again with the shipment of the computer. Pape Decl. ¶ 6, Ex. A ("Agreement" or "Terms and Conditions").  When purchasing Dell's products online, customers are presented with hyperlinks to the Agreement during the online purchase process and are required to respond to the following selection prior to being able to complete their online purchases:

    ____   I agree to Dell's Terms and Conditions of Sale.
    ____   I DO NOT AGREE to Dell's Terms and Conditions of Sale

The Terms and Conditions of Sale contain very important information about your rights and obligations as well as limitations and exclusions that may apply to you. They contain limitations of liability and warranty information.  They also contain an agreement to resolve disputes through arbitration rather than through litigation. Please read them carefully.

*Id.* ¶ 11.  The words "Dell's Terms and Conditions of Sale" are linked to a page setting forth the full Agreement.  *Id.*  The electronic confirmation of sale sent to customers via email reminded the plaintiffs that the purchase was subject to Dell's Terms and Conditions and a copy of the Agreement is included inside the box containing the computer. *Id.* ¶ 17.

Under the title of the document "U.S. Terms and Conditions of Sale," the Agreement states:

READ THIS DOCUMENT CAREFULLY! IT CONTAINS VERY IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND OBLIGATIONS, AS WELL AS LIMITATIONS AND EXCLUSIONS THAT MAY APPLY TO YOU.  THIS DOCUMENT CONTAINS A DISPUTE RESOLUTION CLAUSE.

1  Directly under this cautionary language, the Agreement states that a customer can reject the terms of

2  the contract by returning the product pursuant to "Dell's Return Policy." *Id.* By accepting delivery

3  of the computer and failing to return it within the prescribed 21-day period, the customer agrees to

4  be bound by the Terms and Conditions. *Id.* at ¶¶ 13, 17.

5      The Agreement contains a choice of law provision designating Texas as the governing law,

6  Agreement ¶ 11, and an arbitration clause, *Id.* ¶ 13. The arbitration clause reads as follows:

7      **Binding Arbitration**. ANY CLAIM, DISPUTE, OR CONTROVERSY . . .
   BETWEEN CUSTOMER AND DELL . . . SHALL BE RESOLVED
8      EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION
   ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) . . . .
9      NEITHER CUSTOMER NOR DELL SHALL BE ENTITLED TO JOIN OR
   CONSOLIDATED CLAIMS BY OR AGAINST OTHER CUSTOMERS, OR
10     ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR CLASS ACTION OR
   IN A PRIVATE ATTORNEY GENERAL CAPACITY.

11                        **II. ANALYSIS**

12  **A.    Federal Arbitration Act**

13      Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, to overcome

14  judicial resistance to arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.

15  Ct. 1204, 1207 (2006); *see also Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1268 (9th Cir. 2006).

16  The FAA provides that written agreements to arbitrate disputes arising out of transactions involving

17  interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds that exist

18  at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There are two types of

19  challenges to the validity of arbitration agreements: "One type challenges specifically the validity of

20  the agreement to arbitrate. [citation omitted] The other challenges the contract as a whole, either on

21  a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or

22  on the ground that the illegality of one of the contract's provisions renders the whole contract

23  invalid." *Buckeye*, 126 S. Ct. at 1208. The Supreme Court has held that a challenge of the second

24  type must be brought before an arbitrator. *Id.* at 1210. ("[A] challenge to the validity of the contract

25  as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").

26      Here, however, plaintiffs have challenged the validity of the arbitration clause by way of

27  their opposition to Dell's motion to compel arbitration. Where the court is asked to determine the

28  validity of the agreement to arbitrate, "generally applicable contract defenses, such as fraud, duress,

**United States District Court**
For the Northern District of California

1    or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."

2    *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996) (citations omitted). When determining

3    whether such defenses might apply to any purported agreement to arbitrate the dispute in question,

4    "courts generally . . . should apply ordinary state-law principles that govern the formation of

5    contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

6        In this case, plaintiffs contend that the agreement to arbitrate is procedurally and

7    substantively unconscionable under California law, and therefore invalid. Plaintiffs assert that the

8    Agreement is procedurally unconscionable because it is a contract of adhesion and that they lacked

9    any meaningful opportunity to negotiate the terms. They also contend that the Agreement was

10   substantively unconscionable because it includes the provision set forth above that precludes

11   arbitrating any claims on behalf of a class (hereinafter "class action waiver provision").

12       **B.**    **Applicable State Law**

13       As an initial matter, the court must determine which state law to apply. The Agreement's

14   choice-of-law provision designates Texas law to govern the contract. Plaintiffs nevertheless argue

15   that the choice-of-law clause is invalid because it is contained in a contract of adhesion and because

16   applying Texas law would "conflict with time-honored fundamental policies embodied in California

17   law protecting consumers." Opp'n at 5. Plaintiffs urge the court to invalidate the choice-of-law

18   clause, conduct a choice-of-law analysis, and conclude that California law governs whether the

19   parties entered into a valid agreement to arbitrate.

20       A court sitting in diversity applies the choice-of-law rules of the forum state. *Downing v.*

21   *Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001). "In determining the enforceability of

22   arm's-length contractual choice-of-law provisions, California courts shall apply the principles set

23   forth in Restatement section 187, which reflects a strong policy favoring enforcement of such

24   provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992). Restatement

25   (Second) of Conflicts of Law §187(2) provides in part:

26           The law of the state chosen by the parties to govern their contractual rights and duties
             will be applied, even if the particular issue is one which the parties could not have

27           resolved by an explicit provision in their agreement directed to that issue, unless
             either (a) the chosen state has no substantial relationship to the parties or the

28           transaction and there is no other reasonable basis for the parties' choice, or (b)
             application of the law of the chosen state would be contrary to a fundamental policy

United States District Court
For the Northern District of California

1

2

of a state which has a materially greater interest than the chosen state in the
determination of the particular issue and which, under the rule of § 188, would be the
state of the applicable law in the absence of an effective choice of law by the parties.

3    Here, it is not disputed that the first prong is met.[1]  However, the parties dispute whether the second

4    prong—whether application of Texas law in the present case would be contrary to a fundamental

5    policy of the State of California—is met.  Under the second prong, if there is a fundamental conflict

6    with California law, "the court must then determine whether California has a materially greater

7    interest than the chosen state in the determination of the particular issue." *Nedlloyd*, 3 Cal. 4th at

8    466 (internal citation and quotation marks omitted).  If so, the choice of law provision is not

9    enforced.  *Id.*

10                              **1.      Fundamental Conflict**

11           Plaintiffs argue that California has a fundamental policy to protect consumers from the

12   "oppressive use of superior bargaining strength" and the false advertising alleged in this action,

13   while Texas does not have such a policy.  In support of this argument, plaintiffs cite Cal. Civ. Code

14   § 1668 which provides:

15           All contracts which have for their object, directly or indirectly, to exempt anyone
             from responsibility for his own fraud, or willful injury to the person or property or
16           another, or violation of the law, whether willful or negligent, are against the policy of
             the law.

17   In *Discover Bank*, the California Supreme Court in held that class action waivers are unenforceable

18   only in those limited circumstances where the

19

20           waiver is found in a consumer contract of adhesion in a setting in which disputes
             between the contracting parties predictably involve small amounts of damages, and
             when it is alleged that the party with the superior bargaining power has carried out a
21           scheme to deliberately cheat large numbers of consumers out of individually small
             amounts of money.

22

23   *Id.* at 162-63.  *Discover Bank* does not necessarily establish a fundamental policy under Cal. Civ.

24   Code § 1668 that forbids class action waivers in all circumstances.  *Discover Bank* and the cases that

25   have followed it set forth that whether a class action waiver provision will be considered

26   unconscionable in California is a fact-specific, case-by-case inquiry.  *See, e.g.*, *Cohen v. DirecTV*,

27   142 Cal. App. 4th 1442, 1451 (2006) (to determine whether class waiver provision is

28   [1]  It is also undisputed that California law would apply under the rule of § 188 absent an
     effective choice of law provision.

United States District Court
For the Northern District of California

1    unconscionable, must determine how closely the facts surrounding the waiver at issue approximate

2    those in *Discover Bank*, and to the extent they are different, whether they require the conclusion that

3    the waiver is unconscionable); *see also Douglas v. U.S. Dist. Court*, 2007 U.S. App. LEXIS 17061

4    (9th Cir. July 19, 2007) (per curiam) ("A class action waiver provision thus may be unconscionable

5    in California. Whether it is depends on the facts and circumstances developed during the course of

6    litigation.").

7            The Ninth Circuit recently made it clear that a district court must assess the facts and

8    circumstances of the litigation in order to determine whether a class action waiver provision is

9    substantively unconscionable. *Douglas*, 2007 U.S. App. LEXIS 17061, at *10 (vacating the district

10   court's order compelling arbitration because the court "clearly erred" in holding that a class waiver

11   provision was consistent with California policy and therefore enforceable as a matter of law).

12   California Court of Appeal cases have since held that when similar circumstances as those in

13   *Discover Bank* are present, a fundamental public policy is implicated. *See, e.g., Klussman v. Cross*

14   *Country Bank*, 134 Cal. App. 4th 1283, 1300 (2005) (stating "*Discover Bank* establishes the

15   fundamental nature of California's concern with protecting consumers from unscrupulous practices,

16   particularly when only small individual amounts are at issue" and enumerating the California public

17   policy interests at stake along with their statutory bases).[2] Thus the court turns to determining how

18   closely the facts surrounding the waiver in this case approximate those in *Discover Bank*.  *Cohen*,

19   142 Cal. App. 4th at 1451.

20                              **i.      Contract of Adhesion**

21           First, the Agreement appears by its form to be a contract of adhesion under California law.  A

22   contract of adhesion is defined as "a standardized contract, imposed upon the subscribing party

23   without an opportunity to negotiate the terms." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.

24   App. 4th 846, 853 (2001).  Generally, a finding of a contract of adhesion suggests a finding of

25

26

27

28   _____

     [2]  Cal. Civ. Code §§ 1668 [exculpatory contracts contrary to policy], 1670.5 [court may refuse to
     enforce unconscionable contract], 3513 [no waiver of a law established for a public reason].

1    procedural unconscionability,[3] however, California courts have also held that although "adhesion

2    contracts often are procedurally oppressive, this is not always the case." *Nagrampa*, 469 F.3d at

3    1281 (citing *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320). The "standards

4    for procedural unconscionability are satisfied by a finding that the arbitration provision was

5    presented on a take-it-or-leave-it basis and that it was oppressive due to an inequality of bargaining

6    power that result[s] in no real negotiation in the absence of meaningful choice." *Id.* (internal

7    quotation and citation omitted).

8         Procedural unconscionability concerns the manner in which the disputed contract clause is

9    presented to and negotiated with the party in the weaker bargaining position. *Nagrampa*, 469 F.3d

10   at 1280. Procedural unconscionability analysis focuses on oppression or surprise. *Flores*, 92 Cal.

11   App. 4th at 853. Oppression arises from an inequality of bargaining power and an absence of real

12   negotiation. *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1187 (S.D. Cal. 2005). Surprise

13   involves the extent to which the terms of the bargain are hidden. *Id.* As for oppression, the

14   Agreement is a contract of adhesion. There is no real dispute that it was presented to plaintiffs with

15   no opportunity to negotiate its terms and was drafted unilaterally by a party of superior bargaining

16   strength. However, Dell asserts that plaintiffs nevertheless had a meaningful choice not to purchase

17   the Dell products: at the time they purchased the computers, other computer manufacturers were

18   offering computer purchase under terms and conditions that did not include an arbitration clause.

19   Although "[t]he California Court of Appeal has rejected the notion that the availability in the

20   marketplace of substitute employment, goods or services *alone* can defeat a claim of procedural

21   unconscionability," *Nagrampa*, 469 F.3d at 1283 (emphasis in original), Dell does not rely solely

22   upon the availability of substitute goods. Dell also provided plaintiffs with a rescission mechanism

23   in the form of its Return Policy,  which gave plaintiffs the opportunity to reject the Agreement,

24   including the arbitration provision, if they did not agree to the arbitration terms. Thus, because Dell

25   may reasonably rely on both the availability of substitute goods in the market and the opportunity to

26   rescind to defeat (or at least mitigate) procedural unconscionability, the oppression prong of the

27   ─────────────

28   [3]  In California, procedural unconscionability analysis begins with an inquiry into whether an
     agreement is one of adhesion. *Armendariz v. Foundation Health Psychcare Svcs., Inc.*, 24 Cal. 4th
     83, 113 (2000); *Nagrampa*, 469 F.3d at 1281.

1  procedural unconscionability inquiry is not necessarily met.  As for surprise, Dell notified plaintiffs

2  prior to completing the purchase of its arbitration provision by providing notice on the click-

3  throughs presented during the purchase process that the Terms and Conditions included an

4  arbitration clause and by providing bold and conspicuous language on the Agreement.  Plaintiffs had

5  access to the Terms and Conditions and express notice of its inclusion of an arbitration provision

6  prior to and after their purchases, therefore the plaintiffs do not meet the surprise prong.

7       The foregoing discussion of procedural unconscionability highlights one way in which the

8  present case is distinct from *Discover Bank*.  In that case, the defendant effected the amendment

9  adding the class action waiver in the form of a "bill stuffer" such that the consumer would be

10  deemed to accept the newly-added provision if the consumer did not close his account.  *Discover*

11  *Bank*, 36 Cal. 4th at 161; *see also Cohen*, 142 Cal. App. 4th at 1451 (also finding that plaintiff was

12  given an amendment to his customer agreement in the form of a bill stuffer); *cf. Douglas*, 2007 U.S.

13  App. LEXIS 17061, at *4-5 (discussing the contract formation implications of changing the terms

14  and conditions of a customer agreement on a website without notifying the customer).  Here, by

15  contrast, the class action waiver provision was part of the original terms and conditions: plaintiffs

16  were made aware that the purchase was subject to those original terms and conditions throughout the

17  purchase process, including having to acknowledge that the Agreement included alternative dispute

18  resolution terms in order to complete the purchase.  However, it appears that substantive

19  unconscionability, not procedural unconscionability, governs the determination as to whether a class

20  action waiver provision violates the fundamental public policy set forth in Cal. Civ. Code § 1668.

21  *Discover Bank*, 36 Cal. 4th at 161 (class action waivers in otherwise enforceable adhesive contracts

22  may be substantively unconscionable "inasmuch as they may operate effectively as exculpatory

23  contract clauses that are contrary to public policy"); *see also Klussman*, 134 Cal. App. 4th at 1297-

24  98 (in which the California Court of Appeal determined that the class action waiver provision was

25  unconscionable without examining procedural unconscionability).

26       Defendant argues that *Discover Bank* only applies to "consumer" contracts and since plaintiff

27  Seick bought his computer for his business, he is not a consumer.  *See* Cal. Civ. Code § 1761(d)

28  (which limits a consumer under the Consumer Remedies Act to one who buys for "personal, family,

1   or household purposes").  The rationale of *Discovery Bank*, however, does not apply only to

2   consumers under the Consumer Remedies Act but rather may apply to other types of customers,

3   such as an individual like Seick buying a computer for his business.

### ii.    Scheme to Deliberately Cheat Large Numbers of Consumers

5      Second, here, as in *Discover Bank*, "it is alleged that the party with the superior bargaining

6   power has carried out a scheme to deliberately cheat large numbers of consumers."  Plaintiffs have

7   alleged that Dell advertises "limited time" specific-dollar discounts from expressly referenced

8   former prices, but that the discounts are false because the reference prices are inflated beyond Dell's

9   true regular prices.  First Am. Complaint ("FAC") ¶¶ 17-24.[4]  Plaintiffs set forth examples of

10  advertisements directed to the consumer public that offer specific-dollar discounts off of advertised

11  prices that were higher than the true regular prices, *id.*¶¶ 21-22, as well as free upgrades and add-ons

12  and rebates that are not actually discounts because Dell marks up the true regular price of the

13  product to which those upgrades, add-ons and rebates pertain, *id.* ¶¶ 25-34.  They also allege

14  particular instances in which the plaintiffs were offered specific-dollar discounts off of advertised

15  prices that were higher than the true regular prices.  *Id.* ¶¶ 57, 63.  Taken together, plaintiffs'

16  complaint alleges that Dell has carried out a scheme to cheat large numbers of consumers.

### iii.    Small Damages Amounts

18     Finally, as in *Discover Bank*, the amount of damages plaintiffs claim are small.  Plaintiffs

19  argue that they seek only damages in the amount of the difference in the cost to them caused by the

20  alleged inflation of the price from which the discounts were taken from the usual price of the

21  discounted item.  Opp'n at 7.  Such alleged damages would, as required by *Discover Bank*,

22  predictably be small, given that they allegedly represent discounts from prices that were elevated

23  from a normally-lower price for the purposes of generating up to a few hundred dollars in the sale of

24  Dell products and services.

### iv.    Conclusion

26      Based upon the allegations of the complaint, it appears that the circumstances surrounding

27  the class action waiver in Dell's Agreement are comparable to those in *Discover Bank*.  Thus, per

28

[4] Plaintiffs also allege that these discounts are sometimes not truly time-limited either.

*Klussman*, the inclusion of the class action waiver violates fundamental California policies, "including the statutory policies against exculpatory waivers, prohibiting enforcement of unconscionable contract provisions and against waivers of laws established for a public purpose," in the particular factual circumstances presented by this case. *Klussman*, 134 Cal. App. 4th at 1300; *see also id.* at 1297 (although *Discover Bank* "did not reject all class action waivers, it did denounce waivers such as the one in this case"). It appears that Texas would enforce arbitration clauses containing class action waivers such as the one at issue here.[5] *See, e.g.*, Opp'n at 8; Reply at 6. Therefore, it appears that Texas law conflicts with California public policy in the circumstances presented by this case.

### 2.    Greater Interest

Dell asserts that plaintiffs have failed to establish that California has a materially greater interest in this dispute than that of Texas. According to Dell, Texas has at least a comparable interest in protecting its resident business's expectations of consistent legal standards as does California in protecting its consumers. Dell further asserts that Texas, like California, has an interest in preventing false internet pricing. Reply at 5. Although it is a close call, the court nevertheless finds that California has stated a strong interest in "protecting its citizens from 'take it or leave it' agreements that incorporate one-sided protections," *Klussman*, 134 Cal. App. 4th at 1299, and thus finds that California has a greater interest in this dispute than does Texas. Accordingly, under the facts of this case and purely in the context of these claims for false advertising,[6] the court declines to enforce the Texas choice of law in the Dell Agreement and will instead apply California law.

---

[5]  Although plaintiffs do argue that Texas would not enforce the Agreement, it appears to be an alternative position to their main argument regarding choice of law.

[6]  To be clear, the court does not hold that a class action waiver provision such as the one at issue here (or even the identical provision in Dell's Agreement) would be considered unconscionable under other circumstances than those presented here. Other courts have held the class waiver provision in Dell's Agreement to be enforceable in circumstances involving, for instance, warranty claims. *See, e.g.*, *Omstead v. Dell, Inc.*, 473 F. Supp. 2d 1018 (N.D. Cal. 2007) (Hamilton, J.); *Carideo v. Dell Inc.*, __ F. Supp. 2d __, 2007 WL 1753511, at *3 (W.D. Wash. June 18, 2007). The instant order does not purport to address nor does it apply to the facts or circumstances of those cases.

United States District Court
For the Northern District of California

### C.      Unconscionability of the Arbitration Clause

Under California law, an agreement is enforceable unless it is both procedurally and substantively unconscionable. *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Both procedural and substantive unconscionability must be present in order for the court to refuse to enforce a contract under the doctrine of unconscionability. *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 753 (2003). The more substantively oppressive a contract term is, the less evidence of procedural unconscionability is required to conclude that the term is unenforceable, and vice versa. *O'Hare v. Municipal Resource Consultants*, 107 Cal. App. 4th 267, 272 (2003); *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 87 (2003).

As set forth above, plaintiffs assert that the Agreement is procedurally unconscionable because it is a contract of adhesion and they lacked any meaningful choice to negotiate the terms and that the Agreement was substantively unconscionable because it includes the class action waiver provision. The court has concluded in the course of its conflict of laws analysis that the class action waiver was procedurally unconscionable under California law because it is a contract of adhesion imposed upon the plaintiffs by a party with superior bargaining power. Although, as set forth above, the court believes that the plaintiffs had meaningful alternatives and a chance to rescind the contract, thereby reducing the procedural unconscionability, it has also concluded that the class action waiver provision is substantively unconscionable under California law – considerably so, given that this case exhibits similar circumstances to those in *Discover Bank*. Because the class waiver provision is part of the arbitration provision and central to the mechanism to resolving the dispute between the parties, it cannot be severed.

Accordingly, the court finds that the arbitration provision substantively unconscionable and that the arbitration provision is therefore invalid and unenforceable under § 2 of the FAA.[7] The court declines to order the parties to arbitration.

---

[7]  Dell asserts that the FAA preempts California rules against class action waivers. The California Supreme Court addressed this issue squarely in *Discover Bank* and concluded that nothing in the FAA prohibits California courts from not enforcing an arbitration agreement that "completely innoculate[s] parties against class liability." *Discover Bank*, 36 Cal. 4th at 172.

United States District Court
For the Northern District of California

1

### III.  ORDER

2       For the foregoing reasons, the court denies defendant's motion to stay these proceedings and

3 compel arbitration.  This denial shall be without prejudice to defendant renewing its motion should

4 facts or circumstances develop that would materially impact this court's assessment of the

5 application of the principles articulated by *Discover Bank*.  As agreed at the hearing on this matter,

6 the parties shall appear for a case management conference on Friday, August 31, 2007 at 10:30 a.m.

7

8

9 DATED:     8/2/07

RONALD M. WHYTE
United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING DEFENDANT'S MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION—No. C-07-01700 RMW
MAG
12

**United States District Court**
For the Northern District of California

1  **Notice of this document has been electronically sent to:**

2  **Counsel for Plaintiff:**

3  Allison Stacy Elgart          aelgart@lchb.com
   Michael W. Sobol             msobol@lchb.com
4  Daniel Morley Kekoa Hattis   dhattis@pariselaw.com
   Angelo Salvatore Parise      parise@pariselaw.com
5
   **Counsel for Defendants:**
6
   Kim Brightwell              kbrightwell@reevesbrightwell.com
7  Cory Michelle Mason         cmason@fbm.com
   Sinead O'Carroll            socarroll@reevesbrightwell.com
8  Paul Schlaud                pschlaud@reevesbrightwell.com
   C. Brandon Wisoff           bwisoff@fbm.com
9
10 Counsel are responsible for distributing copies of this document to co-counsel that have not
   registered for e-filing under the court's CM/ECF program.
11

12

13

14 **Dated:** _____8/3/07_____          _____/s/ MAG_____
                                          **Chambers of Judge Whyte**
15

16

17

18

19

20

21

22

23

24

25

26

27

28