1  Michael W. Sobol (State Bar No. 194857)
   Allison S. Elgart (State Bar No. 241901)
2  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 30th Floor
3  San Francisco, CA 94111-3339
   Telephone:  (415) 956-1000
4  Facsimile:  (415) 956-1008

5  Daniel M. Hattis (State Bar No. 232141)
   Angelo Salvatore Parise (State Bar No. 165690)
6  LAW OFFICES OF ANGELO SALVATORE PARISE
   16870 West Bernardo Drive, Suite 400
7  San Diego, CA  92127
   Telephone:  (858) 674-6660
8  Facsimile:  (858) 674-6661

9  *Attorneys for Plaintiffs*

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12

13  CHAD BRAZIL and STEVEN SEICK,            Case No. 07-cv-01700-RMW
    individually and on behalf of all others
14  similarly situated,                      **PLAINTIFFS' OPPOSITION TO DELL INC.'S
                                             MOTION FOR ORDER DISMISSING THE
15              Plaintiffs,                  FIRST AMENDED COMPLAINT WITH
                                             PREJUDICE AND STRIKING SOME OR ALL
16  v.                                       OF PLAINTIFFS' CLASS ACTION
                                             ALLEGATIONS**
17  DELL INC. and Does 1-10,

18              Defendant.

19

20

21

22

23

24

25

26

27

28

731695.3

1

## TABLE OF CONTENTS

2

Page

3

INTRODUCTION ................................................................................................... 1

I.       LEGAL STANDARD ................................................................................... 1

4

II.      ARGUMENT ................................................................................................ 2

5

        A.     The Choice of Law Provision is Unenforceable and California Law

6
             Applies. ................................................................................................. 2

7

             1.     Applicable standard ............................................................... 3

             2.     Denying Plaintiffs and California Consumers Redress Under

8
                     the CLRA, UCL and FAL Violates Fundamental California

9
                     Policies. ................................................................................. 3

             3.     It is the Law of the Case, and the Right Decision, that

10
                     California has a "Materially Greater Interest" in this
                     Controversy. .......................................................................... 7

11

        B.     Even if Texas Law Applies, Plaintiffs Should Be Given Leave to
             Amend to Plead Their Claims. ............................................................. 8

12

        C.     Plaintiffs Have Properly Alleged Each Element of Their False
             Advertising Law and Unfair Competition Law Claims. .......................... 9

13

             1.     Plaintiffs Have Satisfied the Standing and Injury

14
                     Requirements of the FAL and UCL Claims. .......................... 9

15
             2.     Plaintiffs Have Properly Alleged False Former Price
                     Misrepresentation Claims Under Common Law and The
                     FAL. .................................................................................... 14

16

        D.     Plaintiffs Have Adequately Pleaded Their CLRA Claim. ....................... 16

17

        E.     Plaintiffs Have Adequately Pleaded Breach of Contract. ....................... 18

18

        F.     Plaintiffs' Unjust Enrichment Claim Is A Substantive Cause of
             Action. ............................................................................................... 18

19

         G.     Dell's Premature and Meritless Attempt to Pre-Litigate Class
             Certification Should Be Rejected .......................................................... 20

20

             1.     Motions to Strike Are Disfavored and the Narrow Bases for

21
                     Granting Them Are Patently Absent Here. ................................ 20

             2.     Dell's Motion Is Contrary to Applicable Rule 23

22
                     Jurisprudence. ...................................................................... 22

23

III.     CONCLUSION ......................................................................................... 25

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

## CASES

*Aguilar v. Allstate Fire and Casualty Ins Co.*,
No. 06: 4660, 2007 WL 734809 (E.D. La. March 6, 2007) .................................................. 21

*Akkerman v. Mecta Corp.*
152 Cal. App. 4th 1094 (Cal. App. 2 Dist., 2007) ............................................... 11

*America Online, Inc. v. Superior Court*,
90 Cal. App. 4th 1 108 Cal. Rptr. 2d 699 (Cal. Ct. App. 2001) .................................. 4, 5, 6, 7

*Anunziato v. eMachines, Inc.*,
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ............................................... 10, 12, 13, 14

*Application Group, Inc. v. Hunter Group, Inc.*,
72 Cal. Rptr. 2d 73 (Cal. Ct. App. 1998) ........................................................ 8

*Aron v. U-Haul Co. of California*
49 Cal. Rptr. 3d 555 (Cal. App. 4th 2006) ........................................................ 11

*Baker v. Beech Aircraft Corp.*,
39 Cal. App. 3d 315 (Cal. Ct. App. 1974) ...................................................... 24, 25

*Balistreri v. Pacifica Police Dept.*
901 F.2d 696 (9th Cir. 1988) ....................................................................... 1, 9

*Baneck, Inc. v. Yogurt Ventures, USA, Inc.*
6 F.3d 357 (6th Cir. 1993) .......................................................................... 5

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
No. 06-0715 SC, 2006 WL 3422198 (N.D. Cal. Nov. 28, 2006) .......................................... 20

*Bishop v. GNC Franchising LLC*,
403 F. Supp. 2d 411 (W.D. Pa. 2006) ................................................................ 8

*Branick v. Downey Savings & Loan Ass'n*,
39 Cal. 4th 235 (2006) .......................................................................... 10, 12

*Cahill v. Liberty Mut. Ins. Co.*
80 F.3d 336 (9th Cir. 1996) ......................................................................... 1

*Californians for Disability Rights v. Mervyn's*
39 Cal. 4th 223 (Cal. 2006) ........................................................................ 13

*Cardonet, Inc. v. IBM Corporation*,
2007 U.S. Dist. LEXIS 14519 (N.D. Cal. 2007) ...................................................... 9

*Cattie v. Wal-Mart*,
-- F. Supp. 2d --, 2007 WL 935582 (S.D. Cal. March 21, 2007) .......................................... 13

*Chong v. State Farm Mut. Automobile Ins. Co.*,
428 F. Supp. 2d 1136 (S.D. Cal. 2006) .......................................................... 20, 22

*Colgan v. Leatherman Tool Group, Inc.*
136 Cal. App. 4th 663 (Cal. App. 2006) .......................................................... 11

*Compaq Computer v. Lapray*
135 S.W.3d 657 (Tex. 2004) ......................................................................... 4

*Corbett v. Superior Court*,
101 Cal. App. 4th 649 (2002) ...................................................................... 7

**TABLE OF AUTHORITIES**
(continued)

Page

*Daughlin v. DeVry Univ., Inc.*
    461 F. Supp. 2d 1121 (C.D. Cal. 2006) .................................................................. 10

*Discover Bank v. Superior Court*
    113 P.3d 1100 (2005) ............................................................................. 1, 2, 6

*Donninger v. Pacific Northwest Bell, Inc.*,
    564 F.2d 1304 (9th Cir. 1977).................................................................... 22

*Dorr v. Yahoo! Inc.*,
    2007 U.S. Dist. LEXIS 59126 (N.D. Cal. 2007)........................................ 19

*Falk v. General Motors Corp.*
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) .................................................... 12

*First Nationwide Sav. v. Perry*,
    15 Cal. Rptr. 2d 173 (Cal. Ct. App. 1992) ........................................ 18, 19

*Furst v. Einstein Moomjy, Inc.*
    860 A.2d 436 (N.J. 2004)................................................................. 11, 16

*Gartin v. S&M Nutec LLC*,
    --- F.R.D. ---, 2007 1424654 (C.D. Cal. April 4, 2007) ............................ 18

*General Tel. Co. of Southwest v. Falcon*
    457 U.S. 147 (1982)....................................................................... 12, 21

*Ghirardo v. Antonioli*,
    14 Cal. 4th 39, 51 (1996) ................................................................... 19

*Gilligan v. Jamco Dev. Corp.*
    108 F.3d 246 (9th Cir. 1997)................................................................ 1

*Hagen v. City of Winnemucca*,
    108 F.R.D. 61 (D. Nev. 1985)....................................................... 21, 25

*Hall v. Superior Court*
    150 Cal. App. 3d 411 (Cal. App. 3d 1983) .............................................. 5

*Harris v. HSN LP*,
    No. G036938, 2007 WL 61068 (Cal. App. 4 Dist. Jan. 10, 2007)........... 22, 23

*Householder Group LLLP v. Fuss*,
    2007 U.S. Dist. LEXIS 44220 (N.D. Cal. 2007)........................................ 19

*In re Paxil Litig.*,
    212 F.R.D. 539 (C.D. Cal. 2003) ............................................................ 22

*JRT, Inc. v. TCBY Systems, Inc.*
    52 F.3d 734 (8th Cir. 1995)................................................................... 5

*Klussman v. Cross Country Bank*,
    36 Cal. Rptr. 3d 728 (Cal. Ct. App. 2005) ............................................... 8

*Korman v. Walking Co.*,
    -- F. Supp. 2d --, 2007 WL 2437958 (E.D. Pa. Aug. 28, 2007)............... 21

*Kraus v. Trinity Management Servs.*,
    23 Cal. 4th 116 (Cal. 2000)........................................................... 19, 20

*Lectrodryer v. Seoulbank*,
    91 Cal. Rptr. 2d 881 (2000) ................................................................. 18

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3 *Levine v. Diamanthuset, Inc.*
   950 F.2d 1478 (9th Cir. 1991) ............................................................................. 1

4 *Life Ins. Co. of the Southwest v. Brister*
5   722 S.W.2d 764 (Tex. App. 1986) ....................................................................... 7

6 *Lira v. Herrera,*
   427 F.3d 1164 (9th Cir. 2005) ............................................................................. 8

7 *Lozano v. AT&T Wireless Services, Inc.*
   -- F.3d --, 2007 WL 2728758 (9th Cir. Sept. 20, 2007) ................................ 10, 22

8 *Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) ............................................................................................ 9

9 *Mackey v. MBNA Am. Bank, NA,*
10   343 F. Supp. 2d 966 (W.D. Wash. 2004) ............................................................. 8

11 *Mass. Mutual Life Ins. Co. v. Superior Court,*
   97 Cal. App. 4th 1282 (Cal. App. 4 Dist. 2002) ................................ 6, 16, 17, 18

12 *McAdams v. Monier, Inc.,*
   151 Cal. App. 4th 667 (2007),
13   *review granted* 60 Cal. Rptr. 3d 111 (2007) ...................................................... 13

14 *McBride v. Boughton,*
   20 Cal. Rptr. 3d 115 (2004) ............................................................................... 19

15 *Melchior v. New Line Productions, Inc.,*
   106 Cal. App. 4th 779 (2003) ............................................................................. 19

16 *Mike v. Safeco. Ins. Co. of Amer.,*
   223 F.R.D. 50 (D. Conn. 2004) .......................................................................... 21

17

18 *Myers v. MedQuist, Inc.,*
   No. 05-4608, 2006 WL 3751210 (D.N.J. Dec. 20, 2006) .................................... 21

19 *Nedlloyd Lines B.V. v. Superior Court*
   3 Cal. 4th 459 (Cal. 1992) ................................................................................... 3

20 *Negrete v. Allianz Life Ins. Co. of North Amer.,*
   238 F.R.D. 482 (C.D. Cal. 2006) ............................................................ 12, 14, 22

21 *Noble v. 93 Univ. Place,*
   224 F.R.D. 330 (S.D.N.Y. 2004) ........................................................................ 25

22

23 *Occidental Land. Inc. v. Superior Court,*
   18 Cal. 3d 355 (1976) ........................................................................................ 17

24 *Oestreicher v. Alienware Corp.,*
   --- F. Supp. 2d ---, 2007 WL 2302490 (N.D. Cal. Aug. 10, 2007) ........................ 8

25 *Palmer v. Stassinos,*
   419 F. Supp. 2d 1151 (N.D. Cal. 2005) .............................................................. 12

26 *Pfizer, Inc. v. Superior Court,*
   141 Cal. App. 4th 290 (2006),
27   *review granted* 51 Cal. Rptr. 707 (2006) .......................................................... 13

28 *Poulos v. Caesar's World, Inc.,*
   379 F.3d 654 (9th Cir. 2004) .............................................................................. 18

- iv -

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

*Power v. GMAC Mortgage Corp.*,
No. 06 C 4983, 2007 WL 723509 (N.D. Ill. March 7, 2007) .................................. 21

4

*Richardson & Thompson v. Am. Home Shield of Texas, Inc.*
2006 U.S. Dist. LEXIS 31794 (S.D. Tex. 2006)....................................................... 7

5

6

*Rodolico v. Unisys Corp.*,
199 F.R.D. 468 (E.D.N.Y. 2001) ............................................................................ 12

7

*Rodriquez v. Gates*,
No. CV 99-13190GAF(AJWX), 2002 WL 1162675 (C.D. Cal. May 30, 2002).................. 21

8

*Schein, Inc. v. Stromboe*
102 S.W.3d 675 (Tex. 2002)...................................................................................... 6

9

*Shroyer v. New Cingular Wireless Services, Inc.*
-- F.3d --, 2007 WL 2332068 (9th Cir. Aug. 17, 2007) ............................................ 2

10

*Sidney-Vinstein v. A.H. Robins Co.*,
697 F.2d 880 (9th Cir. 1983)................................................................................... 21

11

*Southwestern Refining Co. v. Bernal*
22 S.W.3d 425 (Tex. 2000) ....................................................................................... 7

12

*Stobaugh v. Norwegian Cruise Line, Ltd.*
105 S.W.3d 302 (Tex. App. 2003) ............................................................................ 6

13

14

*Suzuki v. Hitachi Global Storage Technologies, Inc.*,
No. C 06-07289 MHP, 2007 WL 2070263 (N.D. Cal. July 17, 2007) .................. 10

15

*Vasquez v. Superior Court*
484 P.2d 964 (Cal. 1971) ................................................................................... 3, 17

16

*Wall v. Parkway Chevrolet, Inc.*
176 S.W.3d 98 (Tex. App. 2004) .............................................................................. 7

17

*Wershba v. Apple Computer, Inc.*
110 Cal. Rptr. 2d 145 (2001) .................................................................................... 3

18

19

**CONSTITUTIONAL PROVISIONS AND STATUTES**

20

California Business & Professions Code
§ 17204........................................................................................................................ 9

21

California Business & Professions Code
§ 17535........................................................................................................................ 9

22

California Civil Code
§ 1751.......................................................................................................................... 4

23

California Civil Code
§ 1770........................................................................................................................ 16

24

California Civil Code
§ 1780(a) ............................................................................................................. 6, 16

25

26

Tex. Bus. & Com. Code
sec. 1750(a)(1)(B) ...................................................................................................... 6

27

**OTHER AUTHORITIES**

28

*Furniture and Bedding*,

OPPOSITION TO MOTION TO DISMISS
CASE NO. 07-CV-01700-RMW

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3      30 Ops. Atty. Gen. 127 (1957) ................................................................................. 15

4    Vernon's Texas Statutes and Codes Annotated
       § 17.46 ...................................................................................................................... 6

5                                    **RULES**

6    Fed. R. Civ. P.
       12(f) .................................................................................................................. 20, 21

7    Fed. R. Civ. P.
       23(a) ...................................................................................................................... 20

8    Fed. R. Civ. P.
       23(b)(2) .................................................................................................................. 20

9

10   Fed. R. Civ. P.
       23(b)(3) .................................................................................................................. 20

11   Fed. R. Civ. P.
       23(c) ................................................................................................................ 20, 21

12   Fed. R. Civ. P.
       23(d)(4) .................................................................................................................. 21

13   Fed. R. Civ. P.
       Rule 12(b)(6) .......................................................................................................... 13

14

                            **TREATISES AND ARTICLES**

15   1 Witkin, Summary of Cal. Law, Contracts
16     § 1013 .................................................................................................................... 19

     5 James Wm. Moore et al., *Moore's Federal Practice*
17     § 23.21[3][a] (3d ed. 2007) .................................................................................... 25

18   Restatement (Second) of Restitution
       § 1 cmt. b. ............................................................................................................. 19

19   Restatement (Second) of Restitution
       § 1 cmt. c ............................................................................................................... 19

20
                                 **REGULATIONS**

21   16 Code of Federal Regulations § 233.1 ................................................................... 16

22

23

24

25

26

27

28

1   **INTRODUCTION**

2           Plaintiffs Chad Brazil and Steven Seick ("Plaintiffs") oppose Dell, Inc.'s (Dell's)

3   motion to dismiss the First Amended Complaint ("FAC") and to strike some or all of Plaintiffs'

4   class action allegations.  Dell is once again attempting to deprive Plaintiffs and the proposed class

5   of their fundamental right to bring a class action under California law to vindicate the harm

6   caused by Dell's false and deceptive advertising scheme.  The class action mechanism would

7   prevent Dell from cheating large numbers of consumers out of individual small sums of money

8   and insulating itself from its own fraud, as the California Supreme Court noted in *Discover Bank*

9   *v. Superior Court*.  Texas law would not give Plaintiffs the same protections to which they are

10  entitled under California law, and California has a strong interest in protecting its consumers from

11  fraudulent and unlawful acts under the CLRA and FAL.  The FAC thoroughly pleads the causes

12  of action with details, examples, and particular facts concerning the named Plaintiffs'

13  transactions, as well as Dell's deceptive and misleading advertisements and pricing that affect

14  millions.  Furthermore, Dell's motion to strike Plaintiffs' class allegations is premature and

15  improper at this stage of the pleadings.  Accordingly, the Court should deny Dell's motion, or

16  alternatively grant Plaintiffs leave to amend.

17  **I.      LEGAL STANDARD**

18          A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims

19  asserted in the complaint.  Dismissal can be based on the "lack of a cognizable legal theory" or

20  "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*

21  *Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The issue is not whether the non-moving party

22  will ultimately prevail but whether it is entitled to offer evidence to support the claims asserted.

23  *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  The court's review is

24  limited to the face of the complaint and documents referenced in the complaint.  *See Levine v.*

25  *Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991).  When evaluating a Rule 12(b)(6)

26  motion, the court must accept all material allegations in the complaint as true and construe them

27  in the light most favorable to the non-moving party.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d

28  336, 339 (9th Cir. 1996).

1    II.    **ARGUMENT**

2         A.    **The Choice of Law Provision is Unenforceable and California Law Applies.**

3              Dell moves to dismiss Plaintiffs' California law-based claims by invoking the

4    Texas choice of law clause contained in its Terms and Conditions.  However, California law

5    governs the California-resident Plaintiffs' claims because Texas law conflicts with California's

6    fundamental policies protecting Plaintiffs and other California consumers by:  (a) abrogating the

7    broad statutory non-waiver provision of the CLRA; (b) depriving California residents of redress

8    under the UCL and FAL, which specifically address the alleged conduct at issue here and which

9    have no analog under Texas law; and (c) relegating the class action mechanism to a mere

10   procedural vehicle under Texas law which fails to presume of classwide reliance and causation in

11   the face of material misrepresentations that California law would recognize as part and parcel of

12   the vindication of substantive rights necessary to protect its citizens.

13             The Court in this case has previously "declined to enforce the Texas choice of law

14   in the Dell agreement and will instead apply California law." *See Order Denying Defendant's*

15   *Mot. to Stay Proceedings and Compel Arbitration ("Arb. Order")* at 10.  In its application of

16   California law, the Court determined that Dell's arbitration provision was unenforceable under

17   California law.[1]  *Id.* at 11.  While that Order may not automatically mean that California law

18   applies for all purposes, the Court's ruling is, at a minimum, instructive and, Plaintiffs

19   respectfully submit, conclusive with respect to the issues presented in this motion.

20             In its Arbitration Order, the Court followed the California Supreme Court's

21   decision in *Discover Bank v. Superior Court* to hold that a contract provision which would

22   effectively exculpate Dell from liability from its own fraud could not be enforced.  *Arb. Order* at

23   9-10 (citing Cal. Civ. Code § 1668; *Discover Bank v. Superior Court*, 113 P.3d 1100 (2005)).

24   The Court reasoned that enforcing the class action waiver would leave consumers without an

25

26   _____

[1] The Court's rationale has subsequently been confirmed by the Ninth Circuit.  *See Shroyer v.*

27   *New Cingular Wireless Services, Inc.*, -- F.3d --, 2007 WL 2332068, * 14 (9th Cir. Aug. 17,
     2007) (discussing the importance of the class action device, noting that "[t]he policy at the very

28   core of the class action mechanism is to overcome the problem that small recoveries do not
     provide the incentive for any individual to bring a solo claim") (quotations omitted).

731695.3                              - 2 -                    OPPOSITION TO MOTION TO DISMISS
                                                              CASE NO. 07-CV-01700-RMW

1   effective means to redress the alleged scheme to deliberately cheat large numbers of consumers of

2   small damage amounts. *Arb. Order* at 9.

3                It is still the case that California consumers' only effective remedy for the false

4   price advertising scheme alleged here is via the class action mechanism. Applying Texas law

5   would constructively strip Plaintiffs of the ability to proceed as a class action, thereby exculpating

6   Dell of its own deliberate misconduct that harmed thousands of California consumers.

7                           **1.      Applicable standard.**

8                Previously in this case, the Court noted that:

9                 The law of the state chosen by the parties to govern their
                  contractual rights and duties will be applied . . . unless either (a) the
10                chosen state has no substantial relationship to the parties or the
                  transaction and there is no reasonable basis for the parties' choice,
11                or (b) application of the law of the chosen state would be contrary
                  to a fundamental policy of a state which has a materially greater
12                interest than the chosen state in the determination of the particular
                  issue and which . . . would be the state of the applicable law in the
13                absence of an effective choice of law by the parties.

14   *Arb. Order* at 4-5 (citing *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (Cal.

15   1992)).  As the Court has already held, "it is not disputed that the first prong [substantial

16   relationship] is met" or that "California law would apply absent an effective choice of law

17   provision." *Id.* at 5.  The Court must then determine "whether application of Texas law in the

18   present case would be contrary to a fundamental policy of the State of California" and "whether

19   California has a materially greater interest  . . . in the determination of the particular issue." *Id.*

20                           **2.      Denying Plaintiffs and California Consumers Redress Under the
                                        CLRA, UCL and FAL Violates Fundamental California Policies.**
21

22                California courts have made clear that "California's consumer protection laws are

23   among the strongest in the country." *Wershba v. Apple Computer, Inc.*, 110 Cal. Rptr. 2d 145,

24   160 (2001).  As a unanimous California Supreme Court put it, "[p]rotection of unwary consumers

25   from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary

26   society." *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808,  94 Cal. Rptr. 796, 484 P.2d 964 (Cal.

27   1971).   "That this view has endured over the last 30 years is of little surprise given the

28   importance class action consumer litigation has come to play in this state." *America Online, Inc.*

1    *v. Superior Court*, 90 Cal. App. 4th 1, 108 Cal. Rptr. 2d 699, 711-713 (Cal. Ct. App. 2001)

2    ("*AOL*").  In contrast, "Texas law may not provide sufficient consumer protection in the view of

3    the other states; indeed . . . Texas's 'policies might tend to favor those interests over consumers.'"

4    *Compaq Computer v. Lapray*, 135 S.W.3d 657, 677, 681 (Tex. 2004).

5
6          **a.**    **It would violate fundamental California policies to deny California consumers redress under the CLRA.**

7          The CLRA has a broad anti-waiver provision.  *See* Cal. Civil Code § 1751 ("*[a]ny*

8    waiver by a consumer of the provisions of this title is *contrary to public policy* and shall be

9    unenforceable and void") (emphasis added).[2]  If a California plaintiff would be denied redress

10   under *any* provision of the CLRA, the choice of law provision must not be enforced.

11         In *AOL*, the California Court of Appeals affirmed the lower court's denial of

12   AOL's motion to dismiss or stay a California consumer class action lawsuit. *Id.* at 4.  AOL's

13   motion was predicated on a choice of law and forum clause designating Virginia as the law and

14   the forum.  As the *AOL* court held:

15         First, one of the causes of action seeks class action relief under the
16         [] CLRA . . . This act contains a provision that voids any purported waiver of rights under the CLRA as being contrary to California
17         public policy.  Enforcement of the contractual forum selection and choice of law clauses would be the functional equivalent of a
18         contractual waiver of the consumer protections under the CLRA and, thus, is prohibited under California law.  Second, we conclude
19         that Virginia law does not allow consumer lawsuits to be brought as class actions and the available remedies are more limited than those
20         afforded by California law.  Accordingly, the rights of [plaintiff] and the California consumer class members would be substantially
21         diminished if they are required to litigate their dispute in Virginia, thereby violating an important public policy consideration
22         underlying California's consumer protection law. For this independent reason, the forum selection clause is unenforceable.[3]

23

24   [2] Because of the anti-waiver language, the burden of proof is on Dell to show that that the
25   enforcement of the choice of law clause would not result "in a significant diminution of rights" for California consumers.  *America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 10
26   (addressing forum selection clause).  Dell  has not even attempted to satisfy this burden.

  [3] The challenged agreement also included a choice of law clause, which the court addressed.
27   Absent a choice of law provision, the chosen forum could theoretically apply California law, but there was still a risk it would not, thus diminishing the rights of California residents.  *Id.* at 13.
28   Where, as here, there is a choice of law clause, the risk that California law would not apply, and that consumer rights would be materially diminished, is a reality.

        - 4 -        OPPOSITION TO MOTION TO DISMISS
CASE NO. 07-CV-01700-RMW

1    *Id.* at 4-5.

2           *AOL* provides the necessary roadmap for the analysis here.  Here, as in *AOL*,

3    applying Texas law would effectuate a "functional equivalent of a contractual waiver" of the

4    CLRA.  *Id.*  Texas choice of law clause cannot be enforced for this reason alone, even absent any

5    comparison of Texas law to California's.  For example, *Hall v. Superior Court*, 150 Cal. App. 3d

6    411 (Cal. App. 3d 1983), determined that if a lawsuit proceeded under Nevada law, plaintiffs

7    would impermissibly lose the benefit of the California Corporate Securities Law, in derogation of

8    that statute's anti-waiver provision.  *Id.* at 417-418.  The *Hall* court "did not compare the

9    California statutory scheme to that afforded by Nevada law to determine if the remedies provided

10   by each were materially different," instead simply holding that the non-waiver provision was

11   enough to deny enforcement of the Nevada law (and forum) clause.  *AOL*, 90 Cal. App. 4th at 14.

12          At the very least, the anti-waiver provision reveals California's strong stated

13   interest in giving its resident consumers the protections of the CLRA.  Dell's implicit suggestion

14   that the anti-waiver provision is meaningless here is incorrect and belied by relevant case law and

15   by the canon of statutory construction that each part of a statute (including an anti-waiver

16   provision) has a meaning.[4]  Thus, because of the anti-waiver provision, and for the additional

17   related reason that Texas' Deceptive Trade Practices Act ("DTPA") radically differs from the

18   CLRA, the CLRA must apply.[5]

19

20

21   [4] Dell argues that the CLRA's anti-waiver provision is meaningless because it fails to expressly
     void all choice of law provisions.  Dell relies on two non-California inapposite cases interpreting
22   a Michigan franchise statute (not the CLRA) that "was specific enough to include forum selection
     provisions in the list of void provisions but did not specify choice of law provisions."  *Baneck,*
23   *Inc. v. Yogurt Ventures, USA, Inc.*, 6 F.3d 357, 359 (6th Cir. 1993); *see JRT, Inc. v. TCBY*
     *Systems, Inc.*, 52 F.3d 734, 739 (8th Cir. 1995).  These courts simply followed the rule of
24   statutory construction that because that statute listed specific examples of void provisions, they
     could not infer that other specific or more general categories of provisions would be void.  By
25   comparison, the CLRA's anti-waiver provision is decidedly broad.

26   [5] Contrary to Dell's bare assertion, Plaintiffs have never conceded that consumer remedies under
     Texas and California law are equivalent.  Plaintiffs merely argued, explicitly *in the alternative* to
27   their primary argument that the class action waiver was unenforceable under California law, that
     the class action waiver clause may also be unenforceable under Texas law.  Unlike Dell, the
28   Court understands this distinction already.  *Arb. Order* at 10 n.5 ("it appears an alternative
     position to [Plaintiffs'] main argument regarding choice of law").

1    Thus, alternatively, and as a "reinforce[ment]" to the conclusion that the anti-

2    waiver provision is sufficient in and of itself to deny this part of Dell's motion, the statutory

3    comparison of the CLRA to the DTPA reveals that Texas provides less consumer protection than

4    California. *AOL*, 90 Cal. App. 4th at 15.  First, the CLRA explicitly makes available the right of

5    a consumer to bring a class action to secure the protections of the CLRA for other California

6    consumers.  *See* Cal. Civ. Code § 1780(a) ("Any consumer . . . may, if the unlawful method, act,

7    or practice has caused damage to others similarly situated, bring an action on behalf of himself

8    and such other consumers to recover damages or obtain relief"); *see also Discover Bank v.*

9    *Superior Court*, 113 P.3d 1100, 1108 (Cal. 2005) (class actions are "inextricably linked to the

10   vindication of substantive rights").  Texas' DTPA has no such provision that actually and

11   unambiguously embeds the right to bring a class action into the substantive provisions of the law.

12   *See* Vernon's Texas Statutes and Codes Annotated ("V.T.C.A.") § 17.46 *et seq*; *see, e.g., Schein,*

13   *Inc. v. Stromboe*, 102 S.W.3d 675, 693-694 (Tex. 2002) (class action is procedural device).[6]

14   Second, the CLRA and the DTPA differ with respect to a reliance requirement.  As

15   shown in Section II.D., *infra*, under the CLRA, a plaintiff can show causation for all class

16   members by showing the materiality of the challenged representations.  *See Mass. Mutual Life*

17   *Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (Cal. App. 4 Dist. 2002).  This well-

18   established legal principle has allowed ready access to the class action mechanism by injured

19   consumers.  Texas law, in stark contrast, has an explicit reliance requirement.  Tex. Bus. & Com.

20   Code sec. 1750(a)(1)(B) (false, deceptive or misleading act must be "relied on by a consumer to

21   the consumer's detriment"); *see also, e.g., Schein, Inc.*, 102 S.W.3d at 693 ("reliance is an

22   element of . . . DTPA 'laundry list violations').

23   DTPA jurisprudence, while not categorically foreclosing inferential or

24   presumptive reliance, consistently provides that "individualized inquires are *required* to answer

25

26   ────────────────
     [6] Not only does the CLRA's class action provision have no counterpart in the DTPA, but Texas
     courts apply more stringent requirements in order to bring a class action than do California courts.
27   *See, e.g., Stobaugh v. Norwegian Cruise Line, Ltd.*, 105 S.W.3d 302, 311 (Tex. App. 2003) ("the
     decisions of our high court compel a much different approach and apply a much more rigorous
28   analysis" before certifying a class than courts where the class action statute is liberally construed)
     (internal citations omitted).

1   questions of causation of damages and of the amount of damages, if any, suffered by each buyer."

2   *Wall v. Parkway Chevrolet, Inc.*, 176 S.W.3d 98, 105 (Tex. App. 2004) (declining to certify

3   DTPA class against car dealership) (emphasis added).  Put simply: "Texas law does not permit

4   implied reliance."  *Richardson & Thompson v. Am. Home Shield of Texas, Inc.*, 2006 U.S. Dist.

5   LEXIS 31794, at *23 (S.D. Tex. 2006).[7]  Thus, while class actions are theoretically available

6   under Texas law, in practice, consumers in Texas face considerable and most often

7   insurmountable hurdles to getting a class certified.  *AOL*, 90 Cal. App. 4th at 17-18 (holding that

8   "the absence of any provision" under Virginia law to bring a class action was "sufficient in and of

9   itself to preclude enforcement" of the choice of law and forum clause).  Applying Texas law here

10  would deny consumers access to the protections set forth of the CLRA, in violation of the waiver

11  provision and of fundamental California policies.

12              **b.      Texas has no counterpart to the FAL and UCL, leaving
                         Plaintiffs redress under these claims should Texas law apply.**

13

14          Dell has not argued and could not argue that Texas has any analog whatsoever to

15  the UCL and FAL, under which, among other things, class actions are readily available.  *See*

16  *Corbett v. Superior Court*, 101 Cal. App. 4th 649, 670 (2002).  Dell has *no* case to support the

17  implicit proposition that California does not have a fundamental interest in allowing its citizens to

18  avail themselves of the benefits and protections of statutes that do not even exist in the other state.

19  Moreover, as discussed above, not only does Texas not have a UCL or FAL, the jurisprudence

20  under its own consumer law demonstrates an undeniable antipathy to class actions in connection

21  with reliance.  Thus, the choice of law provision cannot be enforced as to these claims.

22              **3.      It is the Law of the Case, and the Right Decision, that California has a
                         "Materially Greater Interest" in this Controversy.**

23

24          The Court should reject Dell's choice-of-law provision because "the interests of

25  the forum state are 'materially greater' than those of the chosen state, *and* the forum state's

---

26  [7] *Richardson* relies on *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000).  In

27  *Bernal*, the Texas Supreme Court overruled another case, *Life Ins. Co. of the Southwest v. Brister*,
    722 S.W.2d 764, 774 (Tex. App. 1986), that had cited California law on reliance with approval.

28  Thus, Texas federal *and* state courts have plainly rejected long-established the California law of
    reliance, and the 2006 case provides the most recent ruling from Texas courts on reliance.

1    interests would be more seriously impaired by enforcement of the parties' contractual choice-of-

2    law provision than would the interests of the chosen state by application of the law of the forum

3    state." *Application Group, Inc. v. Hunter Group, Inc.*, 72 Cal. Rptr. 2d 73, 84 (Cal. Ct. App.

4    1998).  The Court previously held that "[a]lthough it is a close call, the court nevertheless finds

5    that California has stated a strong interest in 'protecting its citizens from 'take it or leave it'

6    agreements that incorporate one-sided protections' . . . and thus finds that California has a greater

7    interest in this dispute than does Texas."  *Arb. Order* at 10 (internal citations omitted).

8         Now, as with the motion to compel arbitration, Dell has identified only *its own*

9    purported interest in having Texas law apply so that Dell's transactions are governed by

10   uniformity.  Dell Mem. at 7.  This is still not enough.  Even though an "interest in uniform

11   regulation of  the business practices of [merchants may be] significant, when it is measured

12   against California's interest in providing effective protection for California customers of out-of-

13   state [merchants] when they are overcharged, defrauded, abused, and harassed, [foreign state's]

14   interest does not outweigh that of California."  *Klussman v. Cross Country Bank*, 36 Cal. Rptr. 3d

15   728 (Cal. Ct. App. 2005), 741 (2005); *see also Oestreicher v. Alienware Corp.*, --- F. Supp. 2d ---

16   , 2007 WL 2302490, at  *6 (N.D. Cal. Aug. 10, 2007) ("the subject matter of the contract – the

17   allegedly defective computer – is located in California, and California has a strong interest in

18   regulating products shipped into this state").  This is particularly so when the choice-of-law

19   clause is presented on a take-it-or-leave-it basis as is alleged here.[8]

20        **B.    Even if Texas Law Applies, Plaintiffs Should Be Given Leave to Amend to Plead Their Claims.**

21

22        Even if the Court finds that Texas law governs any or all of Plaintiffs' claims,

23   Plaintiffs should be permitted to re-plead their California common-law claims under Texas law.

24   "[W]hen a district court dismisses a complaint for failure to state a claim, granting leave to amend

25   the defective complaint is routine."  *Lira v. Herrera*, 427 F.3d 1164 (9th Cir. 2005).  Leave to

26   _____

27   [8] The cases Dell cites are inapposite and, just as they were when cited in its motion to compel arbitration. *Bishop v. GNC Franchising LLC*, 403 F. Supp. 2d 411 (W.D. Pa. 2006) has nothing to do with consumer law, or the laws of California or Texas. *Mackey v.  MBNA Am. Bank, NA*,

28   343 F. Supp. 2d 966, 969 (W.D. Wash. 2004), also did not involve California law, and the court explicitly held that it "need not determine whether the  . . . choice of law term is enforceable."

1   amend "should be granted if it appears at all possible that the plaintiff can correct the defect."

2   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (internal citations omitted).

3   In *Cardonet,* after conducting a choice-of-law analysis and determining that New York law

4   applied to plaintiff's claims, this Court allowed plaintiff twenty days' leave to amend to replead.

5   *Cardonet, Inc. v. IBM Corporation*, 2007 U.S. Dist. LEXIS 14519 at * 21 (N.D. Cal. 2007).

6   Accordingly, Plaintiffs should be given leave to replead their claims under Texas law.

### C.   Plaintiffs Have Properly Alleged Each Element of Their False Advertising Law and Unfair Competition Law Claims.

9        Plaintiffs have properly pleaded the elements of their FAL and UCL claims.

10   Dell's motion to dismiss is really a plea that Plaintiffs cannot *prove* their claims, not, as is the

11   standard here, that Plaintiffs have not adequately *stated* them.  In so doing, Dell misstates the

12   elements of the statutory causes of action, and ignores Plaintiffs' clear and detailed pleading.

### 1.   Plaintiffs Have Satisfied the Standing and Injury Requirements of the FAL and UCL Claims.

15        The FAC meets the standing requirements of the FAL and UCL by alleging that

16   Plaintiffs "have suffered injury in fact and have lost money or property as a result of such unfair

17   competition."  Bus. & Prof. Code § 17204; § 17535.  Dell does not argue that Plaintiffs have

18   failed to allege "injury in fact" within the meaning of Article III of the Constitution.  *See Lujan v.*

19   *Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (a plaintiff must suffer "an invasion of a legally

20   protected interest" that is "concrete and particularized," not "conjectural or hypothetical.").

21   Instead, Dell asserts that Plaintiffs fail to allege that they "lost money or property" within the

22   meaning of the FAL and UCL by advancing novel, and faulty, legal premises.

### a.   Plaintiffs Meet The Standing Requirement By Alleging That Dell Failed to Deliver On Its Promised Bargain.

25        Dell's assertion that "[p]rivate plaintiffs alleging FAL or UCL violations must

26   plead that they have suffered 'out-of-pocket loss'" has no basis in law.  Last month, the Ninth

27   Circuit held that loss of "money or property" under the UCL includes the circumstance where, as

28   here, Plaintiffs do not receive the benefit of their bargains with defendant:

1

> Lozano bases [the] claims on allegations that [defendant] billed its customers for cellular telephone calls during a billing period other than the billing period in which the calls were made, a practice termed "out-of-cycle" billing. [Defendant], according to Lozano, did not fully and adequately disclose its billing practice to its customers at the time they entered into contracts with [defendant]. . . .  Lozano has a vested interest in 400 free anytime minutes.  Due to out-of-cycle billing, however, Lozano found it necessary to reserve, and therefore lose, a certain number of those minutes each billing period. *Accordingly, we find that Lozano has properly stated an injury that that he did not receive the full value of his contract . . . and that this injury is redressable under the UCL.*

*Lozano v. AT&T Wireless Services, Inc.*, -- F.3d --, 2007 WL 2728758, at *13 (9th Cir. Sept. 20, 2007) (emphasis added).  Similarly, in *Daughlin v. DeVry Univ., Inc.*, 461 F. Supp. 2d 1121, 1155 (C.D. Cal. 2006), the plaintiff had suffered injury within the meaning of the UCL and the FAL where plaintiff paid tuition but "*did not receive what he bargained for*" because of defendant's "misrepresentations and omissions about the transferability of credits." *Id.* at 1156 (emphasis added).  *Cf. Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140-41 (C.D. Cal. 2005) (plaintiff buying a computer falsely represented as having passed the "most stringent quality control tests" and possessing "brand-name components" had standing under the FAL and UCL).

Thus, an individual who purchases a falsely-advertised product that has less value than represented has standing under the UCL and FAL, unquestionably has standing under the common law.[9]  Plaintiffs here paid for computer products that were falsely represented to have been sold at *specific* previous times for *specific* previous (and *greater)* amounts of money, when instead Plaintiffs paid *in excess* of what the products actually had cost at those earlier times. Plaintiffs did not get the bargain Dell promised, or stated differently, Dell did not deliver a product at the represented value, because the product was in fact not previously sold at the

---

[9] The cases cited by Dell confirm that Plaintiffs have properly alleged loss of money or property. *See, e.g., Suzuki v. Hitachi Global Storage Technologies, Inc.*, No. C 06-07289 MHP, 2007 WL 2070263, at *5 (N.D. Cal. July 17, 2007) ("assuming for purposes of this issue that defendant misrepresented its HDD [hard disk drive] capacity, *plaintiff has properly pled injury in fact* by alleging that he would have paid less for the HDD had he not believed the HDD was measured using the binary standard while the HDD was in fact measured using the decimal standard") (emphasis added).  It would be a different matter if the Plaintiffs had not purchased any materials and instead sought to have standing as private attorneys general to redress harms against the general public.  This is clearly foreclosed under the UCL and FAL, and is not at issue here.  *See Branick v. Downey Savings & Loan Ass'n*, 39 Cal. 4th 235 (2006).

- 10 -

1    claimed and inflated former price.  *See Furst v. Einstein Moomjy, Inc.*, 860 A.2d 436, 442 (N.J.

2    2004) (merchant "cannot escape his promise to the consumer" reflected in his representations of

3    what a carpet formerly sold for and must deliver a product of that value or its replacement).[10]

4    Accordingly, Plaintiffs have pleaded injury and loss of money or property sufficient to confer

5    standing under the UCL and FAL.

6            Dell's sole authority for the supposed "out of pocket" loss standing requirement

7    under the UCL or FAL has no relevance here.  In *Akkerman v.  Mecta Corp.*, 152 Cal. App. 4th

8    1094 (Cal. App. 2 Dist., 2007), the court rejected the notion that personal injuries from electro-

9    shock therapy confer UCL standing.  Nothing in *Akkerman* purports to categorically require out

10   of pocket loss in a UCL case.[11]  To the contrary, California courts routinely, and often explicitly,

11   find that plaintiffs who have not necessarily suffered out-of-pocket losses nevertheless have

12   standing.  *See, e.g.*, *Aron v. U-Haul Co. of California*, 49 Cal. Rptr. 3d 555, 559 (Cal. App. 4th

13   2006) (standing requirement met where inaccurate fuel gauges in rented vehicles required

14   plaintiff to purchase excess fuel to avoid a re-fueling charge); *see also Colgan v. Leatherman*

15   *Tool Group, Inc.,* 136 Cal. App. 4th 663, 679 (Cal. App. 2006) (implicitly rejecting out-of-pocket

16   loss as a standing pre-requisite under the FAL and UCL and holding that plaintiffs who bought

17   products falsely represented to have been "Made in America" entitled to finding of liability).

18                    **b.    Dell cannot impose a novel and unique standing requirement**
                             **that Plaintiffs must purchase every single Dell product or suffer**
19                           **the same incarnations of the fraudulent scheme.**

20           Although Plaintiffs allege a deliberate, centralized false advertising scheme, Dell

21   challenges Plaintiffs' standing to assert claims on behalf of purchasers victimized by incarnations

22   _____

23   [10] Plaintiffs respectfully submit that *Furst*, although not a UCL or FAL case, contains an
     instructive discussion of the injuries suffered by a plaintiff who purchases a product (there, a
     carpet) that was explicitly promised to have been formerly priced at a higher price, when in fact
24   that was not correct.  In *Furst*, the New Jersey Supreme Court, after extensive analysis, affirmed
     the finding that the plaintiff was entitled to a rebuttable presumption that the regular price listed
25   on a carpet sales tag was the replacement cost to which the customer was entitled.  *Id.* at 441-443.

26   [11] In *Akkerman*, a plaintiff who was treated with electro-convulsive therapy and his wife had been
     unable to prove at the trial that they had been injured.  *Id.* at 1098.  Plaintiff Akkerman also
27   failed, in a pre-Proposition 64 UCL trial, to show his entitlement to restitution.  *Id.*  When
     Akkerman brought another UCL class case, in upholding a denial of class certification, the
     California appellate court noted in dicta that the trial court *could* (not *did*) find  that Akkerman
28   lacked standing under the UCL.

1    of the same scheme.  However, the FAC alleges that purchasers of other Dell computer products

2    were subject to the same false advertising scheme as Plaintiffs, whether it be the false former

3    price referencing, false free offers, or false rebates.  At best, Dell's argument is a premature and

4    erroneous argument against a finding of "typicality" pertinent to class certification.[12]

5               It is simply not the law that Plaintiffs need to be victimized by every aspect of the

6    false advertising scheme to have standing to challenge any of it.  A plaintiff has standing to

7    challenge the full breadth of unlawful practices when he or she falls victim to them.  *See Negrete*

8    *v. Allianz Life Ins. Co. of North Amer.*, 238 F.R.D. 482 (C.D. Cal. 2006) (plaintiffs had standing

9    to bring claims on behalf of other purchasers of different types of deferred annuities because of

10   the "overarching fraudulent scheme" in the sale of deferred annuity products).  In cases alleging

11   overarching fraudulent schemes, standing is met even when a plaintiff has less arguable

12   connection to each part of the scheme than Plaintiffs here do.  *See, e.g.*, *General Tel. Co. of*

13   *Southwest v. Falcon*, 457 U.S. 147, 159 n. 15 (1982)  (an incumbent employee can challenge

14   procedures that also affect applicants, or vice versa, when an employer "operates under a general

15   policy of discrimination").  Even if this Court were free to create a new standing requirement out

16   of whole cloth, Dell's proposed requirement fails on policy grounds because there could be no

17   ability for anyone to challenge any general policies if so.[13]

18

19

20   _____

     [12] *See* Section G, *infra*, addressing Dell's premature class certification arguments.  It bears noting,
     however, that the same analysis applies in the class certification context, where typicality is found
21   when class plaintiff's claims have a nexus to class members' and proceed under the same legal
     and remedial theories.  *See, e.g., Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 483 (E.D.N.Y. 2001)
22   (rejecting argument that certification improper where "the plaintiffs come from 49 different
     departments" and observing that "plaintiffs do not have to perform the same job in the same
23   location" for a collective action to be maintained). Further, in *Falk v. General Motors Corp.*, 496
     F. Supp. 2d 1088 (N.D. Cal. 2007), the plaintiffs had standing to challenge the fraud in the sale of
24   all GM trucks and sports utility vehicles, although they had not of course purchased all of them.
     And in *Anunziato*, the plaintiff was not limited to asserting claims only on behalf of others who
25   bought the same type of laptop as he had.  *Id.* at 1136.

26   [13] Not surprisingly, Dell does not cite to even one case in support of its novel (and incorrect)
     standing argument.  The cases it cites have absolutely nothing to do with standing in this sense.
27   *See Palmer v. Stassinos*, 419 F. Supp. 2d 1151, 1154 (N.D. Cal. 2005) (it was "undisputed" that
     plaintiffs did not satisfy the UCL standing requirement in this case that straddled the pre- and
28   post-Proposition 64 period); *Branick*, 39 Cal. 4th at 235 (explaining that someone without injury
     could not sue on behalf of the general public under the UCL).

1

**c.      Plaintiffs Have Adequately Alleged That Their Injuries Were "As A Result" of Dell's Practices.**

2

3      Dell argues that Plaintiffs have failed to allege that their injuries were "as a result

4  of" Dell's practices, and thus have failed to allege "causation or reliance" sufficient to confer

5  standing under the UCL and the FAL.  However, Proposition 64 changed only the standing

6  requirements of the UCL and the FAL.  Proposition 64 did *not* change the UCL's or FAL's

7  substantive provisions.  In ruling that Proposition 64 applies to cases pending before its passage,

8  the California Supreme Court stated, "[t]o apply Proposition 64's standing provisions to the case

9  before us is not to apply them 'retroactively,' . . . because the measure does not change the legal

10  consequences of past conduct by imposing new or different liabilities based on such conduct."

11  *Californians for Disability Rights v. Mervyn's*, 39 Cal. 4th 223, 232 (Cal. 2006).  Accordingly,

12  Proposition 64 could not have added new substantive "reliance" requirements that would alter the

13  liability landscape of the UCL and FAL as Dell suggests.[14]

14      In any case, even if reliance *were* required, Plaintiffs have pleaded it here, which is

15  all that matters on this 12(b)(6) motion.[15]  Plaintiffs allege that they purchased Dell products "as a

16

17  [14] As Dell points out, some defendants have both successfully *and* unsuccessfully asserted that
Proposition 64, by adding the term "as a result of" has altered the grounds for liability by

18  extinguishing the heretofore well-established "tendency to deceive" standard in the UCL and the
FAL.  Dell Mot. at 11 (citing *Cattie v. Wal-Mart*, -- F. Supp. 2d --, 2007 WL 935582 (S.D. Cal.

19  March 21, 2007)).  The California Supreme Court has granted review of cases which will decide
that issue conclusively.  *See, e.g., Pfizer, Inc. v. Superior Court*, 141 Cal. App. 4th 290 (2006),

20  *review granted* 51 Cal. Rptr. 707 (2006) and *McAdams v. Monier, Inc.,* 151 Cal. App. 4th 667
(2007), *review granted* 60 Cal. Rptr. 3d 111 (2007).  However, until the Supreme Court rules

21  differently, the *Mervyn's* holding that "[n]othing a business lawfully might do before proposition
64 is unlawful now, and nothing earlier forbidden is now permitted" prevails.  *Mervyn's*, 39 Cal.

22  4th at 232.  Moreover, "there are several reasons for declining to import the CLRA's reliance
requirement" into the UCL and FAL.  *Anunziato* at 1137.  These include the fact that the CLRA

23  has different remedies than the UCL and FAL, the UCL and FAL have broader proscriptions than
the CLRA's enumerated actionable practices, and the presence of "numerous situations in which

24  the addition of a reliance requirement would foreclose the opportunity of many consumers to sue
under the UCL and the FAL."  *Id.* (giving examples of consumers who do not read or who cannot

25  read false advertising).

26  [15] Under the allegations here consumers confront the alleged false advertisements at the point of
sale by necessity: Dell sold its products on its Web site (rather than through intermediaries), and

27  perpetrated the fraudulent advertising on that same Web site (and made misrepresentations in its
print advertising).  *See FAC* at ¶¶ 20, 22-23, 25, 27, 32-34.  Plaintiff Steven Seick "purchased his

28  [Dimension] computer by accessing Dell's Web site, and specifically by accessing Web pages
which . . . advertised false discounts and false regular prices for the Dimension Computer."  *Id.* at
¶ 53.  Plaintiff Chad Brazil "purchased the Inspiron Notebook by accessing Dell's Web site, and

1   result of" its advertising, and make other allegations consistent with a finding of reliance.[16]

2   "Because plaintiffs' evidence may enable them to establish reliance and thus causation . . . the

3   Court finds that common issues regarding [the] alleged overarching fraudulent scheme

4   predominate." *Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006) (certifying

5   California class under the UCL, FAL, and other laws). Thus, "it is unnecessary for the Court to

6   resolve the issue of whether Prop. 64 now requires proof of actual reliance on the part of a UCL

7   or FAL plaintiff." *Id.* at 495-496. The same is more than true at the *pleading* stage.

8          Further, all that the UCL or the FAL require, and have ever required, is that

9   plaintiffs allege and establish a nexus between their alleged harm and the offending conduct.

10  When allegations of a nexus between the proscribed practice and the plaintiff's actions are made,

11  causation has been alleged. "Where the manufacturer of a product makes a false representation

12  . . . the consumer is *unquestionably* harmed *as a result of* the falsity because he was

13  shortchanged." *Anunziato*, 402 F. Supp. 2d at 1138 (emphasis added). Dell nonetheless argues

14  that Plaintiffs have failed to allege that nexus. But quite emphatically to the contrary, Plaintiffs

15  actually have alleged that their purchases were "as a result of" Dell's false advertising practices.

16                    **2.    Plaintiffs Have Properly Alleged False Former Price
                             Misrepresentation Claims Under Common Law and The FAL.**
17

18         Dell argues that Plaintiffs have not sufficiently alleged actionable

19  misrepresentations of false former prices. Dell bases its entire argument on a misreading of the

20  FAL, which provides in pertinent part that "[n]o price shall be advertised as a former price of any

21  advertised thing, unless the alleged former price was the *prevailing market price* . . . within three

22  months next immediately preceding the publication of the advertisement." Cal. Bus. & Prof.

23

24  specifically by accessing Web pages which . . . advertised false discounts and false regular prices
    for the Inspiron Notebook." *Id.* at ¶ 61.

25  [16] Plaintiffs have properly pleaded that, *as a result* of Dell's false advertising practices, they were
    injured. First, the FAC spells out in 15 paragraphs all the false representations Dell specifically
26  made to Plaintiffs Brazil and Seick. FAC ¶¶ 53-67. Then, for example, Plaintiffs allege that
    "[b]ased upon Dell's promises, Plaintiffs . . . entered into respective agreements with Dell for the
27  purchase of computer products." *Id.* at ¶ 80. *See also* FAC ¶¶ 118, 121; *see also* ¶ 126 ("Dell's
    acts and practices did in fact result in the sale of Dell computer products to Plaintiffs"). Plaintiffs
28  have unquestionably alleged the causation required by the UCL and FAL.

1   Code § 17501 (emphasis added).  Fifty years ago, the California Attorney General opined that

2   with respect to representation of former prices, the "prevailing market price" refers to the prior

3   sales price for the same particular product good sold by the seller making that representation.

4   *Furniture and Bedding*, 30 Ops. Atty. Gen. 127, 129 (1957).  In his Opinion, the Attorney

5   General distinguished between "two types of hypothetical situations, " a distinction Dell ignores,

6   or at least misconstrues.  *Id.*  On the one hand, there are situations where the seller represents the

7   "worth" of  a product, such as a mattress, by providing a comparison price, in which case "*similar*

8   mattresses" must be selling for that price in the "open local market."  *Id.* (emphasis added).  On

9   the other hand, there are situations, such as alleged in the FAC, where the seller represents that a

10  product, such as a couch, "was formerly selling" at a specified price, in which case the "former

11  price" must coincide with the price for "*the* couch" during the preceding three months (or an

12  expressly stated period of time).  *Id.* (emphasis added).  Thus, in the two "hypothetical

13  situations," the relevant market parameters considered are very different.

14          The latter hypothetical situation presented by the Attorney General – where a

15  furniture dealer advertises a couch formerly selling for $100 but now selling for $50 –  is the

16  *exact* situation here.  Because Dell has represented that a product was formerly sold at a specified

17  price, it must demonstrate that Dell sold the specific product at that purported former price.

18  Dell's argument that Plaintiffs must plead and prove "that the slash-through amount Dell

19  advertised was not the prevailing market price for *similarly configured products regardless of*

20  *whether sold by Dell or of any of its many competitors*" misconstrues the very words of Attorney

21  General's Opinion.  Dell Mem. at 9 (emphasis added).  Moreover, it contravenes the Attorney

22  General's purpose "to insure the truth and candor of advertisements which describe or

23  characterize merchandise as possessing a certain worth or value . . . A merchant may advertise or

24  sell his goods . . . for what he will, so long as he makes no untruthful or misleading

25  representations as to value or former price."  *Id.* at 128.

26          Notably, Dell does not argue that Plaintiffs UCL claim (as opposed to its FAL

27  claim) based upon the same conduct fails for this reason.  That claim, like the common law fraud

28  claims to the extent they are based on former false representations, has no "prevailing market

1   price" requirement in the way that Dell interprets it.  Thus, a merchant makes a fictitious price

2   comparison "where an artificial, inflated price was established for the purpose of enabling the

3   subsequent offer of a large reduction, the 'bargain' being advertised is a false one; the purchase is

4   not receiving the unusual value he expects."  16 C.F.R. § 233.1.  An advertiser who "use[s] a

5   price at which he never offered the [product] at all" is making a "fictitious price comparison."  *Id.*

6   A product's former price is the price at which the merchant has "openly and actively" tendered

7   the product for sale, "for a reasonably substantial period of time, in the recent, regular course of

8   his business, honestly and in good faith – and, of course, not for the purpose of establishing a

9   fictitious higher price on which a deceptive comparison might be based."  *Id.*; *see also Furst v.*

10  *Einstein Moomjy, Inc.*, 860 A.2d 436, 443-44 (N.J. 2004).

11         Plaintiffs' allegations meet the definition of "prevailing market price," as the

12  Attorney General explained that term, and otherwise satisfy pleading requirements of the UCL

13  and common law.  The FAC refers to actual *daily* prices and false former reference prices

14  advertised by Dell for the identical products, and even includes exhibits showing these daily

15  prices, for every day of the three preceding months.  FAC ¶¶ 21, 54-66; Exhs. G-L.  Taken

16  together, these exhibits show, among other things, that Dell's claimed reference prices were not

17  actual sales prices.  Thus, Plaintiffs have more than adequately alleged common law and statutory

18  price misrepresentation and deceptive advertising claims.

19         **D.    Plaintiffs Have Adequately Pleaded Their CLRA Claim.**

20         Relief under the CLRA is available to "[a]ny consumer who suffers any damage as

21  a result of the use or employment by any person of a method, act, or practice unlawful under the

22  act."  *Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (Cal. App. 4

23  Dist. 2002) (citing Cal. Civ. Code § 1780(a)).  Plaintiffs have alleged that Dell violated the CLRA

24  by, *inter alia*, making false or misleading statements of fact concerning reasons for or the

25  existence of price reductions.  *See* Cal. Civ. Code § 1770; FAC ¶¶ 122-130 (alleging violations of

26  CLRA sections (a)(9), (a)(13), (a)(16), and (a)(19)).  Dell argues that Plaintiffs have neither

27  alleged that the Dell's conduct changed their purchasing behavior nor that the alleged

28

1   misrepresentations were material.  Dell's argument reflects a wholesale disregard for the facts

2   actually alleged in the FAC.

3          First, as noted above, the FAC documents in 15 paragraphs numerous false

4   representations Dell specifically made to Plaintiffs Brazil and Seick, FAC ¶¶ 53-67, and then

5   alleges that "[b]ased upon Dell's promises, Plaintiffs . . . entered into respective agreements with

6   Dell for the purchase of computer products." *Id.* at ¶ 80.  *See also* FAC ¶¶ 118, 121; *see also*

7   ¶ 126 ("Dell's acts and practices did in fact result in the sale of Dell computer products to

8   Plaintiffs").  Plaintiffs have unquestionably alleged that "as a result of" Dell's conduct, Plaintiffs

9   purchased Dell's products.

10          Further, causation in a CLRA action can be established by showing the materiality

11   of information that a defendant misrepresented or concealed.  *See Mass. Mutual*, 97 Cal. App. 4th

12   at 1292-1293; *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971); *Occidental Land. Inc. v.*

13   *Superior Court*, 18 Cal. 3d 355, 363 (1976).  Information "material to any reasonable person

14   contemplating the purchase" of a defendant's product, gives rise to an inference of reliance on

15   that information in purchasing the product.  *Mass. Mutual*, 97 Cal. App. 4th at 1293; *see also*

16   *Vasquez*, 4 Cal. 3d at 814.  Put simply, plaintiffs may satisfy their burden of "showing causation

17   as to each [class member] by showing materiality as to all."  *Id.* at 1292.

18          Here, Plaintiffs allege that Dell's misrepresentations and omissions were "material

19   facts" that contribute to a reasonable person's decision to buy Dell products.  FAC at ¶¶ 42-46

20   (materiality of Dell's representations and Plaintiffs' reasonable reliance thereon); *see also* ¶ 96

21   ("Dell's false representations were a factor in causing [P]laintiffs . . . to purchase products from

22   Dell"); and ¶ 94 (Dell's false representations "objectively material to the reasonable consumer").

23   Further, Plaintiffs allege that Dell's practices "induce[d] reasonable purchasers to buy the

24   products from Dell."  FAC ¶ 44.  "Therefore . . .  reliance upon such representations may be

25   presumed as a matter of law."  *Id.* at ¶ 45.  At the pleading stage, noting more is required and

26   Plaintiffs' CLRA claim is more than adequately pleaded.

27          Given the repeated allegations of materiality throughout the FAC, it is clear that

28   Dell's argument is an impermissible attempt, on a motion to dismiss, to obtain a ruling on the

- 17 -

1   merits.  Dell Mem. at 15 (arguing that "[w]hile it may have mattered to some purchasers that they

2   were receiving a discount from a prior price, it cannot be presumed that all purchasers would have

3   cared").[17]  Or, unable to seriously dispute that materiality has been properly alleged, Dell claims

4   suggests that Plaintiffs must invoke the *exact* talismanic language that "Plaintiffs would have

5   acted differently."  Dell Mem. at 12.  There is no such legal standard.  *Mass. Mutual*, 97 Cal.

6   App. 4th at 1295 (where there are material omissions, plaintiffs need only allege that the

7   undisclosed information was material).  Finally, as noted in Section II.C.1.c., *supra*, Plaintiffs are

8   not only entitled to a presumption of reliance, they actually *have* pleaded reliance.

9        **E.**    **Plaintiffs Have Adequately Pleaded Breach of Contract.**

10          Dell argues that Plaintiffs have failed to allege a contractual term that Dell has

11   breached.  The FAC demonstrates otherwise.  It states, for example, that "[t]he material terms of

12   Dell's sales agreements with Plaintiffs and the members of the Consumer and Business classes

13   included Dell's promises to (1) sell computer products at prices discounted or reduced from the

14   regular sales prices of the products; (2) include valuable "free" upgrades and "free" add-on

15   products and services with the original product; and/or (3) provide a specified dollar amount

16   "rebate" discount from Dell's regular sales prices."  FAC ¶ 79.  It goes on to allege that "Dell

17   breached its agreements to sell computer products discounted from its regular sales prices because

18   the discount amounts promised by Dell were false and were in fact applied against fabricated and

19   inflated reference prices rather than against Dell's true regular prices."  *Id*. at ¶ 83; *see also* ¶¶ 84-

20   87.  Dell apparently has not carefully read the FAC.

21        **F.**    **Plaintiffs' Unjust Enrichment Claim Is A Substantive Cause of Action.**

22          A claim for unjust enrichment requires pleading "the receipt of a benefit and the

23   unjust retention of the benefit at the expense of another."  *Lectrodryer v. Seoulbank*, 91 Cal. Rptr.

24   2d 881, 883 (2000) (citing *First Nationwide Sav. v. Perry*, 15 Cal. Rptr. 2d 173, 176 (Cal. Ct.

25

26   _____

     [17] The infirmities and premature nature of Dell's argument is underscored by the fact that the
     cases on which it generally purports to rely are class certification cases that are, in any case,

27   factually distinguishable.  *See Gartin v. S&M Nutec LLC*, --- F.R.D. ---, 2007 1424654 (C.D. Cal.
     April 4, 2007) (class certification case involving dogs' personal injuries); *see also Poulos v.*

28   *Caesar's World, Inc.*, 379 F.3d 654, 665 (9th Cir. 2004) (class action case involving "the unique
     nature of gambling transactions").

               - 18 -             OPPOSITION TO MOTION TO DISMISS
                                                       CASE NO. 07-CV-01700-RMW

App. 1992).  "[T]he term 'benefit' 'denotes any type of advantage.'"  *Ghirardo v. Antonioli*, 14

Cal. 4th 39, 51 (1996) (quoting Restatement (Second) of Restitution § 1 cmt. b.).  A party is

required to make restitution to another "if the circumstances of its receipt or retention are such

that, as between the two [parties], it is unjust for him to retain it."  *Id.* (quoting Restatement

(Second) of Restitution § 1 cmt. c., p. 13).

California courts have held that a plaintiff may state a claim for unjust enrichment

or restitution.  *Dorr v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 59126, at *6 (N.D. Cal. 2007) ("[i]t is

appropriate" to construe an unjust enrichment claim as a claim for restitution).  California law

"recognizes a cause of action for restitution (sometimes also called unjust enrichment), a quasi-

contractual form of common count for money had and received to recovery money paid by fraud

or mistake."  *Id.* (citing *McBride v. Boughton*, 20 Cal. Rptr. 3d 115 (2004); *First Nationwide Sav.

v. Perry*, 15 Cal. Rptr. 2d 173; 1 Witkin, Summary of Cal. Law, Contracts, § 1013)).

Here, Plaintiffs did plead that Dell was unjustly enriched at the expense of

Plaintiffs.  FAC ¶ 109-112.  Dell fails to keep its promises regarding price discounts or free

offers, and as a result, consumers do not receive the benefit of the advertised bargain.  FAC ¶¶ 24,

31, 83, 88.[18]  For instance, Dell directly recovers the cost of the "free" add-ons and "rebates" by

marking up the true regular sales price of the original product in an amount corresponding in

whole or in part to the value of the "free" offer or "rebate."  FAC ¶ 1.  In significant part, Dell's

growth and profitability have been the result of these and other deceptive, misleading, and

unlawful marketing and advertising practices.  FAC ¶ 15.

Plaintiffs are also entitled to obtain restitution through the UCL.  *See Kraus v.

Trinity Management Servs.*, 23 Cal. 4th 116, 126-27 (Cal. 2000).  The Court can issue an order to

---

[18] Even if the Court finds that the unjust enrichment claims are forms of relief, Plaintiffs should be permitted to replead the claims as restitution claims in the prayer for relief.  *Householder Group LLP v. Fuss*, 2007 U.S. Dist. LEXIS 44220 (N.D. Cal. 2007) (allowing a plaintiff to replead "claims" in the prayer for relief that the court determined were actually remedies).  In *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003), the case cited by Dell (Dell Mem. at 17), the plaintiff was not entitled to restitution under a quasi-contract theory because he did not plead that theory of recovery and the record did not support it.  In contrast, Plaintiffs Seick and Brazil have pleaded this theory of recovery.  *See* FAC ¶ 3.

1    compel a defendant to "surrender of all profits earned as a result of an unfair business practice" to

2    "those persons in interest from whom the property was taken," *id.*, and "regardless of whether

3    those profits represent money taken directly from persons who were victims of the unfair

4    practice." *Id.* at 127 n.11.  Plaintiffs have adequately pleaded a restitution theory of recovery.

5    *See* FAC ¶¶ 118, 121, and Prayer for Relief ¶ D.

6        **G.    Dell's Premature and Meritless Attempt to Pre-Litigate Class Certification**
             **Should Be Rejected.**
7

8            **1.    Motions to Strike Are Disfavored and the Narrow Bases for Granting**
                   **Them Are Patently Absent Here.**
9

10           Rule 12(f) of the Federal Rules of Civil Procedure provides courts with the

11   discretion to strike "redundant, immaterial, impertinent, or scandalous" matters.  Fed. R. Civ. P.

12   12(f).  Rule 12(f) motions are "generally regarded with disfavor" and are "often used as a

13   delaying tactic."  *Chong v. State Farm Mut. Automobile Ins. Co.*, 428 F. Supp. 2d 1136, 1139

14   (S.D. Cal. 2006).  Thus, "[c]ourts generally grant a motion to strike only where it is clear that the

15   matter being stricken could have no possible bearing on the subject matter of the litigation."  *Id.*

16   (internal citations omitted).

17           Because properly-pleaded Rule 23 allegations are not immaterial or impertinent

18   within the meaning of Rule 12(f), motions to strike class allegations are handily (and routinely)

19   denied by courts in this Circuit.  In *Chong*, defendant moved to strike the class allegations,

20   arguing that individualized inquiries would predominate.  *Id.* at 1146-47.  The court held that

21   "[d]efendant's motion to strike is premature . . . [p]laintiff's allegations address each of Rule 23's

22   requirements, relate to the subject matter of this litigation, and are not redundant, impertinent or

23   immaterial."  *Id.*  The same is true here:  Plaintiffs' class allegations address each element of Rule

24   23(a), Rules 23(b)(2) and (3), and Rule 23(c).  *See* FAC ¶¶ 71-76.  *See also Beauperthuy v. 24*

25   *Hour Fitness USA, Inc.*, No. 06-0715 SC, 2006 WL 3422198, at *3 (N.D. Cal. Nov. 28, 2006)

26   ("[i]t would be improper to allow Defendants to slip through the backdoor what is essentially an

27

28

731695.3                                    - 20 -                      OPPOSITION TO MOTION TO DISMISS
                                                                        CASE NO. 07-CV-01700-RMW

1   opposition to a motion for class certification before Plaintiffs have made such a motion and when

2   discovery on the issue is still on-going.").[19]

3          The cases Dell cites are inapposite.  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d

4   880 (9th Cir. 1983), has nothing to do with the issues here, but rather held that it was *erroneous*

5   for the trial court to have stricken, under Rule 12(f), a motion to reconsider a summary judgment

6   ruling.  *Id.* at 885-886.  Dell also cites cases that arise in the entirely distinct procedural posture of

7   a *plaintiff's* motion for class certification.  *See, e.g., Rodriguez v. Gates*,  No. CV 99-

8   13190GAF(AJWX), 2002 WL 1162675, at *1 (C.D. Cal. May 30, 2002) (court addressed

9   plaintiffs' proposed class definition in the context of its ruling on plaintiffs' Rule 23 motion);

10  *Hagen v. City of Winnemucca*, 108 F.R.D. 61 (D. Nev. 1985) (same); *see also Mike v. Safeco. Ins.*

11  *Co. of Amer.*, 223 F.R.D. 50 (D. Conn. 2004) (same).  Most notably, *General Tel. Co. of*

12  *Southwest v. Falcon*, 457 U.S. 147 (1982), is *completely mis-cited by Dell*.  There, the district

13  court certified classes under Title VII without conducting an evidentiary hearing.  *Id.* at 152.  It

14  was precisely the district court's premature action – the flip side of what  Dell seeks here – that

15  the Supreme Court was criticizing in the language Dell cites.  For all these reasons, Dell has no

16  applicable authority in support of its motion to strike.[20]

17

18

---

19  [19] Decisions from other courts have similarly confirmed that motions to strike class allegations
    are improper because "the shape and form of a class action evolves only through the process of
20  discovery."  *Myers v. MedQuist, Inc.*, No. 05-4608, 2006 WL 3751210, at *4 (D.N.J. Dec. 20,
    2006) (denying motion to strike class allegations); *see also, e.g., Korman v. Walking Co.*, -- F.
21  Supp. 2d --, 2007 WL 2437958, at *6 (E.D. Pa. Aug. 28, 2007) ("There is no good reason for this
    case not to proceed down the normal path, *i.e.*, with the Court setting a deadline for Plaintiff to
22  file a motion for class certification and the parties litigating the propriety of maintaining the class
    under the traditional Rule 23(c) rubric."); *Power v. GMAC Mortgage Corp.*, No. 06 C 4983, 2007
23  WL 723509, at *5 (N.D. Ill. March 7, 2007) (denying motion to strike class allegations in favor of
    the "crystallization in a fully-developed motion for class certification under Fed. R. Civ. P. 23").

24  [20] Dell fares no better in its reliance on unpersuasive and inapposite cases from courts within the
    Fifth Circuit, which has a scant line of authority allowing class allegations to be dismissed before
25  discovery under Rule 23(d)(4), unlike the contrary authority from within this Circuit.  For
    example, in *Aguilar v. Allstate Fire and Casualty Ins Co.*, No. 06: 4660, 2007 WL 734809 (E.D.
26  La. March 6, 2007), the court struck class allegations relying specifically on Fifth Circuit
    authority allowing class allegations to be dismissed before class-related discovery.  *Id.* at *2.
27  *Aguilar* is also distinguishable because it involves a broad-based attack on an insurance
    company's handling of different type of claims, rather than, as here, a common false advertising
28  scheme.  *Id.* at *3.

1    Dell will have a full and fair opportunity to oppose class certification, within the

2    parameters of the Federal Rules and pursuant to the usual procedure, where Plaintiffs are entitled

3    to bring the motion on their own terms after an opportunity for discovery.[21]  Dell should not be

4    permitted to define the contours and considerations for class certification at the pleadings stage

5    where no discovery has occurred.

6              **2.       Dell's Motion Is Contrary to Applicable Rule 23 Jurisprudence.**

7          The admonition of the Ninth Circuit in *Chong* that parties are improperly "getting

8    ahead of themselves" when they address class certification issues at the pleading stage rings

9    particularly true here, where Dell's attempt to pre-litigate class certification does not survive

10   basic scrutiny.  *Chong*, 428 F. Supp. 2d at 1147.

11             **a.       Single-state class actions involving uniform fraudulent schemes
                         are well-suited for class certification.**
12

13         The single-state, state-law classes harmed by Dell's uniform fraudulent and unfair

14   scheme that Plaintiffs *expect* (but, depending on discovery and the how the litigation progresses,

15   are not *guaranteed*) to seek are well-suited to class certification.  *See*, *e.g.*, *Negrete v. Allianz Life*

16   *Ins. Co. of North Amer.*, 238 F.R.D. 482, 495-496 (C.D. Cal. 2006) (certifying California subclass

17   of UCL, FAL, and other state-law claims as well as nationwide RICO class based on

18   "overarching fraudulent scheme"); *see also Lozano v. AT&T Wireless Services, Inc.*, -- F.3d --,

19   2007 WL 2728758, at *10-*11 (9th Cir. Sept. 20, 2007) (upholding certification of UCL claim).[22]

20         Dell relies almost exclusively on an unpublished California Court of Appeal case,

21   *Harris v. HSN LP*, No. G036938, 2007 WL 61068 (Cal. App. 4 Dist. Jan. 10, 2007), which is not

22   for citation under California Rules of Court.  Even if the Court were to consider it, *Harris* sharply

23

24   _____

     [21] For this reason, Dell misplaces reliance on *Donninger v. Pacific Northwest Bell, Inc.*, 564 F.2d
25   1304 (9th Cir. 1977).  There, the Court affirmed the lower court's order directing plaintiffs to file
     a Rule 23 motion and then, based on the record before it, denied the motion.  *Id.* at 1307-1312.
26   Although the ruling was issued before discovery, the case was unusual, as the Court noted, in that
     the claims of the much of the class  – and even four of the named plaintiffs – were encompassed
27   at least in part within a pre-existing consent decree.  *Id.* at 1311.

28   [22] *Cf. In re Paxil Litig.*, 212 F.R.D. 539 (C.D. Cal. 2003) (cited by Dell) (common questions of
     law did not predominate in proposed nationwide products liability class).

contrasts with the facts at issue here, and thus only emphasizes further how the present case is well-suited for class certification.

*Harris*, like the present case, involves false price representations. But the similarities stop there. The nature and manner of the representations in *Harris* were completely different than those at issue here. Of course, it will take a presentation of a factual record to fully apprise the Court of that distinction, once again making evident that certification should not be decided at the pleading stage.

The central claim in *Harris* was that the Home Shopping Network's (HSN) listed "Retail Value" or "Retail Price" was unsubstantiated and therefore deceptive. *Id.* at *1. Plaintiff purchased two items and later sued, alleging that the "Retail Value" was not factually substantiated.[23] *Id.* Nearly a year later, *and after the development of an evidentiary record*, Plaintiff moved for class certification. The trial court denied certification, noting in particular that "Defendants made multiple *differentiated representations* regarding the Pendant and the Ring during presentations on various dates and times both on the television *presentations* and on the internet *presentations.* . . . [d]etermining whether or not Defendants' retail value presentations were material will require individual analysis of each presentation made to each putative class member/customer." *Id.* at *2 (emphasis added).

Neither of the facts informing *Harris*'s two primary holdings – the difficulty in ascertaining what representation was made or the variegated nature of the representations — is remotely applicable here. Unlike in *Harris*, the parties and the Court will always know *exactly* what representation Dell made to each customer at the time of purchase because the representation is made on the Web site *at the time of and thus exactly contemporaneous with* the purchase. FAC ¶¶ 2, 16, 20, 22-37. Those who purchase from HSN might have seen various televised presentations with varying representations of Retail Value. In contrast, someone buying a Dell computer goes onto a Web site, checks the utmost material terms, *i.e.*, the price together with representations of former prices, rebates, or other purported discounts, and buys the

---

[23] Whereas *Harris* involved only false former prices, Plaintiffs' case also involves false "free" offers and false "rebates."

1   computer without a human intermediary.[24]  FAC at ¶¶ 53-55, 631-63.  Thus, Dell's reliance on

2   *Harris* would be misplaced even in connection with a Rule 23 motion.

3                          **b.      Plaintiffs' alleged class period is properly-pleaded.**

4           Dell's challenge to the tolling allegations is a premature challenge to the

5   certification of a specific class period.  That Plaintiffs' claims are timely is uncontested.  Rather,

6   Plaintiffs have alleged on behalf of the absent putative class members whose limitations period

7   may have elapsed that, based upon the facts and circumstances, Dell has fraudulently concealed

8   the truth about its pricing.

9           In contrast to Dell's assertion that Plaintiffs' FAC had "one conclusory statement,"

10  the FAC details how Dell's false advertising and pricing scheme was concealed.  FAC ¶¶ 35-49.

11  Dell conceals its deceptive practices "by constantly changing its Web site and offers, making it

12  difficult or impossible for prospective customers to verify or dispute Dell's claimed discounts."

13  FAC ¶ 35.  In addition, "[t]he nature of Dell's misleading and deceptive pricing scheme is such

14  that Plaintiffs and class members could not reasonably have discovered the true nature of the

15  scheme.  Uncovering Dell's illegal scheme requires sophisticated and expensive specialized

16  software which is not reasonably available to ordinary customers."  FAC ¶ 48.  Furthermore,

17  Dell's concealment is "ongoing."  FAC ¶ 49.

18          Moreover, Dell's assertion that "[e]verything plays out in plain sight" because the

19  Dell advertisements at issue were publicly disseminated throughout various media, Dell Mem. at

20  21, misses the point.  As the *Baker* court explained, "the mere fact that means of knowledge are

21  open and not availed of does not operate to give constructive notice of the facts" where, "under

22  the circumstances, a prudent man would not be put on inquiry."  *Baker v. Beech Aircraft Corp.*,

23  39 Cal. App. 3d 315 (Cal. Ct. App. 1974).  As the court stated, "To hold that by concealing fraud,

24  or by committing fraud in such a manner as to conceal it until after the party committing the fraud

25  could plead the statute of limitations to protect itself, is to make the law which was designed to

26  _____

27  [24] As argued above, purchasers must have relied on these representations given the materiality of
    the representations.  In this instance, the *Harris* court got it wrong (or perhaps the plaintiff there
28  failed to argue) when it failed to recognize that the materiality of the misrepresentation gives rise
    to a presumption of reliance.

731695.3                                    - 24 -                    OPPOSITION TO MOTION TO DISMISS
                                                                     CASE NO. 07-CV-01700-RMW

1    prevent fraud the means by which it is successful and secure." *Baker*, 39 Cal. App. 3d at 324.

2    Dell should not be able to use the statute of limitations to hide behind its own fraud.

3                    **c.    Plaintiffs' alleged class definitions, as well as potential
                            alternatives, are proper.**

4

5                    Dell challenges Plaintiffs' class *definition* even though, of course, Plaintiffs have

6    not yet moved for class certification.  Plaintiffs have *pleaded* their provisional classes as persons

7    or entities who are California citizens who purchased specified types of products from Dell that

8    were falsely-advertised.  *See* FAC ¶¶ 68-69.  These are entirely appropriate class definitions and

9    are not, as Dell suggests, "fail-safe" classes in which certification guarantees liability.  Indeed,

10   "certification is routinely granted where the proposed class definition relies in part on the

11   consideration of defendants' alleged liability . . . [w]ere it otherwise, the benefits of the class

12   action mechanism could be significantly undermined because plaintiffs seeking relief based upon

13   a defendant's alleged unlawful *policy* or *practice* might be precluded from collectively bringing

14   suit." *Noble v. 93 Univ. Place*, 224 F.R.D. 330, 342 (S.D.N.Y. 2004) (holding that proposed class

15   of all non-exempt employees who were not paid overtime compensation for each hour worked in

16   excess of 40 a week satisfied implied ascertainability requirements) (emphasis in original); *see*

17   *also, e.g.,* 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.21[3][a] (3d ed. 2007) ("In

18   some circumstances, a reference to damages or injuries caused by particular wrongful actions

19   taken by the defendants will be sufficiently objective criterion for proper inclusion in a class

20   definition.")

21                   Therefore, Dell has prematurely raised a virtual non-issue, especially because, as

22   even Dell's own cases confirm, a court can simply modify a class definition at the appropriate

23   time. *See Hagen*, 108 F.R.D. at 63.

24   **III.    CONCLUSION**

25                   For the reasons set forth above, Plaintiffs respectfully submit that Dell's motion to

26   dismiss and motion to strike should be denied in its entirety.  In the alternative, Plaintiffs

27   respectfully request leave to re-plead their claims.

28

1

2   Dated: October 12, 2007      Respectfully submitted,
                                    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

3

4                               By: /s/ *Michael W. Sobol*
                                       Michael W. Sobol

5

6                             Michael W. Sobol (State Bar No. 194857)
                             Allison S. Elgart (State Bar No. 241901)

7                             LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                             275 Battery Street, 30th Floor

8                             San Francisco, CA  94111-3339
                             Telephone:  (415) 956-1000

9                             Facsimile:  (415) 956-1008

10                           Rachel Geman
                           LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

11                           780 Third Avenue, 48th Floor
                           New York, NY  10017-2024

12                           Telephone:  (212) 355-9500
                           Facsimile:  (212) 355-9592

13                           Daniel M. Hattis (State Bar No. 232141)
                           Angelo Salvatore Parise (State Bar No. 165690)

14                           LAW OFFICES OF ANGELO SALVATORE PARISE
                           16870 West Bernardo Drive, Suite 400

15                           San Diego, CA  92127
                           Telephone:  (858) 674-6660

16                           Facsimile:  (858) 674-6661

17                           Attorneys for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28