**United States District Court**
For the Northern District of California

1

2

3

4                                                       **E-FILED on** ___7/7/08___

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

| | |
|---|---|
| 12  CHAD BRAZIL and STEVEN SEICK<br>individually and on behalf of all others<br>13  similarly situated, | No. C-07-01700 RMW |
| 14            Plaintiffs, | ORDER GRANTING DEFENDANT'S<br>MOTION TO DISMISS THE FIRST |
| 15      v. | AMENDED COMPLAINT AND TO STRIKE<br>PLAINTIFFS' CLASS ACTION<br>ALLEGATIONS |
| 16 | |
| 17  DELL INC. and Does 1-10, | |
| 18            Defendants. | **[Re Docket No. 48]** |
| 19 | |
| 20 | |

21        Defendant Dell Inc. ("Dell") moves to dismiss plaintiffs' First Amended Complaint ("FAC")

22   with prejudice and to strike plaintiffs' class action allegations.  Plaintiffs Chad Brazil ("Brazil") and

23   Steven Seick ("Seick") oppose Dell's motion.  For the reasons below, the court finds that Texas law

24   applies to the plaintiffs' claims and grants Dell's motion to dismiss plaintiffs' statutory causes of

25   action.  The court also grants Dell's motion to strike plaintiffs' class allegations as set forth below.

26   The court will grant plaintiffs 20 days to amend their complaint to state claims under Texas law and

27   to amend their class allegations to address the concerns noted in this order.

28

**United States District Court**
For the Northern District of California

# I.  BACKGROUND

Dell directly markets its computer products to consumers and businesses in California and throughout the nation via various media, including Internet web sites, e-mail campaigns, newspaper and magazine advertising, television, direct mail and company-owned retail stores.  FAC ¶ 13.  On June 15, 2006, Seick purchased directly from Dell through its online purchasing process a Dell Dimension B110 desktop computer ("Dimension Desktop") and some associated peripheral Dell computer products.  *Id.* ¶ 53.  Dell allegedly misrepresented to Seick that the base price of the Dimension Desktop reflected a $50 savings from Dell's purported regular price for that computer.  *Id.* ¶ 56.  During the three months prior to Seick's purchase, however, Dell's average offered sales price for the Dimension Desktop model was allegedly even lower than the amount paid by Seick.  Consequently, rather than having received any discount, Seick asserts that he paid $1.46 in excess of the true regular sales price for the Dimension Desktop.  *Id.* ¶¶ 57-58.  In addition, although Dell represented to Seick that the offer for the $50 savings would expire on June 22, 2006, Dell in fact continued to make the offer until October 12, 2006.  *Id.* ¶ 59.

On December 15, 2006, also through Dell's website, Brazil purchased a Dell Inspiron E1505 notebook computer ("Inspiron Notebook") and some peripheral computer products.  *Id.* ¶ 61.  On similar grounds as Seick, Brazil alleges that rather than having received a $314 savings from the regular sales price of the Inspiron Notebook as Dell represented, he paid $157.66 more for the Inspiron Notebook than the average actual sales price for that model offered by Dell for the three months preceding his purchase.  *Id.* ¶ 66.

On behalf of themselves and other similarly situated California consumers and businesses, plaintiffs seek to bring a class action pursuant to Fed. R. Civ. P. 23 against Dell for advertising false discounts from false former prices, false "free" offers, and false rebate discounts for Dell's computers and other products.  Specifically, plaintiffs allege that Dell's conduct has violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; and California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.  Id.* ¶¶ 77-130.  Plaintiffs also assert California common law claims for breach of contract, negligent and intentional

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFFS'
CLASS ACTION ALLEGATIONS—No. C-07-01700 RMW
CYY/MAG                                                     2

1   misrepresentation, and unjust enrichment. *Id.* ¶¶ 51, 77-112.  Among other relief, plaintiffs seek

2   actual, compensatory and punitive damages; a permanent injunction; restitution; costs of suit; and an

3   order certifying the proposed consumer and business classes. *Id.* at 31.

4          Dell previously moved to stay the instant proceedings and compel arbitration under the

5   arbitration provision in Dell's U.S. Terms and Conditions of Sales ("Terms and Conditions").  The

6   court denied that motion.  After engaging in a choice of law analysis, the court declined to enforce

7   the Texas choice of law in the Dell Agreement with respect to the assessing the enforceability of the

8   arbitration clause in the Terms and Conditions.  August 3, 2007 Order Denying Defendant's Motion

9   to Stay, Docket No. 42 ("Arbitration Order").  Applying California law, the court found that the

10  arbitration provision was unenforceable. *Id.* at 11.

11         Dell now moves to dismiss the FAC.  As an initial matter, Dell contends that the FAC fails as

12  a matter of law because Texas law governs this dispute as set forth in the choice-of-law clause in

13  Dell's Terms and Conditions.  Mot. at 5-8.  But even assuming California law applies, Dell contends

14  that the FAC fails to plead causes of action under California law.  Dell also moves to strike

15  plaintiffs' class allegations on the ground that the FAC fails to identify a class that could meet the

16  class action certification requirements under Fed. R. Civ. P. 23.

17  **II.  ANALYSIS**

18  **A.     Choice of Law**

19         As an initial matter, Dell moves to dismiss plaintiffs' California statutory and common law

20  claims by invoking the Texas choice-of-law clause contained in paragraph 13 of the Terms and

21  Conditions of plaintiffs' purchases.[1]  Plaintiffs, relying on the court's previous order applying

22

23

[1] Paragraph 13 states:

> THE PARTIES AGREE THAT THIS AGREEMENT, ANY SALES THERE
> UNDER, OR ANY CLAIM, DISPUTE OR CONTROVERSY . . . INCLUDING
> STATUTORY, COMMON LAW, AND EQUITABLE CLAIMS . . . BETWEEN
> CUSTOMER AND DELL, arising from or relating to this agreement, its
> interpretation, or the breach, termination or validity thereof, the relationships which
> result from this agreement, Dell's advertising, or any related purchase, SHALL . . .
> BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS WITHOUT
> REGARD TO CONFLICTS OF LAWS RULES.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFFS'
CLASS ACTION ALLEGATIONS—No. C-07-01700 RMW
CYY/MAG                                                     3

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   California law to determine whether to compel arbitration, argue that California law governs their

2   claims.

3          In diversity cases, federal courts must apply the choice-of-law rules of the forum state.

4   *Estate of Darulis v. Garate,* 401 F.3d 1060, 1062 (9th Cir. 2005).  California requires the court to

5   conduct a separate choice-of-law analysis with respect to each issue in a case.  *Wash. Mut. Bank, FA*

6   *v. Super. Ct.,* 24 Cal. 4th 906, 920 (2001).  Thus, although the court's ruling in its Arbitration Order

7   determined that California law governs the enforceability of the arbitration provision in a contract of

8   adhesion, this ruling does not resolve the issue of whether Texas law governs plaintiffs' statutory and

9   common law claims in the same agreement.  Arbitration Order at 10.  In California, there is "no

10  public policy against the enforcement of choice-of-law provisions contained in contracts of adhesion

11  where they are otherwise appropriate."  *Wash. Mut. Bank*, 24 Cal. 4th at 917.

12         As previously set forth in the court's Arbitration Order, to determine the enforceability of

13  "contractual choice-of-law provisions, California courts shall apply the principles set forth in

14  Restatement section 187, which reflects a strong policy favoring enforcement of such provisions."

15  *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992).  Restatement (Second) of

16  Conflicts of Law § 187(2) provides in part:

17         The law of the state chosen by the parties to govern their contractual rights and duties
           will be applied, even if the particular issue is one which the parties could not have
18         resolved by an explicit provision in their agreement directed to that issue, unless
           either (a) the chosen state has no substantial relationship to the parties or the
19         transaction and there is no other reasonable basis for the parties' choice, or (b)
           application of the law of the chosen state would be contrary to a fundamental policy
20         of a state which has a materially greater interest than the chosen state in the
           determination of the particular issue and which, under the rule of § 188, would be the
21         state of the applicable law in the absence of an effective choice of law by the parties.

22  The parties do not dispute that the first prong is met.  Both Texas and California have a substantial

23  relationship to the parties and the transaction.  However, as before, the parties dispute whether the

24  second prong—whether application of Texas law in the present case would be contrary to a

25  fundamental policy of the State of California—is met.  Under the second prong, if there is a

26  fundamental conflict with California law, "the court must then determine whether California has a

27  materially greater interest than the chosen state in the determination of the particular issue."

28  *Nedlloyd*, 3 Cal. 4th at 466 (internal citation and quotation marks omitted).  If so, the choice of law

**United States District Court**
For the Northern District of California

1  provision is not enforced. *Id.*; *see also Wash. Mut. Bank*, 24 Cal. 4th at 919-20; *Estate of Darulis*,

2  401 F.3d at 1062.

3  **1.      Differences and Conflict between Texas and California Law**

4  **a.      FAL and UCL**

5  Plaintiffs correctly assert that Texas law does not have an identical provision to either

6  California's FAL and UCL.  Nevertheless, as Dell points out, the Texas' Deceptive Trade Practice

7  Act ("DTPA") contains a provision that provides a cause of action similar to that brought in

8  plaintiffs' complaint under the FAL and UCL by expressly prohibiting "making false or misleading

9  statements of fact concerning the reason for, existence of, or amount of price reductions." *See* Texas

10  Business and Commerce Code section 17.46(b)(11).

11  While the absence of separate statutes concerning false advertising and unfair competition is

12  certainly a difference between California and Texas law, this difference alone does not present a

13  conflict of laws for purposes of the instant action.  Plaintiffs' claims under the FAL and UCL are

14  premised on the allegations that Dell misrepresented the former price of its Dimension Desktop and

15  Inspiron Notebook in offering discounts on those computers, "free" promotional items when the

16  price of those promotional items is built into the sale price of computer, and illusory rebates because

17  the amount of the rebate is built into the sale price of the computer.  FAC ¶¶ 114 (setting forth the

18  bases for plaintiffs' FAL claim), 120 (basing plaintiffs' UCL claim on "Dell's deceptive

19  advertising").  Although their claim is stated as arising generally under the FAL, plaintiffs'

20  allegations regarding "Dell's deceptive advertising" arise under § 17501 which states, in relevant

21  part, "No price shall be advertised as a former price of any advertised thing, unless the alleged

22  former price was the prevailing market price as above defined within three months next immediately

23  preceding the publication of the advertisement or unless the date when the alleged former price did

24  prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code §

25  17501.  This provision finds an analog in the DTPA, which makes unlawful and subject to action

26  under the DTPA "making false or misleading statements of fact concerning the reason for, existence

27  of, or amount of price reductions."  Tex. Bus. & Com. Code § 17.46(b)(11).  Thus, the court finds

28  that to the extent that there is a difference between Texas and California law with respect to the

1   separate existence of an FAL and UCL analog, there is no conflict between those states' laws with

2   regard to the existence of a statute to redress the deceptive practices alleged by plaintiffs.

3                               **b.      CLRA**

4          Plaintiffs assert that the CLRA and DTPA differ with respect to (1) the scope and function of

5   the anti-waiver provision, Opp'n at 4; (2) the right of consumer to bring a class action, *id.* at 6; and

6   (3) the requirement that a plaintiff demonstrate reliance on a challenged false, misleading or

7   deceptive act or practice, *id.*

8          Both Texas and California law include anti-waiver provisions with regard to the statutes at

9   issue.  The text of the anti-waiver provision under the CLRA is broader than its counterpart in the

10  DTPA.  *Compare* Cal. Civ. Code § 1751 ("[a]ny waiver by a consumer of the provisions of this title

11  is contrary to public policy and shall be unenforceable and void.") *with* Tex. Bus. & Com. Code §

12  17.42(a) ("[a]ny waiver by a consumer of the provisions of this title is contrary to public policy and

13  shall be unenforceable and void; provided, however, that a waiver is valid and enforceable if: (1) the

14  waiver is in writing and is signed by the consumer; (2) the consumer is not in a significantly

15  disparate bargaining position; and (3) the consumer is represented by legal counsel in seeking or

16  acquiring the goods or services.").  Plaintiffs contend that this difference requires the application of

17  California law because if a plaintiff would be denied redress under any provision of the CLRA by

18  the application of another state's law, the choice of law provision must not be enforced.  In support

19  of this position, plaintiffs cite to *America Online, Inc. v. Super. Ct.,* 90 Cal. App. 4th 1 (2001), in

20  which the court determined that Virginia law would not be applied because it does not allow

21  consumer lawsuits to be brought as class actions and that the remedies under Virginia law are more

22  limited than under California law.  Based on these determinations, the court held that public policy

23  considerations embodied in the CLRA's anti-waiver provision would be violated.  *Id.* at 4-5.  As set

24  forth below, however, unlike Virginia law, Texas law permits consumer lawsuits to be brought as

25  class actions.  Further, plaintiffs fail to demonstrate how the remedies under the DTPA are more

26  limited than those under California law.  Thus, the court finds plaintiffs' argument that the

27  application of any law other than the CLRA results in a violation of the CLRA's anti-waiver

28  provision to be unpersuasive.

*United States District Court*
*For the Northern District of California*

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFFS'
CLASS ACTION ALLEGATIONS—No. C-07-01700 RMW
CYY/MAG                                                     6

1    To illustrate that they would be denied adequate protection under the DTPA versus the

2    CLRA, plaintiffs also argue that the CLRA expressly provides that a consumer may bring a class

3    action, while the DTPA does not include a similar provision expressly authorizing class actions

4    under the DTPA. *See* Cal. Civ. Code § 1752 ("Nothing in this title shall limit any other statutory or

5    any common law rights of the Attorney General or any other person to bring class actions.").  While

6    it is true that the CLRA expressly states that it does not limit applicable rights to bring class actions,

7    the DTPA does not prohibit class actions, and it is clear that class actions are permissible. *See* Tex.

8    Bus. & Com. Code § 17.501 (setting forth procedures for notifying the consumer protection division

9    where a consumer files an action under § 17.50 that is to be maintained as a class action).  Thus,

10   there does not appear to be any material difference between the CLRA and DTPA with respect to the

11   ability to bring class actions for the allegedly deceptive practices set forth in plaintiffs' FAC.

12       Plaintiffs also contend that the Texas DTPA includes an express statutory reliance

13   requirement where the CLRA does not. *See* Tex. Bus. & Com. Code § 17.50(a)(1)(B) ("A consumer

14   may maintain an action where . . . the use or employment by any person of a false, misleading, or

15   deceptive act or practice that is . . . relied on by a consumer to the consumer's detriment").  Under

16   Civil Code § 1780(a), CLRA actions may be bought only by a consumer "who suffers any damage

17   as a result of the use or employment " of a proscribed method, act or practice.  "This language does

18   not create an automatic award of statutory damages upon proof of an unlawful act.  Relief under the

19   CLRA is specifically limited to those who suffer damage, making causation a necessary element of

20   proof." *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 809 (2007) (quoting *Wilens*

21   *v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 754 (2003)).  Accordingly, "plaintiffs in a

22   CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception

23   caused them harm." *Id.* (quoting *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal.

24   App. 4th 1282, 1292 (2002)).

25       Plaintiffs argue that the reliance requirement in the Texas DTPA has been used to deny class

26   certification and that California, by contrast, has permitted classes to proceed as to the reliance

27   requirement with an allegation of a "material" misrepresentation.  The Texas courts' use of the

28

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFFS'
CLASS ACTION ALLEGATIONS—No. C-07-01700 RMW
CYY/MAG                                7

**United States District Court**
For the Northern District of California

1  reliance requirement thus, according to plaintiffs, would result in the denial of the class relief

2  requested here.

3       Indeed, California cases have permitted classes proceed if there is an allegation of a material

4  representation.  In *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644 (1993), the California Court

5  of Appeal held that "[a] misrepresentation of fact is material if it induced the plaintiff to alter his

6  position to his detriment." *Id.*, 18 Cal. App. 4th at 688.  The court went on to rephrase materiality in

7  terms of reliance:  "Stated in terms of reliance, materiality means that without the misrepresentation,

8  the plaintiff would not have acted as he did." *Id.*

9       Texas law states the issue differently, but does not appear to altogether preclude class

10  certification based upon the reliance requirement: "The [Texas] supreme court noted that it is

11  possible to certify a class where reliance is a required element of proof if the plaintiffs can 'prove

12  reliance in an individual action with the same proof offered to show class-wide reliance.'" *Ford*

13  *Motor Co. v. Ocanas*, 138 S.W.3d 447, 453 (Tex. App. 2004) (citing *Henry Schein, Inc. v. Stromboe*,

14  102 S.W.3d 675, 693 (Tex. 2002) ("If a plaintiff could prove reliance in an individual action with the

15  same evidence offered to show class-wide reliance, then the issue is one of law and fact common to

16  the class.")).

17       When applied in a class setting, California courts do not appear to apply the materiality

18  requirement in a significantly different manner from the Texas courts.  For example, the Ninth

19  Circuit recently noted in an unpublished case that California courts will reject a presumption of

20  reliance where the same omission has not been communicated to each class member, but may infer

21  reliance where the same material misrepresentations have been communicated to the entire class.

22  *See Jenson v. Fiserv Trust Co.,* 2007 WL 4163889, *1 (9th Cir. Nov. 26, 2007) (citing *Mirkin v.*

23  *Wasserman*, 5 Cal. 4th 1082, 1090, 1095 (1993)) ("[While the California Supreme Court] rejected a

24  presumption of reliance on a class-wide basis when the same omission had not been communicated

25  to each class member, the court continued to recognize that when the same material

26  misrepresentations have been communicated, an inference of reliance may arise as to the entire

27

28

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFFS'
CLASS ACTION ALLEGATIONS—No. C-07-01700 RMW
CYY/MAG                                                    8

United States District Court
For the Northern District of California

1   class.").  Accordingly, the court does not find that the CLRA and DTPA materially differ with

2   respect to a reliance requirement.[2]

3   ### 3.    Fundamental Conflict

4   Assuming that the court were to find that Texas law and California law materially differ

5   under the facts of this case as to the express requirement set forth in the DTPA that a consumer must

6   rely upon the alleged false, misleading or deceptive act to the consumer's detriment, the court must

7   determine whether Texas law fundamentally conflicts with California law, and whether California

8   has a materially greater interest than Texas in the determination of the particular issue. *Discover*

9   *Bank v. Super. Ct.,* 134 Cal. App. 4th 886, 891 (2005).

10   The CLRA states, "This title shall be liberally construed and applied to promote its

11   underlying purposes, which are to protect consumers against unfair and deceptive business practices

12   and to provide efficient and economical procedures to secure such protection."  Cal. Civ. Code §

13   1760.  This statement sets forth the public policy underlying the CLRA.  Although plaintiffs contend

14   otherwise, an express reliance requirement does not itself undermine consumer protection against

15   unfair and deceptive business practices.

16   Further, even to the extent that the FAL, UCL and CLRA embody the more general public

17   policy that "[p]rotection of unwary consumers from being duped by unscrupulous sellers is an

18   exigency of the utmost priority in contemporary society," *Vasquez v. Superior Court*, 4 Cal. 3d 800,

19   808 (2001), the Texas DTPA provides comparable protection under the facts of this case.  As

20

21   [2]  There is presently a split of authority as to whether post-Prop 64 the FAL and UCL impose a
reliance requirement.  At present most courts have concluded that there is a requirement that a UCL
22   or FAL plaintiff actually was exposed to and relied on the alleged misleading advertisements. *See*
*True v. American Honda Motor Co., Inc.*, 2007 WL 3054569 at *5 (C.D. Cal. 2007); *Laster v.*
23   *T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005); *Cattie v. Wal-Mart Stores, Inc.*,
2007 WL 935582, at *8 (S.D. Cal. Mar. 21, 2007); *Pfizer Inc. v. Superior Court*, previously
24   published at 45 Cal. Rptr. 3d 840, 852-53(Ct. App. 2d Dist. 2006), *rev. granted,* 51 Cal. Rptr. 3d 707
(Cal. Nov. 1, 2006).  However, there is one Central District case in which the court determined that
25   the UCL and FAL do not include a reliance requirement in spite of the inclusion of the words "as a
result of" in the relevant sections. *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1137 (C.D.
26   Cal. 2005).  The California Supreme Court has taken for review several cases that may address the
issue. *Pfizer Inc. v. Superior Court*, 51 Cal. Rptr. 3d 707 (Cal. Nov. 1, 2006); *McAdams v. Monier,*
27   *Inc.*, previously published at 151 Cal. App. 4th 667 (Ct. App. 3d Dist. May 30, 2007), *rev. granted,*
67 Cal. Rptr. 3d 1 (Cal. Sep. 19, 2007); *In re Tobacco Cases II*, previously published at 142 Cal.
28   App. 4th 891 (Ct. App. 4th Dist., 2006), rev. granted, 51 Cal. Rptr. 3d 707 (Cal. Nov. 1, 2006).

United States District Court
For the Northern District of California

**United States District Court**
**For the Northern District of California**

1  discussed above, the DTPA provides an anti-waiver provision that is comparable under the

2  circumstances of this case to that found in the CLRA, it permits class actions under its provisions,

3  and it expressly forbids the type of conduct plaintiffs have alleged violates California's FAL, UCL

4  and CLRA statutes.  Thus, there is no indication that the application of Texas law in lieu of the FAL,

5  UCL or CLRA would contravene California public policy in this matter.  The protections offered by

6  the DTPA cover the deceptive practices alleged in plaintiffs' complaint.  "The mere fact that the

7  chosen law provides greater or lesser protection than California law, or that in a particular

8  application the chosen law would not provide protection while California law would, are not reasons

9  for applying California law." *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 862

10  (N.D. Cal. 2000) (Henderson, J.) (citing *Wong v. Tenneco*, 39 Cal. 3d 126, 135-36 (1985) (the

11  standard is whether the chosen law is so offensive to California public policy as to be "prejudicial to

12  recognized standards of morality and to the general interest of the citizens")).  Because there is

13  either no material difference between Texas and California law, and that to the extent there is a

14  difference, the reliance requirement does not implicate a fundamental policy of California, the court

15  concludes that the Texas choice-of-law provision is enforceable as to all of plaintiff's claims.  Thus,

16  plaintiffs' FAL, UCL and CLRA claims under California statutory law cannot stand.

17           **4.       Leave to Amend**

18           Plaintiffs request leave to amend their common law claims to state claims under Texas law in

19  the event that the court decides that Texas law should apply.  Because the court has determined that

20  Texas law applies, the court will permit plaintiffs to amend their complaint within 20 days of the

21  date of this order.  Accordingly, the court need not address Dell's arguments directed toward

22  dismissal of those claims.

23           **B.       Motion to Strike**

24           Dell moves to strike plaintiffs' class allegations.  In order for a lawsuit to proceed as a class

25  action, plaintiffs must first demonstrate that they meet the numerosity, commonality, typicality and

26  representative requirements of Fed. R. Civ. P. 23(a).  *See Green v. Occidental Petro. Corp.,* 541

27  F.2d 1335, 1339 (9th Cir. 1976).  Before certifying a class, a district court must conduct a "rigorous

28  analysis" to ensure that the four requirements of Rule 23(a) are met and that the class fits within one

**United States District Court**
For the Northern District of California

1   of the three categories of Rule 23(b).  *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161

2   (1982).  Rule 23(c)(1) directs district courts to determine "as soon as practicable" whether the

3   proposed class satisfies Rule 23's requirements.  *See also Falcon*, 457 U.S. at 160 (sometimes it is

4   "plain enough from the pleadings to determine whether the interests of the absent parties are fairly

5   encompassed within the named plaintiff's claims.").

6           Plaintiffs' class allegations define a "Consumer Class" and "Business Class" as all persons or

7   entities who are citizens of California who purchased from Dell computer products for personal or

8   business use that "(1) Dell falsely advertised as discounted from Dell's regular sales price; (2) Dell

9   falsely advertised as including "free" upgrades and/or "free" add-on products and/or services; and/or

10  (3) Dell falsely advertised as being subject to a rebate discount from Dell's regular price."   FAC ¶¶

11  68-69.  Dell argues that these are "fail-safe" classes whose members cannot be identified unless Dell

12  is found liable after trial.  Mot. at 18.

13          Plaintiffs will ultimately bear the burden of properly establishing a class that is "precise,"

14  "objective," and "presently ascertainable."  *O'Connor v. Boeing North America, Inc.,* 197 F.R.D.

15  404, 416 (C.D. Cal. 2000).  As alleged, the proposed classes include California persons or entities

16  who purchased Dell computer products that "Dell falsely advertised."  To determine who should be a

17  member of these classes, it would be necessary for the court to reach a legal determination that Dell

18  had falsely advertised.  *See, e.g., In re Wal-Mart Stores, Inc*., 505 F. Supp. 2d 609, 615 (N.D. Cal.

19  2007) (Armstrong, J.) (the definition of a "Vacation Subclass" of people who had not received "full

20  and complete" compensation would involve a legal determination based on the facts relevant to an

21  individual potential class member).  Thus, the proposed class cannot, as alleged, be presently

22  ascertained.

23          The court strikes plaintiffs' class allegations, but will permit plaintiffs to amend their class

24  allegations to correct their deficiency.  Dell also challenges the class allegations on the grounds that

25  plaintiffs' claims are not typical and that the class claims, as alleged, lack commonality because

26  plaintiffs are challenging thousands of advertisements in several forms of media.  At this stage, the

27  court declines to consider whether plaintiffs' claims can meet the commonality or typicality prongs

28

1  of Rule 23, saving that inquiry at least until after plaintiffs have amended their complaint to state

2  claims under Texas law.

### III.  ORDER

4       For the foregoing reasons, the court finds Texas law applies to this action and grants Dell's

5  motions to dismiss and strike plaintiffs' claims under the FAL, UCL and CLRA.  Plaintiffs shall

6  have 20 days to amend their complaint to state their claims under Texas law and amend their class

7  allegations.

8       The court recognizes that plaintiffs will be necessarily delayed in filing their motion for class

9  certification, if appropriate.  Plaintiffs should move as soon as practicable after the pleadings have

10 been finalized.

11

12

DATED:        7/7/08

13                                              RONALD M. WHYTE
                                                United States District Judge

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1 | **Notice of this document has been electronically sent to:**

2 | **Counsel for Plaintiff:**

3 | Allison Stacy Elgart          aelgart@lchb.com
Michael W. Sobol             msobol@lchb.com
4 | Daniel Morley Kekoa Hattis   dhattis@pariselaw.com
Angelo Salvatore Parise      parise@pariselaw.com

5 | **Counsel for Defendants:**

6 |

7 | Kim Brightwell              kbrightwell@reevesbrightwell.com
Cory Michelle Mason          cmason@fbm.com
Sinead O'Carroll             socarroll@reevesbrightwell.com
8 | Paul Schlaud               pschlaud@reevesbrightwell.com
C. Brandon Wisoff            bwisoff@fbm.com

9 |

10 | Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

11 |

12 |

13 | **Dated:**    7/7/08                          /s/ MAG
                                            **Chambers of Judge Whyte**

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND TO STRIKE PLAINTIFFS'
CLASS ACTION ALLEGATIONS—No. C-07-01700 RMW
CYY/MAG                                                    13