Michael W. Sobol (State Bar No. 194857)
Roger N. Heller (State Bar No. 215348)
Allison S. Elgart (State Bar No. 241901)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

Daniel M. Hattis (State Bar No. 232141)
Angelo Salvatore Parise (State Bar No. 165690)
LAW OFFICES OF ANGELO SALVATORE PARISE
16870 West Bernardo Drive, Suite 400
San Diego, CA  92127
Telephone:  (858) 674-6660
Facsimile:   (858) 674-6661

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD BRAZIL and STEVEN SEICK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DELL INC. and Does 1-10,<br><br>Defendant. | Case No. C-07-01700 RMW<br><br>**SECOND AMENDED**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

    Pursuant to the Court's Order dated July 7, 2008 [Docket No. 74], which granted Plaintiffs leave to amend their First Amended Class Action Complaint, Plaintiffs hereby file their Second Amended Class Action Complaint.

    Plaintiffs, by and through their attorneys, bring this civil action for damages, injunctive relief, exemplary damages, disgorgement of profits, restitution and costs of suit, on behalf of themselves and all others similarly situated.  Upon personal knowledge as to their own acts and status and upon information and belief as to all other matters, Plaintiffs allege the following:

**NATURE OF THE ACTION**

1.      This is a class action against Dell Inc. ("Dell") for falsely advertising price discounts for its computers and other products and services, failing to deliver promised discounts, and failing to deliver products that are of the value represented by Dell.  In its direct marketing to consumers and businesses, primarily via its Internet Web site, but in print and other advertising as well, Dell advertises false former prices, false price discounts, false rebate discounts, and false "free" offers for its computer products.  In one prominent practice, Dell misrepresents the nature and amount of product discounts by purporting to offer specific dollar discounts from expressly referenced former prices; these discounts are false, however, because the referenced former prices are fabricated and inflated and do not represent Dell's true regular price for the product.  Dell also falsely advertises the inclusion of "free" upgrades and "free" add-on products and services when they are in fact not free, and falsely advertises product "rebate" discounts that are in fact not discounts.  Dell directly recovers the cost of the "free" add-ons and the cost of the "rebates" by marking up the true regular sales price of the original product in an amount corresponding in whole or in part to the value of the "free" offer or "rebate."  Additionally, Dell advertises the inclusion of "free" upgrades and add-ons as "limited time offers," when in fact Dell typically includes the upgrades and add-ons at no additional cost with the original product.  As a result of these schemes, consumers end up paying more than they bargained for because they do not receive the price discounts and value of products that Dell promises them.

2.      Dell's false price discount schemes are rampant and consistent across nearly all of Dell's desktop, notebook, server, and storage lines.  For example, on March 12, 2007, on the "Home & Home Office" section of its Web site, Dell offered for sale more than seventy-four (74) models of desktop and notebook computers across 15 product lines; on the Small Business section of its Web site Dell offered for sale more than one hundred and sixty (160) desktop, notebook, and server models across 41 product lines.  For nearly every one of these models, Dell displayed a false discount from a false regular price or displayed a false "free" offer.  Dell's conduct is so pervasive and consistent as to make it apparent that the heart of Dell's marketing plan is to intentionally deceive the public.

CLASS ACTION COMPLAINT

3.      Dell's false price discount schemes violate Texas statutory and common law, including the statutory prohibition against making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions.  Dell's conduct also breaches its agreements with purchasers for the sale of its computer products.  Plaintiffs, individually and on behalf of all others similarly situated, seek damages, disgorgement of profits, restitution, exemplary damages, and injunctive relief to stop Dell's rampant false advertising.

## THE PARTIES

4.      Plaintiff Chad Brazil is an individual residing in Santa Cruz, California.

5.      Plaintiff Steven Seick is an individual who owns and operates a business in San Diego, California.

6.      Defendant Dell Inc. ("Dell") is a Delaware corporation with its principal executive offices at One Dell Way, Round Rock, Texas.

7.      Dell designs, develops, manufactures, markets, sells and supports a range of computer systems and services that are customized to customer requirements.  These include notebook and desktop computers, servers, networking products, printing and imaging systems, software and peripherals, and global services.  The Company markets and sells its products and services directly to its customers, which include individual consumers, small to medium-sized businesses, larger corporations, and government, healthcare, and education accounts.  Dell employs over 82,000 individuals.

8.      Plaintiffs do not know the true names and capacities of Does 1-10, inclusive, whether individual, corporate, association, or otherwise, and, therefore, sues said defendants, and each of them, by such fictitious names.  Plaintiffs will amend this Complaint to show their true names and capacities when they have been ascertained.  Plaintiffs are informed and believe, and on the basis of that belief allege, that each of these Doe defendants was in some manner legally responsible for the events, happenings, injuries, and damages alleged in this Complaint.  As used herein, the term "Defendant" and/or "Dell" refers to Dell and the Doe defendants.

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

9.      The Court has jurisdiction of the claims alleged herein pursuant to 28 U.S.C. § 1332 because the amount in controversy for the class exceeds $5,000,000, exclusive of interest and costs, and Plaintiffs and the members of the proposed Class are not citizens of Texas, Dell's state of citizenship.

10.     This Court has personal jurisdiction over Dell because a substantial portion of the wrongdoing alleged in this Complaint took place in this state, Dell is authorized to do business here, Dell has sufficient minimum contacts with this state, and/or Dell otherwise intentionally avails itself of the markets in this state through the promotion, marketing and sale of its products in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

**INTRADISTRICT ASSIGNMENT**

12.     Pursuant to the Northern District of California's Local Rules Nos. 3-2 and 3-5, Plaintiffs request assignment to the San Jose Division of the Northern District of California. Plaintiff Chad Brazil resides in Santa Cruz County and thus a substantial part of the events or omissions which give rise to the claims occurred in Santa Cruz County.

**FACTUAL BACKGROUND**

13.     Dell is one of the biggest e-commerce companies in the world.  Dell directly markets its products to consumers and businesses in California and throughout the nation via its Web site, Internet advertising, e-mail campaigns, newspaper and magazine advertising, television advertising, direct mail, and company-owned retail stores.  In 2005, Dell spent over $975 million on direct advertising to consumers and businesses to draw them to its Web site, and it spends millions more maintaining its e-commerce Web site at www.dell.com.  According to Dell, each day there are more than 4 million visitors to www.dell.com.

14.     Dell consummates its sales to consumers and small to medium businesses on its Web site or by telephone.  In addition, Dell previously operated 185 "Dell Direct Stores" in shopping malls and airports throughout the country, including 29 such stores in California and 8 in this judicial district.

15.     Dell's marketing strategies have been successful.  Dell maintains roughly 30 percent of the personal computer market share in the United States and in 2007, Dell had over $62 billion in sales.  In significant part, however, Dell's growth and profitability have been the product of deceptive, misleading, and unlawful marketing and advertising practices.

16.     Dell's Web site, along with its direct advertising, are replete with false and fraudulent representations regarding the existence of price discounts and savings.  Dell has leveraged its Internet marketing expertise and technology to perpetrate an illegal scheme of massive proportions.

17.     Dell's deceptive false advertising schemes have played a major role in Dell's overall marketing and business strategy during the class period.  There are three primary components to Dell's schemes.

**False Discounts From False Former Prices**

18.     First, Dell advertises false specific dollar amount discounts from expressly referenced false former sales prices.  Dell perpetrates this scheme on its Web site and in its online, email, and print advertising.

19.     The Federal Trade Commission (FTC) describes false former pricing schemes, similar to Dell's in all material respects, as deceptive:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious--for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a

CLASS ACTION COMPLAINT

large reduction--the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith--and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.  And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $ ------"), unless substantial sales at that price were actually made.

16 C.F.R § 233.1.

20.      Under Texas law, it is unlawful to "mak[e] false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions."  Texas Bus. & Com Code § 17.46(b)(11).

21.      On its Web site, Dell advertises a discount price in bold red or green lettering accompanied by a strike-through false former price.  In fact, Dell's advertised former sales price is an inflated price well above the actual sales price at which Dell regularly sells the product.  The purportedly discounted price is in fact not discounted at all, but rather is approximately equal to Dell's regular sales price for the product.  During the purchase of Dell products on-line, purchasers are directed to a virtual shopping cart, prior to consummating the purchase, where Dell misrepresents that purchasers have obtained a "savings," expressed in a specific dollar amount which represents the difference between the false regular price and the sales price.  Dell also makes misrepresentations of "savings" in specific dollar amounts in its descriptions of "Discount Details" and on Web pages listing "Featured" models of the selected product.  Dell further misrepresents that such false discounts and savings are available only for a "limited time," when in fact, it is Dell's standard operating procedure to offer such false discounts and savings.

22.     The false former prices that Dell advertises are not prices at which Dell has offered for sale, or made substantial sales of, the relevant products for a reasonable period of time prior to advertising such false former prices.

23.     Dell fabricates the false former reference prices.  The false former reference prices have no connection to the actual past pricing of Dell's products.  Rather, the false reference prices are deliberately and artificially set by Dell at levels that Dell believes will increase its profits.  Dell deliberately and artificially sets the false reference prices to create false impressions among customers regarding the products' values and the bargains that customers will receive if they purchase Dell products.  Dell also prominently features the phrase "limited time offer" regarding the false discounts in order to create a sense of urgency and the false impression that customers will miss out on the purported markdowns if they do not buy the products immediately.

24.     For example, on September 13, 2006, Dell introduced its Dimension C521 Series of desktop computers, including one model (no. DDWCA2) at a sales price of $529, without reference to a former sales price.  Over the following four months the price for this model fluctuated, reaching a high of $588.  On January 26, 2007, Dell was continuing to offer the Dimension C521 at a price of $588, still without reference to a former sales price.  On January 27, 2007, Dell began applying its false former pricing scheme, offering the Dimension C521 with a fabricated false former price.  As is shown on the screen shots taken from Dell's Web site from those two days, attached hereto as Exhibit "A," although Dell continued to offer the computer at the same $588 price, Dell now began to advertise a false $100 discount from a newly invented false former price of $688.  In fact, Dell had *never* offered this Dimension C521 model at the $688 price.  Rather, Dell's false discounted sales price of $588 was in fact the highest price at which Dell had ever offered the computer model for sale.  During this time, in both its description of the "Discount Details" and in the virtual shopping cart prior to any purchase, Dell misrepresented that purchasers would "Save $100 on this Dell C521 system!  Limited Time Offer!" Attached hereto as Exhibit "B," and incorporated herein, is a graph representing the true sales price and false reference price histories of this Dimension C521 model.

CLASS ACTION COMPLAINT

25.     Dell perpetrates the false former price scheme in its print advertising.  For example, on September 15, 2006, Dell advertised false discounts in the *San Diego Union Tribune* for its Dimension E510 and Inspiron B130 computers.  Dell falsely represented that the Dimension E510 was "[r]egularly priced $839," and offered it for sale at $689, "after $150 off." In fact, Dell had not offered or made substantial sales of a similarly configured Dimension E510 at a price of $839 for a reasonable period of time prior to September 15, 2006.  During the three months preceding the date of this advertisement, Dell's average advertised price on its Web site for the identically configured Dimension E510 was $656.94, *i.e.*, $32.06 less than the falsely advertised "discounted" price.  Rather than offering a $150 discount from the regular sales price of the Dimension E510, Dell was actually offering it for sale at an amount $32.06 *more than* the regular sales price.  Similarly, Dell falsely represented that the Inspiron B130 was "[r]egularly priced $549," and offered it for sale at $499, "after $50 off."  In fact, Dell had not offered or made substantial sales of a similarly configured Inspiron B130 at a price of $549 for a reasonable period of time before September 15, 2006.  During the three months preceding the date of this advertisement, Dell's average advertised price on its Web site for the identically configured Inspiron B130 was $512.67, *i.e.*, only $13.67 more than the falsely advertised "discounted" price. Rather than offering a $50 discount from the regular sales price of the Inspiron B130, the discount was actually far less, *i.e.*, $13.67.  Attached hereto as Exhibit "C" is a true and accurate copy of the September 15, 2006 Dell advertisement in the *San Diego Union Tribune* with the relevant portions enlarged and highlighted.

26.     The false former price discounts have been omnipresent on Dell's Web site and in its print advertising.  Dell displays a false discount price alongside a false, often crossed-out, regular price for nearly every desktop and notebook computer, server, and storage device that it sells.  Dell consistently misrepresents that its sales prices represent "savings" in specific dollar amounts from inflated and false regular prices.  Dell's false former price scheme is so deeply ingrained in Dell's business that on numerous occasions when Dell has increased the actual selling prices of its products, such increases have been accompanied by corresponding, equal increases in the false former prices expressly referenced by Dell for those products.

CLASS ACTION COMPLAINT

27.     Dell's false reference price scheme is ongoing, although the manner in which Dell implements it has varied to a minor degree.  Beginning on or around November 10, 2007, as part of its false reference price scheme, Dell included on its Web site a so-called "Starting Price" for products along with a sale price and a prominent call-out promising that purchasers will receive an "Instant Savings" in an amount equal to the difference between the "Starting Price" and the sale price.  The promised "Instant Savings" are illusory, however, because the sale price is approximately equal to Dell's regular sale price for the product.

28.     This "Starting Price" method is now pervasive throughout Dell's Web site and represents a continuation of Dell's false former price scheme:  the so-called "Starting Price" for products is in nearly every instance exactly equal to the strike-through price that Dell had previously advertised for those same products, and both such reference prices are fabricated and have no connection to the actual past sales prices of Dell's products.  Dell has substituted a "Starting Price" for the prior "strike-through price," and, like Dell did with the strike-through price, now contrasts the "Starting Price" against the actual offered sales price; but with respect to specific product configurations, the Starting Price is just as fabricated as the strike-through price was because those product configurations were not offered for sale at the "Starting Price" for a reasonable period of time prior to such offering.

29.     For example, on November 9, 2007, Dell advertised on its Web site an Inspiron 530s desktop model (no. DDCWFA2) at a price of $499, a represented $100 "savings" from a false former strike-through price of $599.  The next day, November 10, 2007, employing its new "Starting Price" method, Dell advertised the identical computer at the same sale price of $499 and called out, in prominent red text, that this price represented "Instant Savings" from the so-called "Starting Price" of $599—the very same reference price Dell previously advertised under the older method.  The "Starting Price" referenced by Dell was fabricated, and had no connection to the actual price that customers previously paid for the computer.  Attached hereto as Exhibit "D" are screen shots taken from Dell's Web site from November 9 and 10, 2007, which illustrate Dell's new method as well as Dell's transition to the new method from its prior, strike-through price method .  Also attached hereto as Exhibit "E," and incorporated herein, is a

CLASS ACTION COMPLAINT

graph representing the true sales price and false reference price histories of this Inspiron 530s model.

30.     Dell's false former price scheme, whether implemented by false strike-through prices or "starting" prices, has been one of Dell's primary marketing strategies during the class period.  Dell has dedicated considerable time and resources to crafting and fine-tuning this scheme to maximize its profits.  Dell has engaged in this scheme with knowledge of, and/or reckless disregard for, the deceptive, harmful and illegal nature of the scheme, and has, in fact, profited greatly from it.

31.     Dell's advertising of false former prices violates Texas law and FTC standards.  The discounts promised by Dell are false because they are applied against a fabricated and inflated "regular" or reference price, rather than against Dell's true regular price for the product.  Dell's promise to provide price discounts from Dell's regular sales price is an objectively material term of the sales transaction.  Dell fails to keep its promise to provide price discounts from true regular sales prices, and as a result, consumers do not receive the benefit of the advertised bargain.

**False "Free" Offers**

32.     Second, Dell falsely represents to potential buyers on its Web site and in other promotional materials that Dell will provide valuable upgrades and additional products and services for "free" if the buyer pays Dell's "regular" sales price for the original product.  In fact, Dell marks up the true regular sales price of the original product in an amount corresponding in whole or in part to the value of the "free" upgrades and add-ons.  Dell's promise that the upgrades and add-ons are being included for "free" in the sale of the base product is an objectively material term of the sales transaction.

33.     The FTC states the following with regard to "free" offers:

The public understands that . . . an offer of "Free" merchandise or service is based upon a regular price for the merchandise or service which must be purchased by consumers in order to avail themselves of that which is represented to be "Free". In other words, when the purchaser is told that an article is "Free" to him if another article is purchased, the word "Free" indicates that he is paying nothing for that article and no more than the regular price for the other.  Thus, a purchaser has a

right to believe that the merchant will not directly and immediately recover, in whole or in part, the cost of the free merchandise or service by marking up the price of the article which must be purchased, by the substitution of inferior merchandise or service, or otherwise.

16 C.F.R § 251.1(b)(1).

34.     An example of Dell's false "free offer" scheme is shown in its advertising for its Dimension E310 desktop computer.  On March 22, 2006, Dell offered a Dimension E310 model (no. DE310SAP) at a sales price of $499.  The next day, on March 23, 2006, Dell offered the same computer with a configuration that included a 17-inch flat panel monitor and 512 MB of memory.  Dell falsely represented that the monitor and memory upgrades were "FREE," but in fact, Dell actually marked-up the offering sales price by $100, *i.e.*, for a total sales price of  $599. Dell discontinued this false "FREE" upgrade offer seven days later, on March 30, 2006, at which time Dell dropped the sales price back down to $499.  Attached hereto as Exhibit "F" are excerpts of screen shots from Dell's Web site from March 22 and 23, 2006, advertising the Dimension E310 with and without the false "free" offer.

35.     Dell also falsely advertises "free" upgrades and "free" add-on products and services to the original product as "limited time offers," when, in fact, Dell typically and in the ordinary course includes the upgrades and add-ons with the product at no additional cost.  Dell does this to keep the actual selling price the same, but to affect demand by advertising perceived price discounts which are false.

36.     The FTC has promulgated the following standard regarding the frequency of "free" offers:

So that a "Free" offer will be special and meaningful, a single size of a product or a single kind of service should not be advertised with a "Free" offer in a trade area for more than 6 months in any 12-month period.  At least 30 days should elapse before another such offer is promoted in the same trade area.  No more than three such offers should be made in the same area in any 12-month period.  In such period, the offeror's sale in that area of the product in the size promoted with a "Free" offer should not exceed 50 percent of the total volume of his sales of the product, in the same size, in the area.

16 C.F.R § 251.1(h)

CLASS ACTION COMPLAINT

37.     Dell's advertising of its false "limited time" free offers violates Texas law and FTC standards because its "free offers" are in fact not free offers at all—buyers realize no price savings nor any additional value because Dell typically includes the upgrades and add-ons at no additional cost.  Dell's representation to buyers that they will receive price savings on a Dell product in the form of "limited time" free offers is an objectively material term of the sales transaction.

38.     Dell deliberately perpetrates these false "free" offer schemes with knowledge of, and/or with reckless disregard for, the deceptive and harmful nature of these schemes, for the sole purpose of maximizing Dell's profits.

39.     Dell violates Texas law and FTC standards by making false "limited time" free offers and by failing to keep its promise to provide "free" products or services where Dell in fact directly recovers the cost of the "free" offers by marking up the true regular sales price of the original product.  The "free" offers are illusory, and, as a result, purchasers do not receive the benefit of their bargained-for exchange.

**False Rebate Discounts**

40.     Third, Dell represents to potential buyers on its Web site and in other promotional material that Dell will provide product mail-in "rebate" discounts if the buyer pays the advertised "regular" sales price for the product.  Dell's promise to provide a "rebate" discount is an objectively material term of the sales transaction.  In fact, Dell's rebate discount offers are illusory because Dell directly recovers the cost of the "rebates" by marking up the true regular sales price of the product in an amount corresponding in whole or in part to the amount of the rebate.  The "regular" sales price that Dell advertises (i.e. before the "rebate") is not a price at which Dell has previously offered for sale, or made substantial sales of, the relevant products for a reasonable period of time (other than when offered in conjunction with the false "rebate" discount).  By falsely representing the rebate offer as a discount from Dell's regular sales price, Dell, among other things, breaches the agreement it made with the buyer.

41.     An example of Dell's false rebate discounting is shown in its advertising for one of its Dimension E310 computer models (no. DE310SAP).  On June 7, 2006, Dell offered

CLASS ACTION COMPLAINT

1    this Dimension E310 model at a sales price of $497.  The next day, on June 8, 2006, Dell offered

2    the same computer at a price $102 more than the day before, *i.e.*, at $599, together with a false

3    $100 mail-in rebate discount.  In fact, Dell *never* sold the Dimension E310 at a price of $599

4    before June 8, 2006 (other than when offered in conjunction with the false "rebate").  Dell's

5    rebate discount offer on the Dimension E310 was false and misleading because the rebate

6    discount was offered in conjunction with an inflated sales price that directly corresponded to the

7    amount of the false rebate.  Attached hereto as Exhibit "F" are excerpts of screen shots from

8    Dell's Web site from June 7 and 8, 2006, advertising the Dimension E310 with and without the

9    false rebate discount.

10          42.     Dell deliberately perpetrates this false rebate scheme with knowledge of,

11   and/or with reckless disregard for, the deceptive and harmful nature of this scheme, with the sole

12   purpose of maximizing Dell's profits.

13          43.      Dell violates Texas law and FTC standards by advertising false rebates.

14   The rebates are illusory, and, as a result, purchasers do not receive the benefit of their bargained-

15   for exchange.

16                  **Other and Related False and Misleading Advertising Practices**

17          44.     Dell perpetrates additional deceptive, misleading, and unlawful marketing

18   and advertising practices by intentionally directing customers to special Web pages, "offer codes"

19   and "coupon codes" that promise special discounts on computer products, but which in fact

20   charge the same or greater than Dell's true regular price for the products.

21          45.     Dell conceals its deceptive practices by constantly changing its Web site

22   and offers, making it difficult or impossible for prospective customers to verify or dispute Dell's

23   claimed discounts.

24          46.     Dell's duplicitous conduct is evidenced by, for example, its advertising for

25   its Optiplex 320 desktop computer models.  Dell introduced these models on November 8, 2006.

26   Even though Dell had never before offered any Optiplex 320 models for sale, on the day of their

27   introduction Dell falsely advertised them as having former regular prices.  For example, Dell

28   misrepresented that one model (no. BPCWOCR) regularly sold for $489, and offered it at a

1   falsely discounted sales price of $359, misrepresenting it to confer a $130 "savings." On four

2   occasions during the first three months Dell sold this Optiplex 320 model, it offered a false "free"

3   flat panel monitor upgrade. In fact, during each period that Dell offered the false free monitor

4   upgrade, Dell increased the sales price by $50 or more, as set forth in the graph attached hereto as

5   Exhibit "G."

6          47.     Dell's duplicitous conduct is further evidenced by its advertising of one of

7   its Dimension E310 desktop computer models (no. DE310SAP) from March 15 to July 6, 2006.

8   Throughout this period, Dell offered this model for sale at $499 while at the same time falsely

9   offering a "limited time" "savings" of $100 from a false regular price of $599, except for two

10  seven-day periods where a false "free" offer was made, and one seven-day period where a false

11  rebate discount offer was made. For a seven-day period beginning on March 23, 2006, Dell

12  increased the sales price for this Dimension E310 model by $100 at the same time it offered false

13  "free" monitor and memory upgrades. On March 30, Dell stopped offering the false "free"

14  upgrades and reverted the pricing to the usual sales price of $499 with a false representation of a

15  $100 "savings" from the false regular price of $599. Thereafter, in another seven-day period

16  beginning May 11, 2006, Dell increased the sales price by $52 while offering a false "free"

17  monitor upgrade. When Dell stopped offering this false "free" upgrade on May 18, 2006, Dell

18  again reverted to the usual sales price of $499 with a false representation of a $100 "savings"

19  from the false regular price of $599. Then for a seven-day period beginning June 29, 2006, Dell

20  increased the sales price from $499 to $599, while this time offering a false $100 mail-in rebate

21  discount. Dell stopped offering the rebate on July 6, 2006, at which time it once more reverted to

22  its false regular pricing with the false "savings" representation. In short, over this period, Dell

23  advertised this Dimension E310 model with either false discounts from false regular prices, false

24  free offers, or false rebates, as set forth in the graph attached hereto as Exhibit "H."

25         48.     The false representations alleged above have been disseminated to

26  Plaintiffs and members of the Class via Dell's Web site and direct advertising. Plaintiffs and

27  members of the Class have purchased Dell products, but have been denied the discounts, savings,

28

CLASS ACTION COMPLAINT

and product values that Dell promised them.  In all, millions of customers have been victims of Dell's deceptive, misleading, and unlawful schemes.

49.    Dell's false representations of discounts from "regular" prices and false representations of rebate discounts and "free" offers are objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

50.    Dell knows or reasonably should know that the schemes alleged above are deceptive, misleading, and unlawful.

51.    Dell fraudulently concealed from, and intentionally failed to disclose to, Plaintiffs, members of the Class, and any others in the chain of distribution, the truth about its advertised price discounts and its advertised "free" products and "rebates."

52.    Dell was and is under a duty to Plaintiffs and the members of the Class to disclose the truth about its misrepresentations and false price advertising because:

a.    Dell is in a superior position to know the facts about its deceptive, misleading, and unlawful marketing and advertising schemes;

b.    Dell made partial, misleading, and deceptive disclosures about its false price discounts, false "free" offers, and false "rebate" discounts;

c.    Dell knowingly and intentionally concealed the nature of its schemes from Plaintiffs and the members of the Class.

53.    The facts which Dell misrepresented, concealed or failed to disclose are the type of facts that are regularly considered to be material; i.e., a reasonable person would attach importance to them, and would be induced to act on them, in determining whether or not to purchase Dell's products.

54.    Dell intentionally concealed and failed to disclose the truth about the schemes alleged herein for the purpose of inducing Plaintiffs and the members of the Class to purchase products from Dell.

55.    Dell's deceptive, misleading, and unlawful schemes have made comparison shopping more difficult for consumers and businesses.  Dell's schemes focus reasonable purchasers' attention on representations of price discounts and other savings or bargains from

purported regular prices.  As a result, purchasers reasonably perceive that they are receiving valuable price reductions on purchases of Dell's computer products.  Dell also creates a sense of urgency regarding the purchases by featuring the phrase "limited time offer" in nearly all of the above-alleged schemes, giving the false impression that customers will miss out on the purported markdowns and free offers if they do not buy the products immediately.  This perception induces reasonable purchasers to buy the products from Dell and to refrain from shopping for computer products from sellers other than Dell.

56.    Dell's conduct has been and is wanton or reckless or shows a reckless indifference to the interests of Plaintiffs and the members of the Class.

57.    Any applicable statutes of limitation have been tolled by Dell's knowing and active concealment of the operative facts alleged herein.  The nature of Dell's misleading and deceptive pricing schemes is such that Plaintiffs and class members could not reasonably have discovered the true nature of the schemes.  Uncovering Dell's illegal schemes requires sophisticated and expensive specialized software which is not reasonably available to ordinary consumers.

58.    Dell knowingly, affirmatively, and actively concealed the true nature of its deceptive and misleading schemes, including false former prices, illusory rebate discounts, and false offers of "free" add-on products or services.  Dell's concealment is ongoing.  Plaintiffs and members of the Class reasonably relied upon Dell's knowing, affirmative, and/or active concealment.  Based on the foregoing, Dell is estopped from relying on any statutes of limitation in defense of this action.

59.    Dell employs its superior bargaining power to unilaterally impose upon customers at the time of the sale of its computer products its so-called "Terms and Conditions," which include an arbitration clause with a waiver of purchasers' class action remedies.  The Terms and Conditions constitute contracts of adhesion.  Dell purports to impose the adhesive Terms and Conditions upon commercial transactions (*i.e.*, sales of Dell's computer products), which predictably involve small sums of money (in comparison with the costs of litigation), as part of its overall scheme to deliberately cheat large numbers of purchasers out of these

CLASS ACTION COMPLAINT

1   individually small sums of money.  In practice, the Terms and Conditions would operate to

2   exempt Dell from its responsibility for its own fraud and willful injury to its customers.  Dell's

3   Terms and Conditions, with its arbitration and class action waiver clause, are unconscionable and

4   contrary to public policy and therefore are unenforceable against its customers.

5          60.    Plaintiffs initially brought their claims in this case under California law,

6   based on the strong interest that the State of California has in protecting its citizens from the

7   schemes alleged herein.  The Court, however, has ruled that Plaintiffs must state their claims

8   under Texas law.  Without waiving their rights to seek reconsideration of, and/or to appeal, the

9   Court's ruling on the applicable law, and without waiving their assertion that California law

10  should apply in this case, Plaintiffs herein allege claims under Texas law, as directed by the

11  Court.

12         61.    Dell's conduct violates Texas statutory and common law.  Dell's conduct

13  breaches its agreements with Plaintiffs and the members of the Class for the purchase of Dell

14  products and services, constitutes negligent misrepresentation, false promise, intentional

15  misrepresentation and fraud, and violates Texas Bus. & Com. Code § 17.41, et. seq.  As a direct

16  and proximate result of Dell's misconduct, Plaintiffs and members of the Class have suffered

17  damages, and Dell has been unjustly enriched through the sale of its products to Plaintiffs and

18  members of the Class.

19  **PLAINTIFF STEVEN SEICK**

20         62.    Plaintiff Steven Seick owns and operates a small law firm in San Diego,

21  California.

22         63.    On June 15, 2006, Mr. Seick purchased directly from Dell via its Internet

23  Web site a Dell Dimension B110 desktop computer, model no. DB110A (herein, the "Dimension

24  Computer"), and associated peripheral Dell computer products.  Mr. Seick purchased his

25  computer by accessing Dell's Web site, and specifically by accessing Web pages which described

26  Dell's Dimension Computer and which advertised false discounts and false regular prices for the

27  Dimension Computer.

28

       CLASS ACTION COMPLAINT

1    64.    On its Web site the day of Mr. Seick's purchase, Dell offered to sell the

2    Dimension Computer for $299, at a promised "savings" of $50 from the false regular sales price

3    of $349.  After Mr. Seick arrived on the pages of Dell's Web site which contained these

4    representations, he began the process of purchasing the Dimension Computer.  First, Mr. Seick

5    selected the Dimension Computer at the base sales price of $299, and he was then directed to

6    further purchasing options where he selected certain upgrades and add-ons.  After that, Mr. Seick

7    was directed to Dell's "shopping cart," which listed the items, upgrades, and add-ons that he had

8    selected for purchase and the pricing for his selections.  In the shopping cart, Dell misrepresented

9    to Mr. Seick that he would, "Save $50 instantly off this Dell Dimension B110!"  Attached hereto

10   as Exhibit "I" are screen shots of Dell's "system configurator" and "shopping cart" Web pages for

11   the Dimension Computer, taken on the date of Mr. Seick's purchase.

12   65.    Relying on the representations described above, Mr. Seick then purchased

13   the Dimension Computer via Dell's online purchasing process, paying the base sales price of

14   $299 plus an additional amount for his selected upgrades and add-ons.  On the same day of, but

15   after Mr. Seick's purchase, Dell sent Mr. Seick an email confirming his purchase order, which is

16   attached hereto as Exhibit "J."  Dell's order confirmation again stated that Mr. Seick would,

17   "Save $50 instantly off this Dell Dimension B110!  Expires on 2006-06-22."

18   66.    On June 15, 2006, Mr. Seick purchased from Dell the Dimension

19   Computer at the base price of $299 after Dell had misrepresented to him that the price reflected a

20   $50 savings to be received by Mr. Seick from Dell's purported regular price of $349 for that

21   computer.  Dell did not offer for sale, or make substantial sales of, the Dimension Computer at a

22   price of $349 for a reasonable period of time before June 15, 2006 (other than when offered in

23   conjunction with a false "rebate" discount).

24   67.    During the three months prior to Mr. Seick's purchase, Dell's average

25   offered base sales price for the Dimension Computer model was in fact $297.51, *not* $349.

26   Attached hereto as Exhibit "K," and incorporated herein, is a chart setting forth the daily prices

27   for the Dimension Computer during the three months prior to Mr. Seick's purchase, which

28   demonstrates that Dell uniformly and falsely represented the regular price for the Dimension

CLASS ACTION COMPLAINT

1   Computer to be $349, even though the average true regular price for that period was $297.51.  (At

2   three junctures during this period, instead of offering the Dimension Computer for sale at the

3   usual $299, Dell increased the sales price by $50, *i.e.* to $349, but offered an offsetting false

4   rebate discount of $50.)

5          68.      Rather than having received a $50 savings from the regular sales price of

6   the Dimension Computer, as Dell had misrepresented, Mr. Seick paid $1.49 ***more than*** the true

7   regular sales price for the Dimension Computer, *i.e.*, $1.49 more than the average actual sales

8   price offered by Dell for the three months preceding Mr. Seick's purchase.

9          69.      Although Dell represented to Mr. Seick that the offer for the supposed $50

10  savings would "expire" on June 22, 2006, Dell in fact continually made that offer up to and

11  including October 12, 2006, at which point Dell discontinued the Dimension B110 series and

12  replaced it with a new model line.

13         70.      Dell's representation to Mr. Seick that his purchase price reflected a $50

14  savings from Dell's regular sales price was false and misleading because, in fact, the price Dell

15  charged Mr. Seick was more than the true regular sales price for the Dimension Computer.

16                              **PLAINTIFF CHAD BRAZIL**

17         71.      On December 15, 2006, Plaintiff Chad Brazil purchased directly from Dell,

18  via its Internet Web site, a Dell Inspiron E1505 Dual Core notebook computer, model

19  no. DNDWEA3 (herein, the "Inspiron Notebook"), and associated peripheral Dell computer

20  products.  Mr. Brazil purchased the Inspiron Notebook by accessing Dell's Web site, and

21  specifically by accessing Web pages which described the Inspiron Notebook and which

22  advertised false discounts and false regular prices for the Inspiron Notebook.

23         72.      On its Web site the day of Mr. Brazil's purchase, Dell offered to sell the

24  Inspiron Notebook for $1,199, at a promised savings of $314 from the false regular sales price of

25  $1,514.  After Mr. Brazil arrived on the pages of Dell's Web site that contained these

26  representations, he began the process of purchasing the Inspiron Notebook.  First, Mr. Brazil

27  selected the Inspiron Notebook at the base sales price of $1,199, and he was then directed to

28  further purchasing options where he selected certain upgrades and add-ons.  After that, Mr. Brazil

CLASS ACTION COMPLAINT

was directed to Dell's "shopping cart," which listed the items, upgrades, and add-ons that he had selected for purchase and the pricing for his selections. In the shopping cart, Dell misrepresented to Mr. Brazil that he would, "Save $314 off this Dell Inspiron! Limited Time Offer!" Attached hereto as Exhibit "L" is a screen shot of Dell's "system configurator" Web page for the Inspiron Notebook, taken on the date of Mr. Brazil's purchase, along with an excerpt of the printout made by Mr. Brazil of his Dell "shopping cart."

73.    Relying on the representations described above, Mr. Brazil then purchased the Inspiron Notebook via Dell's online purchasing process, paying the base sales price of $1,199 plus an additional amount for his selected upgrades and add-ons. On the same day of, but after Mr. Brazil's purchase, Dell sent Mr. Brazil an email confirming his purchase order, attached hereto as Exhibit "M." Dell's order confirmation again stated that Mr. Brazil would "Save $314 off this Dell Inspiron!"

74.    On December 15, 2006, Mr. Brazil purchased from Dell the Inspiron Notebook at the base price of $1,199 after Dell had misrepresented to him that the price reflected a $314 savings he would receive from Dell's purported regular price of $1,514. In fact, Dell did not offer for sale, or make substantial sales of, the Inspiron Notebook at a price of $1,514 for a reasonable period of time before September 15, 2006. During the three months prior to Mr. Brazil's purchase, Dell's average offered base sales price for the Inspiron Notebook model was in fact $1,041.34, *not* $1,514. Attached hereto as Exhibit "N," and incorporated herein, is a chart setting forth the daily prices for the Inspiron Notebook during the three months prior to Mr. Brazil's purchase. The chart demonstrates that during these three months Dell consistently and falsely represented that the actual selling price was discounted from a regular sales price, and that as Dell changed the actual selling price from time to time, it also moved the false regular sales price in lockstep with it.

75.    Although Dell represented that the amount Mr. Brazil paid was a $314 "savings" from the regular sales price for the Inspiron Notebook, during the three months prior to Mr. Brazil's purchase, Dell always offered it for sale at an amount *less than* what Mr. Brazil paid.

CLASS ACTION COMPLAINT

76.     Rather than having received a $314 savings from the regular sales price of the Inspiron Notebook, as Dell had misrepresented, Mr. Brazil paid $157.66 ***more than*** the true regular sales price for the Inspiron Notebook, *i.e.*, $157.66 more than the average actual sales price offered by Dell for the three months preceding Mr. Brazil's purchase.

77.     Dell's representation to Mr. Brazil that the purchase price it offered reflected a $314 savings from Dell's regular sales price was false and misleading because, in fact, the price Dell advertised and Mr. Brazil paid was, as of the date of his purchase, the highest actual sales price for that computer that Dell ever advertised and offered.

## **CLASS ACTION ALLEGATIONS**

78.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and others similarly situated.  The "Class" is defined as follows:

> All persons or entities who are citizens of the State of California who purchased a Dell-branded product and/or service from Dell that:
>
> (1)  Dell advertised as discounted from a regular, list, or reference sales price, where Dell did not offer for sale, or make substantial sales of, the product or service at the regular, list, or reference sales price for reasonable period of time preceding the purchase;
>
> (2)  Dell advertised as including a "free" product or service, where: (a) Dell marked up the sales price of the product or service to compensate for, in whole or in part, the value or cost of the "free" product or service; (b) Dell advertised the "free" offer for six months or more during the 12 months preceding the purchase; (c) Dell advertised the "free" offer on more than three occasions in any one 12 month period; or (d) where less than 30 days have elapsed since Dell previously advertised the "free" offer; or
>
> (3)  Dell advertised as subject to a "rebate" discount from a regular, list, or reference sales price, where Dell did not offer for sale, or make substantial sales of, the product or service at the regular, list, or reference sales price for a reasonable period of time preceding the purchase (other than when offered in conjunction with the "rebate" discount).
>
> Excluded from the class are entities with assets of $25 million or more and entities that are owned or controlled by a corporation or entity with assets of $25 million or more.

CLASS ACTION COMPLAINT

79.     Further excluded from the Class are:  (1) Dell and its subsidiaries, affiliates, officers, and directors; (2) any entity in which Dell or any other excluded entity has a controlling interest; (3) Dell's legal representatives, predecessors, successors, assigns, and employees; and (4) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

80.     Certification of Plaintiffs' claims for class-wide treatment is appropriate under Texas law because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

81.     <u>Numerosity Under Rule 23(a)(1)</u>.  The members of the Class are so numerous that individual joinder of all the members is impracticable.  Plaintiffs are informed and believe that there are hundreds of thousands, if not millions, of customers throughout California that have been damaged by Dell's deceptive practices alleged herein.

82.     <u>Commonality Under Rule 23(a)(2)</u>.  This action involves common questions of law and fact, including, but not limited to, the following:

a.      Whether Dell (1) falsely advertises price discounts from false former sales prices; (2) falsely advertises the inclusion of "free" products and services; (3) falsely advertises rebate discounts from Dell's regular sales prices; and (4) directs customers to special Web pages, "offer codes," and "coupon codes" promising special discounts on computer products which are in fact not discounts;

b.      Whether Dell breached its promises to provide price discounts, free products and services, and rebates;

c.      Whether Dell's advertising and other representations directed to members of the Class contained false representations of material fact;

d.      Whether Dell's advertising and other representations directed to members of the Class constitute negligent misrepresentations, intentional misrepresentations, false promises and/or fraud;

CLASS ACTION COMPLAINT

1          e.      Whether Dell's practices constitute unfair, misleading and

2    deceptive trade practices in violation of Texas statutory law;

3          f.      Whether Dell has made false or misleading statements of fact

4    concerning the reasons for, existence of, or amount of price reductions.

5          g.      Whether Dell's statements concerning the reasons for, existence of,

6    or amount of price reductions were material, such that a reasonable consumer would attach

7    importance to and would be induced to act on the information in determining whether or not to

8    purchase a Dell computer product or service.

9          h.      Whether Dell's conduct, as alleged herein, is intentional and

10   knowing;

11         i.      Whether Dell's conduct, as alleged herein, is reckless;

12         j.      Whether the arbitration and class action waiver provision contained

13   in Dell's Terms and Conditions are contrary to public policy, unconscionable, and unenforceable

14   under California Civil Code sections 1668 and 1670.5 and other applicable law; and

15         k.      Whether Plaintiffs and members of the Class are entitled to

16   damages, exemplary damages, restitution, disgorgement of profits, and/or injunctive relief, as a

17   result of Dell's conduct alleged herein.

18         83.     Typicality Under Rule 23(a)(3).  The named Plaintiffs' claims are typical

19   of (and not antagonistic to) the claims of the members of the Class.  Plaintiffs and the members of

20   the Class they seek to represent have all been deceived and damaged by Dell's false

21   representations and corresponding failure to provide promised discounts and product values.

22         84.     Adequacy of Representation under Rule 23(a)(4).  Plaintiffs will fairly and

23   adequately protect the interests of the members of the Class, and the representative Plaintiffs'

24   interests are coincident with and not antagonistic to those of the other class members they seek to

25   represent.  Plaintiffs have retained competent counsel to represent them and the Class.

26         85.     The Class Can Be Properly Maintained Under Rules 23(b)(2) and (c).  Dell

27   has acted or refused to act, with respect to some or all issues presented in this Complaint, on

28

1    grounds generally applicable to the Class, thereby making appropriate final injunctive relief with

2    respect to the Class as a whole.

3           86.    The Class Can Be Properly Maintained Under Rules 23(b)(3) and (c).

4    Questions of law common to the members of the Class predominate over any questions affecting

5    only individual members with respect to some or all issues presented in this Complaint.  A class

6    action is superior to other available methods for the fair and efficient adjudication of this

7    controversy.  Individual litigation of the claims of all class members is impracticable because the

8    cost of litigation would be prohibitively expensive for each class member and would impose an

9    immense burden upon the courts.  Individualized litigation would also present the potential for

10   varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all

11   parties and to the court system resulting from multiple trials of the same complex factual issues.

12   By contrast, the conduct of this action as a class action, with respect to some or all of the issues

13   presented in this Complaint, presents fewer management difficulties, conserves the resources of

14   the parties and of the court system, and is the only means to protect the rights of all class

15   members.

16                              **CAUSES OF ACTION**

17                            **FIRST CAUSE OF ACTION**
                                **(Breach of Contract)**
18

19          87.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate,

20   as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this

21   Complaint, and further allege as follows.

22          88.    Dell offers its products and services for sale through its Web site and

23   through other advertising and marketing means.

24          89.    The material terms of Dell's sales agreements with Plaintiffs and all of the

25   members of the Class included Dell's promises to (1) sell computer products and services at

26   prices discounted or reduced from the regular sales prices of the products and services; (2)

27   include valuable "free" upgrades and "free" add-on products and services with the original

28

CLASS ACTION COMPLAINT

product or service; and/or (3) provide a specified dollar amount "rebate" discount from Dell's regular sales price.

90.     Plaintiffs and all members of the Class entered into respective agreements with Dell for the purchase of computer products.

91.     Plaintiffs and all members of the Class gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their respective agreements with Dell.

92.     Dell breached its agreements with Plaintiffs and members of the Class.

93.     Dell breached its agreements to sell computer products discounted from its regular sales prices because the discount amounts promised by Dell were false and were in fact applied against fabricated and inflated reference prices rather than against Dell's true regular prices.

94.     Dell breached its agreements to include valuable "free" upgrades and "free" add-on products and services with its computer products because the upgrades and add-ons were in fact not free. Dell directly recovered the cost of the "free" upgrades and add-ons by marking up the true regular sales price of the original product by an amount corresponding in whole or in part to the value of the "free" upgrade or add-on such that Dell's promise of a "free offer" was false.

95.     Dell breached its agreements to include "limited time" "free" upgrades and add-on products and services with its products because Dell typically included the upgrades and add-on products at no additional cost. Dell's "limited time" "free offers" were thus false.

96.     Dell breached its agreements to provide product mail-in "rebate" discounts from Dell's regular sales price because the rebate discounts were not true discounts at all. Dell directly recovered the cost of the "rebate" by marking up the true regular sales price of the product in an amount corresponding in whole or in part to the amount of the "rebate."

97.     By reason of Dell's breach of these agreements, Plaintiffs and all members of the Class did not get the actual discounts and savings that Dell promised them, did not receive products which had the value which Dell promised those products would have, were deprived of

the benefit of their bargained-for exchanges, and suffered damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)

98.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

99.     In the course of conducting its business of selling computer products and services, Dell has made misrepresentations of fact, to Plaintiffs and all members of the Class, concerning the existence and/or nature of price discounts by engaging in the following acts and practices:

a.     Falsely representing that customers were receiving a price discount from a referenced "regular" sales price of its computer products and services, where Dell in fact inflated the purported "regular" sales price such that the promised discount was false;

b.     Falsely representing that Dell was including valuable "free" upgrades and "free" add-on products and services with its computer products, where Dell in fact directly recovered the cost of the "free" upgrades and add-ons by marking up the true regular sales price of the original product in an amount corresponding in whole or in part to the value of the purportedly "free" upgrades or add-ons, such that the promised savings were false;

c.     Falsely representing that Dell was including "limited time" "free" upgrades and "free" add-on products and services with its computer products, where Dell in fact typically included the upgrades and add-ons at no additional cost such that the promised savings were false;

d.     Falsely representing that customers would receive rebate discounts from Dell's regular sales price of its computer products, where Dell in fact directly recovered the cost of the "rebate" by marking up the true regular sales price of the product in an amount corresponding in whole or in part to the amount of the promised "rebate"; and

CLASS ACTION COMPLAINT

1

e.       Falsely representing to customers, whom Dell directed to special

2   Web pages, "offer codes," and "coupon codes," that they were receiving special discounts on

3   computer products, where Dell in fact charged the same or more than Dell's true regular sales

4   price for the products.

5          100.    Dell's false representations were supplied to customers for the purpose of

6   affecting their purchase decisions.

7          101.    Dell had no reasonable grounds for believing that its misrepresentations

8   were true.

9          102.    Dell failed to exercise reasonable care and/or diligence in communicating

10   its misrepresentations to customers.

11          103.    Dell's schemes alleged herein focus reasonable purchasers' attention on

12   representations of price discounts and other savings or bargains from falsely represented regular

13   prices, and create a sense of urgency regarding the purchases by advertising that the purported

14   discounts are available "for a limited time," thereby giving the false impression that customers

15   will miss out on the purported discounts and free offers if they do not buy the products

16   immediately.  Dell thereby induces reasonable purchasers to buy the products from Dell and to

17   refrain from shopping for computer products and services from sellers other than Dell.

18          104.    Dell's false representations were the type of representations that are

19   regularly considered to be material; i.e., a reasonable person would attach importance to them and

20   would be induced to act on the information in making purchase decisions.

21          105.    Dell's false representations of discounts from "regular" prices and false

22   representations of rebate discounts and "free" offers are objectively material to the reasonable

23   consumer, and therefore reliance upon such representations may be presumed as a matter of law.

24          106.    Plaintiffs and members of the Class reasonably and justifiably relied to

25   their detriment on Dell's false representations.

26          107.    Dell's false representations were a factor in causing Plaintiffs and members

27   of the Class to purchase products and services from Dell.

28

CLASS ACTION COMPLAINT

108.    As a proximate result of Dell's misrepresentations, Plaintiffs and members of the Class were damaged in an amount to be determined at trial.

109.    Dell directly benefited from, and was unjustly enriched by, its systemic false representations.

**THIRD CAUSE OF ACTION**
**(Intentional Misrepresentation/Fraud)**

110.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

111.    In the course of conducting its business of selling computer products and services, Dell has intentionally made misrepresentations of fact, to Plaintiffs and all members of the Class, concerning the existence or nature of price discounts and "free" offers by engaging in the following acts and practices:

a.    Falsely representing that customers were receiving a price discount from a referenced "regular" sales price of its computer products and services, where Dell in fact inflated the purported "regular" sales price such that the promised discount was false;

b.    Falsely representing that Dell was including valuable "free" upgrades and "free" add-on products and services with its computer products, where Dell in fact directly recovered the cost of the "free" upgrades and add-ons by marking up the true regular sales price of the original product in an amount corresponding in whole or in part to the value of the purportedly "free" upgrades or add-ons, such that the promised savings were false;

c.    Falsely representing that Dell was including "limited time" "free" upgrades and "free" add-on products and services with its computer products, where Dell in fact typically included the upgrades and add-ons at no additional cost such that the promised savings were false;

d.    Falsely representing that customers would receive rebate discounts from Dell's regular sales price of its computer products, where Dell in fact directly recovered the

cost of the "rebate" by marking up the true regular sales price of the product in an amount corresponding in whole or in part to the amount of the promised "rebate"; and

e.      Falsely representing to customers whom Dell directed to special Web pages, "offer codes," and "coupon codes" that they were receiving special discounts on computer products, where Dell in fact charged the same or greater than Dell's true regular sales price for the products.

112.    The misrepresentations alleged herein were the type of representations that are regularly considered to be material; i.e., a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

113.    Dell knew that the misrepresentations alleged herein were false at the time Dell made them and/or acted recklessly in making such misrepresentations.

114.    In making the misrepresentations alleged herein, Dell intended that Plaintiffs and members of the Class would rely on such misrepresentations and purchase Dell computer products and services.

115.    Dell's false representations of discounts from "regular" prices and false representations of rebate discounts and "free" offers are objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

116.    Plaintiffs and members of the Class reasonably and justifiably relied to their detriment on Dell's intentional misrepresentations.

117.    Dell's intentional misrepresentations were a substantial factor in causing Plaintiffs and members of the Class to purchase products and services from Dell.

118.    As a proximate result of Dell's intentional misrepresentations, Plaintiffs and members of the Class suffered damages in an amount to be determined at trial.

119.    Dell directly benefited from, and was unjustly enriched by, its systemic intentional misrepresentations.

120.    Dell has acted with "malice," as that term is defined and used in Texas Civ. Practice & Remedies Code §§ 41.001 and 41.003, by engaging in the conduct alleged herein, which was specifically intended by Dell to cause substantial injury to the Plaintiffs and members

CLASS ACTION COMPLAINT

of the Class.  Moreover, Dell's conduct alleged herein constitutes "fraud," as that term is defined and used in Texas Civ. Practice & Remedies Code §§ 41.001 and 41.003, because such conduct involved intentional misrepresentations, deceit, and concealment, and was done with the intent to cause injury to Plaintiffs and members of the Class.  As a result, Plaintiffs and members of the Class are entitled to exemplary damages under Texas Civ. Practice & Remedies Code § 41.003.

**FOURTH CAUSE OF ACTION**
**(False Promise/Fraud)**

121.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

122.    Dell made false promises to Plaintiffs and all members of the Class to: (1) sell computer products and services at prices discounted or reduced from their regular sales prices; (2) include valuable "free" upgrades and "free" add-on products and services with the original products or services; and (3) provide a specified dollar amount "rebate" discount from Dell's regular sales prices.

123.    Dell made such false promises for the purpose of inducing Plaintiffs and members of the Class to enter into agreements with Dell to purchase computer products and services.

124.     The false promises alleged herein were the type of promises that are regularly considered to be material; i.e. a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

125.    Dell made such false promises with the knowledge that it would not fulfill them and with the intention of not fulfilling them.

126.    The false promises alleged herein are objectively material to the reasonable consumer, and therefore reliance upon such promises may be presumed as a matter of law.

127.    Plaintiffs and members of the Class reasonably and justifiably relied to their detriment on Dell's false promises.

CLASS ACTION COMPLAINT

1    128.    Dell's false promises were a substantial factor in causing Plaintiffs and

2    members of the Class to purchase products and services from Dell.

3    129.    As a proximate result of Dell's false promises, Plaintiffs and members of

4    Class suffered damages in an amount to be determined at trial.

5    130.    Dell directly benefited from, and was unjustly enriched by, having made

6    the false promises alleged herein.

7    131.    Dell has acted with "malice," as that term is defined and used in Texas Civ.

8    Practice & Remedies Code §§ 41.001 and 41.003, by engaging in the conduct alleged herein,

9    which was specifically intended by Dell to cause substantial injury to the Plaintiffs and members

10   of the Class.  Moreover, Dell's conduct alleged herein constitutes "fraud," as that term is defined

11   and used in Texas Civ. Practice & Remedies Code §§ 41.001 and 41.003, because such conduct

12   involved Dell making material promises, which Dell knew to be false, with the intent to cause

13   injury to Plaintiffs and members of the Class.  As a result, Plaintiffs and members of the Class are

14   entitled to exemplary damages under Texas Civ. Practice & Remedies Code § 41.003.

### FIFTH CAUSE OF ACTION
**(Unjust Enrichment)**

17   132.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate,

18   as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this

19   Complaint, and further allege as follows.

20   133.    As alleged herein, Dell intentionally and/or recklessly made false

21   representations to Plaintiffs and all members of the Class, to induce them to purchase Dell

22   products and services.  Plaintiffs and members of the Class reasonably and justifiably relied on

23   these false representations in purchasing Dell products and services.

24   134.    As alleged herein, Dell made false promises to Plaintiffs and all members

25   of the Class which Dell did not intend to keep, and which Dell in fact did not keep, to induce

26   Plaintiffs and members of the Class to purchase Dell products and services.  Plaintiffs and

27   members of the Class reasonably and justifiably relied on these false promises in purchasing Dell

28   products and services.

CLASS ACTION COMPLAINT

135.     As alleged herein, Plaintiffs and members of the Class did not receive the savings, discounts and product values that Dell promised them.

136.     By its deceptive, misleading and unlawful conduct alleged herein, Dell obtained money from, and was unjustly enriched at the expense of, Plaintiffs and members of the Class.

137.     It would be inequitable and unconscionable for Dell to retain the profits, benefits, and other compensation it obtained from its deceptive, misleading, and unlawful conduct.

138.     Plaintiffs, on behalf of themselves and the members of the Class, are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Dell from its deceptive, misleading and unlawful conduct.

## SIXTH CAUSE OF ACTION
### (Restitution)

139.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

140.     By its deceptive, misleading and unlawful conduct alleged herein, Dell obtained money from, and was unjustly enriched at the expense of, Plaintiffs and members of the Class.

141.     It would be inequitable and unconscionable for Dell to retain the profits, benefits, and other compensation it obtained from its deceptive, misleading, and unlawful conduct.

142.     Plaintiffs, on behalf of themselves and the members of the Class, are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Dell from its deceptive, misleading and unlawful conduct.

CLASS ACTION COMPLAINT

## SEVENTH CAUSE OF ACTION
### (Texas Bus. & Com. Code §§ 17.41, *et seq.*)

143.   Plaintiffs, on behalf of themselves and the Class, reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

144.   Plaintiffs and the members of the Class are "consumers," as that term is defined in Texas Bus. and Com. Code § 17.45, and are entitled to the protection of, and may seek relief under, Texas Bus. and Com. Code §§ 17.41, et. seq.

145.   Through its false representations and other misconduct alleged herein, Dell has committed numerous acts that constitute false, misleading, and deceptive trade practices in violation of Texas Bus. and Com. Code §§ 17.41, et. seq.

146.   Through its practice of advertising false former prices, false price discounts, false rebate discounts, and false "free" offers for its computer products and services, Dell has misrepresented the quality and value of its products and services in violation of Texas Bus. and Com. Code § 17.46(b)(7).

147.   Through its practice of advertising false former prices, false price discounts, false rebate discounts, and false "free" offers for its computer products and services, Dell has made false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions in violation of Texas Bus. and Com. Code § 17.46(b)(11).

148.   The false representations alleged herein were made by Dell to Plaintiffs and all members of the Class.

149.   Dell's false representations alleged herein are the type of representations that are regularly considered to be material; i.e. a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

150.   Dell's false representations alleged herein are objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

151.    Plaintiffs and members of the Class reasonably and justifiably relied to their detriment on Dell's false representations.

152.    Dell's false representations were a factor in causing Plaintiffs and members of the Class to purchase products and services from Dell.

153.    As a proximate result of Dell's unfair, misleading and deceptive trade practices alleged herein, Plaintiffs and members of the Class have suffered damages in an amount to be determined at trial.

154.    Dell has directly benefited from, and has been unjustly enriched by, engaging in the unfair, misleading and deceptive trade practices alleged herein.

155.    Through its practices alleged herein, Dell has intentionally failed to disclose to customers material information which was known to Dell concerning its goods or services, with the intention to induce such customers into purchasing Dell computer products and services, in violation of Texas Bus. and Com. Code § 17.46(b)(24).  Through its practices alleged herein, Dell has taken unfair advantage of Plaintiffs' and class members' inferior knowledge and experience regarding computer products and services, to an extent that would generally be considered unconscionable, as that term is defined in Texas Bus. and Com. Code § 17.45.  Moreover, Dell made the false representations alleged herein with knowledge of their falsity, and with the intention of inducing Plaintiffs and members of the class to rely on them in making purchase decisions.  As a result, Plaintiffs and members of the Class are entitled to exemplary damages pursuant to Texas Bus. and Com. Code § 17.50(b)(1).

156.    Plaintiffs have already provided sufficient notice to Dell, under Texas Bus. & Com. Code §§ 17.501 and 17505, of Dell's violations of Texas Bus. & Com. Code §§ 17.41, et. seq.  Prior to filing suit in this case, on March 22, 2007, Plaintiffs' counsel, on behalf of Plaintiff Chad Brazil, served Dell by United States certified mail, return receipt requested, with notice of Dell's violations of California Civil Code §§ 1750, *et seq.* ("Consumers Legal Remedies Act" or "CLRA").  *See* Exhibit "O," attached hereto.  Dell acknowledged receipt of the demand notice on March 28, 2007.  The conduct at issue in that notice is the same conduct that is at issue in this amended Complaint.

CLASS ACTION COMPLAINT

1

## PRAYER FOR RELIEF

2

Plaintiffs, on behalf of themselves and the Class, request that the Court order relief

3

and enter judgment against Dell Inc. as follows:

4

A.      An order certifying the proposed members of the Class and appointing

5

Plaintiffs and their counsel of record to represent the Class;

6

B.      An order that Dell Inc. be permanently enjoined from its improper

7

activities and practices described herein;

8

C.      A judgment awarding Plaintiffs and members of the Class actual damages

9

in an amount according to proof for Dell Inc.'s breaches of its promises to provide price

10

discounts, rebate discounts, and free offers, and for all other of Dell Inc.'s conduct alleged under

all causes of action herein entitling Plaintiffs and members of the Class to actual damages;

11

D.      A judgment awarding Plaintiffs and members of the Class restitution

12

including, without limitation, disgorgement of all profits and unjust enrichment obtained by Dell

13

Inc. as a result of its unlawful, unfair, and fraudulent business practices and conduct alleged

14

herein;

15

E.      A judgment awarding Plaintiffs and members of the Class exemplary

16

damages for Dell's knowing, willful and intentional false advertising schemes, as alleged herein;

17

F.      Pre-judgment and post-judgment interest;

18

G.      Attorneys' fees, expenses, and the costs of this action; and

19

H.      All other and further relief as the Court deems necessary, just and proper.

20

21

## JURY DEMAND

22

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury for all issues so

23

triable under the law.

24

25

26

27

28

CLASS ACTION COMPLAINT

1

2     Dated: July 25, 2008                          CHAD BRAZIL and STEVEN SEICK,

3
                                                    By: _____
4                                                         Michael W. Sobol

5                                                   Michael W. Sobol (State Bar No. 194857)
                                                    Roger N. Heller (State Bar No. 215348)
6                                                   Allison S. Elgart (State Bar No. 241901)
                                                    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
7                                                   275 Battery Street, 30th Floor
                                                    San Francisco, CA  94111-3339
8
                                                    Daniel M. Hattis (State Bar No. 232141)
9                                                   Angelo Salvatore Parise (State Bar No. 165690)
                                                    LAW OFFICES OF ANGELO SALVATORE PARISE
10                                                  16870 West Bernardo Drive, Suite 400
                                                    San Diego, CA  92127
11                                                  Telephone:  (858) 674-6660
                                                    Facsimile:   (858) 674-6661
12

13

14
      775895.1
15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT