**E-FILED on**   3/29/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHAD BRAZIL and STEVEN SEICK, individually and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>    v.<br><br>DELL INC. and Does 1-10,<br><br>             Defendants. | No. C-07-01700 RMW<br><br>**[REDACTED]**<br>ORDER FINDING THAT CALIFORNIA LAW GOVERNS PLAINTIFFS' CLAIMS<br><br>**[Re Docket No. 113]** |

Plaintiffs move for class certification. In the alternative, plaintiffs seek reconsideration of the court's earlier finding that Texas law governs plaintiffs' statutory and common law claims. For the reasons set forth below, the court finds that California law governs plaintiffs' claims and thus defers ruling on class certification pending an amended complaint.

## I. BACKGROUND

On June 15, 2006, plaintiff Steven Seick purchased directly from defendant Dell Inc. ("Dell") through its online purchasing process a Dell Dimension B110 desktop computer ("Dimension Desktop") and some associated peripheral Dell products. Second Amended Complaint ("SAC") ¶ 63. Dell allegedly misrepresented to Seick that the base price of the Dimension Desktop reflected a $50 savings from Dell's regular price for that computer. *Id.* ¶ 64. During the three months prior to Seick's purchase, however, Dell's average offered sales price for the Dimension Desktop model was

1  allegedly even lower than the amount paid by Seick.  Consequently, rather than having received any
2  discount, Seick asserts that he paid $1.49 in excess of the true regular sales price for the Dimension
3  Desktop.  *Id.* ¶¶ 67-68.  In addition, although Dell represented to Seick that the offer for the $50
4  savings would expire on June 22, 2006, Dell in fact continued to make the offer until October 12,
5  2006.  *Id.* ¶ 69.

6  On December 15, 2006, also through Dell's website, plaintiff Chad Brazil purchased a Dell
7  Inspiron E1505 notebook computer ("Inspiron Notebook") and some peripheral computer products.
8  *Id.* ¶ 71.  On similar grounds as Seick, Brazil alleges that rather than having received a $314 savings
9  from the regular sales price of the Inspiron Notebook as Dell represented, he paid $157.66 more for
10  the Inspiron Notebook than the average actual sales price for that model offered by Dell for the three
11  months preceding his purchase.  *Id.* ¶ 76.

12  On behalf of themselves and others similarly situated, Brazil and Seick bring a class action
13  claiming that Dell deceives customers by creating the illusion of discounts and savings through three
14  types of false representations: false discounts from false former prices, false rebate discounts, and
15  false free upgrades.  False former prices purportedly mislead purchasers because products are not
16  sold at non-marked down or "regular" prices with sufficient regularity.  False rebates and false "free"
17  upgrades purportedly mislead purchasers because the listed price has been marked up to include the
18  cost of the rebate or to account for some or all of the free upgrade.

19  In their First Amended Complaint ("FAC"), plaintiffs alleged various common law claims,
20  claims under California Bus. & Profs. Code §§ 17500 and 7200, *et seq.*, and claims under Cal. Civ.
21  Code §§ 1750, *et seq.*  Dell brought a motion to dismiss, arguing that the complaint was defective
22  because: (1) the law of Texas, not California, should apply to the dispute; and (2) the complaint's
23  class allegations failed to meet the requirements of Fed. R. Civ. P. 23.  On July 7, 2008, the court
24  granted the motion to dismiss with leave to amend.  In that order, the court ruled that Texas law
25  applied and that the class definition was non-ascertainable because it included the phrase "falsely
26  advertised," which would require a legal determination to populate the class.  After this ruling,
27  plaintiffs filed a Second Amended Complaint ("SAC"), amending their class definition and alleging
28  claims under Texas law.  Dell moved again to dismiss and to strike the class action allegations.  On

1  November 14, 2008, the court denied both motions. In that order, the court held that while it
2  appeared that populating the proposed class definition would be an arduous, fact-bound process,
3  adjudication of whether the class was non-ascertainable should occur after class certification has
4  been briefed.

5  Brazil and Seick now move for class certification with a newly amended class definition.

## II. ANALYSIS

Class certification is a matter within the discretion of the district court, *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001), although the determination must be supported by sufficient factual findings, *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1161 (9th Cir. 2001), and a proper understanding of the applicable law, *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001).

### A.   Class Definition

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D.Cal. 2009). "A class definition should be precise, objective, and presently ascertainable." *Id.* (citing *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D.Cal.1998)).

Plaintiffs offer the following proposed class definition: "All persons or entities who are citizens of the State of California who on or after March 23, 2003, purchased via Dell's Web site Dell-branded products advertised with a represented discount or other savings as indicated and set forth [in attached schedules, with limited exclusions]." Plaintiffs' amended class definition thus includes all California citizens (with limited exclusions) who purchased through Dell's website certain models of Dell computers within specified date ranges. Unlike earlier proposed class definitions, this class definition does not require a legal determination in order to ascertain class

1 membership. Class membership is determined based on a set of objective criteria, making the class easily identifiable and sufficiently ascertainable for certification.[1]

### B. Rule 23(a) Prerequisites

Federal Rule of Civil Procedure 23(a) lists four conjunctive criteria that must be met to certify a class action: numerosity, commonality of issues, typicality of the representative plaintiffs' claims, and adequacy of representation. Fed. R. Civ. P. 23(a). A class may only be certified if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). The plaintiff bears the burden of demonstrating the requirements of Rule 23(a) are satisfied. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

In this case, there is no dispute regarding the satisfaction of the numerosity, commonality, and adequacy requirements. The only issue in dispute is whether the typicality requirement has been met.

#### 1. Typicality

The typicality requirement serves to "assure that the interest of the named representative aligns with the interests of the class." *Id.* "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiffs seek to represent Dell customers who made purchases through either the Home & Home Office ("HHO") segment or the Small & Medium Business ("SMB") segment of Dell's website. Dell contends that Brazil and Seick's computer purchases, both which were made through the HHO segment of Dell's website, are not typical of purchases made through the SMB segment of Dell's website. However, Seick purchased his Dell computer for his law business, and it has been used solely by his secretary in the administration of his law office. Dep. Steven A. Seick, Mar. 5, 2009 ("Seick Dep.") 24:21-25:2, 54:3-7. Though Seick chose to make his purchase through the HHO segment of the Dell website, given his small business purpose, his experience falls within the realm of a typical SMB

---

[1] However, as explained below, the current class definition raises typicality concerns.

1  segment purchase. In light of the permissive standard for typicality, *Hanlon,* 150 F.3d at 1020, Seick
2  and Brazil's claims are sufficiently typical of claims by both HHO and SMB customers to meet Rule
3  23(a)'s requirements in this regard.

4      Dell also challenges the typicality of class representatives' claims with respect to the alleged false
5  rebates and false free upgrades. Plaintiffs allege three types of misrepresentations: false discounts from
6  false former prices, false rebates, and false free upgrades. The nature of a false rebate claim or a false
7  free upgrade claim differs substantially from the nature of a false former price claim. False former
8  prices purportedly mislead purchasers because products are not sold at non-marked down or "regular"
9  prices with sufficient regularity. False rebates and false free upgrades purportedly mislead purchasers
10 because the listed price has been marked up to include the cost of the rebate or to account for some or
11 all of the free upgrade. Even plaintiffs seem to acknowledge that a jury could find that Dell made false
12 representations with regard to the alleged false discounts from false former prices, while at the same
13 time finding that Dell did not make false representations with regard to the alleged false rebates or false
14 free upgrades. Decl. Michael W. Sobol Supp. Pls.' Reply, Ex. A, Special Verdict Form. Brazil and
15 Seick, the class representatives, have not experienced any allegedly false rebates or false free upgrades.
16 Dep. Chad Brazil, Mar. 5, 2009 ("Brazil Dep.") 131:18-22, 134:22-25; Seick Dep. 102:11-14, 103:4-7.
17 Therefore, their claims are not typical with respect to these types of allegedly false representations.
18 Accordingly, the court finds that class certification is inappropriate with respect to claims based on the
19 alleged false rebates or false free upgrades.

20     **C.   Rule 23(b) Types of Class Actions**

21     In addition to fulfilling the four prerequisites of Rule 23(a), a class action must also meet the
22 disjunctive requirements of Rule 23(b) by satisfying the criteria set forth in at least one of the three types
23 of class actions. Fed. R. Civ. P. 23. It is undisputed that the class cannot be certified under Rule
24 23(b)(1), but plaintiffs allege that this class action may be maintained under either Rule 23(b)(2) or Rule
25 23(b)(3).

26     **1.   Certification as (b)(2) Class**

27     For a class to be certified under Rule 23(b)(2), "the claim for monetary damages must be
28 secondary to the primary claim for injunctive or declarative relief." *Molski v. Gleich*, 318 F.3d 937, 947

(9th Cir. 2003). Plaintiffs seek substantial monetary damages, including actual damages, disgorgement of profits, and exemplary damages. SAC at 35. Though plaintiffs also seek injunctive relief, the claim for monetary damages is not secondary to a primary claim for injunctive relief, making class certification under Rule 23(b)(2) inappropriate.

### 2. Certification as a (b)(3) Class

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Requiring predominance is a means for "prevent[ing] class action litigation when the sheer complexity and diversity of the individual issues would overwhelm or confuse the jury or severely compromise a party's ability to present viable claims or defenses." *Sw. Ref. Co., Inc. v. Bernal*, 22 S.W.3d 425, 434 (Tex. 2000). "The test for predominance is not whether common issues outnumber uncommon issues, but . . . 'whether common or individual issues will be the object of most of the efforts of the litigants and the court.'" *Id.*

This case undoubtedly presents various questions of law and fact that are common to the class. The issue, however, is whether these common questions of law or fact predominate over the need for individualized inquiries. Plaintiffs must prove reliance in order to prevail on most of its claims, including negligent misrepresentation, intentional misrepresentation/fraud, false promise/fraud, and various Deceptive Trade Practices-Consumer Protection Act ("DTPA") claims. Because reliance plays such a central role in plaintiffs' case, to meet Rule 23(b)(3)'s predominance requirement, plaintiffs must be able to prove reliance with common evidence.

#### a. Reliance under Texas Law

Under Texas law, it is theoretically possible to bring a class action where reliance is a requirement of the underlying claims. As explained by the Texas Supreme Court, the standard for proof of reliance does not change whether a case is being tried individually or as a class action: "evidence insufficient to prove reliance in a suit by an individual does not become sufficient in a class action simply because there are more plaintiffs." *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693 (Tex. 2002). Thus, "[i]f a plaintiff could prove reliance in an individual action with the same evidence offered

ORDER FINDING THAT CALIFORNIA LAW GOVERNS PLAINTIFFS' CLAIMS—No. C-07-01700 RMW
CCL 6

to show class-wide reliance, then the issue is one of law and fact common to the class." *Id.* at 694. The Texas Supreme Court left open the question of whether a class asserting a cause of action requiring proof of reliance could ever actually be certified. *Id.*

Since *Schein*, Texas courts faced with proposed class actions involving the issue of reliance have found that "although the supreme court in *Schein* 'did not entirely preclude class actions in which reliance was an issue, . . . it did make such cases a near-impossibility.'" *Texas South Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 237 (Tex. App. 2008) (quoting *Fidelity & Guaranty Life Ins. Co. v. Pina*, 165 S.W.3d 416, 423 (Tex. App. 2005)). Unlike in California, where "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material," *In re Tobbacco II Cases*, 466 Cal. 4th 298, 397 (2009), Texas courts require individualized proof of reliance and reject the idea that reliance may be inferred from the fact that a reasonable person would find the misrepresentation to be important to his decision-making process, *see Peltier Enterprises, Inc. v. Hilton*, 51 S.W.3d 616, 623 (Tex. App. 2000) (requiring "individualized proof . . . [of] each individual plaintiff's reliance on that misrepresentation . . . a court cannot presume that because the differential [between what was represented and the truth] is substantial, it *does* matter to the buyer"); *see also GMAC Commercial Mortgage Corp. v. Texas Bay Oaks Ltd. P'ship*, 2005 Tex. App. LEXIS 6857, at *22 (Aug. 24, 2005) (finding "individual proof is necessary" to show reliance). As a result, it is virtually impossible to prove class-wide reliance on misrepresentations through common evidence.

Plaintiffs argue that *Lubin v. Farmers Group, Inc.*, 2009 WL 3682602 (Tex. App. Nov. 6, 2009), establishes that mere proof of payment for Dell computers by customers would suffice to establish reliance. Plaintiffs appear to rely on the following line in the *Lubin* decision: "to the extent that proof of reliance would be required in this type of case involving allegations of 'uniform' misconduct by [defendant] Farmers in the premiums it charges, payment by the policyholders, on its own, would constitute proof of reliance." *Id.* at *21. When read in context, this statement does not support plaintiffs' assertion; moreover, *Lubin* is inapplicable to this case for a variety of reasons. In *Lubin*, it was "not entirely clear that individual reliance is actually an element of the claims" because there was no allegation that the defendant insurance company made specific misrepresentations to its policyholders or that the policyholders relied on those misrepresentations. *Id.* at *20. Here, plaintiffs

1 allege specific misrepresentations and reliance upon those misrepresentations, and there is no question
2 that reliance is a required element of many of their causes of action. Also, in *Lubin*, the court discusses
3 the fact that it is examining certification of a *settlement* class, which does not require the same level of
4 proof as a *non-settlement* class action because if the settlement is approved, no proof of individual
5 reliance need be offered. *Id.* at *21. Here, the court is considering certification of a non-settlement class
6 action, and therefore, "members of [this] non-settlement class action[] are held to the same level of proof
7 that would be required for individual suits." *Id.*

### b. Plaintiffs' Common Evidence of Reliance

Plaintiffs contend that the following forms of common evidence are sufficient to prove class-wide reliance: (1) evidence that misrepresentations were material and communicated to all class members, (2) Dell's studies on the impact of reference prices on customer behavior, and (3) empirical research on the impact of reference prices on customers' purchase decisions. The standard for evaluating plaintiffs' proffered common evidence of class-wide reliance is whether such common proof would be sufficient to establish reliance if Brazil and Seick's claims were brought in an individual action, without relying upon individualized evidence, such as their deposition testimony. *See Schein*, 102 S.W.3d at 693.

With respect to (1) evidence that misrepresentations were material, plaintiffs offer an expert report supporting their contention that Dell's alleged misrepresentations regarding discounts have an effect on demand elasticity, resulting in a price impact that affects all customers. Class Cert. Report Paul H. Rubin, Ph.D. According to plaintiffs, the effect that the alleged misrepresentations have on demand elasticity proves that the misrepresentations are material, and from this materiality, the court should infer reliance. However, it is not necessary for every class member to rely on the alleged misrepresentations for the misrepresentations to impact demand elasticity. Moreover, as discussed above, Texas courts have rejected the idea that reliance may be inferred from the fact that a reasonable person would find the misrepresentation important to their decision-making process. Because what is material to one person may not be material to another, Texas courts require proof of actual reliance on an individual basis. *See Peltier Enterprises*, 51 S.W.3d at 623 ("answering the questions of materiality and reliance as to one plaintiff does not answer the same question as to other putative class members").

Consequently, evidence that alleged misrepresentations have an effect on demand elasticity is insufficient to prove class-wide reliance under Texas law.

As for (2) Dell's studies on the impact of reference prices on customer behavior, these studies show Dell's desire for customers to rely upon its representations. Nonetheless, evidence that Dell *intended* for its customers to rely upon the allegedly false former prices cannot by itself establish that Brazil and Seick *actually relied* upon said prices. In *Schein*, the Texas Supreme Court held that plaintiffs failed to establish actual reliance by proffering evidence of defendant's intent to induce reliance. 102 S.W.3d at 694 ("there is evidence that Schein *wanted* purchasers to rely on its advertisements . . . but there is no evidence that purchasers *actually did* rely on Schein's statements so uniformly that common issues of reliance predominate over individual issues"). Likewise, Brazil and Seick cannot satisfy their burden to prove actual reliance by proffering evidence of Dell's intent to induce reliance.

Moreover, although Dell's studies show that reference prices have some actual impact on customer behavior in the aggregate, they remain insufficient to prove actual reliance in individual instances. Examining one of the studies set forth by plaintiffs as common proof may be illustrative of this point. [redacted] Studies such as this one demonstrate that reference prices have an impact on aggregate sales, but they also show that many sales occur without reliance upon an advertised reference price. Consequently, these types of studies cannot prove that individual customers, such as Brazil and Seick, actually relied upon the allegedly false former price in making their purchase decisions.

For the same reason, (3) empirical research on the impact of reference prices on customers' purchase decisions only establishes that reference prices change aggregate customer demand and fails

1  to prove actual reliance in individual instances.² Because the common evidence offered by plaintiffs
2  to prove reliance are insufficient to establish reliance in an individual action, they also fail to prove
3  class-wide reliance. *Schein*, 102 S.W.3d at 693. Thus, plaintiffs have failed to demonstrate that they
4  can meet their burden of proof under Texas law such that common issues would predominate over
5  individualized inquiries.

### c.    Choice of Law

Since the court's earlier order holding that Texas law governs plaintiffs' statutory and common law claims, the court has done further analysis of Texas law and found that although it is theoretically possible to bring a class action when reliance on misrepresentations is an underlying issue, it is very difficult, if not impossible, to actually do so. *See Texas South Rentals,* 267 S.W.3d at 237 (finding that *Schein* made class actions in which reliance was an issue "a near-impossibility"). As a result, "no court since *Schein* has ever found evidence of class-wide reliance" in such a case. *Id.* In contrast, class actions that require plaintiffs to prove reliance on misrepresentations can be and have been certified under California law because California law creates a presumption, or at least an inference, of reliance whenever a misrepresentation is material, meaning a reasonable person would attach importance to its existence or nonexistence in making a decision regarding the transaction in question. *See In re Tobacco II Cases*, 46 Cal. 4th at 327; *see also Occidental Land, Inc. v. Super. Ct.*, 18 Cal. 3d 355, 363 (1976); *Vasquez v. Super. Ct*., 4 Cal. 3d 800, 805 (1971).

Moreover, "the right to seek class action relief in consumer cases has been extolled in California courts." *America Online, Inc. v. Super. Ct.*, 90 Cal. App. 4th 1, 17 (2001). Indeed, courts have recognized this right to seek class action relief in consumer cases as a fundamental public policy of California and held that where enforcement of a forum selection clause would eliminate the class action remedy, "[t]he unavailability of class action relief . . . is sufficient in and by itself to preclude enforcement of [a] forum selection clause." *Id.* at 18.

---

² Though plaintiffs' expert, Dr. Compeau, asserts that reference pricing affects every class member, he also relies on studies showing an aggregate effect. Class Cert. Report Larry D. Compeau.

ORDER FINDING THAT CALIFORNIA LAW GOVERNS PLAINTIFFS' CLAIMS—No. C-07-01700 RMW
CCL                                                               10

In determining the enforceability of contractual choice of law provisions, California courts are to apply the principles set forth in Restatement Section 187, *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 464-65 (1992), which provides in part:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflicts of Law § 187(2). As discussed in the court's previous order, there is no question that both Texas and California have a substantial relationship to the parties and the transaction. The parties dispute whether application of Texas law, pursuant to the Texas choice-of-law clause in plaintiffs' purchase agreements, is contrary to a fundamental policy of California and whether California has a materially greater interest than Texas in the determination of the consumer protection issues in this case.

Because the remedy of a class action is, for all practical purposes, eliminated by application of Texas law, and provision of a class action remedy in consumer cases is recognized as a fundamental California public policy, the court finds that application of Texas law would be contrary to a fundamental policy of California. Furthermore, since the proposed class is comprised entirely of California citizens who made purchases through Dell's Web site, the court finds that California has a materially greater interest than Texas in the consumer protection issues at stake in this case. Consequently, the court will not enforce the Texas choice-of-law provision in plaintiffs' purchase agreements.

### III. ORDER

For the foregoing reasons, the court finds that California law governs plaintiffs' statutory and common law claims and defers ruling on the motion for class certification. Plaintiffs shall have 20 days to amend their complaint.

DATED: 3/29/10

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

| | |
|---|---|
| Michael W. Sobol | msobol@lchb.com |
| Allison Stacy Elgart | aelgart@lchb.com |
| Angelo Salvatore Parise | parise@pariselaw.com |
| Daniel Morley Kekoa Hattis | dhattis@pariselaw.com |
| Rachel Geman | rgeman@lchb.com |
| Roger Norton Heller | rheller@lchb.com |

**Counsel for Defendant:**

| | |
|---|---|
| Carl Brandon Wisoff | bwisoff@fbm.com |
| Douglas R. Young | dyoung@fbm.com |
| Kim Brightwell | kbrightwell@reevesbrightwell.com |
| Paul A. Alsdorf | palsdorf@fbm.com |
| Paul Schlaud | pschlaud@reevesbrightwell.com |
| Sinead O'Carroll | socarroll@reevesbrightwell.com |
| Thomas E. Gilbertsen | tgilbertsen@kelleydrye.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 3/29/10

CCL
**Chambers of Judge Whyte**