Michael W. Sobol (State Bar No. 194857)
Roger N. Heller (State Bar No. 215348)
Allison S. Elgart (State Bar No. 241901)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

Rachel Geman (NY Bar No. RG 0998) (*Pro Hac Vice*)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Daniel M. Hattis (State Bar No. 232141)
Angelo Salvatore Parise (State Bar No. 165690)
LAW OFFICES OF ANGELO SALVATORE PARISE
16870 West Bernardo Drive, Suite 400
San Diego, CA  92127
Telephone:  (858) 674-6660
Facsimile:  (858) 674-6661

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CHAD BRAZIL and STEVEN SEICK, individually and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>v.<br><br>DELL INC. and Does 1-10,<br><br>             Defendant. | Case No. C-07-01700 RMW<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Dept.:        6<br>Judge:       Hon. Ronald M. Whyte |

Pursuant to the Court's Order dated March 29, 2010 (Docket No. 213), which granted Plaintiffs leave to amend their Second Amended Class Action Complaint, Plaintiffs hereby file their Third Amended Class Action Complaint.

Plaintiffs, by and through their attorneys, bring this civil action for damages, injunctive relief, disgorgement of profits, restitution, and costs of suit, on behalf of themselves

1   and all others similarly situated.  Upon personal knowledge as to their own acts and status and

2   upon information and belief as to all other matters, Plaintiffs allege the following:

3   **NATURE OF THE ACTION**

4        1.     This is a class action against Dell Inc. ("Dell") for falsely advertising price

5   discounts for its computer products, failing to deliver promised discounts, and failing to deliver

6   products that are of the value represented by Dell.  In its direct marketing to consumers and

7   businesses, primarily via its Internet Web site, but in print and other advertising as well, Dell

8   advertises false former prices, false price discounts, and false savings for its computer products.

9   Dell's integrated marketing scheme of advertising false savings from false former prices increases

10  the demand for its products.  Dell misrepresents the nature and amount of product discounts by

11  purporting to offer specific dollar discounts from expressly referenced former prices.  These

12  discounts are false because the referenced former prices are fabricated and fail to represent Dell's

13  true regular price for the product.  Dell purports to "establish" its former reference prices by

14  sporadic sales made at those prices *in conjunction with* false rebate discounts and false free

15  upgrades and add-ons.  However, Dell's rebate "discounts" from these same false former prices

16  and the offers of supposedly "free"  products and services are in fact false because Dell directly

17  recovers the cost of the rebates and "free" add-ons by marking up the sales price of the original

18  product by the value of the rebate or "free" offer.   As a result of this scheme, consumers end up

19  paying more than they bargained for because they do not receive the price discounts and value of

20  products that Dell promises them.

21       2.     Dell's false price discount scheme is rampant and consistent across nearly

22  all of Dell's desktop, notebook, server, and storage lines.  For example, on March 12, 2007, on

23  the "Home & Home Office" section of its Web site, Dell offered for sale more than seventy-four

24  (74) models of desktop and notebook computers across 15 product lines; on the Small Business

25  section of its Web site Dell offered for sale more than one hundred and sixty (160) desktop,

26  notebook, and server models across 41 product lines.  For nearly every one of these models, Dell

27  displayed a false discount from a false regular price or displayed a false "free" offer.  Dell's

28

conduct is so pervasive and consistent as to make it apparent that the heart of Dell's marketing plan is to intentionally deceive the public.

3.      Dell's false pricing scheme violates California law prohibiting advertising goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions.  Dell's conduct also breaches its agreements with purchasers for the sale of its computer products.  Plaintiffs, individually and on behalf of all others similarly situated, seek damages, restitution, punitive damages, and injunctive relief to stop Dell's rampant false advertising.

## THE PARTIES

4.      Plaintiff Chad Brazil is an individual residing in Santa Cruz, California.

5.      Plaintiff Steven Seick is an individual who owns and operates a business in San Diego, California.

6.      Defendant Dell Inc. ("Dell") is a Delaware corporation with its principal executive offices at One Dell Way, Round Rock, Texas.

7.      Dell designs, develops, manufactures, markets, sells and supports a range of computer systems and services that are customized to customer requirements.  These include notebook and desktop computers, servers, networking products, printing and imaging systems, software and peripherals, and global services.  Dell markets and sells its products and services directly to its customers, which include individual consumers, small to medium-sized businesses, larger corporations, and government, healthcare, and education accounts.  Dell employs tens of thousands of individuals.

8.      Plaintiffs do not know the true names and capacities of Does 1-10, inclusive, whether individual, corporate, association, or otherwise, and, therefore, sues said defendants, and each of them, by such fictitious names.  Plaintiffs will amend this Complaint to show their true names and capacities when they have been ascertained.  Plaintiffs are informed and believe, and on the basis of that belief allege, that each of these Doe defendants was in some manner legally responsible for the events, happenings, injuries, and damages alleged in this

Complaint.  As used herein, the term "Defendant" and/or "Dell" refers to Dell and the Doe defendants.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction of the claims alleged herein pursuant to 28 U.S.C. § 1332 because the amount in controversy for the class exceeds $5,000,000, exclusive of interest and costs, and the members of the proposed Classes are not citizens of Texas, Dell's state of citizenship.

10.     This Court has personal jurisdiction over Dell because a substantial portion of the wrongdoing alleged in this Complaint took place in this state, Dell is authorized to do business here, Dell has sufficient minimum contacts with this state, and/or Dell otherwise intentionally avails itself of the markets in this state through the promotion, marketing and sale of its products in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

12.     Pursuant to the Northern District of California's Local Rules Nos. 3-2 and 3-5, Plaintiffs request assignment to the San Jose Division of the Northern District of California. Plaintiff Chad Brazil resides in Santa Cruz County and thus a substantial part of the events or omissions which give rise to the claims occurred in Santa Cruz County.

## FACTUAL BACKGROUND

13.     Dell is one of the biggest e-commerce companies in the world.  Dell directly markets its products to consumers and businesses in California and throughout the nation via its Web site, Internet advertising, e-mail campaigns, newspaper and magazine advertising, television advertising, and direct mail.  In 2005, Dell spent over $975 million on direct advertising to consumers and businesses to draw them to its Web site, and it spends millions more

maintaining its e-commerce Web site at www.dell.com.  According to Dell, each day there are more than 4 million visitors to www.dell.com.

14.     Dell consummates direct sales to consumers and small to medium businesses on its Web site.

15.     Dell's marketing strategies have been successful.  Dell maintains roughly 30 percent of the personal computer market share in the United States and in 2007, Dell had over $62 billion in sales.  In significant part, however, Dell's growth and profitability have been the product of deceptive, misleading, and unlawful marketing and advertising practices.

16.     Dell's Web site, along with its direct advertising, is replete with false and fraudulent claims regarding the existence of price discounts.  Dell has leveraged its Internet marketing expertise and technology to perpetrate a false price advertising scheme of massive proportions.

17.     Dell's deceptive false price advertising scheme has played a major role in Dell's overall marketing and business strategy during the class period.

18.     The Federal Trade Commission (FTC) describes false former pricing schemes, similar to Dell's in all material respects, as deceptive:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious--for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction--the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith--and, of course, not for the purpose of establishing a fictitious higher price on which a

deceptive comparison might be based.  And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $ ------"), unless substantial sales at that price were actually made.

16 C.F.R § 233.1.

19.     Under California law, "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement."  Cal. Bus. & Prof. Code § 17501.  With respect to sales to consumers, California law prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(13).

**Dell Offers False "Instant Savings" Discounts From False Former Prices Through Its "Slash-Thru" Prices**

20.     Dell creates an illusion of savings by its pervasive offering of false discounts from false former prices through its "Slash-Thru" prices.  Dell perpetrates this scheme on its Web site and in its online, email, and print advertising.

21.     With "Slash-Thru" pricing, Dell advertises a discount price highlighted in green or red bold lettering, and directly above that, a higher expressly-referenced former price with a line, or "slash," through it.  Dell also expressly represents to its customers that they will receive an "Instant Savings" if purchased at that time.  Dell states the "savings" in specific dollar amounts that equal the difference between the referenced former price and the selling price.  Dell restates the purported "savings" in dollar amounts throughout the online purchase process.  Dell advertises the "savings" on all Offer Web pages listing the models and configurations of the selected product, on every page of the product Configurator, in its description of "Discount Details," and in the virtual shopping cart.  Dell prominently features in bold red lettering the purported "total discount" dollar amount throughout the payment and order process, including on the order submission page which consummates the order.  Dell restates the promised discount amount in the order confirmation email Dell sends to its customers.

1        22.    Plaintiffs Chad Brazil and Steven Seick received false former price

2    representations from Dell.  Mr. Brazil purchased his Dell Inspiron notebook from Dell's Web site

3    in December 2006.  Dell advertised the system at a discount price of $1,199, a promised "Instant

4    Savings" of $314 from a "Slash-Thru" former price of $1,514.  After choosing some upgrades, he

5    went to Dell's virtual "shopping cart," where Dell again represented that he would "Save $314 off

6    this Dell Inspiron! Limited Time Offer!"  Upon completing his purchase, Dell sent an email

7    purchase confirmation, again stating that he would "Save 314 off this Dell Inspiron!"

8        23.    Dell intends that customers will perceive that its    REDACTED

9    REDACTED    .  Dell advertises that a computer product was "From" the higher

10   "Slash-Thru" price, but is "Now From" the purportedly discounted selling price.  Dell's intent is

11   further evidenced by its use of "Slash-Thru" pricing in its print and email advertisements, with

12   semantic cues such as "Regularly Priced" or "Reg".

13       24.    In fact, the "Slash-Thru" reference prices are not prices at which Dell has

14   offered for sale, or made substantial sales of, the relevant products for a reasonable period of time

15   before advertising such prices.  Dell's advertised former sales price is an inflated price well above

16   the actual sales price at which Dell regularly sells the product.

17       25.    For example, Dell represented to Plaintiff Brazil that the Inspiron notebook

18   he purchased had a former price of $1,514.  Yet, during the three months prior to his purchase,

19   Dell *always* sold that configuration at a much lower price than $1,514.  In fact, the average sales

20   price for the base model of Mr. Brazil's configuration during that period was $1,041.34, or

21   $157.66 *less than* the "discount" price Dell represented to him.  Dell's representation that Mr.

22   Brazil would "save $314" from Dell's former price was false; in fact, the "discount" price that

23   Dell represented to him was, as of the date of his purchase, the highest actual sales price for that

24   computer that Dell ever charged.

25       26.    Dell deliberately and artificially sets the false reference prices to create

26   false impressions among customers regarding the products' values and the bargains that

27   customers will receive if they purchase Dell products.  Dell also prominently features the phrase

28   "limited time offer" regarding the false discounts in order to create a sense of urgency and the

false impression that customers will miss out on the purported markdowns if they do not buy the products immediately.

27.     For example, on September 13, 2006, Dell introduced its Dimension C521 Series of desktop computers, including one model (no. DDWCA2) at a sales price of $529 without reference to a former sales price.  Over the following four months the price for this model fluctuated, reaching a high of $588.  On January 26, 2007, Dell was continuing to offer the Dimension C521 at a price of $588, still without reference to a former sales price.  On January 27, 2007, Dell began applying its false former pricing scheme, offering the Dimension C521 with a fabricated false former price.  As is shown on the screen shots taken from Dell's Web site from those two days, attached hereto as Exhibit A, although Dell continued to offer the computer at the same $588 price, Dell now began to advertise a false $100 discount from a newly invented false former price of $688.  In fact, Dell had *never* offered this Dimension C521 model at the $688 price.  Rather, Dell's false discounted sales price of $588 was in fact the highest price at which Dell had ever offered the computer model for sale.  During this time, throughout Dell's Offer Pages, system Configurator, and virtual shopping cart, Dell misrepresented that purchasers would "Save $100 on this Dell C521 system!  Limited Time Offer!" Attached hereto as Exhibit B is a graph representing the true sales price and false reference price histories of this Dimension C521 model.

28.     Dell perpetrates the false price discounting scheme in its print advertising. For example, on September 15, 2006, Dell advertised false discounts in the San Diego Union Tribune for its Dimension E510 and Inspiron B130 computers.  Dell falsely represented that the Dimension E510 was "[r]egularly priced $839," and offered it for sale at $689, "after $150 off." In fact, Dell had not offered or made substantial sales of a similarly configured Dimension E510 at a price of $839 for a reasonable period of time prior to September 15, 2006.  During the three months preceding the date of this advertisement, Dell's average advertised price on its Web site for the identically configured Dimension E510 was $656.94, i.e., $32.06 less than the falsely advertised "discounted" price.  Rather than offering a $150 discount from the regular sales price of the Dimension E510, Dell was actually offering it for sale at an amount $32.06 more than the

1   regular sales price.  Similarly, Dell falsely represented that the Inspiron B130 was "[r]egularly

2   priced $549," and offered it for sale at $499, "after $50 off."  In fact, Dell had not offered or

3   made substantial sales of a similarly configured Inspiron B130 at a price of $549 for a reasonable

4   period of time before September 15, 2006.  During the three months preceding the date of this

5   advertisement, Dell's average advertised price on its Web site for the identically configured

6   Inspiron B130 was $512.67, i.e., only $13.67 more than the falsely advertised "discounted" price.

7   Rather than offering a $50 discount from the regular sales price of the Inspiron B130, the discount

8   was actually far less, i.e., $13.67.  Attached hereto as Exhibit C is a true and accurate copy of the

9   September 15, 2006 Dell advertisement in the San Diego Union Tribune with the relevant

10  portions enlarged and highlighted.

### "Establishing" Reference Prices

11

12  29.     REDACTED

13

14

15

16  30.     REDACTED

17

18

19          Instead, Dell offered products for sale at the reference price *only when in*

20  *conjunction with other concocted promotions*, whereby Dell essentially offered the products at the

21  same discount offered by the "Slash-Thru" promotion.  The two alternative promotion

22  mechanisms by which Dell attempted to "establish" "Slash-Thru" reference prices – Mail-in

23  Rebates and Free Hardware promotions – were bogus and false promotions in their own right, and

24  failed to provide a sales history for any of Dell's products that was consistent with the "Slash-

25  Thru" reference pricing.  REDACTED

26

27

28

866668.1                                    - 9 -              THIRD AMENDED CLASS ACTION COMPLAINT

1     REDACTED        Thus, despite Dell's efforts to "establish" the "Slash-

2  Thru" reference prices, the "Slash-Thru" prices remain false and misleading.

3                  **Dell Uses False Rebates to "Establish" Its "Slash-Thru" Prices**

4          31.    For much of the class period, Dell engaged in a policy and practice

5  whereby it knowingly attempted to "establish" its represented former prices through the periodic

6  use of mail-in rebates.    REDACTED

7

8

9          32.    During these mail-in rebate periods, Dell presented the discount on its Web

10  site in substantially the same form as it had during the "Slash-Thru" "Instant Savings" periods.

11  Dell advertised the same reference price with the same "Slash-Thru" and discount call-out, but

12  Dell now offered the discount by rebate rather than "instantly."

13          33.    Dell's promise to provide a rebate "discount" is an objectively material

14  term of the sales transaction.  In fact, Dell's rebate "discount" offers are illusory because Dell

15  directly recovers the cost of the "rebates" by marking up the sales price of the product in an

16  amount corresponding in whole or in part to the amount of the rebate.  The "regular" sales price

17  that Dell advertises (i.e. before the rebate "discount") is not a price at which Dell has previously

18  offered for sale, or made substantial sales of, the relevant products for a reasonable period of time

19  (other than when offered in conjunction with the false rebate "discount").  By falsely representing

20  the rebate offer as a discount from Dell's regular sales price, Dell, among other things, breaches

21  the agreement it made with the buyer.

22          34.    For example, the Dimension B110 configuration that Plaintiff Seick

23  purchased in June 2006 was regularly advertised at a list price of $349 and a promo price of $299

24  around the time Mr. Seick made his purchase.  For a few brief periods, however, Dell increased

25  the sales price of the configuration to $349 and at the same time offered a mail-in-rebate

26  "discount" of $50.  During these mail-in rebate periods, Dell continued to advertise the same

27  Slash-Thru reference price and discount call-out amount.  Attached hereto as Exhibit H are

28  excerpts of screenshots of Dell's Web site from May 31 and June 1, 2006, advertising the

1  Dimension B110 with and without the false rebate "discount"; the particular model number

2  purchased by Mr. Seick (no. DB110A) is highlighted.  Those customers who purchased computer

3  systems with a rebate "discount" actually paid Dell's regular prices.

4       35.    Dell deliberately perpetrates this false rebate discount scheme with

5  knowledge of, and/or with reckless disregard for, the deceptive and harmful nature of this

6  scheme, with the sole purpose of maximizing Dell's profits.

7       36.    Dell violates California law and FTC standards by advertising false rebates.

8  The rebate "discounts" are illusory, and, as a result, purchasers do not receive the benefit of their

9  bargained-for exchange.

10  **Dell Uses False "Free" Promos to "Establish" Its Slash-Thru Prices**

11      37.    REDACTED

12

13

14

15       Like Dell's false rebate discounts, these offers

16  constitute independent false representations of savings and discounts to Dell's customers that are

17  part of the overall integrated scheme of advertising false former prices.

18       38.    Dell "establishes" the reference price for a configuration by selling, for a

19  limited time, a *different* upgraded configuration of the same model (e.g., with an upgraded

20  monitor) at Dell's reference price for the *original*, non-upgraded configuration.  At the same time,

21  Dell advertises that customers who purchase the upgraded configuration will receive the

22  upgrade(s) in question for "free."  Dell expressly advertises these "free" upgrades on the

23  product's Offer Pages and throughout the purchase process.

24       39.    This mark-up of the sales price to the reference price corresponds in whole

25  or in part to the value of the "free" upgrades and add-ons.  Dell's promise that the upgrades and

26  add-ons are being included for "free" in the sale of the base product is an objectively material

27  term of the sales transaction.

28

1    40.    An example of Dell's "free" upgrade offers as part of its integrated scheme

2    of false former prices is shown in its advertising for its Dimension E310 desktop computer.  On

3    March 22, 2006, Dell offered a Dimension E310 configuration at a "discount" price of $499, an

4    advertised "Instant Savings" of $100 off of Dell's expressly-referenced former price of $599.

5    The next day, Dell offered an upgraded configuration of the same model (with an upgraded

6    monitor and increased memory) at a sales price of $599, representing that customers would

7    receive the monitor and memory upgrades for "FREE," when in fact Dell had marked-up the

8    offering sales price by $100.  When Dell discontinued this "FREE" upgrade offer a week later,

9    Dell resumed offering the original configuration without the upgrades at the previous $599/$499

10   reference and sales prices.  Attached hereto as Exhibit K are excerpts of screen shots from Dell's

11   Web sites from March 22 and 23, 2006, advertising the Dimension E310 with and without the

12   false "free" offer.

13   41.    As a result of Dell's scheme, customers who purchased computer systems

14   with the   REDACTED   were actually paying for those upgrades by paying inflated

15   sales prices.

16   42.    The FTC has promulgated the following standard regarding "free" offers:

17   The public understands that . . . an offer of "Free" merchandise or
18   service is based upon a regular price for the merchandise or service
     which must be purchased by consumers in order to avail themselves
19   of that which is represented to be "Free". In other words, when the
     purchaser is told that an article is "Free" to him if another article is
20   purchased, the word "Free" indicates that he is paying nothing for
     that article and no more than the regular price for the other.  Thus, a
21   purchaser has a right to believe that the merchant will not directly
     and immediately recover, in whole or in part, the cost of the free
22   merchandise or service by marking up the price of the article which
     must be purchased, by the substitution of inferior merchandise or
23   service, or otherwise.
24
25   16 C.F.R § 251.1(b)(1).

26   43.    Dell deliberately perpetrates these false "free" offer   REDACTED

27   practices with knowledge of, and/or with reckless disregard for, the deceptive and harmful nature

28   of these schemes, for the sole purpose of maximizing Dell's profits.

44.     Dell violates California law and FTC standards by making false "free offers," where Dell in fact directly recovers the cost of the "free" offers by marking up the true regular sales price of the original product.  The "free" offers are illusory, and, as a result, purchasers do not receive the benefit of their bargained-for exchange.

### Dell Offers False "Instant Savings" Discounts From False Former Prices Through Its "Starting Prices"

45.     Dell's false reference price scheme is ongoing, although the manner in which Dell implements it has varied to a minor degree.  For much of the class period, Dell advertised a false discount price alongside a false "Slash-Thru" regular price and a prominent call-out promising that purchasers would receive an "Instant Savings" in an amount equal to the difference.  After this suit was filed, beginning on or around November 10, 2007, as part of its false reference price scheme Dell included on its Web site a so-called "Starting Price" for products along with a sale price and a prominent call-out promising that purchasers will receive an "Instant Savings" in an amount equal to the difference between the "Starting Price" and the sale price.  Like the Slash-Thru prices, Dell treats the "Starting Price" as a regular sales price for that item.  For example, the same deals that Dell advertises in its print catalog at prices "Regularly" sold at, Dell advertises as "Starting Prices" on its Web site.

46.     This "Starting Price" method is now pervasive throughout Dell's Web site and represents a continuation of Dell's false former price scheme:  the so-called "Starting Price" for products is in nearly every instance exactly equal to the strike-thru price that Dell had previously advertised for those same products, and both such reference prices are fabricated and have no connection to the actual past sales prices of Dell's products.  Dell has substituted a "Starting Price" for the prior "strike-thru price," and, like Dell did with the strike-through price, now contrasts the "Starting Price" against the actual offered sales price.  With respect to specific product configurations, just as the strike-thru price was fabricated, so is the Starting Price, since those product configurations were not offered for sale at the "Starting Price" for a reasonable period of time prior to such offering.

1    47.    For example, on November 9, 2007, Dell advertised on its Web site an

2    Inspiron 530s desktop model (no. DDCWFA2) at a price of $499, a represented $100 "savings"

3    from a false former strike-through price of $599.  The next day, November 10, 2007, employing

4    its new "Starting Price" method, Dell advertised the identical computer at the same sale price of

5    $499 and called out, in prominent red text, that this price represented "Instant Savings" from the

6    so-called "Starting Price" of $599—the very same reference price Dell previously advertised

7    under the older method.  The "Starting Price" referenced by Dell was fabricated, and had no

8    connection to the actual price that customers previously paid for the computer.  Attached hereto

9    as Exhibit L are screen shots taken from Dell's Web site from November 9 and 10, 2007, which

10    illustrate Dell's new method as well as Dell's transition to the new method from its prior, "Strike-

11    Thru" price method.  Also attached hereto as Exhibit M is a graph representing the true sales

12    price and false reference price histories of this Inspiron 530s model.

13    48.    REDACTED

14

15

16                                                                    Pursuant to this

17    method, Dell presents undiscounted base models (*i.e.*, with no reference price) on some Offer

18    Pages alongside pre-configured upgraded models sold with representations of discounts and

19    savings and a stated "Starting Price."  See Exhibit O (screen shot of Offer Page from Dell's Web

20    site on March 1, 2008).  (Dell also offers "Starting Prices" without related undiscounted base

21    models, and Dell offers no justification for the reference pricing of those products.)

22    49.    These "Starting Prices" do not correspond to actual former sales prices for

23    the upgraded models themselves, even though they are represented as such.

24    REDACTED

25

26

27                                                                    The "Starting Prices"

28

866668.1                                    - 14 -              THIRD AMENDED CLASS ACTION COMPLAINT

1  for these purportedly "discounted" models are false, because Dell did not offer those models for

2  sale at those prices.

3          50.     The false former price discounts have been omnipresent on Dell's Web site

4  and in its print advertising.  Dell displays a false discount price alongside a false regular price for

5  nearly every desktop and notebook computer, server, and storage device that it sells.  Dell

6  consistently misrepresents that its sales prices represent "savings" in specific dollar amounts from

7  inflated and false regular prices.  Dell's false former price scheme is so deeply ingrained in Dell's

8  business that on numerous occasions when Dell has increased the actual selling prices of its

9  products, such increases have been accompanied by corresponding, equal increases in the false

10  former prices expressly referenced by Dell for those products.

11          51.     Dell's false former price scheme, whether implemented by "Slash-Thru"

12  prices or "Starting Prices," has been one of Dell's primary marketing strategies during the class

13  period.     REDACTED

14

15

16

17

18

19

20

21

22                                        Dell has engaged in this scheme with knowledge

23  of, and/or reckless disregard for, the deceptive, harmful and illegal nature of the scheme, and has,

24  in fact, profited greatly from it.

25          52.     Dell's advertising of false former prices violates California law and FTC

26  standards.  The discounts promised by Dell are false because they are applied against a fabricated

27  and inflated "regular" or reference price, rather than against Dell's true regular price for the

28  product.  Dell's promise to provide price discounts from Dell's regular sales price is an

objectively material term of the sales transaction.  Dell fails to keep its promise to provide price

discounts from true regular sales prices, and as a result, consumers do not receive the benefit of

the advertised bargain.

53.    Dell's reference price "establishment" policy, by which Dell has asserted it

has established list price through false rebate "discounts," false "free" offers, and "Starting

Prices," is simply another part of Dell's comprehensive scheme and is itself an independent false

representation of savings and discounts.  FTC Guidelines state that for an advertised discount

from a reference price to be legitimate, the products must be "openly and actively" offered for

sale, for a reasonably substantial period of time, "honestly and in good faith – and of course, not

for the purpose of establishing a fictitious higher price on which a deceptive comparison might be

based."  16 C.F.R. § 233.1.  Dell's computer products and services are not sold at the reference

prices for a substantial period of time and the reference prices are not "established" honestly and

in good faith, in direct violation of FTC guidelines.  Rather, Dell's computer products and

services are sold in conjunction with a false rebate "discount" or false "free" offer in order to

establish a reference price or with a theoretical discount on an upgraded "Starting At" price for a

non-discounted base model, thus demonstrating Dell's intent to mislead its customers.

54.    Dell conceals its deceptive practices by constantly changing its Web site

and offers, making it difficult or impossible for prospective customers to verify or dispute Dell's

claimed discounts.

55.    Dell's duplicitous conduct is evidenced by, for example, its advertising for

its Optiplex 320 desktop computer models.  Dell introduced these models on November 8, 2006.

Even though Dell had never before offered any Optiplex 320 models for sale, on the day of their

introduction Dell falsely advertised them as having former regular prices.  For example, Dell

misrepresented that one model (no. BPCWOCR) regularly sold for $489, and offered it at a

falsely discounted sales price of $359, misrepresenting it to confer a $130 "savings."  On four

occasions during the first three months Dell sold this Optiplex 320 model, it offered a false "free"

flat panel monitor upgrade.  In fact, during each period that Dell offered the false free monitor

upgrade, Dell increased the sales price by $50 or more, as set forth in the graph attached hereto as Exhibit S.

56.     Dell's duplicitous conduct is further evidenced by its advertising of one of its Dimension E310 desktop computer models (no. DE310SAP) from March 15 to July 6, 2006. Throughout this period, Dell offered this model for sale at $499 while at the same time falsely offering a "limited time" "savings" of $100 from a false regular price of $599, except for two seven-day periods where a false "free" offer was made, and one seven-day period where a false rebate discount offer was made. For a seven-day period beginning on March 23, 2006, Dell increased the sales price for this Dimension E310 model by $100 at the same time it offered false "free" monitor and memory upgrades. On March 30, Dell stopped offering the false "free" upgrades and reverted the pricing to the usual sales price of $499 with a false representation of a $100 "savings" from the false regular price of $599. Thereafter, in another seven-day period beginning May 11, 2006, Dell increased the sales price by $52 while offering a false "free" monitor upgrade. When Dell stopped offering this false "free" upgrade on May 18, 2006, Dell again reverted to the usual sales price of $499 with a false representation of a $100 "savings" from the false regular price of $599. Then for a seven-day period beginning June 29, 2006, Dell increased the sales price from $499 to $599, while this time offering a false $100 mail-in rebate discount. Dell stopped offering the rebate on July 6, 2006, at which time it once more reverted to its false regular pricing with the false "savings" representation. In short, over this period, Dell advertised this Dimension E310 model with either false discounts from false regular prices, false free offers, or false rebate discounts, as set forth in the graph attached hereto as Exhibit T.

57.     The false representations alleged above have been disseminated to Plaintiffs and members of the Class via Dell's Web site and direct advertising. Plaintiffs and members of the Class have purchased Dell products, but have been denied the discounts, savings, and product values that Dell promised them. In all, millions of customers have been victims of Dell's deceptive, misleading, and unlawful schemes.

58.     Dell's false representations of discounts from "Slash-Thru" prices, "Starting Prices," and false representations of rebate "discounts" and "free" promo offers are

objectively material to the reasonable consumer and a reasonable customer would consider and attach importance to these representations of discounts in making the choice to purchase Dell products, and therefore reliance upon such representations may be presumed as a matter of law.

59.     Dell knows or reasonably should know that the integrated scheme alleged above is deceptive, misleading, and unlawful.

60.     Dell fraudulently concealed from, and intentionally failed to disclose to, Plaintiffs, members of the Class, and any others in the chain of distribution, the truth about its advertised price discounts, rebate discounts, and "free" offers of add-on products and services.

61.     Dell was and is under a duty to Plaintiffs and the members of the Class to disclose the truth about its misrepresentations and false price advertising because:

a.     Dell is in a superior position to know the facts about its deceptive, misleading, and unlawful marketing and advertising schemes;

b.     Dell made partial, misleading, and deceptive disclosures about its false price discounts, false rebate "discounts", and false "free" offers;

c.     Dell knowingly and intentionally concealed the nature of its schemes from Plaintiffs and the members of the Class.

62.     The facts which Dell misrepresented, concealed, or failed to disclose are the type of facts that are regularly considered to be material; i.e., a reasonable person would attach importance to them, and would be induced to act on them, in determining whether or not to purchase Dell's products.

63.     Dell intentionally concealed and failed to disclose the truth about the false pricing scheme alleged herein for the purpose of inducing Plaintiffs and the members of the Class to purchase products from Dell.

64.     Dell's conduct has been and is wanton or reckless or shows a reckless indifference to the interests of Plaintiffs and the members of the Class and Consumer Subclass.

65.     Any applicable statutes of limitation have been tolled by Dell's knowing and active concealment of the operative facts alleged herein.  The nature of Dell's misleading and deceptive pricing scheme is such that Plaintiffs and members of the Class and Consumer Subclass

could not reasonably have discovered the true nature of the scheme. Uncovering Dell's illegal scheme requires sophisticated and expensive specialized software not reasonably available to ordinary consumers.

66.  Dell knowingly, affirmatively, and actively concealed the true nature of its deceptive and misleading scheme, including false former prices, illusory rebate "discounts", and false offers of "free" add-on products or services. Dell's concealment is ongoing. Plaintiffs and members of the Class reasonably relied upon Dell's knowing, affirmative, and/or active concealment. Based on the foregoing, Dell is estopped from relying on any statutes of limitation in defense of this action.

67.  Dell employs its superior bargaining power to unilaterally impose upon customers at the time of the sale of its computer products its so-called "Terms and Conditions," which include an arbitration clause with a waiver of purchasers' class action remedies. The Terms and Conditions constitute contracts of adhesion. Dell purports to impose the adhesive Terms and Conditions upon commercial transactions (*i.e.*, sales of Dell's computer products), which predictably involve small sums of money (in comparison with the costs of litigation), as part of its overall scheme to deliberately cheat large numbers of purchasers out of these individually small sums of money. In practice, the Terms and Conditions would operate to exempt Dell from its responsibility for its own fraud and willful injury to its customers. Dell's Terms and Conditions, with its arbitration and class action waiver clause, are unconscionable and contrary to public policy and therefore are unenforceable against its customers.

68.  The claims and issues asserted herein are governed by California state law, as this Court has previously ruled. The State of California has the greatest interest in policing corporate conduct occurring within the State which affects the rights and interests of its citizens.

69.  Dell's conduct breaches its agreements with Plaintiffs and the members of the Class and Consumer Subclass for the purchase of Dell computer products, constitutes negligent misrepresentation and intentional fraud, and violates California Business and Professions Code §§ 17500, et seq., California Business and Professions Code §§ 17200, et seq., and California Consumers Legal Remedies Act, California Civil Code §§ 1750, et seq. As a

1  direct and proximate cause of Dell's misconduct, Plaintiffs and members of the Class and

2  Consumer Subclass have suffered damages.

3  **PLAINTIFF STEVEN SEICK**

4  70.  Plaintiff Steven Seick owns and operates a small law firm in San Diego,

5  California.

6  71.  On June 15, 2006, plaintiff Steven Seick purchased directly from Dell via

7  its Internet Web site a Dell Dimension B110 desktop computer, model no. DB110A (herein, the

8  "Dimension Computer"), and associated peripheral Dell computer products.  Mr. Seick purchased

9  his computer by accessing Dell's Web site, and specifically by accessing Web pages which

10  described Dell's Dimension Computer and which advertised false discounts and false regular

11  prices for the Dimension Computer.

12  72.  On its Web site the day of Mr. Seick's purchase, Dell offered to sell the

13  Dimension Computer for $299, at a promised "savings" of $50 from the false regular sales price

14  of $349.  After Mr. Seick arrived on the pages of Dell's Web site which contained these

15  representations, he began the process of purchasing the Dimension Computer.  First, Mr. Seick

16  selected the Dimension Computer with a Slash-Thru price of $349 and a promised $50 "limited

17  time" "Instant Savings," and he was then directed to the System Configurator where he selected

18  certain upgrades and add-ons.  Dell prominently featured the $50 savings on every page of the

19  System Configurator.  After that, Mr. Seick was directed to Dell's "shopping cart," which listed

20  the items, upgrades, and add-ons that he had selected for purchase and the pricing for his

21  selections.  In the shopping cart, Dell misrepresented to Mr. Seick that he would, "Save $50

22  instantly off this Dell Dimension B110!"  Attached hereto as Exhibit U are screen shots of Dell's

23  "system configurator" and "shopping cart" Web pages for the Dimension Computer, taken on the

24  date of Mr. Seick's purchase.

25  73.  Relying on the representations described above, Mr. Seick then purchased

26  the Dimension Computer via Dell's online purchasing process, paying the base "discounted"

27  price of $299 plus an additional amount for his selected upgrades and add-ons.  On the same day

28  of, but after Mr. Seick's purchase, Dell sent Mr. Seick an email confirming his purchase order,

which is attached hereto as Exhibit V.  Dell's order confirmation again stated that Mr. Seick

would, "Save $50 instantly off this Dell Dimension B110!  Expires on 2006-06-22."

74.     On June 15, 2006, Mr. Seick purchased from Dell the Dimension

Computer at the base price of $299 after Dell had misrepresented to him that the price reflected a

$50 savings to be received by Mr. Seick from Dell's purported regular price of $349 for that

computer.  Dell did not offer for sale, or make substantial sales of, the Dimension Computer at a

price of $349 for a reasonable period of time before June 15, 2006 (other than when offered in

conjunction with a false rebate "discount").

75.     During the three months prior to Mr. Seick's purchase, Dell's average

offered base sales price for the Dimension Computer model was in fact $297.51, *not* $349.

Attached hereto as Exhibit W is a chart setting forth the daily prices for the Dimension Computer

during the three months prior to Mr. Seick's purchase, which demonstrates that Dell uniformly

and falsely represented the regular price for the Dimension Computer to be $349, even though the

average true regular price for that period was $297.51.  (At three junctures during this period,

instead of offering the Dimension Computer for sale at the usual $299, Dell increased the sales

price by $50, *i.e.* to $349, but offered an offsetting false rebate discount of $50.)

76.     Rather than having received a $50 savings from the regular sales price of

the Dimension Computer, as Dell had misrepresented, Mr. Seick paid $1.49 ***more than*** the true

regular sales price for the Dimension Computer, *i.e.*, $1.49 more than the average actual sales

price offered by Dell for the three months preceding Mr. Seick's purchase.

77.     Although Dell represented to Mr. Seick that the offer for the supposed $50

savings would "expire" on June 22, 2006, Dell in fact continually made that offer up to and

including October 12, 2006, at which point Dell discontinued the Dimension B110 series and

replaced it with a new model line.

78.     Dell's representation to Mr. Seick that his purchase price reflected a $50

savings from Dell's regular sales price was false and misleading because, in fact, the price Dell

charged Mr. Seick was more than the true regular sales price for the Dimension Computer.

**PLAINTIFF CHAD BRAZIL**

79. On December 15, 2006, plaintiff Chad Brazil purchased directly from Dell, via its Internet Web site, a Dell Inspiron E1505 Dual Core notebook computer, model no. DNDWEA3 (herein, the "Inspiron Notebook"), and associated peripheral Dell computer products. Mr. Brazil purchased the Inspiron Notebook by accessing Dell's Web site, and specifically by accessing Web pages which described the Inspiron Notebook and which advertised false discounts and false regular prices for the Inspiron Notebook.

80. On its Web site the day of Mr. Brazil's purchase, Dell offered to sell the Inspiron Notebook for $1,199, at a promised savings of $314 from the false regular sales price of $1,514. After Mr. Brazil arrived on the pages of Dell's Web site that contained these representations, he began the process of purchasing the Inspiron Notebook. First, Mr. Brazil selected the Inspiron Notebook with a "Slash-Thru" price of $1,514 and a promised $314 "limited time" "Instant Savings," and he was then directed to the System Configurator where he selected certain upgrades and add-ons. Dell prominently featured the $314 savings on every page of the System Configurator. After that, Mr. Brazil was directed to Dell's "shopping cart," which listed the items, upgrades, and add-ons that he had selected for purchase and the pricing for his selections. In the shopping cart, Dell misrepresented to Mr. Brazil that he would, "Save $314 off this Dell Inspiron! Limited Time Offer!" Attached hereto as Exhibit X is a screen shot of Dell's "system configurator" Web page for the Inspiron Notebook, taken on the date of Mr. Brazil's purchase, along with an excerpt of the printout made by Mr. Brazil of his Dell "shopping cart."

81. Relying on the representations described above, Mr. Brazil then purchased the Inspiron Notebook via Dell's online purchasing process, paying the base "discounted" sales price of $1,199 plus an additional amount for his selected upgrades and add-ons. On the same day of, but after Mr. Brazil's purchase, Dell sent Mr. Brazil an email confirming his purchase order, attached hereto as Exhibit Y. Dell's order confirmation again stated that Mr. Brazil would "Save $314 off this Dell Inspiron!"

82. On December 15, 2006, Mr. Brazil purchased from Dell the Inspiron Notebook at the base price of $1,199 after Dell had misrepresented to him that the price reflected

a $314 savings he would receive from Dell's purported regular price of $1,514.  In fact, Dell did not offer for sale, or make substantial sales of, the Inspiron Notebook at a price of $1,514 for a reasonable period of time before September 15, 2006.  During the three months prior to Mr. Brazil's purchase, Dell's average offered base sales price for the Inspiron Notebook model was in fact $1,041.34, *not* $1,514.  Attached hereto as Exhibit Z is a chart setting forth the daily prices for the Inspiron Notebook during the three months prior to Mr. Brazil's purchase.  The chart demonstrates that during these three months Dell consistently and falsely represented that the actual selling price was discounted from a regular sales price, and that as Dell changed the actual selling price from time to time, it also moved the false regular sales price in lockstep with it.

83.     Although Dell represented that the amount Mr. Brazil paid was a $314 "savings" from the regular sales price for the Inspiron Notebook, during the three months prior to Mr. Brazil's purchase, Dell always offered it for sale at an amount *less than* what Mr. Brazil paid.

84.     Rather than having received a $314 savings from the regular sales price of the Inspiron Notebook, as Dell had misrepresented, Mr. Brazil paid $157.66 ***more than*** the true regular sales price for the Inspiron Notebook, *i.e.*, $157.66 more than the average actual sales price offered by Dell for the three months preceding Mr. Brazil's purchase.

85.     Dell's representation to Mr. Brazil that the purchase price it offered reflected a $314 savings from Dell's regular sales price was false and misleading because, in fact, the price Dell advertised and Mr. Brazil paid was, as of the date of his purchase, the highest actual sales price for that computer that Dell ever advertised and offered.

## CLASS ACTION ALLEGATIONS

86.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and others similarly situated.  The Class is defined as follows:

> All persons or entities who are citizens of the State of California who on or after March 23, 2003, purchased via Dell's Web site Dell-branded products advertised as discounted from a represented former sales price (i.e., a "Slash-Thru" price or a "Starting Price") as indicated and set forth on Schedule 1 and Schedule 2 attached hereto.[1].

---

[1] The Schedules are attached hereto as Exhibit AA.

Further excluded from the class are:  (1) Dell and its subsidiaries, affiliates, officers, and directors; (2) any entity in which Dell or any other excluded entity has a controlling interest; (3) Dell's legal representatives, predecessors, successors, assigns, and employees; and (4) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

87.    Numerosity Under Rule 23(a)(1).  The members of the Class are so numerous that individual joinder of all its members is impracticable.  Plaintiffs are informed and believe that there are hundreds of thousands, if not millions, of customers throughout California that have been damaged by Dell's deceptive practices alleged herein.

88.    Commonality Under Rule 23(a)(2).  This action involves common questions of law and fact, including, but not limited to, the following:

a.    Whether Dell (1) falsely advertises price discounts from regular sales prices; (2) falsely advertises rebate discounts from Dell's regular sales prices; and (3) falsely advertises the inclusion of "free" upgrades and "free" add-on products and services;

b.    Whether Dell breached its promises to provide price discounts, rebate discounts, and free products and services;

c.    Whether Dell's advertising and other representations directed to members of the Class contained false representations of material fact;

d.    Whether Dell's advertising and other representations directed to members of the Class constitute negligent misrepresentations, intentional misrepresentations, false promises and/or fraud;

e.    Whether Dell's practices constitute unfair, unlawful, and/or fraudulent business practices in violation of California law;

f.    Whether Dell has made false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions;

g.    Whether Dell's statements concerning the reasons for, existence of, or amount of price reductions were material, such that a reasonable consumer would attach

importance to and would be induced to act on the information in determining whether or not to purchase a Dell computer product or service;

h. Whether Dell's conduct, as alleged herein, is intentional and knowing;

i. Whether Dell's conduct, as alleged herein, is reckless;

j. Whether the arbitration and class action waiver provision contained in Dell's Terms and Conditions are contrary to public policy, unconscionable, and unenforceable under California Civil Code sections 1668 and 1670.5 and other applicable law; and

k. Whether Plaintiffs and members of the Class are entitled to compensatory damages, punitive damages, restitution, disgorgement of profits, and injunctive relief as a result of Dell's conduct alleged herein.

89. <u>Typicality Under Rule 23(a)(3)</u>. The named Plaintiffs' claims are typical of (and not antagonistic to) the claims of members of the Class. Plaintiffs and the Class they seek to represent have all been deceived and damaged by Dell's false representations and corresponding failure to provide promised discounts and product values

90. <u>Adequacy of Representation under Rule 23(a)(4)</u>. Plaintiffs will fairly and adequately protect the interests of the members of the Class, and the representative Plaintiffs' interests are coincident with and not antagonistic to those of the other class members they seek to represent. Plaintiffs have retained competent counsel to represent them and the Class.

91. <u>The Class Can Be Properly Maintained Under Rules 23(b)(2) and (c)</u>. Dell has acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

92. <u>The Class Can Be Properly Maintained Under Rules 23(b)(3) and (c)</u>. Questions of law common to the members of the Class predominate over any questions affecting only individual members with respect to some or all issues presented in this Complaint. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual litigation of the claims of all class members is impracticable because the

1    cost of litigation would be prohibitively expensive for each class member and would impose an

2    immense burden upon the courts.  Individualized litigation would also present the potential for

3    varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all

4    parties and to the court system resulting from multiple trials of the same complex factual issues.

5    By contrast, the conduct of this action as a class action, with respect to some or all of the issues

6    presented in this Complaint, presents fewer management difficulties, conserves the resources of

7    the parties and of the court system, and is the only means to protect the rights of all class

8    members.

9                        **CONSUMER SUBCLASS ALLEGATIONS**

10          93.    Plaintiff Chad Brazil also seeks to maintain this action on behalf of a

11   Consumer Subclass consisting of the following:

12          All consumers who are citizens of the State of California who on or
13          after March 23, 2003, purchased for household use via Dell's Web
            site Dell-branded products advertised as discounted from a
14          represented former sales price (i.e., a "Slash-Thru" price or a
            "Starting Price") as indicated and set forth on Schedule 1 and
15          Schedule 2 attached hereto.[2].

16          Further excluded from the Subclass are:  (1) Dell and its
17          subsidiaries, affiliates, officers, and directors; (2) Dell's legal
            representatives, predecessors, successors, assigns, and employees;
18          and (3) the Judge and staff to whom this case is assigned, and any
            member of the Judge's immediate family.
19

20          94.    Numerosity Under Rule 23(a)(1).  The members of the Consumer Subclass

21   are so numerous that individual joinder of all its members is impracticable.  Plaintiff is informed

22   and believes that there are hundreds of thousands, if not millions, of customers throughout

23   California that have been damaged by Dell's deceptive practices alleged herein.

24          95.    Commonality Under Rule 23(a)(2).  This action involves common

25   questions of law and fact, including, but not limited to, the following:

26

27

_____
28   [2] The Schedules are attached hereto as Exhibit AA.

1              a.       Whether Dell (1) falsely advertises price discounts from regular

2  sales prices; (2) falsely advertises rebate discounts from Dell's regular sales prices; and (3) falsely

3  advertises the inclusion of "free" upgrades and "free" add-on products and services;

4              b.       Whether Dell breached its promises to provide price discounts,

5  rebate discounts, and free products and services;

6              c.       Whether Dell's advertising and other representations directed to

7  members of the Subclass contained false representations of material fact;

8              d.       Whether Dell's advertising and other representations directed to

9  members of the Subclass constitute negligent misrepresentations, intentional misrepresentations,

10  false promises and/or fraud;

11              e.       Whether Dell's practices constitute unfair, unlawful, and/or

12  fraudulent business practices in violation of California law;

13              f.       Whether Dell has made false or misleading statements of fact

14  concerning reasons for, existence of, or amounts of price reductions;

15              g.       Whether Dell's statements concerning the reasons for, existence of,

16  or amount of price reductions were material, such that a reasonable consumer would attach

17  importance to and would be induced to act on the information in determining whether or not to

18  purchase a Dell computer product or service.

19              h.       Whether Dell's conduct, as alleged herein, is intentional and

20  knowing;

21              i.       Whether Dell's conduct, as alleged herein, is reckless;

22              j.       Whether the arbitration and class action waiver provision contained

23  in Dell's Terms and Conditions are contrary to public policy, unconscionable, and unenforceable

24  under California Civil Code sections 1668 and 1670.5 and other applicable law; and

25              k.       Whether members of the Consumer Subclass are entitled to

26  compensatory damages, punitive damages, restitution, disgorgement of profits, and injunctive

27  relief.

28

96.  Typicality Under Rule 23(a)(3).  The named Plaintiff's claims are typical of (and not antagonistic to) the claims of the members of the Subclass.  Plaintiff and the Consumer Subclass he seeks to represent have all been deceived and damaged by Dell's false representations and corresponding failure to provide promised discounts and product values.

97.  Adequacy of Representation under Rule 23(a)(4).  Plaintiff will fairly and adequately protect the interests of the members of the Consumer Subclass, and the representative Plaintiff's interests are coincident with and not antagonistic to those of the other class members he seeks to represent.  Plaintiff has retained competent counsel to represent him and the Consumer Subclass.

98.  The Consumer Subclass Can Be Properly Maintained Under Rules 23(b)(2) and (c).  Dell has acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to the Consumer Subclass, thereby making appropriate final injunctive relief with respect to the Consumer Subclass as a whole.

99.  The Consumer Subclass Can Be Properly Maintained Under Rules 23(b)(3) and (c).  Questions of law common to the members of the Consumer Subclass predominate over any questions affecting only individual members with respect to some or all issues presented in this Complaint.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Individual litigation of the claims of all class members is impracticable because the cost of litigation would be prohibitively expensive for each class member and would impose an immense burden upon the courts.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.  By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and is the only means to protect the rights of all class members.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Breach of Contract)**

100.    Plaintiffs, on behalf of themselves and the Class and Consumer Subclass, reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

101.    Dell offers its products for sale through its Web site and through other advertising and marketing means.

102.    The material terms of Dell's sales agreements with Plaintiffs and the members of the Class and Consumer Subclass included Dell's promises to sell computer products at prices discounted or reduced from the regular sales prices of the products whether through Slash-Thru or Starting Prices.  On the Web page in which customers review and submit their order, Dell features the "total discount" amount in bold red next to the price.  *See* Exhibit BB (screen shot of order submittal page taken from Dell's Web site on April 1, 2010, with the "total discount" amount highlighted).  The "total discount" amount is present on every page of the checkout process and in the order confirmation email.  The promised discount amount is a material term of the contract.

103.    Dell's Terms and Conditions of Sale explicitly refers to Dell's standard pricing policy as allocating "the discount off list price."  *See* Exhibit CC ("Terms and Conditions of Sale" on Dell's Web site dated May 9, 2006,   REDACTED                   The discount is a material term of the agreement with Dell's customers.

104.    Based upon Dell's promises, Plaintiffs and members of the Class and Consumer Subclass entered into respective agreements with Dell for the purchase of computer products.

105.    Plaintiffs and members of the Class and Consumer Subclass gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their respective agreements with Dell.

1     106.    Dell breached its agreements with Plaintiffs and members of the Class and

2    Consumer Subclass.

3     107.    Dell breached its agreements to sell computer products discounted from its

4    regular sales prices because the discount amounts promised by Dell were false and were in fact

5    applied against fabricated and inflated reference prices rather than against Dell's true regular

6    prices.

7     108.    By reason of Dell's breach of these agreements, Plaintiffs and all members

8    of the Class and Consumer Subclass did not get the actual discounts and savings that Dell

9    promised them, did not receive products which had the value Dell promised those products would

10    have, were deprived of the benefit of their bargained-for exchanges, and suffered damages in an

11    amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)

14     109.    Plaintiffs, on behalf of themselves and the Class and Consumer Subclass,

15    reallege and incorporate, as if fully alleged herein, each of the allegations contained in the

16    preceding paragraphs of this Complaint, and further allege as follows.

17     110.    In the course of conducting its business of selling computer products and

18    services, Dell has made misrepresentations of fact, to Plaintiffs and all members of the Class,

19    concerning the existence and/or nature of price discounts from the regular sales prices of the

20    products, whether through Slash-Thru or Starting Prices.  As part of those misrepresentations,

21    Dell engaged in the following practices:

22     a.    Falsely representing that customers were receiving a price discount

23    from a referenced "regular" sales price of its computer products, where Dell in fact inflated the

24    purported "regular" sales price such that the promised discount was false;

25     b.    Falsely representing that customers would receive rebate

26    "discounts" from Dell's regular sales price of its computer products, where Dell in fact directly

27    recovered the cost of the "rebate" by marking up the true regular sales price of the product in an

28    amount corresponding in whole or in part to the amount of the promised rebate; and

1          c.      Falsely representing that Dell was including valuable "free"

2   upgrades and add-on products and services with its computer products, where Dell in fact directly

3   recovered the cost of the "free" upgrades and add-ons by marking up the true regular sales price

4   of the original product in an amount corresponding in whole or in part to the value of the

5   purportedly "free" upgrades or add-ons, such that the promised savings were false.

6          111.    Dell's false representations were supplied to customers for the purpose of

7   affecting their purchase decisions.

8          112.    Dell had no reasonable grounds for believing that its misrepresentations

9   were true.

10          113.    Dell failed to exercise reasonable care and/or diligence in communicating

11   its misrepresentations to customers.

12          114.    Dell's false representations were the type of representations that are

13   regularly considered to be material; i.e., a reasonable person would attach importance to them and

14   would be induced to act on the information in making purchase decisions.

15          115.    Dell's false representations of discounts from "regular" prices and false

16   representations of rebate discounts and "free" offers are objectively material to the reasonable

17   consumer, and therefore reliance upon such representations may be presumed as a matter of law.

18          116.    Plaintiffs and members of the Class and Consumer Subclass reasonably

19   and justifiably relied to their detriment on Dell's false representations.

20          117.    Dell's false representations were a factor in causing Plaintiffs and members

21   of the Class and Consumer Subclass to purchase products and services from Dell.

22          118.    As a proximate result of Dell's misrepresentations, Plaintiffs and members

23   of the Class and Consumer Subclass were damaged in an amount to be determined at trial.

24          119.    Dell directly benefited from, and was unjustly enriched by, its systemic

25   false representations.

26

27

28

### THIRD CAUSE OF ACTION
#### (Intentional Misrepresentation)

120.   Plaintiffs, on behalf of themselves and the Class and Consumer Subclass, reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

121.   In the course of conducting its business of selling computer products and services, Dell has intentionally made material misrepresentations of fact to Plaintiffs and all members of the Class and Consumer Subclass, concerning the existence and/or nature of price discounts from the regular sales prices of the products, whether through Slash-Thru or Starting Prices.  As part of those misrepresentations, Dell engaged in the following practices:

a.   Falsely representing that customers were receiving a price discount from a referenced "regular" sales price of its computer products and services, where Dell in fact inflated the purported "regular" sales price such that the promised discount was false;

b.   Falsely representing that customers would receive rebate "discounts" from Dell's regular sales price of its computer products, where Dell in fact directly recovered the cost of the "rebate" by marking up the true regular sales price of the product in an amount corresponding in whole or in part to the amount of the promised rebate; and

c.   Falsely representing that Dell was including valuable "free" upgrades and add-on products and services with its computer products, where Dell in fact directly recovered the cost of the "free" upgrades and add-ons by marking up the true regular sales price of the original product in an amount corresponding in whole or in part to the value of the purportedly "free" upgrades or add-ons, such that the promised savings were false.

122.   The misrepresentations alleged herein were the type of representations that are regularly considered to be material, i.e., a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

123.   Dell knew that the misrepresentations alleged herein were false at the time Dell made them and/or acted recklessly in making such misrepresentations.

124.     In making the misrepresentations alleged herein, Dell intended that Plaintiffs and members of the Class and Consumer Subclass would rely on such misrepresentations and purchase Dell computer products and services.

125.     Dell's false representations of discounts from "regular" prices and false representations of rebate discounts and "free" offers are objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

126.     Plaintiffs and members of the Class and Consumer Subclass reasonably and justifiably relied to their detriment on Dell's intentional misrepresentations.

127.     Dell's intentional misrepresentations were a substantial factor in causing Plaintiffs and members of the Class and Consumer Subclass to purchase products and services from Dell.

128.     As a proximate result of Dell's intentional misrepresentations, Plaintiffs and members of the Class suffered damages in an amount to be determined at trial.

129.     Dell directly benefited from, and was unjustly enriched by, its systemic intentional misrepresentations.

130.     Dell has acted with "malice," as that term is defined in Civ. Code § 3294(c)(1), by engaging in the conduct alleged herein, which was specifically intended by Dell to cause substantial injury to the Plaintiffs and the members of the Class and Consumer Subclass.

131.     Dell's conduct alleged herein constitutes "fraud," as that term is defined in Civ. Code § 3294(c)(3), because such conduct involved intentional misrepresentations, deceit, and/or concealment of material facts known to Dell, and was done with the intent to cause injury to the purchasers of its computer products.

132.     Plaintiffs, on behalf of themselves and all others similarly situated, are entitled to actual and punitive damages and attorneys' fees under Civ. Code § 3294(a).

133.     As a proximate result of Dell's intentional misrepresentations, Plaintiffs and members of the Class and Consumer Subclass suffered an ascertainable loss and are entitled to relief and compensatory and punitive damages, in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
**(False Promise/Fraud)**

134.    Plaintiffs, on behalf of themselves and the Class and Consumer Subclass, reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

135.    Dell made false promises to Plaintiffs and all members of the Class and Consumer Subclass to sell computer products and services at prices discounted or reduced from their regular sales prices, whether through Slash-Thru or Starting Prices.

136.    Dell made such false promises for the purpose of inducing Plaintiffs and members of the Class and Consumer Subclass to enter into agreements with Dell to purchase computer products and services.

137.    The false promises alleged herein were the type of promises that are regularly considered to be material, i.e., a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

138.    Dell made such false promises with the knowledge that it would not fulfill them and with the intention of not fulfilling them.

139.    The false promises alleged herein are objectively material to the reasonable consumer, and therefore reliance upon such promises may be presumed as a matter of law.

140.    Plaintiffs and members of the Class and Consumer Subclass reasonably and justifiably relied to their detriment on Dell's false promises.

141.    Dell's false promises were a substantial factor in causing Plaintiffs and members of the Class and Consumer Subclass to purchase products and services from Dell.

142.    As a proximate result of Dell's false promises, Plaintiffs and members of the Class and Consumer Subclass suffered damages in an amount to be determined at trial.

143.    Dell directly benefited from, and was unjustly enriched by, having made the false promises alleged herein.

866668.1                                    THIRD AMENDED CLASS ACTION COMPLAINT

144.     Dell has acted with "malice," as that term is defined in Civ. Code § 3294(c)(1), by engaging in the conduct alleged herein, which was specifically intended by Dell to cause substantial injury to the Plaintiffs and the members of the Class and Consumer Subclass.

145.     Dell's conduct alleged herein constitutes "fraud," as that term is defined in Civ. Code § 3294(c)(3), because such conduct involved Dell making material promises, which Dell knew to be false, with the intent to cause injury to Plaintiffs and members of the Class and Consumer Subclass.

146.     As a result, Plaintiffs, on behalf of themselves and all others similarly situated, are entitled to actual and punitive damages and attorneys' fees under Civ. Code § 3294(a).

147.     As a proximate result of Dell's intentional misrepresentations, Plaintiffs and members of the Class and Consumer Subclass suffered an ascertainable loss and are entitled to relief and compensatory and punitive damages, in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

148.     Plaintiffs, on behalf of themselves and the Class and Consumer Subclass, reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

149.     As alleged herein, Dell intentionally and/or recklessly made false representations to Plaintiffs and all members of the Class and Consumer Subclass, to induce them to purchase Dell products and services.  Plaintiffs and members of the Class and Consumer Subclass reasonably and justifiably relied on these false representations in purchasing Dell products and services.

150.     As alleged herein, Dell made false promises to Plaintiffs and all members of the Class and Consumer Subclass which Dell did not intend to keep, and which Dell in fact did not keep, to induce Plaintiffs and members of the Class and Consumer Subclass to purchase Dell

products and services.  Plaintiffs and members of the Class reasonably and justifiably relied on these false promises in purchasing Dell products and services.

151.    As alleged herein, Plaintiffs and members of the Class and Consumer Subclass did not receive the savings, discounts and product values that Dell promised them.

152.    By its deceptive, misleading and unlawful conduct alleged herein, Dell obtained money from, and was unjustly enriched at the expense of, Plaintiffs and members of the Class and Consumer Subclass.

153.    It would be inequitable and unconscionable for Dell to retain the profits, benefits, and other compensation it obtained from its deceptive, misleading, and unlawful advertising.

154.    Plaintiffs, on behalf of themselves and the members of the Class and Consumer Subclass, are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Dell from its deceptive, misleading, and unlawful conduct.

## SIXTH CAUSE OF ACTION
### (California Business and Professions Code §§ 17500, *et seq.*)

155.    Plaintiffs, on behalf of themselves and the Class and Consumer Subclass, reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

156.    Dell has committed acts of untrue and misleading advertising, as defined by Business and Professions Code §§ 17500, *et seq.*, by engaging in the following acts and practices:

a.      Falsely representing that customers were receiving a price discount from a referenced "regular" sales price of its computer products, whether through Slash-Thru or Starting Prices, where Dell in fact inflated the purported "regular" sales price such that the promised discount was false;

b.      Falsely representing that customers would receive rebate "discounts" from Dell's regular sales price of its computer products, where Dell in fact directly

recovered the cost of the "rebate" by marking up the true regular sales price of the product in an amount corresponding in whole or in part to the amount of promised the rebate; and

            c.      Falsely representing that Dell was including valuable "free" upgrades and hardware promos and "free" add-on products and services with its computer products, where Dell in fact directly recovered the cost of the "free" upgrades and add-ons by marking up the true regular sales price of the original product in an amount corresponding in whole or in part to the value of the purportedly "free" upgrades or add-ons, such that the promised savings were false.

157.    Dell has violated Business and Professions Code § 17501 by advertising false discounts from purported former prices that were in fact not the prevailing market prices within three months next immediately preceding the publication of the advertisements containing the false former prices.

158.    Dell's misrepresentations deceive or have a tendency to deceive the general public regarding the existence and nature of price "discounts," rebates "discounts," and "free" offers.

159.    The misrepresentations by Dell alleged herein were the type of representations that are regularly considered to be material, i.e., a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

160.    Unless restrained by this Court, Dell will continue to engage in untrue and misleading advertising, as alleged above, in violation of § 17500 and § 17501 of the Business and Professions Code.

161.    As a result of the foregoing, Plaintiffs, and each member of the Class and Consumer Subclass, have been injured and have lost money or property and are entitled to restitution and injunctive relief.

## SEVENTH CAUSE OF ACTION
### (California Business and Professions Code §§ 17200, *et seq.*)

162.     Plaintiffs, on behalf of themselves and the Class and Consumer Subclass, reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

163.     Dell's deceptive advertising, as alleged herein, constitutes unlawful, unfair, or fraudulent business practices in violation of California Business and Professions Code §§ 17200 *et seq.*

164.     The misrepresentations by Dell alleged herein were the type of representations that are regularly considered to be material, i.e., a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

165.     As a result of the foregoing, Plaintiffs and each member of the Class and Consumer Subclass have been injured and have lost money or property and are therefore entitled to restitution and injunctive relief.

## EIGHTH CAUSE OF ACTION
### (California Consumers Legal Remedies Act; California Civil Code §§ 1750, *et seq.*)
### (On Behalf of Consumer Subclass Only)

166.     Plaintiff Chad Brazil, individually and on the behalf of the Consumer Subclass, realleges and incorporates, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges as follows.

167.     Plaintiff Chad Brazil and the members of the Consumer Subclass are consumers who purchased computer products and services from Dell primarily for personal, family, or household purposes within the meaning of the California Civil Code §§ 1750, *et seq.* ("Consumers Legal Remedies Act" or "CLRA"), specifically, Civil Code § 1761(d).

168.     Defendant has engaged in unfair methods of competition and unfair and/or deceptive acts or practices against Plaintiff Chad Brazil and the Consumer Subclass, in violation of the Consumer Legal Remedies Act, including:

a.     Falsely representing that customers were receiving a price discount from a referenced "regular" sales price of its computer products, whether through Slash-Thru or

1   Starting Prices, where Dell in fact inflated the purported "regular" sales price such that the

2   promised discount was false, in violation of California Civil Code § 1770 subsections (a)(9),

3   (a)(13), and (a)(16);

4          b.      Falsely representing that customers would receive rebate

5   "discounts" from Dell's regular sales price of its computer products, where Dell in fact directly

6   recovered the cost of the "rebate" by marking up the true regular sales price of the product in an

7   amount corresponding in whole or in part to the amount of the promised rebate in violation of

8   California Civil Code § 1770 subsections (a)(9), (a)(13), and (a)(16);

9          c.      Falsely representing that Dell was including valuable "free"

10  upgrades and "free" add-on products and services with its computer products, where Dell in fact

11  directly recovered the cost of the "free" upgrades and add-ons by marking up the true regular

12  sales price of the original product in an amount corresponding in whole or in part to the value of

13  the purportedly "free" upgrades or add-ons such that the promised savings were false, in violation

14  of California Civil Code § 1770 subsections (a)(9), (a)(13), and (a)(16); and

15         d.      Inserting an unconscionable provision in a contract, including,

16  without limitation, the arbitration and class action waiver provision, in violation of California

17  Civil Code § 1770 subsection (a)(19).

18         169.    Dell intentionally engaged in the acts and practices alleged herein with the

19  intent to induce purchasers to buy Dell computer products.

20         170.    Dell's acts and practices did in fact result in the sale of Dell computer

21  products to Plaintiff and the members of the Consumer Subclass, thereby causing them harm.

22         171.    The misrepresentations by Dell alleged herein were the type of

23  representations that are regularly considered to be material, i.e., a reasonable person would attach

24  importance to them and would be induced to act on the information in making purchase decisions.

25         172.    Unless Dell is enjoined from continuing to engage in violations of the

26  Consumer Legal Remedies Act, Plaintiff and the members Consumer Subclass will continue to be

27  injured.  Accordingly, Plaintiff, on behalf of himself and the Consumer Subclass, demands

28  judgment against Defendant under the Consumer Legal Remedies Act for injunctive relief.

173.    Pursuant to Section 1782(a) of the CLRA, on March 22, 2007, Plaintiffs' counsel, on behalf of Plaintiff Chad Brazil, served Dell by United States certified mail, return receipt requested, with notice of Dell's violations of the CLRA.  A true and accurate copy of the CLRA demand notice is attached hereto as Exhibit DD.  Dell acknowledged receipt of the CLRA demand notice on March 28, 2007, as evidenced by Domestic Return Receipt signed by its agent, a true and accurate copy of which is attached hereto as Exhibit EE.

174.    Dell has refused or failed to timely respond to the CLRA demand notice.

175.    Dell has failed to provide appropriate relief for its violations of the CLRA within 30 days of its receipt of Plaintiff Chad Brazil's demand notice.  Accordingly, pursuant to Sections 1780 and 1782(b) of the CLRA, Plaintiff Chad Brazil is entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the Class and Consumer Subclass, request that the Court order the following relief and enter judgment against Dell, Inc. as follows:

A.    An order certifying the proposed members of the Class and Consumer Subclass and appointing Plaintiffs and their counsel of record to represent the classes;

B.    An order that Dell, Inc. be permanently enjoined from its improper activities and practices described herein;

C.    A judgment awarding Plaintiffs and members of the Class and Consumer Subclass actual and compensatory damages in an amount according to proof for Dell Inc.'s breaches of its promises to provide price discounts, rebate discounts, and free offers, and for all other of Dell Inc.'s conduct alleged under all causes of action herein entitling Plaintiffs and members of the Class and Consumer Subclass to actual and compensatory damages;

D.    A judgment awarding Plaintiffs and members of the Class and Consumer Subclass restitution including, without limitation, disgorgement of all profits and unjust enrichment obtained by Dell Inc. as a result of its unlawful, unfair, and fraudulent business practices and conduct alleged herein;

- 40 -

1           E.       A judgment awarding Plaintiffs and members of the Class and Consumer

2 Subclass punitive damages for Dell's intentional false advertising scheme, as alleged herein;

3           F.       Pre-judgment and post-judgment interest;

4           G.       Attorneys' fees, expenses, and the costs of this action; and

5           H.       All other and further relief as the Court deems necessary, just and proper.

6

7 **JURY DEMAND**

8         Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury for all issues so

9 triable under the law.

10

11 Dated: April 19, 2010           CHAD BRAZIL and STEVEN SEICK,

12

13 By:   /s/ Michael W. Sobol
          Michael W. Sobol

14 Michael W. Sobol (State Bar No. 194857)
15 Roger N. Heller (State Bar No. 215348)
Allison S. Elgart (State Bar No. 241901)
16 LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
17 San Francisco, CA 94111-3339
Telephone: (415) 956-1000
18 Facsimile: (415) 956-1008

19 Rachel Geman (NY Bar No. RG 0998) (*Pro Hac Vice*)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
20 250 Hudson Street, 8th Floor
New York, NY 10013-1413
21 Telephone: (212) 355-9500
Facsimile: (212) 355-9592

22

23 Daniel M. Hattis (State Bar No. 232141)
Angelo Salvatore Parise (State Bar No. 165690)
24 LAW OFFICES OF ANGELO SALVATORE PARISE
16870 West Bernardo Drive, Suite 400
25 San Diego, CA 92127
Telephone: (858) 674-6660
26 Facsimile: (858) 674-6661

27

28