1  Michael W. Sobol (State Bar No. 194857)
2  Roger N. Heller (State Bar No. 215348)
   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
3  275 Battery Street, 29th Floor
   San Francisco, CA 94111-3339
4  Telephone: (415) 956-1000
   Facsimile:  (415) 956-1008
5

6  Rachel Geman (NY Bar No. RG 0998) (*Pro Hac Vice*)
   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
7  250 Hudson Street, 8th Floor
   New York, NY 10013-1413
8  Telephone: (212) 355-9500
   Facsimile:  (212) 355-9592
9

10 Daniel M. Hattis (State Bar No. 232141)
   Angelo Salvatore Parise (State Bar No. 165690)
11 LAW OFFICES OF ANGELO SALVATORE PARISE
   16870 West Bernardo Drive, Suite 400
12 San Diego, CA  92127
   Telephone: (858) 674-6660
13 Facsimile:  (858) 674-6661

14 *Class Counsel*

15                   UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17                         SAN JOSE DIVISION

18

19 CHAD BRAZIL and STEVEN SEICK,          Case No. C-07-01700 RMW
   individually and on behalf of all others
20 similarly situated,                     **NOTICE OF MOTION AND MOTION
                                           FOR AWARD OF ATTORNEYS' FEES
21              Plaintiffs,                 AND EXPENSES AND AWARD OF
                                           SERVICE AWARDS FOR CLASS
22 v.                                      REPRESENTATIVES; MEMORANDUM
                                           OF POINTS AND AUTHORITIES**
23 DELL INC. and DOES 1-10,
                                           Date:       October 28, 2011
24              Defendants.                Time:       9:00 a.m.
                                           Courtroom:  6
25                                         Judge:      Hon. Ronald M. Whyte

26

27

28

1

## **NOTICE OF MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that on October 28, 2011, at 9:00 a.m., or as soon thereafter as

4    the matter may be heard, in Courtroom 6 of this Court before the Honorable Ronald M. Whyte,

5    United States District Court, Northern District of California, San Jose, California, Plaintiffs and

6    Class Counsel will, and hereby do, move the Court for an Order awarding: (i) Class Counsel

7    attorneys' fees in the amount of $6,134,770.21 and reimbursement of out-of-pocket expenses in

8    the amount of $865,229.79; and (b) Class Representatives Chad Brazil and Steven Seick service

9    awards in the amount of $5,000 each, for their efforts on behalf of the Class in this case. The

10   requested awards were agreed to by the parties, will be paid directly by Dell over and above the

11   consideration to be paid to Class Members, and are fair, reasonable, and justified under applicable

12   law and the circumstances of this case.

13          This motion is based upon this notice of motion and motion; the accompanying

14   memorandum of points and authorities, the declarations of Michael W. Sobol and Daniel M.

15   Hattis, filed herewith, the proposed Settlement Agreement and Release ("Settlement"), entered

16   into between the parties and previously filed with the Court, and all papers filed in support

17   thereof; the complete record in this action; and any argument presented in connection with this

18   motion.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.  INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 3

A.  Class Counsel Expended Considerable Time and Resources in Investigating The Claims in This Action and Creating a Reliable Database Tracking the Price and Discount Histories of the Products at Issue .......................................................................................................... 3

B.  Class Counsel Overcame Considerable Challenges in Prosecuting This Groundbreaking Action. ........................................................................... 4

C.  The Settlement Negotiations and the Parties' Agreement Regarding Attorneys' Fees and Costs. ...................................................................... 6

D.  Class Counsel Achieved a Strong Result for the Class and Other Consumers. ............................................................................................... 7

1.  The Settlement Provides For Substantial Monetary Relief for Class Members. ........................................................................... 7

2.  This Lawsuit Caused Important Structural Changes to Dell's Advertising. ................................................................................... 8

III. THE AGREED UPON FEE IS FAIR, REASONABLE AND JUSTIFIED. ........ 10

A.  The Requested Fee Here Is The Product of Arm's-Length Negotiations Between Experienced Counsel, and Should Be Presumed Reasonable. .............................................................................. 10

B.  The Fee Award Here Should Be Analyzed Pursuant to the Lodestar-Multiplier Method .................................................................................. 11

C.  The Requested Fee Here is Reasonable and Appropriate Under a Lodestar Analysis. ................................................................................... 12

1.  Class Counsels' Lodestar is Reasonable. ...................................... 12

a.  Class Counsels' Hourly Rates are Reasonable. ................ 12

b.  The Number of Hours Class Counsel Worked is Reasonable. ...................................................................... 13

2.  Consideration of the Relevant "Enhancement" Factors Demonstrates the Reasonableness of the Requested Fee. ............. 15

a.  Class Counsel Achieved Strong Results for the Class and Other Consumers. ....................................................... 15

1.  Significant Monetary Relief for Class Members. ...................................................................... 15

**TABLE OF CONTENTS**
(continued)

Page

        2.     Important Structural Changes to Dell's Marketing Practices................................................ 16

    b.    This Case Involved Numerous Complex and Novel Issues........................................................................ 18

    c.    Class Counsel Assumed Significant Risks in Prosecuting This Case..................................................... 19

    d.    Class Counsels' Experience and Skill Displayed in Prosecuting This Action Further Supports the Requested Award. ............................................................ 20

  D.    The Requested Fee Is Further Supported and Corroborated by a Common Fund Analysis............................................................ 20

IV.    CLASS COUNSEL ARE ENTITLED TO RECOVER THEIR OUT-OF-POCKET EXPENSES, WHICH ARE REASONABLE. .................................... 21

V.    THE REQUESTED SERVICE AWARDS FOR THE CLASS REPRESENTATIVES ARE REASONABLE AND WELL JUSTIFIED........... 21

VI.    CONCLUSION ................................................................................. 22

# TABLE OF AUTHORITIES

**Page**

## CASES

*AT&T Mobility LLC v. Concepcion,*
131 S.Ct. 1740 (2011) ................................................................................................... 3, 15

*Beasley v. Wells Fargo Bank,*
235 Cal. App. 3d 1407 (1991) ............................................................................................... 18

*Blum v. Stenson,*
465 U.S. 886 (1994) ............................................................................................................... 12

*Bogosian v. Gulf Oil Corp.,*
621 F. Supp. 27 (E.D. Pa. 1985) ........................................................................................... 22

*Cabrales v.* County *of Los Angeles,*
935 F.2d 1050 (9th Cir. 1991) ............................................................................................... 14

*Carroll v. Blue Cross & Blue Shield of Mass.,*
157 F.R.D. 142 (D. Mass. 1994), *aff'd* 34 F.3d 1065 (1st Cir. 1994) .................................... 22

*Castaneda v. Burger King Corp.,*
2010 U.S. Dist. LEXIS 78299 (N.D. Cal. Jul. 12, 2010) ...................................................... 17

*Caudle v. Bristow Optical Co.,*
224 F.3d 1014 (9th Cir. 2000) ............................................................................................... 13

*Colgan v. Leatherman Tool Group, Inc.,*
135 Cal. App. 4th 663 (2006) ............................................................................................... 18

*Create-A-Card, Inc. v. Intuit, Inc.,*
2009 WL 3073920 (N.D. Cal. Sep. 22, 2009) ...................................................................... 11

*Ctr. for Biological Diversity v. County of San Bernardino,*
185 Cal. App. 4th 866 (2010) ............................................................................................... 14

*Dunk v. Ford Motor Co.,*
48 Cal. App. 4th 1794 (1996) ............................................................................................... 11

*F.T.C. v. Colgate-Palmolive Co.,*
380 U.S. 374 (1965) ............................................................................................................... 17

*Fischer v. SJB-P.D. Inc.,*
214 F.3d 1115 (9th Cir. 2000) ............................................................................................... 14

*Graham v. DaimlerChrsyler Corp.,*
34 Cal. 4th 553 (2004) ........................................................................................................... 18

*Hanlon v. Chrysler Group, Inc.,*
150 F.3d 1011 (9th Cir. 1998) ................................................................................. 11, 12, 18, 20

*Harris v. HSN LP,*
2007 WL 61068 (Cal. App. Jan. 10, 2007) ............................................................................ 5

**TABLE OF AUTHORITIES**
(continued)

Page

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................. 10, 11, 14

*Hughes v. Microsoft Corp.*,
   2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ................................ 22

*In re Apple Computer, Inc. Derivative Litig.*,
   2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ...................... 10

*In re Cenco Inc. Sec. Litig.*,
   519 F. Supp. 322 (N.D. Ill. 1981) ...................................................... 17

*In re Media Vision Tech. Sec. Litig.*,
   913 F.Supp. 1362 (N.D. Cal. 1996) ................................................... 21

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................ 22

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F.Supp.2d 503 (E.D.N.Y 2003) .................................................. 17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................... 11, 12, 19

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ....................................................... 10

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ................................................ 12, 15, 19, 20

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) ............................................................ passim

*Kim v. Carter's Inc.*,
   598 F.3d 362 (7th Cir. 2010) .............................................................. 5

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. Jul. 18, 1997) ......................................... 17

*Mafood v. QVC, Inc.*,
   2008 WL 5381088 (C.D. Cal. Sep. 22, 2008) ......................................... 5

*Mills v. Electric Auto–Lite Co.*,
   396 U.S. 375 (1970) ........................................................................ 21

*Mulligan v. QVC, Inc.*,
   2006 WL 5061557 (Ill. Cir. Mar. 27, 2006) .......................................... 5

*Pinto v. Princess Cruise Lines, Ltd.*,
   513 F.Supp.2d 1334 (S.D. Fla. 2007) ................................................. 17

*Press v. Lucky Stores, Inc.*,
   34 Cal. 3d 311 (1983) ..................................................................... 18

**TABLE OF AUTHORITIES**
(continued)

Page

*Razilov v. Nationwide Mut. Ins. Co.*,
 2006 WL 3312024 (D. Or. Nov. 13, 2006) ............................................................ 22

*Rodriguez v. West Publishing Corp.*,
 563 F.3d 948 (9th Cir. 2009) ................................................................. 21, 22

*Serrano v. Priest*,
 20 Cal. 3d 25 (1977) ........................................................................... passim

*Serrano v. Unruh*,
 32 Cal. 3d 621 (1982) .............................................................................. 17

*Skaff v. Meridien N. Amer., Beverly Hills, LLC*,
 506 F.3d 832 (9th Cir. 2007) ...................................................................... 18

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ......................................................... 11, 17, 21

*Thayer v. Wells Fargo Bank*,
 92 Cal. App. 4th 819 (2001) ...................................................................... 15

*Van Vranken v. Atl. Richfield Co.*,
 901 F.Supp. 294 (N.D. Cal. 1995) ............................................................. 22

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ..................................................... 10, 17, 20, 21

*Wershba v. Apple Computer, Inc.*,
 91 Cal. App. 4th 224 (2001) ..................................................................... 11

**STATUTES**

California Civil Code
 § 1770(a)(13) ....................................................................................... 17

California Code of Civil Procedure
 § 1021.5 .............................................................................................. 18

**RULES**

Federal Rule of Civil Procedure
 Rule 23(f) ............................................................................................... 6

Rule 23(e) .................................................................................................. 11

**REGULATIONS**

16 C.F.R. § 233.1 ...................................................................................... 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Class Counsel respectfully request that the Court approve the payment of attorneys' fees and expenses that defendant Dell, Inc. ("Dell") has agreed to pay under the proposed Settlement Agreement and Release ("Settlement").  Dell's payment of Class Counsels' fees and expenses is over and above the consideration to be paid to the members of the Class, and was separately negotiated and agreed to by Plaintiffs and Dell through arms-length negotiations, after the parties reached agreement on the other essential terms of the proposed Settlement.  Class Counsel incurred nearly $900,000 in expenses, necessarily incurred in large part by performing complex data extraction and expert analyses.  Class Counsel request a fee of approximately $6.1 million, an amount which closely corresponds to their lodestar incurred in the case (*i.e.*, no multiplier is requested).  Thus, Class Counsel seek an award totaling $7 million for fees and expenses for their hard work and commitment in investigating, prosecuting, and successfully resolving this challenging case.

The requested fee is fair, reasonable, and justified under applicable law and given the circumstances of this case, including the great challenges and risks that Class Counsel assumed in pursuing this difficult and unprecedented case, and the substantial benefits those efforts generated for the Class and other consumers.

Pursuant to the Settlement, if approved, all Class Members who submit a valid claim will receive a $50 payment from Dell for each covered purchase.  This is a strong monetary result given the harm asserted and the risks of further litigation.  Class Counsels' efforts also caused important and valuable structural change.  Specifically, Dell confirms that it revamped the way it markets its computers in response to the concerns Plaintiffs raised in this lawsuit.  Rather than using "former" or "regular" reference prices in its online advertising--as Dell had done for years before Plaintiffs filed their suit challenging such representations--Dell now advertises its computers and their selling prices by comparison to their "Market Value," which Dell expressly informs customers are based on the prices for comparable products sold by other retailers.  This change ensures that Class Members and countless other Dell customers will not be exposed to the

1   representations challenged in this case.  This generated public benefit alone would justify the

2   requested fee.

3       The benefits Class Counsel achieved are even more pronounced considering the

4   challenges and risks they faced in this case.  Establishing the existence and extent of the

5   challenged practice required large commitments of time and resources by Class Counsel, both

6   prior to and after filing suit.  These efforts included, but were not limited to, developing a process

7   to reliably capture and record, in a usable proprietary database, comprehensive price and discount

8   information advertised by Dell for the products at issue, and maintaining such database

9   throughout the litigation.  Class Counsel also had to devote considerable time and energy to

10  unravel and understand, among other subjects, Dell's pricing and marketing models and

11  strategies, the details of Dell's computer products and variations and changes thereto, and the

12  numerous internal Dell systems and databases that record and store information relevant to this

13  case.  Class Counsel gained sufficient expertise regarding these and other complex issues only

14  through their hard work in reviewing large quantities of documents, deposing numerous Dell

15  witnesses, and carefully tracking Dell's marketing, all the while litigating against one of the

16  largest computer companies in the world that had intimate knowledge regarding all of these

17  issues.

18      The legal challenges and risks that Class Counsel faced were significant as well.  As Dell

19  reminded Plaintiffs and the Court repeatedly, never before had a class case challenging reference

20  price advertising succeeded through certification.  In litigating two class certification motions--

21  one under Texas law and one under California law--and ultimately obtaining certification of a

22  Class, Class Counsel met head on the formidable defenses and arguments raised by Dell in

23  opposition and obtained an unprecedented result--*i.e.*, class certification--in this case.  Class

24  Counsel overcame numerous other difficult obstacles as well.  Indeed, Dell vigorously litigated

25  this case from the very beginning, bringing several dispositive motions that raised challenging

26  issues and could have derailed this case considerably or entirely.  Ongoing litigation would have

27  been time-consuming and would have presented additional litigation risks, including the risk that

28  Dell might renew its motion to compel arbitration in light of the Supreme Court's recent opinion

MOTION FOR AWARD OF ATTORNEYS' FEES AND
EXPENSES AND SERVICE AWARDS; MPA
CASE NO. C-07-01700 RMW

1    in *AT&T Mobility LLC v. Concepcion,* 131 S.Ct. 1740 (2011).

2         For these reasons and others detailed below, Class Counsel respectfully request that the

3    Court grant their motion for reasonable attorneys' fees and reimbursement of out-of-pocket

4    expenses, in the amount agreed to by the parties, and grant the requested $5,000 service awards to

5    compensate the two Class Representatives for their demonstrated commitment to, and efforts on

6    behalf of, the Class.

7    **II.    BACKGROUND**

8         For more than four years, Class Counsel have devoted thousands of hours and incurred

9    considerable necessary out-of-pocket expenses in investigating, developing, prosecuting, and

10   resolving this challenging case.  Class Counsel expended these resources despite the fact no class

11   action challenging similar conduct had ever succeeded, and even though it was clear from the

12   beginning that successfully prosecuting this action would be very difficult.  As summarized

13   below, Class Counsel were able to overcome numerous substantial obstacles, obtain

14   unprecedented class certification, and secure important benefits for the Class and other Dell

15   customers.

16        **A.    Class Counsel Expended Considerable Time and Resources in Investigating**
          **The Claims in This Action and Creating a Reliable Database Tracking the**
17        **Price and Discount Histories of the Products at Issue.**

18        Prior to filing this action in March 2007, Class Counsel thoroughly investigated the

19   advertising practices at issue.  Among other things, Class Counsel developed a reliable

20   methodology for tracking and recording, in usable formats, the prices and other relevant

21   representations made on Dell's website regarding the products at issue.  These efforts ultimately

22   resulted in the development and maintenance of a comprehensive database containing both native

23   HTML files and pdf "screenshots" of the relevant Dell web pages over several years.  *See*

24   Declaration of Michael W. Sobol, filed herewith ("Sobol Decl."), ¶¶ 10-11; Declaration of Daniel

25   M. Hattis, filed herewith ("Hattis Decl."), ¶¶ 19-21.  This database, which is arguably more

26   reliable and comprehensive than the data Dell itself has maintained (and almost certainly more

27   accessible), allowed Class Counsel to track the price and discount histories of the various

28   computers and confirm the suspected advertising practices, providing the requisite grounds for

filing suit.  The database also provided critical information regarding Dell's products and

practices that Class Counsel relied on throughout the litigation.  For example, Class Counsel used

the data they mined to better understand and analyze Dell's methods of "establishing" its

reference prices and how Dell's changing promotions related to one another.  Moreover, Class

Counsels' efforts in this regard helped establish that the validity/falsity of Dell's reference prices

was subject to common proof, thus helping to get the Class certified.  *See ibid.*[1]  Class Counsel

also tracked Dell's print advertising, and monitored the advertising of Dell's competitors as well.

Prior to filing suit, Class Counsel also thoroughly researched numerous legal issues that would

arise in the litigation, as well as pertinent factual issues such as the impact of reference prices on

consumer behavior.  *See* Sobol Decl., ¶ 11.  These investigative efforts were essential to the

success of the case, and were expended with no assurances that Class Counsel would receive any

reimbursement.

> **B.**     **Class Counsel Overcame Considerable Challenges in Prosecuting This Groundbreaking Action.**

The strong results achieved in this action can only be properly viewed in light of the

numerous critical obstacles Class Counsel had to overcome to achieve them.  To begin with,

Class Counsel had to overcome a considerable deficit with respect to their knowledge of the

complex and technical factual issues raised in this case.  Substantial commitments of time and

resources were required just for Class Counsel to be able to interpret and analyze the more than 1

million pages of documents produced by Dell, and nearly 100,000 pages produced by Dell's

outside consultant Bain & Company, in discovery, many of which contained technical terms and

discussions about Dell products, pricing models, promotional and sales strategies, and other

highly technical internal processes.  *See* Sobol Decl., ¶ 12.  All the while, Class Counsel were

litigating against a defendant that was both well-funded and intimately familiar these complex

---

[1] Dell apparently did not maintain and store historical screenshots of its website in the same comprehensive manner.  Plaintiffs provided Dell, in discovery, with the information that they mined from Dell's website.

1   factual areas.

2          Additionally, Class Counsel had to overcome numerous critical litigation obstacles in

3   prosecuting this case--several of which, on their own, could have entirely undermined the case.

4   Perhaps chief among those obstacles was the challenge of getting a class certified in an area of the

5   law where no litigant had ever done so before.  Indeed, as Dell vigorously argued in opposing

6   both of Plaintiffs' class certification motions, every previous attempt to challenge false reference

7   price advertising on a class-wide basis had fallen short.[2]  While Plaintiffs believe that those cases

8   are distinguishable, they highlight some of the difficulties inherent in prosecuting a case of this

9   nature and underscore the great risks that Class Counsel assumed in doing so.

10         Achieving class certification here required an enormous effort to address the formidable

11  legal and factual arguments raised by Dell in opposition, and to establish that the three main

12  components of Plaintiffs' claims--the falsity of Dell's reference prices, the materiality of such

13  representations, and quantifying class damages--could be tried manageably on a class-wide basis.

14  As to falsity, Class Counsel deposed several Dell database personnel and other employees.  The

15  testimony Class Counsel obtained from these witnesses allowed them to confirm the details of

16  Dell's pricing and discounting policies, including Dell's methods for "establishing" reference

17  prices, and to demonstrate that the relevant price histories (and thus the validity of the

18  representations at issue) could be discerned and evaluated from Dell's historical records.  With

19  respect to materiality, Class Counsel expended considerable time mining the very large document

20  productions from Dell and its outside consultant, and ultimately presented to the Court several

21  compelling documents demonstrating that the price representations at issue influenced customer

22  behavior.  Class Counsel also engaged one of the foremost experts in the field, Larry D.

23  Compeau, Ph.D, and extracted key admissions from Dell's expert on the subject as well.  As for

24  damages, Class Counsel, together with their economics expert, Paul H. Rubin, Ph.D, developed

25  _____

26  [2] *See, e.g., Mahfood v. QVC, Inc.*, 2008 WL 5381088 (C.D. Cal. Sep. 22, 2008); *Mulligan v. QVC, Inc.*, 2006 WL 5061557 (Ill. Cir. Mar. 27, 2006); *Harris v. HSN LP*, 2007 WL 61068 (Cal.
27  App. Jan. 10, 2007); *Kim v. Carter's Inc.*, 598 F.3d 362 (7th Cir. 2010).

28

MOTION FOR AWARD OF ATTORNEYS' FEES AND
EXPENSES AND SERVICE AWARDS; MPA
CASE NO. C-07-01700 RMW

and presented viable models for measuring class damages using common inputs, and identified

the key transactional data from Dell's records necessary for such analyses.  Sobol Decl., ¶¶ 11-15.

After the Court issued its class certification Order, Dell filed a petition with the U.S. Court of

Appeals, pursuant to Federal Rule of Civil Procedure 23(f), seeking permission to immediately

appeal the Court's Order.  Plaintiffs opposed Dell's Rule 23(f) petition, which was denied.

Class Counsel overcame several other difficult challenges as well.  Indeed, Dell

vigorously defended this case from the very beginning and throughout the more than three years

of litigation, bringing numerous dispositive motions, including a motion to compel arbitration,

two motions to dismiss and strike class allegations, and a motion for judgment on the pleadings,

which was heard together with Plaintiffs' second class certification motion.  Dell's motions raised

complex and often novel issues of fact and law.  Among other difficult issues addressed were the

enforceability of Dell's choice-of-law provision (which, if ultimately enforced, may have greatly

reduced Plaintiffs' chances of pursuing their claims on a class-wide basis), the significance and

sufficiency of Dell's efforts to "establish" its reference prices, the relevance of the prices charged

by Dell's competitors, the significance of regulatory authority related to the practices at issue, the

application of Article III standing requirements, and whether there were viable methods for

measuring class damages.  Plaintiffs were able to meet the challenges raised by Dell's motions

through the hard work and skill of Class Counsel.  Sobol Decl., ¶ 14.  Any of these numerous

obstacles, on their own, could have prevented the Class from recovering anything in this action.

Together, they presented a daunting and risky challenge to Class Counsel.

**C.**   **The Settlement Negotiations and the Parties' Agreement Regarding Attorneys' Fees and Costs.**

Following the Court's class certification Order, and after preliminary communications

regarding settlement, the parties agreed to engage in mediation with mediator Randall Wulff of

Wulff, Quinby & Sochynsky.  A full-day mediation was held on March 29, 2011.  During the

course of the mediation, the parties engaged in arms-length negotiations between counsel and,

with the assistance of Mediator Wulff, ultimately reached an agreement in principle to resolve

this litigation.  The terms of the agreement were thereafter finalized and memorialized in the

proposed Settlement.  Importantly, the terms related to Class Counsels' fee were negotiated separately, after the parties had agreed in principle to the other key terms.  Sobol Decl., ¶ 16; Settlement at 4.[3]

Pursuant to the Settlement, Dell agreed to pay Class Counsel up to $7 million in total attorneys' fees and expenses, subject to Court approval.  Settlement at 15-16.  After accounting for Class Counsels' reasonable out-of-pocket expenses, the fee the parties agreed to is approximately equal to Class Counsels' combined lodestar in this case to date, and thus Class Counsel do not seek a multiplier on their lodestar.[4]  The award of Class Counsels' fees and costs will be paid directly by Dell and will not reduce, in any way, the monetary recovery available to the Class.  Settlement at 16.

**D.** **Class Counsel Achieved a Strong Result for the Class and Other Consumers.**

Through their vigorous prosecution of this case through class certification, and their negotiation of the Settlement, Class Counsel made available significant monetary relief for all Class Members.  Moreover, as expressly confirmed by Dell in the Settlement, this lawsuit caused Dell to revamp the way it markets its computers, ensuring that Class Members and countless other consumers will not be exposed the former price representations challenged in this case.

**1.** **The Settlement Provides For Substantial Monetary Relief for Class Members.**

The Settlement allows all Class Members to submit claims for their purchases at issue, and provides that Dell will pay *all* valid claims that are submitted, in the amount of $50 for each claim.  There is no class-wide cap or ceiling on the overall claims that will be paid pursuant to the

---

[3] A copy of the Settlement can be found at Docket No. 310-1.

[4] To date, Class Counsel have incurred approximately $865,229.79 in out-of-pocket costs.  Sobol Decl., ¶ 25, Ex. B; Hattis Decl., ¶ 17, Ex. B.  The amount requested for attorneys' fees is thus $6,134,770.21.  As of this filing, Class Counsels' combined lodestar in this case is approximately $6,066,618.50, *see* Sobol Decl., ¶ 19, Ex. A; Hattis Decl., ¶ 12, Ex. A, meaning that the fee requested currently represents a very small multiplier (1.011) on their lodestar.  Class Counsel reasonably expect that by the time their work in this case is complete, their combined lodestar will meet, if not exceed, the amount requested for attorneys' fees.

1    Settlement, and thus no Class Member who submits a valid claim will be denied recovery.

2    Settlement at 8-9.  Moreover, pursuant to the Settlement and the Court's preliminary approval

3    Order, Class Members received direct notice of the Settlement and their rights to submit claims.

4    *See* Settlement at 11-13; Docket No. 318.[5]

5           Further, the Settlement separately provides for the payment, directly by Dell, of the

6    attorneys' fees and costs awarded and the costs of notice administration.  Settlement at 16, 19.

7    Such costs will therefore not reduce the funds available to the Class.  In all, the Class includes

8    392,979 Class Member purchases, by 354,759 Class Members,[6] and thus the total monetary relief

9    available to the Class is $19,648,950.

10                        **2.    This Lawsuit Caused Important Structural Changes to Dell's
                                  Advertising.**
11
            In addition to the monetary benefits, Class Counsels' efforts generated important
12
     structural changes to Dell's marketing practices, providing a significant benefit to the general
13
     public including Class Members.  A comparison of Dell's representations as alleged and shown in
14
     Plaintiffs' original Complaint with how Dell currently markets its computers online demonstrates
15
     this point.
16
            At the time this lawsuit was filed, and for years before that, Dell regularly advertised
17
     computers on its website using former price representations together with representations of
18
     corresponding "instant savings" from such purported former prices.  As Plaintiffs described this
19
     practice in their Complaint:
20
                        The false former price discounts have been omnipresent on Dell's
21                      Web site and in its print advertising.  Dell displays a false discount
                        price alongside a false, often crossed-out, regular price for nearly
22                      every desktop and notebook computer, server, and storage device

23    _____

24    [5] Importantly, claims may be submitted by mail or electronically via a hyperlink on the settlement
     website.  Settlement at 8.  The ability to submit claim forms electronically is particularly
25    appropriate and beneficial to Class Members here, given that the Class consists exclusively of
     customers who purchased the products at issue online via Dell's website.
26    [6] Some Class Members purchased more than one covered product.  Class Members may recover
     $50 for each covered purchase.
27

28
                                                    MOTION FOR AWARD OF ATTORNEYS' FEES AND
                                                    EXPENSES AND SERVICE AWARDS; MPA
                                                    CASE NO. C-07-01700 RMW

> that it sells. Dell consistently misrepresents that its sales prices represent "savings" in specific dollar amounts from inflated and false regular prices.

Docket No. 1 (Complaint), ¶ 23. By virtue of Dell's standardized online purchase path, these representations were made to all online customers buying the products in question.[7] Both named Plaintiffs bought computers advertised with such former price representations, and their purchase experiences formed the basis for the class claims here. *See* Complaint, ¶¶ 53-67; Sobol Decl., Exs. C, D (screen shots related to named Plaintiffs' purchases, originally Exs. G and J to Complaint); *see also* Sobol Decl., Ex. E (screen shot of Offer Page with former reference prices), Ex. F (example of print advertisement with similar representations of purported "regular" prices, originally Ex. C to Complaint). Plaintiffs alleged that these representations were false, misleading, and illegal, and demanded that Dell be enjoined from making these representations. *See, e,.g.,* Complaint at p. 31.

As expressly confirmed by Dell in the Settlement, Dell revamped the way it markets its computers in response to this lawsuit. As the Settlement provides, Dell "acknowledges that it changed its methodology for consumer online advertising in response to issues raised by Plaintiffs in this Action." Settlement at 8.

Dell stopped using former or "regular" reference prices in its online advertising. Instead, Dell now advertises its computers and their selling prices by comparison to their "Market Value," which is expressly described on the relevant Dell web pages as "estimated based on industry data including published and as-sold prices for same or comparable products in most recent survey of major online and/or offline retailers." *See, e.g.,* Sobol Decl., Ex. G (screenshot showing current "Market Value" advertising). Completely absent from Dell's website are the former price representations that Plaintiffs challenged in this case. *Compare, e.g.*, Sobol Decl. Exs. C-E, *with* Sobol Decl., Ex. G.

---

[7] *See* Docket No. 306 (Class Cert Order) at 7 ("There is no dispute that the alleged misrepresentations were communicated to all class members, because the representations were made at the point of sale as part of a standardized online purchasing process.").

Both the expert testimony in this case and Dell's own documents confirm that the former reference price representations that Plaintiffs challenged in this case materially influenced consumer behavior.  Class Counsels' achievement in eliminating these representations has thus provided, and will continue to provide, a significant benefit to the Class Members and other Dell customers.

## III.   THE AGREED UPON FEE IS FAIR, REASONABLE AND JUSTIFIED.

Because Plaintiffs asserted claims under California law, the award of attorneys' fees here is also governed by California law.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Under well-established California law, the trial court has the power to award reasonable attorneys' fees and costs where, as here, a litigant proceeding in a representative capacity secures a "substantial benefit" for a class of persons.  *Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977).

### A.   The Requested Fee Here Is The Product of Arm's-Length Negotiations Between Experienced Counsel, and Should Be Presumed Reasonable.

As the United States Supreme Court has explained: "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  "A court should refrain from substituting its own value for a properly bargained-for agreement."  *In re Apple Computer, Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS 108195, at *12 (N.D. Cal. Nov. 5, 2008).  Thus, where there is no evidence of collusion and no detriment to the parties, courts "should give substantial weight to a negotiated fee amount, assuming that it represents the parties' best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (citation omitted).

Here, Class Counsel negotiated with Dell to reach a fee that they regarded as reasonable, based on their lodestar and out-of-pocket expenditures in this action.  The fee was properly bargained for without collusion or detriment to the Class or the parties, and was negotiated only after the parties reached agreement in principle on the other key terms.  Sobol Decl., ¶ 16. Moreover, the fees and costs awarded will be paid directly by Dell and will not reduce the funds

available to the Class.  Under these circumstances, substantial weight should be given to the

judgment of the parties and their counsel regarding a reasonable fee.

### B.  The Fee Award Here Should Be Analyzed Pursuant to the Lodestar-Multiplier Method

In determining whether the agreed upon fee here is appropriate, the Court's role is to

evaluate whether such amount is "'fundamentally fair, adequate, and reasonable.'"  *Staton v.*

*Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)); *In re Wash. Pub.*

*Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 n.2 (9th Cir. 1994) (overriding principle is that

the fee award be "reasonable under the circumstances").  The two primary methods for

determining reasonable fees in a class case are the "lodestar-multiplier" method and the

"percentage of the fund" method.  *See Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224,

254 (2001); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1810 (1996); *accord Hanlon v.*

*Chrysler Group, Inc.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

The lodestar-multiplier analysis is the most appropriate way to evaluate the fee request in

this case.  The benefits achieved by Class Counsel are not in the form of a "common fund," but

rather come in the form of important changes to Dell's advertising practices and the payment to

Class Members on a claims-made basis.  Moreover, the fee awarded to Class Counsel will be paid

directly by Dell, over and above the consideration to be paid to Class Members, and will thus not

reduce the benefits available to the Class.  In such circumstances, the most appropriate method for

calculating reasonable attorneys' fees is the lodestar method.  *See Hanlon*, 150 F.3d at 1029-

1030; *Create-A-Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920 at *1 (N.D. Cal. Sep. 22, 2009).

The lodestar method provides courts with an objective basis upon which to determine the

value of the services provided by counsel.  *Hensley*, 461 U.S. 424, 433 (1983).  As the California

Supreme Court has explained, in a contingent case like this, a fee based upon lodestar and

multiplier "constitutes earned compensation; unlike a windfall, it is neither unexpected nor

fortuitous.  Rather, it is intended to approximate market-level compensation for such services,

which includes a premium for the risk of nonpayment or delay in payment of attorney fees."

*Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001).

The first step in the lodestar analysis is to multiply the number of hours counsel reasonably expended on the litigation by a reasonable hourly rate. *See Graham v. DaimlerChrsyler Corp.*, 34 Cal. 4th 553, 579 (2004); *Hanlon*, 150 F.3d at 1029. Once this raw lodestar figure is determined, the Court may take into consideration additional "enhancement" factors to adjust the lodestar, including, *inter alia*: (1) the results obtained; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other employment due to acceptance of the case; and (5) whether the fee is fixed or contingent. *Serrano*, 20 Cal. 3d at 48; *Hanlon*, 150 F.3d at 1029 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

**C.     The Requested Fee Here is Reasonable and Appropriate Under a Lodestar Analysis.**

**1.     Class Counsels' Lodestar is Reasonable.**

The accompanying declarations of Class Counsel set forth the hours of work and billing rates used to calculate their lodestar. As described therein, Class Counsel and their staffs have spent approximately 15,855.5 hours working on this case, for a total unadjusted lodestar of approximately $6,066,618.50 to date, exclusive of costs. Sobol Decl., ¶ 19, Ex. A; Hattis Decl., ¶ 12, Ex. A.

**a.     Class Counsels' Hourly Rates are Reasonable.**

In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1994). Courts apply each biller's current rates for all hours of work performed, regardless of when the work was performed, as a means of compensating for the delay in payment. *In re Washington Pub. Power*, 19 F.3d at 1305.

Class Counsel here are experienced, highly regarded members of the bar. They have brought to this case extensive experience in the area of consumer class actions and complex litigation, as well as technical knowledge that was critical to the success of the case. Sobol Decl., ¶¶ 2-10; Hattis Decl., ¶¶ 3-9. Class Counsels' customary rates, which were used in calculating

the lodestar here, are in line with prevailing rates in this District, are paid by hourly-paying clients

of the firms, and have been approved by courts in this District and other courts.  Sobol Decl., ¶¶

23-24; Hattis Decl., ¶¶ 15-16.  Class Counsels' hourly rates are therefore reasonable.

### b.       The Number of Hours Class Counsel Worked is Reasonable.

The number of hours that Class Counsel billed is reasonable as well.  *See Serrano*, 20 Cal.

3d at 49 (counsel entitled to recover for all hours reasonably expended); *Caudle v. Bristow*

*Optical Co*., 224 F.3d 1014, 1028 (9th Cir. 2000) (same).  In order to be in a position to file and

pursue this action, Class Counsel were required to spend considerable time investigating and

tracking the practices at issue, and developing and maintaining a database of  relevant information

mined from Dell's website--which required consistent monitoring and oversight.  These efforts

were critical to the success of this case.  Moreover, as the Court is well aware, Dell aggressively

litigated this case for more than three years, requiring Class Counsel to litigate numerous

motions, including: two separate motions for class certification and a petition by Dell for

appellate review of this Court's  class certification Order, two motions to dismiss and strike class

allegations, a motion for judgment on the pleadings, and a motion to compel arbitration.  These

motions involved complex legal and factual issues.  In addition to conducting the exhaustive legal

research necessary to litigate these motions, Class Counsel were required to conduct extensive

discovery to gain a sufficient understanding of the practices and processes at issue.  Moreover,

multiple experts were retained by both sides to address critical issues, requiring significant time

commitments from Class Counsel to work with and depose such experts.

To summarize, among other important tasks, Class Counsel spent substantial time in this

case investigating and tracking the policies and practices at issue (as set forth above), conducting

legal research, preparing and reviewing extensive pleadings, propounding and responding to

written discovery, reviewing and analyzing more than 1 million pages of documents produced by

Dell, subpoenaing records from Dell's outside consultant Bain & Company and reviewing nearly

100,00 pages produced by such consultant, taking and defending numerous depositions (including

ten depositions of Dell employees, two depositions of Dell's retained experts, and defending the

named plaintiffs' and Plaintiffs' experts depositions), working with experts, communicating with

1   Plaintiffs, preparing for and participating in an Early Neutral Evaluation, and preparing for and

2   participating in settlement discussions. [8]

3          All of these tasks were performed for the benefit of the Class, and contributed to the

4   success of this case.  Moreover, the time spent on these tasks was reasonable.  Class Counsel

5   should be therefore permitted to claim all such time, even though they did not prevail on every

6   single aspect of the case.  *See Hensley*, 461 U.S. at 435-36; *Cabrales v. County of Los Angeles*,

7   935 F.2d 1050, 1052-53 (9th Cir. 1991); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) (fee

8   award should be "fully compensatory…. absent circumstances rendering the award unjust, an

9   attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*.")

10  (emphasis original); *Ctr. for Biological Diversity v. County of San Bernardino*, 185 Cal. App. 4th

11  866, 897-98 (2010) (rejecting request to reduce section 1021.5 fee award where party "achieved

12  its primary objective" and because such reduction "would impede the Legislature's intent of

13  'encouraging attorneys to act as private attorneys general and to vindicate important rights

14  affecting the public interest.'") (citing *Ketchum*, 24 Cal. 4th at 1133-34)).  In fact, not only were

15  the hours spent by Class Counsel reasonable given Dell's vigorous defense in this case, but they

16  also served the public good by providing compensation to consumers who were harmed and

17  causing the end of the challenged representations.

18         Further, Class Counsel made every reasonable effort to prevent the duplication of work or

19  inefficiencies that might have resulted from having multiple firms working on this case.  Sobol

20  Decl, ¶¶ 21-22; Hattis Decl., ¶ 14.  Class Counsel respectfully submit that the Court should find

21  that all hours Class Counsel spent in this action were reasonably incurred.

22

23

24  _____

25  [8] It is well established that in moving for fees, counsel is "not required to record in great detail
    how each minute of his time was expended."  *Hensley*, 461 U.S. at 437 n.12.  Instead, counsel

26  need only "identify the general subject matter of his time expenditures."  *Id.*; *Fischer v. SJB-P.D.
    Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000).  If the Court prefers to review Class Counsels' detailed

27  time records, Class Counsel will make them available for *in camera* review.

28

2. **Consideration of the Relevant "Enhancement" Factors Demonstrates the Reasonableness of the Requested Fee.**

After reimbursement of their reasonable out-of-pocket expenses, Class Counsel are seeking $6,134,770.21 in attorneys' fees. This amount is essentially equal to Class Counsels' lodestar in this case to date, and thus Class Counsel do not seek a multiplier on their lodestar.[9] As set forth below, consideration of the relevant "enhancement" factors demonstrates that the requested fee amount is fair, reasonable, and justified under the circumstances.

a. **Class Counsel Achieved Strong Results for the Class and Other Consumers.**

California courts have long recognized that the results obtained by counsel are an important factor in determining a reasonable fee under the lodestar approach. *See, e.g., Thayer v. Wells Fargo Bank,* 92 Cal. App. 4th 819, 838 (2001); *accord Kerr*, 526 F.2d at 70. Class Counsel achieved strong results through their efforts in this litigation, including both monetary relief for Class Members and important structural changes to the way Dell markets its computers.

1. Significant Monetary Relief for Class Members.

Pursuant to the proposed Settlement, all Class Members who submit valid claims will receive a $50 cash payment from Dell for each purchase at issue. Class Members received direct notice of the Settlement and their rights to submit claims, and there is no cap on the total claims that will be paid. Moreover, Dell will directly pay the awarded attorneys' fees and costs and the costs of notice administration, separate and above the amounts paid to Class Members.

The $50 payment amount represents a strong result given the harm alleged, and the potential risks of further litigation for the Class. Among other significant risks, there is the possibility that Dell would seek reconsideration of the Court's denial of Dell's motion to compel arbitration of Plaintiffs' claims, based on the Supreme Court's recent decision in *AT&T Mobility LLC v. Concepcion,* 131 S.Ct. 1740 (2011).[10] Moreover, both liability and damages remain

---

[9] *See* footnote 4, *supra*.

[10] After the Supreme Court granted *certiorari* in *Concepcion*, Dell's counsel sent a letter to Plaintiffs' counsel indicating that Dell was reserving its right to re-raise the arbitration issue.

1    disputed in this action, and Plaintiffs would face a number of difficult challenges if this case were

2    to proceed to trial.  Among other defenses, Dell has asserted, and/or has indicated that it will

3    assert, that: (a) its reference prices were not false, and that its methods for "establishing" such

4    prices (*e.g.*, by selling the products with mail-in-rebate discounts) were sufficient to make them

5    legitimate; (b) some customers were not influenced by its reference prices but instead focused

6    primarily on the actual selling prices; (c) Plaintiffs and Class Members received computers of

7    equal or greater value than what they paid, and Dell's selling prices are competitive with its

8    competitors' prices for comparable computers; and (d) Plaintiffs and the Class cannot

9    demonstrate that they were harmed.  Additionally, Dell could appeal the Court's decision not to

10   enforce its Texas choice-of-law provision, which, if enforced, could make it more difficult for

11   Plaintiffs to pursue their claims on a class-wide basis.

12        In addition, the Settlement allows Class Members to be compensated without the further

13   delay associated with further litigation, trial, and a likely appeal.  The strong monetary relief,

14   under the circumstances, militates in favor of the requested fee here.

15             2.        Important Structural Changes to Dell's Marketing Practices.

16        As set forth above, and as expressly confirmed by Dell in the Settlement, this lawsuit

17   caused Dell to change the way it markets its computers.  *See* section II.D.2, *supra*; Settlement at

18   8.  After Plaintiffs' challenged Dell's use of former price representations, Dell has completely

19   eliminated such representations from its online advertising.  These representations had been

20   pervasive on Dell's website for years, and, by virtue of Dell's standardized online purchase path,

21   all online purchasers of the products in question were exposed to them.  Instead of making these

22   representations, Dell now advertises its computers and their selling prices by comparison to their

23   "Market Value" (a term that Dell expressly describes on the relevant Dell web pages as the

24   surveyed prices of other retailers for comparable computers).  *Compare, e.g.*, Sobol Decl., Exs.

25   C-E  *with* Sobol Decl., Ex. G.

26        While Dell contends that its former price representations were legitimate, and no merits

27   determination has been made on that issue, there was extensive evidence--including expert

28   testimony and Dell's own records--confirming that such representations materially impacted

1   consumers' perceptions of product value and affected their purchase decisions. *See, e.g.,* Docket

2   No. 306 (Class Cert Order) at 8 (finding that "Plaintiffs' common evidence that the

3   representations were material satisfies California's reliance presumption"); Docket No. 212

4   (Order Finding California Law Applies) at 8-10 (citing evidence); Docket No. 237 (Pls.' Class

5   Cert Motion) at 17-20 (citing evidence); Docket No. 287 (Pls.' Class Cert Reply) at 7-11 (citing

6   evidence). Recognizing these impacts, both the Federal Trade Commission and the California

7   Legislature have specifically addressed the use of former reference prices in marketing. *See* 16

8   C.F.R. § 233.1; Cal. Civ. Code § 1770(a)(13); *see also F.T.C. v. Colgate-Palmolive Co.*, 380 U.S.

9   374, 387 (1965) ("[i]t has long been considered a deceptive practice to state falsely that a product

10  ordinarily sells for an inflated price but that it is offered at a special reduced price.").

11       By successfully causing Dell to eliminate the challenged representations from its

12  advertising, Class Counsel achieved a primary objective of this litigation, and delivered a

13  significant benefit not only to the Class Members, but to numerous other consumers as well. The

14  achievement of this additional public benefit strongly supports the requested fee here, and would

15  arguably support an even higher fee than Class Counsel seek. *See Serrano v. Unruh*, 32 Cal. 3d

16  621, 629 (1982) (fees recoverable under "substantial benefit doctrine" where non-pecuniary

17  benefits conferred on an ascertainable class); *Vizcaino*, 290 F.3d at 1049 (awarding enhanced fee

18  where "counsel's performance generated benefits beyond the cash settlement fund, and holding

19  that "[i]ncidental or nonmonetary benefits conferred by the litigation are a relevant

20  circumstance.");[11] *In re Cenco Inc. Sec. Litig.*, 519 F. Supp. 322, 327 (N.D. Ill. 1981) (approving

21

22  ---

[11] *See also Staton*, 327 F.3d at 974 (court "should consider the value of the injunctive relief obtained as a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees."); *Castaneda v. Burger King Corp.*, 2010 U.S. Dist. LEXIS 78299 at *9-10 (N.D. Cal. Jul. 12, 2010) (awarding enhanced fee where "the monetary damages in this settlement -- although quite substantial -- are only part of the relief obtained for class members."); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at * 7 (N.D. Cal. Jul. 18, 1997) (awarding enhanced fee where settlement provided additional non-monetary relief); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F.Supp.2d 503, 525 (E.D.N.Y 2003) ("the substantial injunctive relief here should inform [the court's] decision on awarding fees"); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F.Supp.2d 1334, 1343 (S.D. Fla. 2007) (awarding enhanced fee where important non-monetary relief achieved).

28

1   large multiplier on public policy grounds where "[t]he public has also benefitted from this

2   litigation for it helps insure that state and federal regulations are enforced and provides incentives

3   for private actions in the future."); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th

4   663, 702-03 (2006) (fee award proper where party achieved end of false labeling practice).[12]

5                        **b.      This Case Involved Numerous Complex and Novel Issues.**

6          Courts also consider the novelty and complexity of the issues involved in determining an

7   appropriate fee under the lodestar approach.  *See Ketchum*, 24 Cal. 4th at 1132; *Serrano*, 20 Cal.

8   3d at 49; *Hanlon*, 150 F.3d at 1029.

9          While all consumer class actions are complex and involve risk, this case was particularly

10  difficult and challenging to prosecute.  As discussed, above (*see* sections II.A, B, *supra*) Class

11  Counsel had to overcome numerous very difficult obstacles in prosecuting this case, including but

12  not limited to: becoming familiar with Dell's complex policies and processes through their review

13  of more than 1 million pages of documents produced in discovery; developing viable methods for

14  measuring class-wide damages; and obtaining class certification of claims the likes of which had

15  never been certified before.  Class Counsel also had to contend with Dell's numerous dispositive

16  motions.  These formidable challenges required Class Counsel to analyze and litigate numerous

17  complex, and often novel, issues of law and fact, including but not limited to: the nature and

18  application of the reliance requirements under Texas and California false advertising law, the

19  _____

20  [12] As an alternative basis, an award of fees and costs is appropriate here under section 1021.5,
    California's "private attorney general" law, given the pecuniary benefits Class Counsel achieved

21  for the Class and the structural change their efforts caused to Dell's marketing practices, to the
    benefit of the general public.  *See Colgan*, 135 Cal. App. 4th at 702-03 (fee award proper under

22  section 1021.5 where suit caused the removal of false labeling from defendant's products);
    *Graham*, 34 Cal. 4th at 567-68 (party may recover fees under section 1021.5 "where an important

23  right is vindicated by activating defendants to modify their behavior."); *Skaff v. Meridien N.
    Amer., Beverly Hills, LLC*, 506 F.3d 832, 843-44 (9th Cir. 2007) (relief obtained through a

24  settlement is sufficient to make a party "successful" under § 1021.5); *Beasley v. Wells Fargo
    Bank*, 235 Cal. App. 3d 1407, 1418 (1991) ("consumer protection action[s]….. have long been

25  judicially recognized to be vital to the public interest."); *Graham*, 34 Cal. 4th at 578 & n.9 (party
    entitled to fees under section 1021.5 where "the lawsuit itself furthered the public interest by

26  resulting in extensive consumer remedies, which served as a deterrent to future [harmful]
    conduct"); *see also Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 321-322 (1983) (fees under Cal.

27  Code. Civ. P. § 1021.5 determined using lodestar method).

28

enforceability of Dell's choice-of-law provision, the significance and sufficiency of Dell's efforts to "establish" its reference prices, the relevance of the "market prices" charged by Dell's competitors, the significance of regulatory authority related to the practices at issue, the application of Article III standing requirements, and the proper method(s) for modeling class damages.  The complexity of the issues raised in this case further supports the requested fee award.

### c.   **Class Counsel Assumed Significant Risks in Prosecuting This Case.**

Courts have long recognized that the risk assumed by Class Counsel is an important factor in determining the appropriate amount of attorneys' fees.  *See In re Washington Public Power,* 19 F.3d at 1299-1300 ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *Ketchum*, 24 Cal. 4th at 1138; *Serrano*, 20 Cal. 3d at 48; *Kerr*, 526 F.2d at 70.

Class Counsel prosecuted this case on a purely contingent basis, agreeing to advance all necessary expenses and that they would only receive a fee if the case generated benefits.  Sobol Decl., ¶ 18; Hattis Decl., ¶ 11.  Class Counsels' outlay of time and money in this case has been considerable.  In all, Class Counsel and their staffs have spent approximately 15,855.5 hours investigating, analyzing, researching, litigating, and negotiating a favorable resolution of, this case, and have incurred $865,229.79 in necessary litigation expenses.  Sobol Decl., ¶¶ 19, 25, Exs. A, B; Hattis Decl., ¶¶ 12, 17, Exs. A, B.  Class Counsel expended these resources despite the very real risk that they may never be compensated at all.  In fact, the risk assumed by Class Counsel in this case is particularly notable, given the unprecedented nature of this case and the fact that it was clear to Class Counsel from the outset that this case involved numerous complex issues and particularly difficult challenges that they would need to overcome in order to prevail.  Class Counsels' substantial outlay of resources, despite these challenges and the lack of any guarantee of recovery during the many years of litigation, supports the requested award.

Moreover, the requested fee is further supported by the fact that Class Counsel had to forego other work in order to devote the appropriate amount of time, resources, and energy necessary to handle this demanding matter.  Sobol Decl., ¶ 17; Hattis Decl., ¶ 10; *Serrano*, 20 Cal. 3d at 49; *Ketchum*, 24 Cal. 4th at 1132; *Kerr*, 526 F.2d at 70.

          **d.**      **Class Counsels' Experience and Skill Displayed in Prosecuting This Action Further Supports the Requested Award.**

Courts also consider the experience and skill of counsel in determining an appropriate fee award.  *Serrano*, 20 Cal. 3d at 49; *Hanlon*, 150 F.3d at 1029.  Here, the reputation, experience, and ability of Class Counsel were essential to the success of this litigation.  As set forth in the declarations submitted herewith, Class Counsel have extensive experience in consumer class actions and other complex litigation, as well as technical expertise that proved extremely valuable in investigating and analyzing the various technical issues involved.  Sobol Decl., ¶¶ 2-10; Hattis Decl., ¶¶ 3-9.  Class Counsels' skill in developing the factual record here, successfully litigating the various motions filed, obtaining unprecedented class certification, and convincing Dell of its exposure in this action, were essential to achieving the benefits secured here.  Class Counsels' history of successfully prosecuting consumer class actions and their commitment of considerable resources in prosecuting this case made particularly credible their commitment to further pursue this litigation until they achieved a fair result.

          **D.**      **The Requested Fee Is Further Supported and Corroborated by a Common Fund Analysis.**

Though the benefits achieved in this case do not take the form of a common fund, the reasonableness of the fee requested is further supported by the fact that it is consistent with what would be properly awarded, under Ninth Circuit standards, in an equivalent common fund case.

In determining what constitutes a reasonable fee in common fund cases, Ninth Circuit courts apply a "benchmark" percentage of 25 percent of the total fund as the starting point for the analysis, adjusting that amount as appropriate based on many of the same "enhancement" factors considered in the lodestar-multiplier analysis.  *See Vizcaino*, 290 F.3d at 1047-1050.  Here, the attorneys' fees agreed to by the parties and requested by Class Counsel ($6,134,770.21, which excludes their costs) represents just 23.8 percent of the "fund," as measured by the total monetary

relief available to Class Members ($19,648,950) plus the requested fees.  This percentage, which is less than the "benchmark," is reasonable, particularly given that the "fund" used for this analysis does not account at all for, *inter alia*, the important structural change that Class Counsel achieved here which is highly beneficial to consumers, the complexity and novelty of the issues in this case, or the contingent nature of the fee here.  *See Vizcaino*, 290 F.3d at 1048.

## IV.   CLASS COUNSEL ARE ENTITLED TO RECOVER THEIR OUT-OF-POCKET EXPENSES, WHICH ARE REASONABLE.

Class Counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case.  *See In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 391– 92 (1970)); *Staton*, 327 F.3d at 974.  The total fee and cost amount agreed to by the parties, and requested by Class Counsel pursuant to this motion, includes Class Counsels' out-of-pocket costs.  As with fees, reimbursement of costs here will be paid directly by Dell and will not reduce the funds available to the Class.  *See* Settlement at 16.

To date, Class Counsel have collectively incurred  $865,229.79 in unreimbursed, out-of-pocket expenses.  Sobol Decl., ¶ 25; Hattis Decl., ¶ 17.  This includes costs associated with the retention of experts, engaging a mediator, document review and production, maintaining a database of Dell web pages and the purchase of hardware and software in connection with same, deposition and hearing transcripts, travel, legal research, photocopying, telephone, postage, and other customary litigation expenses.  Sobol Decl., Ex. B; Hattis Decl., Ex. B.  These costs were reasonably necessary for the investigation and continued prosecution of this litigation, and were advanced by Class Counsel for the benefit of the Class.  They should be reimbursed in full.

## V.   THE REQUESTED SERVICE AWARDS FOR THE CLASS REPRESENTATIVES ARE REASONABLE AND WELL JUSTIFIED.

As the Ninth Circuit has recognized, "named plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments."  *Staton*, 327 F.3d at 977; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases.").  Such awards are "intended to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational

risk undertaken in bringing the action." *Id.*; *see also Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995).

The requested service awards here are well justified.  In addition to lending their names to this case, and thus subjecting themselves to public attention, both Class Representatives here participated actively in the litigation.  Among other things, they had their depositions taken; responded to discovery requests and provided documents for production in discovery; reviewed pleadings; and consulted with Class Counsel about the case.  *See* Docket No. 115 (Seick Decl.), ¶ 7; Docket No. 116 (Brazil Decl.), ¶ 4.  Their commitment is all the more remarkable given the relatively modest size of their personal financial stakes in this case.  *See Van Vranken*, 901 F.Supp. at 299 ("In exchange for his participation, Van Vranken will not receive great personal benefit.  He owns a moderately sized truck stop and his claim makes up only a tiny fraction of the common fund.").

Moreover, the $5,000 awards requested here will be paid directly by Dell and will not reduce the recovery for the Class, and are at the modest end of the spectrum.  *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving service awards of $5,000); *Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *12-13 (W.D. Wash. Mar. 26, 2001) ($7,500, $25,000, and $40,000 awards); *Carroll v. Blue Cross & Blue Shield of Mass.*, 157 F.R.D. 142, 143 (D. Mass. 1994), *aff'd* 34 F.3d 1065 (1st Cir. 1994) ($7,500 awards); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) ($20,000 awards); *Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024, *3-*4 (D. Or. Nov. 13, 2006) ($10,000 awards).

Given their demonstrated commitment to the Class in this case, Class Counsel respectfully request that the Court approve the payment of the requested service awards to both Class Representatives.

## VI.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court issue an Order: (a) awarding Class Counsel attorneys' fees in the amount of $6,134,770.21 and reimbursement of out-of-pocket expenses in the amount of $865,229.79; and (b) awarding Class Representatives Chad Brazil and Stephen Seick service awards of $5,000 each.

1

2

3   Dated: September 8, 2011          Respectfully submitted,

4

5                                      By:  /s/  *Michael W. Sobol*
                                              Michael W. Sobol

6                                      Michael W. Sobol (State Bar No. 194857)

7                                      Roger N. Heller (State Bar No. 215348)
                                       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

8                                      275 Battery Street, 29th Floor
                                       San Francisco, CA  94111-3339

9                                      Telephone:  (415) 956-1000
                                       Facsimile:  (415) 956-1008

10

11                                     Rachel Geman (admitted *pro hac vice*)
                                       LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

12                                     250 Hudson St, 8th Floor
                                       New York, NY  10013-1413

13                                     Telephone:  (212) 355-9500
                                       Facsimile:  (212) 355-9592

14

15                                     Daniel M. Hattis (State Bar No. 232141)
                                       Angelo Salvatore Parise (State Bar No. 165690)

16                                     LAW OFFICES OF ANGELO SALVATORE PARISE
                                       16870 West Bernardo Drive, Suite 400

17                                     San Diego, CA  92127
                                       Telephone:  (858) 674-6660

18                                     Facsimile:  (858) 674-6661

19                                     *Class Counsel*

20
     935956.4
21

22

23

24

25

26

27

28