Michael W. Sobol (State Bar No. 194857)
Roger N. Heller (State Bar No. 215348)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Rachel Geman (NY Bar No. RG 0998) (*Pro Hac Vice*)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Daniel M. Hattis (State Bar No. 232141)
Angelo Salvatore Parise (State Bar No. 165690)
LAW OFFICES OF ANGELO SALVATORE PARISE
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Telephone: (858) 674-6660
Facsimile: (858) 674-6661

*Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHAD BRAZIL and STEVEN SEICK, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br>DELL INC. and DOES 1-10,<br><br>              Defendants. | Case No. C-07-01700 RMW<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:         October 28, 2011<br>Time:         9:00 a.m.<br>Courtroom:  6<br>Judge:        Hon. Ronald M. Whyte |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................. 1

II.  BACKGROUND ............................................................. 1

    A.   Procedural History ............................................. 1

    B.   Settlement Negotiations ..................................... 2

    C.   Preliminary Approval ........................................ 3

III. THE SETTLEMENT ........................................................ 3

    A.   The Settlement Class .......................................... 3

    B.   Monetary Relief to Class Members and the Claims Process ...... 3

    C.   Dell's Change in Practice ..................................... 3

    D.   Opt-Out And Objection Procedures .......................... 4

    E.   Attorneys' Fees and Service Awards ........................ 4

IV.  NOTICE HAS BEEN DISSEMINATED TO THE CLASS PURSUANT
    TO THE COURT-APPROVED NOTICE PLAN. ................. 6

    A.   E-mailed and Mailed Summary Notice ...................... 6

    B.   Settlement Website and Toll-Free Number ................. 6

    C.   Published Notice and Notice on Dell's Website ............ 7

V.   THE RESPONSE FROM THE CLASS HAS BEEN VERY POSITIVE. ...... 7

VI.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE
    SETTLEMENT ....................................................... 7

    A.   The Class Settlement Approval Process ................... 7

    B.   The Settlement is Fair, Reasonable, and Adequate, and Should Be
        Approved ........................................................... 8

        1.   The Settlement Is The Product Of Arms-Length
            Negotiations Between The Parties After Hard-Fought
            Litigation And A Thorough Investigation By Plaintiffs. ... 9

        2.   The Settlement Is Fair, Reasonable, And Adequate Given
            The Alleged Harm To The Class And The Potential Risks
            Of Ongoing Litigation. ...................................... 10

        3.   The Recommendation Of Experienced Counsel Favors
            Approval ...................................................... 12

        4.   The Positive Response From The Class Supports Approval. ... 12

VII. THE LONE OBJECTION LACKS MERIT. ............................. 13

    A.   The Fee Request Is Reasonable Under The Lodestar Method And
        Supported By Applicable Law. ................................. 13

1.  The Court Should Apply the Lodestar Method in Determining the Reasonableness of the Requested Fee ............... 13

2.  The Requested Fee is Reasonable Under the Lodestar Method. ....................................................................... 14

B.  Alternatively, The Requested Fee Is Reasonable Under The "Percentage-of-the-Fund" Method And Supported By Applicable Law ......................................................................................... 15

1.  Under The Percentage-Of-The-Fund Method, The Court Must Award Fees As A Percentage Of The Total Potential Benefit Made Available To The Class. ......................................... 16

2.  The Requested Fee Is Reasonable Under The Percentage-Of-The-Fund Method. ................................................... 17

C.  Objector's "Clear Sailing" and "Kicker" Arguments Lack Merit. ........... 19

D.  The Objection And Opt-Out Deadlines Need Not Post-Date The Claims Submission Deadline. .................................................. 22

E.  Objector's Claim That The Settlement Must Allow Online Opt-Outs and Objections Lacks Merit. ............................................. 23

VIII.  CONCLUSION .................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Adams v. Inter-Con Sec. Sys.*,
   2007 U.S. Dist. LEXIS 83147 (N.D. Cal. Oct. 29, 2007) ...................... 23

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
   421 U.S. 240 (1975) ............................................................... 13

*AT&T Mobility, LLC. v. Concepcion*,
   131 S. Ct. 1740 (2011) ........................................................ 2, 11

*Boeing v. Van Gemert*,
   444 U.S. 472, 479–81 (1980) ............................................... 16, 22

*Boyd v. Bechtel Corp.*,
   485 F.Supp. 610 (N.D. Cal. 1979) ............................................. 12

*Browning v. Yahoo! Inc.*,
   2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) ............... 5, 16, 18

*Byrd v. Civil Serv. Comm'n*,
   459 U.S. 1217 (1983) ............................................................... 8

*Cellphone Termination Cases*,
   180 Cal. 4th 1110 (2010) ......................................................... 14

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ..................................................... 8

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .................................................... 8

*Dewey v. Volkswagen of Am.*,
   728 F. Supp. 2d 546 (D.N.J. 2010) .............................................. 24

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ................................................. 9, 12

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) .................................................... 14

*Glass v. UBS Fin. Servs.*,
   2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ...................... 17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................ 8, 14, 15

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011) ................................................ 17

*Hensley v. Eckerhart*,
   361 U.S. 424 (1983) ............................................................... 20

*Hopson v. Hanesbrands Inc.*,
  2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) ..................... 17

*In re Bluetooth Headset Prods. Liab. Litig.*,
  2011 U.S. App. LEXIS 17224 (9th Cir. 2011) ......................... 14

*In re Heritage Bond Litig*,
  2005 WL 1594389 (C.D. Cal. Jun. 10, 2005) ......................... 12

*In re M.L. Stern Overtime Litig.*,
  2009 U.S. Dist. LEXIS 31650 (S.D. Cal. Apr. 13, 2009) .................... 23

*In re: Mercury Interactive Corp. Sec. Litig., ,*
  618 F.3d 988 (9th Cir. 2010)......................... 23

*International Precious Metals Corp. v. Waters*,
  530 U.S. 1223 (2000) ......................... 20

*Jaffe v. Morgan Stanley & Co.*,
  2008 U.S. Dist. LEXIS 12208 (N.D. Cal. Feb. 7, 2008)......................... 23

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975)......................... 15

*Ketchum v. Moses*,
  24 Cal.4th 1122 (Cal. 2001) ......................... 14

*Lealao v. Beneficial Cal. Inc.*,
  82 Cal. 4th 19 (2000) ......................... 14

*Linney v. Cellular Alaska Partnership*,
  1997 WL 450064 (N.D. Cal. Jul. 18 1997)......................... 12

*Lonardo v. Travelers Indem. Co.*,
  706 F. Supp. 2d 766 (N.D. Ohio 2010) ......................... 24

*Lopez v. Youngblood*,
  2011 U.S. Dist. LEXIS 99289 (E.D. Cal. Sep. 1, 2011) ..................... 5, 17, 18

*McKenna v. Sears, Roebuck, & Co.*,
  1997 U.S. App. LEXIS 15528 (9th Cir. 1997) ......................... 21

*Nat'l. Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ......................... 12

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
  688 F.2d 615 (9th Cir. 1982)......................... 8

*Satchell v. Fed. Express Corp.*,
  2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ..................... 23

*Serrano v. Priest*,
  20 Cal. 3d 25 (1977) ......................... 15

*Serrano v. Unruh (Serrano IV)*,
  32 Cal. 3d 621 (1982) ................................................................................................ 14

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  130 S. Ct. 1431 (2010) ............................................................................................... 13

*Six Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ................................................................................... 16

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................................. 5, 8

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................. 5, 13, 14, 18

*Williams v. MGM-Pathe Communs. Co.*,
  129 F.3d 1026 (9th Cir. 1997) ................................................................................... 16

*Young v. Polo Retail, LLC*,
  2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007) ....................................... 17

## RULES

FED. R. CIV. P. 23(e)(2) ................................................................................................... 8

FED. R. CIV. P. 23(h) ......................................................................................... 13, 14, 19

## TREATISES

4 H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS
  § 11.41 (4th Ed. 2002) .................................................................................................. 9

MANUAL FOR COMPLEX LITIGATION, FOURTH (Fed. Jud. Ctr. 2004)
  §§ 21.63 *et seq* ............................................................................................................ 7

## ARTICLES

Hailyn Chen, *Attorney's Fees and Reversionary Fund Settlements in Small Claims
  Consumer Class Actions*,
  50 UCLA L. REV. 879 (2003) ..................................................................................... 21

William B. Rubenstein, *Percentage of What?*, 1 CLASS ACTION ATT'Y FEE DIGEST
  (Mar. 2007) .................................................................................................................. 21

## I.    **INTRODUCTION**

Plaintiffs respectfully request that the Court grant final approval of the Settlement reached between Plaintiffs and Defendant Dell Inc. ("Dell") resolving this matter.[1]  The Court preliminarily approved the Settlement and approved the parties' proposed Notice Plan, on July 15, 2011.  (Dkt. No. 318.)  Subsequently, the parties effectuated the Court-approved Notice Plan, providing individualized notice by U.S. Mail and/or e-mail to the approximately 350,000 Class Members for their roughly 400,000 computer purchases.  The deadline for objections and requests for exclusion was September 28, 2011.  The parties received only fifteen exclusions from the Settlement and one objection, which lacks merit for the reasons addressed below.

The Settlement is the product of arms-length negotiations between the parties and their experienced and informed counsel and was reached after years of hard-fought litigation that resulted in important acknowledged marketing changes relating to Dell's price representations for its computer products.  The Settlement, negotiated with the assistance of an experienced and well-respected mediator, also provides significant monetary relief for Class Members.  Given the nature of the claims and the risks of ongoing litigation, Plaintiffs submit the Settlement is fair, reasonable, and adequate and merits final approval.

## II.    **BACKGROUND**

### A.    **Procedural History**

Plaintiffs filed this class action in March 2007, challenging Dell's pervasive use of "slash-through" reference prices in its online marketing.  Plaintiffs alleged that these "slash through" reference prices were interpreted by consumers as representing Dell's former or regular sales prices, and that such reference prices (and corresponding representations of "savings") were false because Dell rarely, if ever, sold its products at such prices.

Dell initially moved to stay the litigation and compel arbitration of Plaintiffs' claims pursuant to the arbitration provision in Dell's purchase agreements with customers.  The Court

---

[1] A copy of the executed Settlement Agreement, including all exhibits thereto, was submitted as Exhibit A to the Declaration of Michael W. Sobol, filed May 27, 2011.  (Dkt. No. 310–1.)

1   denied Dell's motion. (Dkt. No. 42.) Subsequently, after the United States Supreme Court

2   granted *certiorari* in *AT&T Mobility, LLC. v. Concepcion* in 2010, 130 S. Ct. 3322, Dell's

3   counsel sent a letter to Plaintiffs' counsel indicating that Dell was reserving its right to seek

4   reconsideration of the Court's arbitration order based on *AT&T Mobility, LLC. v. Concepcion,*

5   131 S. Ct. 1740 (2011).

6        Dell moved to dismiss Plaintiffs' claims, which were initially brought under California

7   law, on the grounds that Dell's choice-of-law provision was enforceable and required the

8   application of Texas law. The Court agreed, and Plaintiffs thereafter filed an amended complaint

9   alleging claims under Texas law. After conducting extensive discovery, Plaintiffs moved for

10  class certification of their Texas law claims, arguing, in the alternative, that if their claims could

11  not be certified under Texas law, then the Court should revisit its earlier order enforcing Dell's

12  choice-of-law provision. The Court agreed with Plaintiffs' alternative argument and ordered

13  Plaintiffs to re-file their claims under California law. (Dkt. No. 213.) After Plaintiffs did so, they

14  moved for class certification of their California law claims. Dell opposed class certification and

15  also moved for judgment on the pleadings with respect to each of Plaintiffs' claims.

16       On December 21, 2010, the Court issued an Order granting in part Plaintiffs' Motion for

17  Class Certification (Dkt. No. 305) and issued another Order granting in part and denying in part

18  Dell's Motion for Judgment on the Pleadings (Dkt. No. 306). Dell sought interlocutory review of

19  the Court's Class Certification Order under Federal Rule of Civil Procedure 23(f). (Dkt.

20  No. 307.) Dell's Rule 23(f) petition was denied. (Dkt. No. 308.)

21       **B.    Settlement Negotiations**

22       Following the Court's Class Certification Order, and after preliminary communications

23  regarding settlement, the parties agreed to engage in mediation with mediator Randall Wulff of

24  Wulff, Quinby & Sochynsky. A full-day mediation was held on March 29, 2011. During the

25  course of the mediation, the parties engaged in arms-length negotiations between counsel and,

26  with the assistance of Mediator Wulff, ultimately reached an agreement in principle to resolve the

27  litigation. The final Settlement Agreement was executed by the parties on May 27, 2011.

28

### C. Preliminary Approval

The Court granted preliminary approval of the Settlement and ordered that class notice be disseminated pursuant to the parties' proposed Notice Plan on July 15, 2011. (Dkt. No. 318.)

## III. THE SETTLEMENT

The terms of the Settlement were detailed in Plaintiffs' preliminary approval papers (Dkt. No. 309, at 5–10), and are summarized herein for the Court's convenience.

### A. The Settlement Class

The Settlement Class is defined as: "all individuals and entities in California who purchased a Dell-branded product [identified in the Settlement and Notices] advertised with an instant-off discount from Dell's Home & Home Office segment during the time frame listed for that product." (Settlement § II.7.) The Settlement Class is, in substance, the same class the Court previously certified in the litigation context. (Dkt. No. 306, at 8–9.)

### B. Monetary Relief to Class Members and the Claims Process

Pursuant to the Settlement, Dell will pay $50, in the form of a check, to each Class Member who submits a timely and valid claim. As ordered by the Court, the deadline for Class Members to submit claims is October 28, 2011. Claims may be submitted electronically, via the dedicated settlement website, or by mail. There is no class-wide cap or ceiling on the overall claims that will be paid to Class Members. (Settlement §§ III, V, Ex. A.)

The claim form is straightforward. (Settlement Ex. A.) It requires the Class Member to confirm that he/she purchased a Dell-branded product during the Class Period pursuant to an instant-off discount. This level of detail is not available in Dell's records to have allowed for direct payments or notice to be sent only to those in the Class. As of October 13, 2011, 9,269 Class Members had submitted claims. (*See* Declaration of Jonathan Reid ("Reid Decl."), attached as Exhibit A to the Declaration of Roger Heller filed herewith, ¶¶ 17–18.)

### C. Dell's Change in Practice

Dell acknowledges, as part of the Settlement, that it changed its methodology for consumer online advertising in response to the issues raised in this action. (Settlement § III.3.) Instead of using "slash-through" reference prices, Dell now sells its products online by reference

to their "Market Value," which is expressly described by Dell on its website as "estimated based on industry data including published and as-sold prices for same or comparable products . . . ." (Dkt. No. 320–1 (Sobol Decl.) Ex. G.)  Dell has completely discontinued its former "slash-through" advertising practice, the challenged practice that instigated the lawsuit and related to which the Court certified a class of California consumers.

### D.    Opt-Out And Objection Procedures

Anyone within the Settlement Class definition had the opportunity to exclude themselves from the Settlement Class by sending a written request for exclusion, stating their desire to be excluded from the Settlement Class, to the Court-approved independent claims administrator ("ICA") by September 28, 2011.  (Settlement § III.1.)

Any Settlement Class Member who did not request to be excluded had the opportunity to object to the Settlement, Class Counsel's fee application, and/or the request for service awards to the Class Representatives, by submitting an objection to the Clerk of Court and to counsel for the parties, at the addresses indicated in the notice, by September 28, 2011.  Objections were required to include only the following information:  the Class Member's full name and current address and telephone number; the Class Member's objections, the reasons therefore, and any supporting papers and evidence; and the Class Member's signature.  (Settlement § III.1.)

### E.    Attorneys' Fees and Service Awards

Class Counsel timely filed a motion requesting a total award of reasonable attorneys' fees and costs in the amount of $7 million.  (Dkt. No. 320.)  The requested amount includes Class Counsels' reasonable out-of-pocket expenses of approximately $900,000, necessarily incurred in large part by performing complex data extraction and expert analysis.  Class Counsel therefore requests a fee of approximately $6.1 million, an amount that closely, if not exactly, corresponds to Class Counsels' lodestar.[2]  As the fee petition explained, where, as here, there is no common

---

[2] The figure represented a negligible multiplier of 1.011 when considering lodestar as of September 8, 2011, and even this small multiplier largely or completely disappears when Class Counsels' ongoing efforts to obtain final approval of the Settlement are factored in.  (Dkt. No. 320, at 20–21; Sobol Decl., Exs. A–B; Hattis Decl., Exs. A–B.)

1  fund, the preferred method for measuring attorneys' fees under California law is by the lodestar

2  method, whereby fees are based on counsel's time and costs expended pursuing the litigation.

3          As a cross-check of Class Counsels' lodestar, a percentage-of-the-fund analysis further

4  confirms the reasonableness of the requested fee here.  Under Ninth Circuit law, where funds are

5  made available to the class but there is no traditional common fund, the effective fund is

6  measured based on the amount of money made available to the class plus attorneys' fees and

7  administrative costs.  *See Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *32–43 (E.D.

8  Cal. Sep. 1, 2011) (*citing Staton v. Boeing Co*., 327 F.3d 938, 966 (9th Cir. 2003)) (constructing a

9  hypothetical 'fund' by adding all monies paid by defendant including fees and administration

10  costs); *Browning v. Yahoo! Inc*., 2007 U.S. Dist. LEXIS 86266, 39-42 (N.D. Cal. Nov. 16, 2007).

11  Here, pursuant to the Settlement, the potential value to the Class is $19,648,950, *i.e.*, the $50

12  settlement payment amount multiplied by 392,979, the number of Dell purchases for which direct

13  notice was sent and for which claims could be submitted.[3]  (Reid Decl. ¶ 4.)  Together with the

14  requested attorneys' fees and costs, and *exclusive* of administrative costs ($865,229.79), the total

15  effective fund here is $26,648,950, meaning that Class Counsel's fee request of $6,134,770.21

16  represents approximately 23.02 percent of the effective fund, a percentage that is less than the

17  "benchmark" of 25 percent applied by the Ninth Circuit.  *See Vizcaino v. Microsoft Corp.,* 290

18  F.3d 1043, 1047-50 (9th Cir. 2002).

19          Pursuant to the Settlement, Dell agreed that it would not oppose a request for attorneys'

20  fees and costs up to $7 million, and that it would pay any award up to that amount directly, in

21  addition to the funds that will be paid to Class Members.  (Settlement § V.)  Thus, the fee

22  awarded will not impact the settlement funds available to Class Members.  Importantly, the terms

23  related to Class Counsels' fee were negotiated separately, after the parties had agreed in principle

24  to the other key terms.  (Dkt. No. 320–1 (Sobol Decl.) ¶ 16; Settlement § I.I.)

---

[3] Some of the notice recipients made more than one purchase covered by the Settlement.  The ICA removed duplicative addresses in order to create an updated class list.  The total number of purchases for which notice was sent was 392,979.  (Reid Decl. ¶ 4.)

## IV. NOTICE HAS BEEN DISSEMINATED TO THE CLASS PURSUANT TO THE COURT-APPROVED NOTICE PLAN.

The Notice Plan approved by the Court in its Preliminary Approval Order (Dkt. No. 318) has now been implemented by the parties and the Court-approved ICA, Analytics, Inc. (*See generally* Reid Decl.)

### A. E-mailed and Mailed Summary Notice.

Consistent with the Court-approved Notice Plan (Settlement, § III.1.), summary notice was sent to Class Members via e-mail and, where e-mail addresses were not available, via U.S. Mail. Between August 8 and 11, 2011, the ICA sent summary notice, substantially in the forms attached as Exhibits D and E to the Settlement, to all 354,759 persons[4] on the Settlement Class List provided by Dell. (Reid Decl. ¶¶ 4–8; Exs. A–B.)

For email notices that were returned undeliverable, *i.e.*, "bounce backs", the ICA re-sent the summary notice via U.S. Mail. (Reid Decl. ¶ 7.) For mailed notices, addresses were updated through the U.S. Postal Service's National Change of Address database before mailing. (Reid Decl. ¶ 4.) For mailed notices returned undeliverable with forwarding address information, the ICA re-mailed the summary notice to the new address indicated. (Reid Decl. ¶ 8.) For mailed notices returned undeliverable without forwarding information, the ICA re-mailed the summary notice to the Class Member's shipping address, if it was different from their billing address. *Id.* (*See also* Settlement § III.1.)

### B. Settlement Website and Toll-Free Number

Consistent with the Court-approved Notice Plan (Settlement, § III.1.b), the ICA created a settlement website (http://www.discountsettlement.com) containing downloadable copies of the Preliminary Approval Order, the Settlement, the long-form notice substantially in the form attached as Exhibit C to the Settlement, the claim form, and Class Counsel's fee application. The settlement website also contains appropriate links through which Class Members can

---

[4] Some of the notice recipients made more than one purchase covered by the Settlement. The ICA removed duplicative addresses in order to create an updated class list. The total number of purchases for which notice was sent was 392,979. (Reid Decl. ¶ 4.)

electronically submit claims for settlement payments. The settlement website has been operational since August 8, 2011. (Reid Decl. ¶ 11.)

The ICA also created a toll-free telephone number that Class Members can call with questions or to request copies of the notices or claim form. The toll-free number has been operational since August 8, 2011. (Reid Decl. ¶ 12; Settlement § III.1.b.)

### C. Published Notice and Notice on Dell's Website

Consistent with the Court-approved Notice Plan (Settlement § III.1.d), promptly after preliminary approval, the ICA caused notice, substantially in the form attached as Exhibit F to the Settlement, to be published in weekday editions of the Los Angeles Times, Sacramento Bee, and San Francisco Chronicle. (Reid Decl. ¶ 9.) Moreover, Dell timely posted notice of the Settlement on the Legal Notices page of its website. (Settlement § III.1.e)

## V. THE RESPONSE FROM THE CLASS HAS BEEN VERY POSITIVE.

The response of the Class to the Settlement has been extremely positive. As of September 28, 2011, the opt-out and objection deadline, there were only fifteen (15) requests for exclusion, and only one Class Member objected to the settlement. (Reid Decl. ¶ 20; Dkt. No. 322.) The lone objection is addressed below at Section VII, *infra*.

## VI. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A. The Class Settlement Approval Process

Judicial proceedings under Rule 23 have led to a defined three-step procedure for approval of class action settlements: (1) certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval; (2) dissemination of notice of the proposed settlement to the affected class members; and (3) a formal fairness hearing, or final settlement approval hearing, and consideration for final approval. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH (Fed. Jud. Ctr. 2004), §§ 21.63 *et seq.*

In granting preliminary approval of the Settlement and ordering that notice be disseminated to the Class, the Court has taken the first two steps in the process. (Dkt. No. 318.) With this motion, Plaintiffs respectfully request that the Court take the third and final step in the settlement approval process by granting final approval of the proposed Settlement.

**B.    The Settlement is Fair, Reasonable, and Adequate, and Should Be Approved.**

Courts in this Circuit consider a number of factors in evaluating class settlements, recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Among other factors considered are: the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; and the reaction of the Class Members to the proposed settlement. *See Staton*, 327 F.3d at 959. *See also Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list of relevant considerations, nor have we attempted to identify the most significant factors").

The law favors the compromise and settlement of class action suits. *See, e.g., Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625. "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon*, 150 F.3d at 1026. In exercising such discretion, the Court should give "proper deference to the private consensual decision of the parties . . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Hanlon*, 150 F.3d at 1027. *See* FED. R. CIV. P. 23(e)(2).

The Settlement here readily satisfies the standard for final approval because: (1) it is the product of serious, arms-length negotiations between the parties, reached after substantial and hard-fought litigation and thorough investigation and extensive discovery by Plaintiffs; (2) it

provides substantial relief to the Settlement Class, and is fair, reasonable, and adequate given the remaining Class claims, the alleged harm, and the parties' respective litigation risks; and (3) it was negotiated by, and is recommended by, experienced Class Counsel, and was reached with the help of an experienced, well-respected mediator.

**1.    The Settlement Is The Product Of Arms-Length Negotiations Between The Parties After Hard-Fought Litigation And A Thorough Investigation By Plaintiffs.**

Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable. *See* 4 H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th Ed. 2002); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

The Settlement here is the product of arms-length negotiation between the parties. The parties engaged in a full-day mediation before an experienced mediator, Randall Wulff, and were able to reach an agreement in principle on the key terms of the proposed Settlement. (*See* Dkt. No. 310, (Sobol Decl.) ¶ 8.) For two months, the parties worked to negotiate and finalize the terms of the Settlement, the proposed forms and methods of notice, and the other related documents. *Id.* The parties were represented throughout these negotiations by counsel experienced in the prosecution, defense, and settlement of complex class actions, and were guided by the Court's prior rulings in this case.

Moreover, the Settlement is informed by Plaintiffs' thorough investigation and extensive discovery efforts, and comes after extensive, hard-fought litigation by the parties during the over four years this case has been pending. Prior to filing their initial complaint, and continuing throughout the litigation, Plaintiffs closely investigated and tracked the price and savings representations on Dell's website, capturing and storing screenshots and relevant data for the computer models purchased by Plaintiffs and the Class. (Dkt. No. 114 (Hattis Decl.) ¶¶ 6–7.)

The parties have also engaged in extensive formal discovery. Both sides have propounded and responded to numerous interrogatories and written discovery requests. Dell has produced, and Plaintiffs reviewed, well over one million pages of memoranda, correspondence and other documents, as well as extensive customer sales data. Plaintiffs have produced considerable

1   documents and data as well.  Plaintiffs have deposed numerous Dell witnesses, including eight

2   Rule 30(b)(6) Dell corporate designees.  Dell has likewise deposed both class representatives.

3   Moreover, both parties engaged multiple expert witnesses, each of whom submitted extensive

4   formal expert reports and/or responsive reports and had their depositions taken.  Additionally,

5   Plaintiffs subpoenaed documents from third-party consultant Bain & Company, Inc., which

6   produced nearly 100,000 pages of documents.  (Dkt. No. 310 (Sobol Decl.) ¶ 6.)

7       Further, as the Court is aware, this case has been heavily litigated.  The parties have

8   litigated multiple dispositive and other important motions raising complex legal and factual

9   issues, including Dell's Motion to Compel Arbitration, two separate Rule 12(b) motions to

10  dismiss or strike class allegations, Dell's Rule 12(c) Motion for Judgment on the Pleadings, and

11  two motions for class certification.  In addition, the parties have litigated discovery disputes and

12  engaged in extensive meet and confer to informally resolve several discovery matters.  (Dkt.

13  No. 310, (Sobol Decl.) ¶ 7.)

14      **2.      The Settlement Is Fair, Reasonable, And Adequate Given The Alleged
                  Harm To The Class And The Potential Risks Of Ongoing Litigation.**

15

16      The Settlement provides important monetary relief for the Settlement Class.  Specifically,

17  the Settlement allows all Class Members to submit claims for their purchases at issue, and

18  provides that Dell will pay *all* valid claims that are submitted, in the amount of $50 for each

19  claim.  There is no class-wide cap or ceiling on the overall claims that will be paid pursuant to the

20  Settlement, and thus no Class Member who submits a valid claim will be denied recovery.

21  (Settlement § III.)  A claims process is appropriate, and in fact necessary, here since Dell cannot

22  identify each Class Member through its internal records.  (*See* Dkt. No. 310 (Snowden Decl.),

23  Ex. B ¶ 5.)

24      The claim form is simple and straightforward  (Settlement, Ex. A.).  Moreover, for the

25  convenience of Class Members, claims may be submitted by mail or electronically via a hyperlink

26  on the settlement website.  (Settlement § III, Ex. A.)  The ability to submit claim forms

27  electronically is particularly appropriate and beneficial to Class Members here, given that the

28  Settlement Class consists exclusively of customers who purchased the products at issue online via

1    Dell's website.

2         Further, the Settlement separately provides for the payment of attorneys' fees and

3    expenses directly by Dell, subject to Court approval. Thus, the payment of attorneys' fees and

4    costs will not affect the recovery for Class Members. (Settlement § VII.)

5         The monetary relief provided for in the Settlement is fair, reasonable, and adequate,

6    particularly given the potential risks of further litigation for the Settlement Class. Both liability

7    and damages are disputed in these actions, and Plaintiffs would face a number of difficult

8    challenges if this case were to proceed to trial. Among other defenses, Dell has asserted, or has

9    indicated that it will assert, that: (a) its "slash-through" prices were not false, and that its methods

10   for "establishing" such reference prices, *e.g.*, by selling the products with mail-in rebate

11   discounts, were sufficient to make the "slash-through" prices legitimate; (b) some customers were

12   not influenced by its reference prices but instead focused primarily on the actual selling prices;

13   (c) Plaintiffs and Class Members received computers of equal or greater value than what they

14   paid, and Dell's selling prices are competitive with its competitors' prices for comparable

15   computers; and (d) Plaintiffs and the Class cannot demonstrate that they were harmed.

16        Additionally, Dell could seek reconsideration of the Court's denial of Dell's Motion to

17   Compel Arbitration of Plaintiffs' claims, based on the Supreme Court's decision in *Concepcion*.

18   *See* 131 S. Ct. 1740 (2011). These defenses are indicative of the risks and hurdles Plaintiffs and

19   the Settlement Class would face should this case proceed to trial. The Settlement allows Class

20   Members to avoid the risk of unfavorable rulings on these and other issues, while still providing

21   them considerable relief.

22        The Settlement also provides the Settlement Class with another significant benefit that

23   they could not likely receive if they proceeded to trial — prompt relief. Proceeding to trial could

24   add years to the resolution of this case, given the legal and factual issues raised and likelihood of

25   appeals, including with respect to issues already decided by this Court, such as class certification.

26        In addition to monetary relief, this case has already resulted in important changes to how

27   Dell does business. Dell changed its methodology for consumer online advertising in response to

28   issues raised by Plaintiffs in this action. (Settlement § I.F.) As a result, the former price

representations Plaintiffs challenged here are now completely absent from Dell's website. (*Compare* Dkt. No. 320–1 (Sobol Decl.), Ex. C *with* Dkt. No. 320–1 (Sobol Decl.), Ex. C–E.) These changes will benefit Class Members and numerous other Dell customers going forward.

### 3. The Recommendation Of Experienced Counsel Favors Approval.

The judgment of experienced counsel regarding the Settlement should be given significant weight. *See Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at 5 (N.D. Cal. Jul. 18 1997); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."). Here, counsel for both parties endorse the Settlement as fair, adequate, and reasonable.

Class Counsel have extensive experience litigating and settling consumer class actions and other complex matters. They have conducted an extensive investigation into the issues raised in this action. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs heavily in favor of the Court approving the Settlement. Moreover, the key terms of the Settlement, including the terms setting attorney's fees, were recommended by a capable mediator with considerable experience mediating class actions.

### 4. The Positive Response From The Class Supports Approval.

The response of the class is another factor courts consider in weighing the final approval of a class settlement. *See Nat'l. Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *In re Heritage Bond Litig*, 2005 WL 1594389, at * 15 (C.D. Cal. Jun. 10, 2005) ("The presence or absence of objections from the class is . . . a factor in determining the proper fee award."). Here, only fifteen requests for exclusion were submitted and only one Class Member objected to the Settlement. (Reid Decl. ¶ 20; Dkt. No. 322.) Moreover, the lone Objector's criticisms, which are addressed below, relate almost entirely to the proper measure of attorneys' fees, not to the reasonableness and adequacy of the Settlement itself. *See id*. Such a positive response from the Class militates in favor of approval.

**VII. THE LONE OBJECTION LACKS MERIT.**

There has been *a single* objection raised against the settlement filed by an objector represented by an organization that routinely files objections to class settlements ("Objector"). (*See* Dkt. No. 322.) Objector's complaints, which relate almost entirely to the fee request, are without merit. No objection has been made to the reasonableness of the $50 payment available to claimants, the notice plan or the content of the class notice, or the procedure for making claims. The Objector even commends the parties for providing the Class with the ability to make claims electronically on-line. The Settlement is sound and the fees requested are reasonable. Therefore, the Court should overrule the sole objection and approve the Settlement.

**A. The Fee Request Is Reasonable Under The Lodestar Method And Supported By Applicable Law.**

It is well settled that courts in the Ninth Circuit apply state law in calculating fee awards where the underlying claims in the case are state law claims. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). *See also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n. 31 (1975). Here, Plaintiffs' claims were brought under California law, and so California law regarding attorneys' fees applies.

Objector argues that this precedent was implicitly overruled by the Supreme Court's patently inapposite decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010), which held that federal class certification procedures trumped contrary state law. Class Counsel requests fees under Rule 23(h), which merely provides that fee awards be made as authorized by law *or* by the parties' agreement. FED. R. CIV. P. 23(h). Rule 23(h) thereby allows the application of state law. Moreover, Objector points to no decision, and Plaintiffs cannot find any, that even *suggests* that *Shady Grove* changed Ninth Circuit law in any way on this issue.

**1. The Court Should Apply the Lodestar Method in Determining the Reasonableness of the Requested Fee.**

Under California law, the lodestar-multiplier method is the appropriate method for calculating attorneys' fees where, as here, there is no traditional common fund and the fee awarded will not reduce the funds available to the class. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1134 (2001). Objector presses for the application of federal law in order to require application of

the percentage-of-the-fund method, but even under Ninth Circuit precedent, a court calculating fees under federal law may exercise its discretion to award fees based on class counsel's lodestar and not as a percentage of the fund. *Hanlon*, 150 F.3d at 1029; *In re Bluetooth Headset Prods. Liab. Litig.*, 2011 U.S. App. LEXIS 17224, at *35–36 (9th Cir. 2011) (fees may be based on *either* lodestar or common fund analysis); *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (*citing Vizcaino*, 290 F.3d at 1047).

Objector also argues that the percentage-of-the-fund method is preferable to the lodestar method in settlements that create a common fund. In doing so, Objector mischaracterizes the Settlement and ignores California law. This litigation resulted not only in compensation for Class Members, but also in significant non-pecuniary relief that cannot be valued as part of a percentage-of-the-fund analysis. Moreover, Defendant here has not created a common fund. Instead, the Settlement provides for attorneys' fees separate from and in addition to class compensation.

Indeed, under California law, where the settlement is structured, as it is here, as a "constructive common fund," Objector's argument is inapplicable because courts are required to employ the lodestar analysis. *See Lealao v. Beneficial Cal. Inc.*, 82 Cal. 4th 19 (2000). As the California Supreme Court has explained, a fee based upon lodestar and enhanced by a multiplier "constitutes earned compensation; unlike a windfall, it is neither unexpected nor fortuitous. Rather, it is intended to approximate market-level compensation for such services, which includes a premium for the risk of nonpayment or delay in payment of attorney fees." *Ketchum,* 24 Cal. 4th at 1138. *See also Serrano v. Unruh (Serrano IV)*, 32 Cal. 3d 621 (1982).

Moreover, under both California and federal law, class counsel is entitled to compensation where, as here, the defendant has stipulated to the payment *in addition to* any recovery to the Class. *See Cellphone Termination Cases*, 180 Cal. 4th 1110 (2010); Fed. R. Civ. P. 23(h) (authorizing fee awards based upon parties' agreement to pay them).

### 2. The Requested Fee is Reasonable Under the Lodestar Method.

As discussed in Class Counsels' fee petition (Dkt. No. 320), the fee requested here fully comports with the lodestar-adjustment method applied under California law. The total fee

1  requested includes Class Counsels' approximately $900,000 in reasonable out-of-pocket

2  expenses, and the remaining $6.1 million requested represents a nominal multiplier (1.011) of

3  Class Counsel's lodestar.[5]  Such a fee is reasonable under the circumstances of this case, given

4  the recognized lodestar enhancement factors,[6] including, *inter alia*:  (a) the extraordinary

5  commitment of time and resources that was required to investigate and successfully prosecute this

6  case; (b) the significant risks that Class Counsel assumed in agreeing to prosecute this case on a

7  contingent basis; (c) the fact that every prior attempt to challenge former reference pricing on a

8  class-wide basis had fallen short; (d) the complexity and the novelty of the legal and factual

9  issues raised; (e) the numerous dispositive motions and other litigation hurdles Class Counsel had

10  to overcome; (f) the significant monetary relief achieved for the Class; and (g) the structural

11  changes, *i.e.*, the elimination of "slash-through" prices from Dell's marketing, this case brought

12  about.  (Dkt. No. 320 at 3–9, 12–20.)  *See Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977) (listing

13  relevant "enhancement" factors); *Hanlon*, 150 F.3d at 1029 (*citing Kerr v. Screen Extras Guild,*

14  *Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)) (same).

15  **B.**  **Alternatively, The Requested Fee Is Reasonable Under The "Percentage-of-the-Fund" Method And Supported By Applicable Law.**

16  Objector argues that the requested fee is not supported under federal law, and in

17  particular, under a percentage-of-the-fund analysis, upon the faulty premise that the fee must be

18  based on the value of claims made and not, as the Ninth Circuit requires, on the full benefit made

19  available to the Class.  Under Ninth Circuit precedent, the Court must value the settlement for

20  purposes of the percentage-of-the-fund analysis as the total potential recovery (not the value of

21  claims made) plus attorneys' fees, costs, and the cost of administering the settlement.

---

[5] In fact, Class Counsel reasonably expect that by the time their work in this case is complete, their combined lodestar will meet, if not exceed, the amount requested for attorneys' fees.

[6] Objector asks this Court to adopt the *ALI Principles of Aggregate Litigation* Section 3.05 factors for evaluating settlements instead of employing the factors counseled by the Ninth Circuit. *See e.g., Churchill Village v. General Elec.*, 361 F.3d 566, 575–76 (9th Cir. 2004).  The factors in the *ALI* test do not materially differ from the Ninth Circuit factors described in *Churchill* and above. The Plaintiffs are confident that whichever rubric the Court employs, the Settlement will satisfy the requirements of Rule 23.

1.     **1.**     **Under The Percentage-Of-The-Fund Method, The Court Must Award Fees As A Percentage Of The Total Potential Benefit Made Available To The Class.**

The Ninth Circuit has held that the *total potential class recovery*, not the value of claims made by Class Members, should be used as the basis for performing the percentage-of-the-fund analysis. *See Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026, 1026–27 (9th Cir. 1997). The *Williams* court held that it was an abuse of discretion for a district court to award fees based on the value of claims made under a settlement where the defendant agreed to a minimum and maximum payout. The *Williams* court based its decision on *Boeing v. Van Gemert*, 444 U.S. 472, 479–81 (1980). There, the Supreme Court calculated attorney's fees as a percentage of the total amount of a *reversionary* common fund, *i.e.*, the maximum possible benefit made available to the class. The Court recognized that class members' "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." *See also Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311–12 (9th Cir. 1990).

Objector attempts to distinguish *Williams* and *Van Gemert* by pointing to the absence of a minimum and maximum recovery for the Class in the Settlement here. This argument misses the mark. The *Williams* and *Van Gemert* courts *ignored* the minimum payouts as well as the claims rate and instead approved the calculation of fees as a percentage of the total potential recovery. Indeed, the Supreme Court's decision in *Van Gemert* recognizes that the benefit produced for the Class does not accrue when Class Members submit their claims; the benefit is rather the process by which Class Members may recover against the defendant. Objector's attempt to distinguish these cases focuses, then, on an irrelevant factor — whether the defendant agreed to a minimum or maximum payout.

Moreover, Ninth Circuit courts have applied *Williams* in a variety of contexts, including claims-made settlements without a minimum or maximum recovery. *See*, *e.g.*, *Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266 at *39–42 (N.D. Cal. Nov. 16, 2007) (claims-made settlement with no minimum or maximum recovery); *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269 at *14-24 (N.D. Cal. Mar. 28, 2007) (same). *Hartless v. Clorox Co.*, 273 F.R.D.

630, 642–47 (S.D. Cal. 2011) (common fund with minimum and maximum recovery); *Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289 at *32–43 (E.D. Cal. Sept. 1, 2011) (reversionary common fund with maximum recovery only). *See also Masters*, 473 F.3d at 437 (common fund with maximum recovery only); *Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) (same); *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) (same).

This line of cases necessitates the same result here. Dell's promise to pay *all* claims, without a maximum recovery, provides the strongest possible reason to base attorney's fees on the total potential recovery and not on the claims actually made under the settlement.[7]

Nevertheless, in a claims-made settlement, not every class member can be expected to submit a claim. But even in cases where Class Members are entitled to only a small sum, much smaller than the $50 offered here, the benefit secured by class counsel is not the aggregation of actual individual recovery but rather the collective *process that makes the sum available*. The vested right in the Settlement conferred on all the Class Members is the operative settlement value for purposes of deciding a fee award; by urging a fee award based on claims actually made, Objector would have the Court ignore the benefits conferred on those Class Members who failed to file a fee but still had a right to do so.

> **2.** **The Requested Fee Is Reasonable Under The Percentage-Of-The-Fund Method.**

In determining what constitutes a reasonable fee in common fund cases, Ninth Circuit courts apply a "benchmark" percentage of 25 percent of the total fund as the starting point for the analysis, adjusting that amount as appropriate based on many of the same "enhancement" factors considered in the lodestar-multiplier analysis. *See Vizcaino*, 290 F.3d at 1047–50. "Where there

---

[7] Objector also argues the Advisory Committee's Notes to the 2003 Amendments to Rule 23 superseded *Van Gemert* and *Williams*. However, every district court case cited above applied *Williams* even after the 2003 Amendments. *Further,* the selected excerpts from the Advisory Notes that Objector cites relate solely to the Private Securities Litigation Reform Act (PSLRA), or regarding "future payments" or "nonmonetary relief," which have no application here. Moreover, the Advisory Notes simply stand for the well-settled concept that courts must scrutinize the "manner and operation" of the claims procedure. The claims procedure here is, as Objector expressly acknowledges, commendable.

is a claims-made settlement . . . the percentage of the fund approach in the Ninth Circuit is based on the total money available to class members, plus costs (including class administrative costs) and fees." *Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *32–43 (E.D. Cal. Sep. 1, 2011). *See also Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266, 39-42 (N.D. Cal. Nov. 16, 2007) (holding same).

Here, the fee award agreed upon by the parties and requested by Class Counsel represents just 23.02 percent of the "fund," as measured by the total monetary relief available to Class Members ($19,648,950) plus the requested fees ($6,134,770.21) and costs ($865,229.79). The total "fund" of $26,648,950 does not include, as required by applicable law, settlement administration costs because they are as yet unknown; thus, in actuality, the requested fee represents a percentage somewhat *lower* than 23.02 percent.

This percentage, which is less than the "benchmark," is particularly reasonable given that the "fund" used for this analysis does not account at all for: the important structural change that Class Counsel achieved here, which is highly beneficial to consumers; the complexity and novelty of the issues in this case; the extensive work performed by Class Counsel over this hard-fought four-year litigation; or the contingent nature of the fee. *See Vizcaino*, 290 F.3d at 1048.

Recognizing this, Objector asserts that the Settlement provides less relief than $50 for every purchase, or in the aggregate, approximately $19 million, because the class list includes ineligible purchases. That is incorrect. Any person who received notice may make a claim, and any person receiving notice who makes a claim will receive the $50 benefit. Even non-notice recipients who received notice via publication or over the Internet may make a claim and, if eligible, will be paid the $50 benefit, though no estimation is made as to the size of that potential claimant group.

Although any notice recipient's claim will be honored, some of those class members may decline to make a claim because they did not purchase pursuant to an "instant-off" discount. Indeed, it was the parties' inability to precisely separate eligible and ineligible customers that counseled in favor of utilizing a claims process.

However, any suggestion that the class list is more than marginally over-inclusive is

incorrect. Dell excluded from the class list all customers who purchased their computers pursuant to a mail-in rebate. (Dkt. No. 310–2, Ex. B ¶ 5.) Of the remaining customers on the list, the overwhelming majority purchased pursuant to an instant-off discount, the relevant practice here. Purchases at list price, *i.e.*, without a promotion, were exceedingly rare. (*See* Dkt. No. 225, Ex. F ("Promotions are offered ~100% of time")). In deposition testimony, Dell also indicated that it rarely offered free or upgraded hardware promotions without simultaneously offering an instant-off or mail-in rebate discount. (*See* Dkt. No. 238, Ex. B 103:24-104:3 (". . . this hardware-only methodology, it never was a big — it wasn't a methodology we chose to use frequently at all or much at all in our arsenal of different ways to merchandise and sell systems.")) Plaintiffs' own thorough investigation of Dell's promotion practices yielded the same result: excluding mail-in rebates, instant-off discounts were the dominant form of promotion on Dell's website for the relevant computer systems and time periods indicated in the Settlement and certified by the Court. (*See* Dkt. No. 320–2 (Hattis Decl.) ¶ 19–21.)

### C. <u>Objector's "Clear Sailing" and "Kicker" Arguments Lack Merit.</u>

Objector inaccurately claims that the Settlement's fee provision constitutes a "clear sailing" provision with a "kicker," whereby Dell agrees not to oppose class counsels' fee motion and recovers any fees not awarded by the Court.

First, Objector mischaracterizes the so-called "clear sailing" provision. Under Rule 23, there is no "clear sailing" for Class Counsel because the fee is decided solely by the Court in its discretion. FED. R. CIV. P. 23(h). Dell's agreement to pay class counsel whatever fees the Court awards so long as they do not exceed Class Counsel's lodestar and expenses is hardly "red carpet treatment," as Objector claims. Instead, the provision at issue serves multiple important functions, including: ensuring that the fee award will be paid by Dell directly and will not reduce the funds available to the Class; helping to ensure that Class Counsel will receive fair compensation for their efforts in this litigation; and helping to prevent Class Counsel and Dell from engaging in a "second major litigation," something the Supreme Court has expressly discouraged. *See Hensley v. Eckerhart*, 361 U.S. 424, 437 (1983).

Second, the Settlement does not contain a "kicker" provision, whereby any fees that are

1  not awarded to class counsel revert to defendant and not the class.  Objector's assertion to the

2  contrary is incorrect. Dell has not paid any fees in advance from which it may receive a reversion.

3  Instead, Dell has only agreed to pay whatever fee the Court awards, in its discretion, as a fair and

4  reasonable fee.

5    Objector's true purpose in using the "clear sailing" and "kicker" labels is to accuse the

6  parties of collusion.  The accusation is unfounded.  As discussed below, there is nothing to

7  suggest collusion here, where the parties engaged in arms-length negotiations through a respected

8  mediator.

9    Objector relies heavily on the Ninth Circuit's decision in *Bluetooth*, but *Bluetooth* does

10  not apply here.  First, unlike here, the fee provision in *Bluetooth* had both a clear sailing and

11  kicker provision.  Second, the court made no finding of collusion, but merely suggested a

12  heightened scrutiny in the presence of those provisions, *and* where the value of the settlement was

13  not sufficiently determinable from the record.  There, the record showed that the settlement did

14  not have *any* direct monetary relief for class members.  The Ninth Circuit vacated the district

15  court's approval of the settlement and required the court to make factual findings regarding the

16  settlement's actual value.  2011 U.S. App. LEXIS 17224 at *16–21.

17    Unlike in *Bluetooth,* the value of the Settlement here is clear.  Dell agreed to pay Class

18  Members, directly, $50 each.  Across the whole class, this is a recovery worth $19,648,950.

19  Dell's change in business practices is also of great value that cannot be understated; the

20  instigating practice of this lawsuit has now been eradicated from Dell's website.  Nevertheless,

21  the face value of the Settlement alone justifies Class Counsels' fee request.  The Settlement and

22  fee request here can withstand careful scrutiny by the Court.

23    Moreover, Objector fails to point to a single feature of the Settlement or the negotiations

24  between the parties to substantiate his claim of collusion.  Indeed, none of the factors suggesting

25  collusion are present.  *See generally Strong v. BellSouth Tel. Inc.*, 137 F.3d 844 (5th Cir. 1998);

26  *International Precious Metals Corp. v. Waters*, 530 U.S. 1223 (2000) (O'Connor J.) (denying

27  writ of certiorari; expressing concern over defendants "enticing class counsel to settle lawsuits in

28  a manner detrimental to the class" and class counsel filing "needless lawsuits"); Hailyn Chen,

*Attorney's Fees and Reversionary Fund Settlements in Small Claims Consumer Class Actions*, 50 UCLA L. REV. 879 (2003) (examining reasons for and against limiting attorneys' fees to actual recovery; reviewing case law on reversionary common fund fee awards).

First, following the Court's Class Certification Order, the parties engaged in a full-day mediation with a respected mediator and, negotiating at arms-length, reached an agreement in principle on the primary terms of the Settlement. The parties, as encouraged by Ninth Circuit law, memorialized this agreement *before any discussion of fees began. See McKenna v. Sears, Roebuck, & Co.*, 1997 U.S. App. LEXIS 15528 (9th Cir. 1997). The fee provision was then negotiated separately using the same mediator.

Second, lowering Class Counsel's fee would not help the Class under the Settlement because Dell agreed to pay the fee above and in addition to class claims.

Third, because this is a claims-made settlement rather than a reversionary common fund, Dell never had the opportunity to "entice class counsel to settle lawsuits in a manner detrimental to the class" by creating an illusory common fund from which class counsel can draw fees while the class recovers little. *See Waters*, 530 U.S. at 1223. Such a settlement structure must be analyzed differently than a claims-made settlement where, as here, Class Members have a guaranteed individual right of recovery.

Fourth, the Notice Program employed pursuant to the Settlement is excellent. Class Members received direct notice that they were entitled to recover under the Settlement, and the ICA has maintained a website with all pertinent documents and information so as to make it easy for Class Members to learn about the Settlement and the claims process and submit claim forms online.

Finally, the requested fee is reasonable under the lodestar method. Lowering the fees here would thus not prevent a windfall to Class Counsel, but rather would contradict California's policy of providing attorney's fees in order to encourage consumer class actions. William B. Rubenstein, *Percentage of What?*, 1 CLASS ACTION ATT'Y FEE DIGEST 63, 64 (Mar. 2007) ("[L]imiting counsel to a percentage of the class's actual recovery in a reversionary fund situation disgorges significantly less money overall, providing *defendants* with a windfall.") (original

emphasis).

    **D.**    <u>**The Objection And Opt-Out Deadlines Need Not Post-Date The Claims Submission Deadline.**</u>

Objector argues that Class Members have been deprived of "material information" regarding the Settlement because (1) the opt-out deadline is on the same day as the claims submission deadline, and (2) the Objection deadline was one month before the final claims rate can be determined. (Obj. at 7.)[8] Objector argues that Class Members must know the claims rate before deciding to opt-out or object in order to evaluate the fairness of the settlement and the requested fee award.

First, the claims rate is not "material information" in determining the fairness of the Settlement; the Settlement is eminently fair, reasonable, and more than adequate. The claims procedure here is, as Objector acknowledges, commendable. The claim form is simple and easy to understand, and it may be submitted online. *Every* Class Member is entitled to a $50 payment from Dell pursuant to the submission of a valid claim form. In addition, Dell has discontinued the misleading advertising practice upon which this class action was based as a direct result of this litigation. While claims rates may vary from settlement to settlement, the process secured by counsel to ensure an easy and fair claims submission process should be the focus for determining a settlement's fairness. *See Boeing Co. v. Van Gemert*, 444 U.S. at 480 (Class Members' "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.").

Second, as discussed above, Class Counsels' lodestar and the funds made available to the Class — and not the claims rate — is the pertinent figure for determining the appropriate fee here. *See* Section VII(B)(1), *supra*. Thus, the claims rate is not "material information" for purposes of evaluating Class Counsel's fee request either.

---

[8] Objector also asserts that the claim submission deadline was set five days after the Fairness Hearing. (Obj. at 7.) That is incorrect; though the Court's preliminary approval Order does purport to set the deadline 105 days after the entry of such Order and the hearing 100 days after the entry of such Order, the Fairness Hearing was ultimately scheduled for October 28, 2011, a full 105 days after the entry of the preliminary approval Order, the same day as the claim submission deadline. The Settlement Notice accurately reflected this. (Reid Decl., Ex. A.

1        Nevertheless, Objector relies solely on the Ninth Circuit's inapposite decision in *Mercury*

2    *Interactive* for the proposition that prospective objectors are entitled to review final claims

3    information, as distinct from fee information and the key terms of the settlement, before rendering

4    their objections.  (Obj. at 8.)  In *Mercury Interactive*, the Ninth Circuit vacated the trial court's

5    approval of the settlement because the trial court incorrectly set the motion deadline for class

6    counsel's fee request after the objection deadline, even though "[t]he plain text of [Rule 23(h)]

7    requires a district court to set the deadline for objections to counsel's fee request on a date after

8    the motion and documents supporting it have been filed."  *In re: Mercury Interactive Corp. Sec.*

9    *Litig.*, 618 F.3d 988, 993 (9th Cir. 2010).  Here, by contrast, consistent with the schedule ordered

10   by the Court, Class Counsel submitted their fee petition a full month before the opt-out and

11   objection deadline.  Nothing in *Mercury Interactive*, Rule 23, or any other authority, suggests

12   that, for a claims-made settlement, the objection or opt-out deadline must be set after the claims

13   period ends.

14       Indeed, Objector cannot point to a single case where a Settlement was not approved

15   because the objection or opt-out deadline pre-dated the end of the claims period.  To the contrary,

16   it is common for courts to approve settlements that give Class Members more time to file claims

17   than to opt out or object to the settlement.  *See, e.g.,  Adams v. Inter-Con Sec. Sys.*, 2007 U.S.

18   Dist. LEXIS 83147 (N.D. Cal. Oct. 29, 2007) (setting claim form submission deadline fifteen

19   days after opt-out and objection deadline); *In re M.L. Stern Overtime Litig.*, 2009 U.S. Dist.

20   LEXIS 31650 (S.D. Cal. Apr. 13, 2009) (same); *Jaffe v. Morgan Stanley & Co.*, 2008 U.S. Dist.

21   LEXIS 12208 (N.D. Cal. Feb. 7, 2008) (setting claim form submission deadline twenty-five days

22   after opt-out and objection deadline); *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS

23   99066 (N.D. Cal. Apr. 13, 2007) (same).

24       **E.        Objector's Claim That The Settlement Must Allow Online Opt-Outs and**
              **Objections Lacks Merit.**
25

26       Finally, Objector argues that the Court should deny final approval because the Settlement

27   and ICA did not allow for online opt-outs and objections.  However, Courts have consistently

28   found it appropriate to require objections and opt-outs to be submitted via mail.  *See Dewey v.*

1  *Volkswagen of Am.*, 728 F. Supp. 2d 546, 581 (D.N.J. 2010) ("While alternative methods for

2  asserting objections may exist, the [U.S. mail] method used to field class members' objections

3  still satisfies Rule 23(e)(5)."); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio

4  2010) (same).  Objector fails to cite a single case or other authority requiring online opt-outs and

5  objections as a condition for settlement approval.[9]

6      The objection and opt-out procedures set forth in the Settlement were far from

7  burdensome; objectors were only required to mail to the Clerk, and at least one counsel for

8  Plaintiffs and one for Defendant, a letter including the objector's full name, address, telephone

9  number, and signature, along with the relevant objections.  The procedure for Class Members to

10  exclude themselves from the Settlement is even less burdensome: they need only clearly state

11  their desire to opt out.  They are also permitted to revoke their exclusion at any time prior to the

12  opt-out deadline.  (Settlement § III.1., 2.)

13  **VIII.  <u>CONCLUSION</u>**

14      For the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order

15  granting Final Approval of the proposed Settlement.

16

17  Dated: October 21, 2011          Respectfully submitted,

18

19                                  By: /s/  *Michael W. Sobol*
                                        Michael W. Sobol

20

21                                  Michael W. Sobol (State Bar No. 194857)
                                    Roger N. Heller (State Bar No. 215348)

22                                  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                    275 Battery Street, 29th Floor

23                                  San Francisco, CA  94111-3339
                                    Telephone:  (415) 956-1000

24                                  Facsimile:  (415) 956-1008

25

26

27  _____
    [9] Objector points to one settlement where online forms for opt-outs and objectors were *permitted*, but *not required*.

28

Rachel Geman (admitted *pro hac vice*)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson St, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Daniel M. Hattis (State Bar No. 232141)
Angelo Salvatore Parise (State Bar No. 165690)
LAW OFFICES OF ANGELO SALVATORE PARISE
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Telephone: (858) 674-6660
Facsimile: (858) 674-6661

*Class Counsel*